## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

D. MICHAEL JEWETT,

                Plaintiff,

      v.

IDT CORPORATION, *et al.*,

Case: 1:07-mc-00146
Assigned To : Kollar-Kotelly, Colleen
Assign. Date : 04/12/2007
Description: JEWETT v. IDT CORP.

Related Case: Civil Action No.: 04-CV-1454
(JCL)(MF) (New Jersey)

---

### DEFENDANTS' MOTION TO STAY OR, IN THE ALTERNATIVE, TO QUASH PLAINTIFF'S SUBPOENA TO THE FEDERAL COMMUNICATIONS COMMISSION

Defendants IDT Corporation ("IDT"), Howard S. Jonas, Motti Lichtenstein, Jack Lerer, David Schropfer, Avi Lazar, Robert Schiff, Michael Levine, Jonathan Levy, Alex Schwarz, James A. Courter, Joyce Mason, and John Cate (collectively "Defendants") respectfully move the Court for an order staying Plaintiff D. Michael Jewett's ("Plaintiff") subpoena to the Federal Communications Commission ("FCC") until Defendants' Motion for a Discovery Protective Order and Motion to Quash Plaintiff's Subpoenas are decided by the United States District Court for the District of New Jersey (Civil Action No. 04-CV-1454 9JCL) (MF)), where this action is currently pending. In the alternative, Defendants respectfully move the Court for an order quashing the FCC subpoena because the documents sought are irrelevant to the allegations of the complaint and are not reasonably calculated to lead to the discovery of admissible evidence. Further, the FCC subpoena is overly broad as it requests documents from an irrelevant time period and from irrelevant third-parties.

WHEREFORE, Defendants respectfully request that the Court stay the subpoena to the FCC until Defendants' Motion for a Discovery Protective Order and Motion to Quash Plaintiff's

Subpoenas are decided by the United States District Court for the District of New Jersey or, in the alternative, quash Plaintiff's subpoena to the FCC.

Respectfully submitted,

Dated: April 12, 2007

By: _____

Troy Tanner (DC Bar No. 419388)
Anitra D. Goodman (DC Bar No. 484434)
BINGHAM MCCUTCHEN LLP
2020 K Street, NW
Washington, DC 20006
Telephone: (202) 373-6000
Facsimile: (202)-373-6001
troy.tanner@bingham.com
anitra.goodman@bingham.com

Leslie Lajewski
COUGHLIN DUFFY LLP
350 Mount Kemble Avenue
P.O. Box 1917
Morristown, New Jersey 07962-2075
Telephone: (973) 267-0058
Facsimile: (973) 267-6442
llajewski@coughlinduffy.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of April 2007, true and correct copies of the

foregoing were served via overnight mail upon the following:

William P. Perniciaro
The Law Office of William P. Perniciaro
84 New Dorp Plaza
Staten Island, New York 10306

_____

Anitra D. Goodman

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| D. MICHAEL JEWETT, | Miscellaneous Case No.: |
| Plaintiff, | |
| v. | Related Case:  Civil Action No.:  04-CV-1454 (JCL)(MF) (New Jersey) |
| IDT CORPORATION, et al., | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO STAY OR, IN THE ALTERNATIVE, TO QUASH PLAINTIFF'S SUBPOENA TO THE FEDERAL COMMUNICATIONS COMMISSION

### IINTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff D. Michael Jewett filed an action against Defendants IDT Corporation ("IDT"), Howard S. Jonas, Motti Lichtenstein, Jack Lerer, David Schropfer, Avi Lazar, Robert Schiff, Michael Levine, Jonathan Levy, Alex Schwarz, James A. Courter, Joyce Mason, and John Cate (collectively "Defendants") in the United States District Court, District of New Jersey in March 2004, alleging, inter alia, that he was terminated from employment with IDT in violation of the New Jersey Conscientious Employee Protection Act ("CEPA"), N.J.S.A. 34:19-1, *et seq.* (New Jersey's "whistle blower statute") and the New Jersey Law Against Discrimination ("LAD"), N.J.S.A. 10:5-1, that he was defamed after his termination, and that he has suffered intentional infliction of emotional distress ("IIED") as a result of the above.  (Lajewski Dec., original Complaint at Ex. A.)

Allegedly in relation to his CEPA claim, Plaintiff issued a subpoena to Kevin J. Martin, Chairman of the Federal Communications Commission, (the "FCC Subpoena") with the following requests:

1.    A certified copy under seal of each contract, agreement, concession, license, authorization, operating agreement or other arrangement filed by IDT Corporation or IDT Telecom pursuant to 47 C.F. R. 43.51 between 1996 and the present for any international route (governed by the International Settlements Policy).  If there are no such filings, you are directed to so indicate.

2.    A certified copy under seal of each modification request filed by IDT Corporation or IDT Telecom pursuant to 47 C.F.R. 43.51 and/or 64 C.F.R. 1001 (or similar provision) between 1996 and the present for routes governed by the FCC's International Settlements Policy.  If there are no such filings, you are directed to so indicate.

3.    A certified copy under seal of each contract, agreement, concession, license, authorization, operating agreement or other arrangement filed by any carrier pursuant to 47 C.F.R. 43.51 between 1996 and the present on the Haiti route.  If this file is missing you can satisfy this subpoena by indicating it is missing, that the file existed, the rule under which it was created, the purpose of the file, the public nature of the file (that is whether members of the public had access to its contents), and what the file contained.

(See Lajewski Dec., FCC Subpoena at Ex. B.)

Defendants submit this Memorandum of Points and Authorities in support of their Motion to Stay, or in the Alternative, to Quash Plaintiff's Subpoena to the Federal Communications Commission ("FCC").  Defendants seek to stay Plaintiff's subpoena to the FCC to allow the United Stated District Court of New Jersey, where this case is pending, time to rule upon Defendants' currently-pending Motion for a Discovery Protective Order (hereinafter "Motion for a Discovery Protective Order") and Motion to Quash Plaintiff's Subpoenas to AT&T, Sprint and Verizon (hereinafter "Motion to Quash").  Among other things, Defendants' Motion for a Discovery Protective Order seeks to preclude Plaintiff from obtaining discovery from IDT, the FCC or anyone else concerning FCC filings by IDT and other carriers.  (Lajewski

2

Dec., brief at Ex. C.) Similarly, Defendants' Motion to Quash Plaintiff's Subpoenas to AT&T, Sprint and Verizon seek to preclude Plaintiff from obtaining discovery from these carriers concerning their filings with the FCC. (Lajewski Dec., brief at Ex. D.) The return dates for Defendants' Motion to Quash and Motion for a discovery Protective Order (hereinafter collectively referred to as the "New Jersey Motion"), are April 23, 2007 and May 14, 2007, respectively. (Lajewski Dec. , Ex. E.)

The procedural history of this New Jersey CEPA case is long and tortuous; as evidenced by an ECF Docket of more than 235 filings when written discovery has not even been completed. (Lajewski Dec., ECF Docket Printout as of April 10, 2007 at Ex. F.) Because of that history, the Magistrate and District Court Judges to whom this case is assigned are best equipped to fairly and efficiently adjudicate the scope of discovery (including the FCC Subpoena) in this case. To ask the District of Columbia Court to become educated on this procedural history, which is necessary to adjudicate the appropriateness, or lack thereof, of the FCC Subpoena, would be unduly burdensome on the Court. To not educate the Court on this procedural history would cause a clear case of hardship on Defendants because a fair ruling cannot be made on the FCC Subpoena without such an understanding.

A hardship would also befall Defendants if the District of Columbia Court ruled on the FCC Subpoena in a manner contrary or counter to the District of New Jersey Court's ruling on the scope of Plaintiff's discovery rights in this case. There is also absolutely no injury or prejudice to Plaintiff to stay the FCC Subpoena pending a ruling on Defendants' New Jersey Motions.

Should the Court choose not to stay Plaintiff's subpoena, then Defendants alternatively move for an Order quashing the FCC Subpoena. Defendants seek to quash Plaintiff's subpoena because the information sought is irrelevant and not reasonably calculated to lead to the

3

discovery of admissible evidence in relation to any of the claims or defenses in this CEPA case. Specifically, this is a case where Plaintiff alleged that he was terminated from his employment with IDT in November 2003 after he questioned the legality of IDT's agreement with Teleco Haiti in that he believed there was a pay-off being made to then Haitian President Aristide in connection with the agreement. FCC filings have no relevance to those allegations.

Similarly, the subpoena is overly broad as it requests documents from 1996 to the present. Plaintiff worked for IDT from April to November 2003. FCC filings from 1996 to the present cannot possibly be relevant to any objections he allegedly made about IDT's agreement with Teleco Haiti during his seven-month period of employment in 2003.

In addition to this, the FCC provides a procedure whereby carriers may file information confidentially with the FCC. To the extent IDT or other carriers have filed any information with the FCC seeking confidential treatment, Plaintiff's subpoena also requires disclosure of confidentially and commercially sensitive information to which he would not otherwise be entitled. Given that there is no relevance of FCC filings to Plaintiff's CEPA case, he certainly should not be allowed to subpoena information that was confidentially filed with the FCC.

Finally, the true motives behind Plaintiff's subpoena appear illicit, and Plaintiff should not be allowed to misuse the subpoena process to further such motives. In particular, as evidenced by Defendants' Motion for a Discovery Protective Order, a current discovery dispute exists between the parties as to the scope of discovery concerning IDT's agreement with Teleco Haiti and other IDT business dealings. (Lajewski Dec. ¶¶ 3-10.) Plaintiff sought, through interrogatories and document requests to IDT, information and documents concerning everything to do with IDT's negotiations and agreement with Teleco Haiti and any and all business dealings by IDT. IDT has objected to providing such information for the same reasons explained in this motion. (*Id.*) The parties were ordered to meet and confer on that issue (as well as other

4

discovery issues) and, after Plaintiff's refusal to narrow such requests in any way, shape or form,

Defendants obtained leave from the Court to file their now-pending Motion for a Discovery

Protective Order to preclude such information and documentation from production in the case.

(*Id.*)  Plaintiff, knowing this dispute, seems to be using the FCC Subpoena (as well as subpoenas

to others) to intentionally end-run the Defendants' rights concerning a protective order.

    As has been repeatedly explained to Plaintiff, the only claim in this case whereby

information concerning, among other things, the FCC filing of IDT's agreement with Teleco

Haiti may have been relevant was Plaintiff's RICO claim.  That claim was dismissed with

prejudice on Defendants' Motion to Dismiss.  (Lajewski Dec., Ex. G.)  Plaintiff has attempted to

justify the continued pursuit of this irrelevant information on Plaintiff's involvement in a U.S.

Department of Justice ("DOJ") investigation into IDT's agreement with Teleco Haiti, and he and

his counsel's desire to assist the DOJ in "uncovering" IDT's part in alleged illegal activity

related to Teleco Haiti.  Plaintiff and his counsel are not government agents, nor do they stand in

the shoes of the Attorney General to undertake investigations for the government.  In short,

Plaintiff's attempt to seek FCC filings in this case to assist some alleged government

investigation is a complete misuse of the process in this case and his subpoena should be

quashed.

## ARGUMENT

**I.    PLAINTIFF'S SUBPOENA SHOULD BE STAYED TO ALLOW THE DISTRICT COURT OF NEW JERSEY TIME TO RULE ON DEFENDANTS' MOTION FOR A DISCOVERY PROTECTIVE ORDER AND MOTION TO QUASH PLAINTIFF'S SUBPOENAS TO AT&T, SPRINT AND VERIZON.**

    It is well settled that a trial court has the authority to stay a matter pending the resolution

of a matter in another court.  *See Landis v. N. American Co.*, 299 U.S. 248, 254 (1936); *see also*

*Hisler v. Gallaudet University*, 344 F. Supp. 2d 29, 35 (D.D.C. 2004) (noting that "[a] trial court

has broad discretion to stay all proceedings in an action pending the resolution of independent proceedings elsewhere."). When deciding a motion to stay, the court must "weigh competing interests and maintain an even balance." *Landis*, 299 U.S. at 254. Additionally, it is appropriate for a trial court to stay a proceeding if it finds that the fairest course for the parties is "'to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case.'" *Hisler*, 344 F. Supp. 2d at 35 (quoting *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863-64 (9th Cir. 1979)); *see also Hertz Corp. v. Gator Corp.*, 250 F. Supp. 2d 421, 424 (D.N.J. 2003) (noting that a trial court should stay a proceeding in order to promote fair and efficient adjudication).

The Supreme Court has placed an onus on the movant to establish a "clear case of hardship or inequity" in order to succeed on a motion to stay. *Landis*, 299 U.S. at 254. Moreover, a stay must be "kept within the bounds of moderation." *Id.* at 256. Accordingly, a stay must expire within reasonable limits. *Id.* at 257. In *GFL Advantage Fund, Ltd. v. Colkitt*, 216 F.R.D. 189, 193 (D.D.C. 2003), this Court decided whether to stay a subpoena issued to a non-party requesting documents.

Similar to the instant action, in *GFL*, the underlying action was pending in the Third Circuit. GFL issued subpoenas out of Florida, Pennsylvania and the District of Columbia. *Id.* at 192. Thereafter, GFL filed motions to compel compliance with the subpoenas in the respective district courts. *Id.* Subpoenaed non-party Womble Carlyle filed an opposition and motion to stay in the District of Columbia Court arguing that the stay should be granted because there was a similar subpoena at issue in Pennsylvania. *Id.* at 193. The Court denied Womble Carlyle's motion to stay, setting forth that Womble Carlyle had not alleged (and therefore not established) that it would suffer any harm if GFL's motion to compel was not ruled upon. *Id.* The Court also noted that while Womble Carlyle represented that it *intended* to file a motion for a protective

6

order in the Middle District of Pennsylvania (where the underlying action was pending), Womble Carlyle had not actually done so and its intentions were not a basis to grant a stay. *Id.* at 193-194.

First and foremost, unlike the *GFL* case, Defendants have applied for a discovery protective order from the New Jersey District Court, which has jurisdiction over the scope of discovery in the case. (Lajewski Dec., Ex. C.) Likewise, Defendants have filed a motion to quash Plaintiff's subpoenas to AT&T, Sprint and Verizon in the New Jersey District Court, where those subpoenas (which ask for information identical to that requested in the FCC Subpoena) were issued. (Lajewski Dec., Ex. D.) Defendants' Motion for a Discovery Protective Order is returnable on May 14, 2007. Defendants' New Jersey Motion to Quash is returnable on April 23, 2007. (Lajewski Dec., Ex. E.) Accordingly, granting a stay until Defendants' New Jersey Motions are decided is not immoderate as it will not cause an unfair delay.

Further, it is imperative that this Court await the New Jersey District Court's decision on Defendants' motions as the scope of the documents Plaintiff will be allowed to obtain from the FCC will undoubtedly be modified by the New Jersey District Court's ruling. Indeed, the Magistrate Judge overseeing this case New Jersey Court has already questioned in dicta that he does not see the relevance to Plaintiff's claims of IDT business dealings outside of the Teleco Haiti agreement. (Lajewski Dec., Transcript of 3/7/07 case management conference at Ex. H, T.14:10-15:21; 37:4-11.) Given that previous position, it is likely the court will grant Defendants' Motion for a Discovery Protective Order in relation to limiting Plaintiff's access to information and documentation relating to IDT's business dealings. This would include any FCC filings by IDT on such business dealings and, thus, have a direct impact on the documentation Plaintiff seeks in the FCC Subpoena.

To allow Plaintiff to obtain documentation from the FCC before Defendants' Motion for a Discovery Protective Order is ruled upon will also cause hardship to Defendants because of Plaintiff's history in this case of publishing everything he discovers in relation to IDT in either the New Jersey District Court docket, the Wall Street Journal or other newspapers. (Lajewski Dec., Transcript of 3/20/07 conference at Ex. I, T. 28:2-24. *See also* Ex. J for example Wall Street Journal articles in which Plaintiff and/or his counsel gave statements or information.) To allow him access to discovery from the FCC, which in all probability will be precluded or limited, would give him the ability to publish it in the media and place it into the docket information and documentation that ultimately will not be allowed in the case. Defendants should not be forced to defend against such publications and filings when merely staying the FCC Subpoena pending the New Jersey Court's decision on Defendants' New Jersey Motions could prevent the entire situation and hardship to Defendants.

Furthermore, IDT has filed counterclaims against Plaintiff for the breach of his Confidentiality Agreement with IDT. (Lajewski Dec., Ex. K.) The genesis of those claims is, among other things, Plaintiff's filing of IDT's confidential and proprietary information in his Complaint and Amended Complaint, portions of which were later sealed by the Court. (Lajewski Dec., Ex. K.) Pursuant to 47 C.F.R. Sections 0.457 and 0.459 (1994), a carrier may seek confidential treatment of filings with the FCC. To allow Plaintiff access to confidential filings with the FCC would place IDT at substantial risk that Plaintiff could (and would) further breach his Confidentiality Agreement with IDT and publish those filings in the New Jersey docket or share them with the media. Defendants should not be subjected to that risk when a simple stay of the FCC Subpoena until the New Jersey Court rules on Defendants' Motion for a Discovery Protective Order and Motion to Quash can alleviate the risk completely.

8

Finally, IDT will suffer hardship if the stay is not granted because the FCC Subpoena seeks discovery of documents that are not relevant to the underlying action. A subpoena issued pursuant to Rule 45 must still comply with the mandates of Rule 26 which states that, "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the claim or defense of any party." *Cofield v. City of LaGrange*, 913 F. Supp. 608, 614 (D.C.C. 1996). To allow Plaintiff to obtain this irrelevant discovery (which is also not reasonably calculated to lead to the discovery of admissible evidence) before the New Jersey Court can rule on Defendants' New Jersey Motions would unduly harm Defendants for the reasons discussed above.

A weighing of the equities also supports a stay of the FCC subpoena. There is no prejudice or harm to Plaintiff in staying the FCC Subpoena to allow the New Jersey Court to rule upon Defendants' New Jersey Motions. Indeed, entering the stay is the fairest course for the parties so that Plaintiff does not obtain discovery which he may, within a month or so, be precluded from obtaining and using in the underlying case by the New Jersey Court. If a stay is entered, Plaintiff also suffers no prejudice in relation to moving discovery along, as fact discovery in the case does not close until October 15, 2007. (Lajewski Dec., Ex. L.) Thus, Plaintiff will still have more than adequate time to obtain documents in response to the FCC Subpoena once the New Jersey Court rules upon Defendants' New Jersey Motions (if the discovery Plaintiff seeks is not limited or precluded).

In sum, it is clear that the resolution of the pending motions in New Jersey will bear upon the scope of Plaintiff's FCC subpoena. It is also clear that in weighing the competing interests of Plaintiff and Defendants, a balancing of the equities tips in favor of Defendants' request for a stay. Finally, a clear case of hardship and inequity will befall the Defendants if the FCC Subpoena is not stayed to allow the New Jersey Court to rule upon Defendants' New Jersey Motions. For all these reasons, it is respectfully requested that this Court enter a Order staying

DCiManage/9335805.1

Plaintiff's subpoena to the FCC until the New Jersey Court rules upon Defendants' pending Motion for a Discovery Protective Order and Motion to Quash Plaintiff's Subpoenas to AT&T, Sprint and Verizon.

## II.    SHOULD THE COURT CHOSE NOT TO ENTER A STAY, DEFENDANTS HAVE STANDING TO MOVE TO QUASH THE FCC SUBPOENA.[1]

Generally, a party has standing to seek the modification or quashing of a subpoena upon a third party when the moving party has a "claim of privilege, proprietary interest, or personal interest in the subpoenaed matter." *Washington v. Thurgood Marshall Academy*, 230 F.R.D. 18, 21 (D.D.C. 2005). Here, Defendants have sufficient standing to bring this Motion. First, Plaintiff seeks the production of IDT documents from the FCC; documents in which IDT clearly has a proprietary interest. Second, to the extent IDT has filed any documents with the FCC confidentially pursuant to 47 C.F.R. §§ 0.457 and 0.459 (1994), IDT has a claim of confidentiality in those documents as well. Third, Defendants all have a personal interest in the subpoenaed matter to the extent Plaintiff is seeking the documents to use against Defendants in the underlying New Jersey lawsuit and to portray Defendants in a negative light in the media. This is particularly so given IDT's counterclaim against Plaintiff for his breach of his signed Confidentiality Agreement and the history of Plaintiff and his counsel disclosing confidential information, as well as repeatedly providing information to the press and other third-parties.

Defendants also have a personal interest in the subpoenaed matter to the extent Plaintiff is attempting to gain from the FCC the very documents Defendants have objected to producing in the case and on which Defendants have filed a Motion for a Discovery Protective Order.

---

[1] To the extent the Court determines a motion for protective order is more appropriate than a motion to quash, it is within the Court's power to treat Defendants' motion to quash as a motion for a protective order limiting the scope of the FCC Subpoena, and Defendants' respectfully request that the Court treat this motion as such. See *Will-Drill Resources, Inc. v. J.R. Pounds, Inc.,* No. 2:06cv64-KS-MTP, 2007 WL 609791 at *2, slip op. (S.D .Miss. Feb. 23, 2007); *Williams v. Weems Community Mental Health Center,* No. Civ.A. 4:04CV179LR2006, WL 905955 at *1 (S.D. Miss. Apr. 7, 2006); *Stewart v. Mitchell Transport,* No. 01-2546-JWL, 2002 WL 1558210 at *6 (D. Kan. July 8, 2002); *EEOC v. Kim and Ted, Inc.,* No. 95 C 11511995, WL 591451 at * 2 (N.D. Ill. Oct. 3, 1995).

10

Defendants certainly have standing to prevent Plaintiff from end-running their rights to object to such production and to obtain a protective order to prevent such discovery. See *Will-Drill Resources, Inc. v. J.R. Pounds, Inc.,* No. 2:06cv64-KS-MTP, 2007 WL 609791 at *2, slip op. (S.D. Miss. Feb. 23, 2007) (defendants have standing to bring a motion for protective order to place reasonable limits on the discovery process, including limitations on subpoenas to third parties); *EEOC v. Kim & Ted, Inc.*, No. 95 C 1151, 1995 WL 591451 at * 2 (N.D. Ill. Oct. 3, 1995) (EEOC's motion to quash defendants' subpoenas to third-parties to be treated as a motion for a protective order limiting the scope of defendants' discovery pursuant to Rule 26(c) and, as such, EEOC, as a party to the litigation, has standing to bring the motion).

## III.    THE FCC SUBPOENA REQUESTS INFORMATION THAT IS NEITHER RELEVANT NOR REASONABLY CALCULATED TO LEAD TO THE DISCOVERY OF ADMISSIBLE EVIDENCE.

It is well settled that the scope of discovery under a subpoena is the same as the scope of discovery under Rules 26(b) and 34 of the Federal Rules of Civil Procedure. Specifically, Rule 26(b)(1) allows parties to "obtain discovery regarding any matter, not privileged, which is relevant to the claim or defense of any party". Relevant information need not be admissible at the trial if the discovery appears "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1) and 45(d)(1). The Advisory Committees' Note to the 1970 Amendment to Rule 45 states that the 1970 Amendments "make it clear that the scope of discovery through a subpoena is the same as that applicable to Rule 34 and other discovery rules." Therefore, determining whether a request contained in a subpoena duces tecum is overly broad or seeks irrelevant information should be decided under the same standards set forth in Rule 26(b) as applied to Rule 34 requests for production. *Washington*, 230 F.R.D. at 21; *Cofield*, 913 F. Supp. at 614. Furthermore, Plaintiff's request must have a nexus to the issues raised in the complaint. *Federal Deposit Ins. Corp. v. Mercantile Nat. Bank of Chicago*, 84 F.R.D. 345,

11

351 (N.D. Ill. 1979).

### A.     Plaintiff should not be allowed to seek information concerning IDT Telecom, as IDT Telecom is not a Defendant in the case.

Plaintiff claims that the FCC Subpoena is relevant to obtain documents needed to prove his CEPA claim against Defendants. (Lajewski Cert. ¶¶5-6.)  IDT Telecom, however, is not a defendant in the case.  Thus, any FCC filing information concerning IDT Telecom is irrelevant and the FCC subpoena should be quashed as it relates to IDT Telecom.

### B.     Request Numbers One and Two of the FCC Subpoena should be quashed.

Request Number One of the FCC Subpoena requests all documents filed by IDT between 1996 and the present "for any international route (governed by the International Settlements Policy)."  Request Number Two requests all modifications to  documents filed by IDT between 1996 and the present for "routes governed by the FCC's International Settlements Policy." (Lajewski Dec., Ex. B.) These requests are overly broad, entirely irrelevant to the present litigation and not reasonably calculated to lead to the discovery of admissible evidence in the case.

Plaintiff claims that these documents are relevant to his New Jersey CEPA claim. (Lajewski Cert. ¶¶5-6.)  To prevail on this claim, Plaintiff must prove the following elements:

> (1) that he reasonably believed that his employer's conduct was violating either a law or a rule or regulation promulgated pursuant to law;
>
> (2) that he performed whistle-blowing activity described in *N.J.S.A.* 34:19-3a, c(1) or c(2);
>
> (3) an adverse employment action was taken against him; and
>
> (4) a causal connection exists between the whistle-blowing activity and the adverse employment action.
>
> *Kolb v. Burns*, 320 *N.J. Super.* 467, 476 (App. Div. 1999).

DCiManage/9335805.1

It is undisputed that Plaintiff's only allegation in this case concerns IDT's agreement with Teleco Haiti. Nowhere in the case does Plaintiff make any allegations of IDT's dealings on any other route. (Lajewski Cert., Third Amended Complaint at Ex. M.) Nor does the case contain any allegations concerning modifications to IDT deals. (*Id.*) Since the case fails to mention any other international route as a basis for the case, Plaintiff cannot argue that the First and Second Request of the FCC Subpoena would lead to the discovery of admissible evidence on his CEPA claim.

The information requested in the FCC Subpoena regarding IDT's business dealings also has no nexus to the issues raised in the Complaint and cannot conceivably aid Plaintiff in proving his case. The requested documents do not have any bearing on whether Plaintiff reasonably believed IDT's conduct in allegedly paying-off President Aristide (or in not filing the Teleco Haiti deal with the FCC) violated some law or regulation. Nor do the documents have any bearing on whether Plaintiff performed whistle-blowing activity, whether an adverse employment action was taken against him, or whether a causal connection exists between the alleged whistle-blowing activity and the adverse employment action as required proving a CEPA claim.

### C.    Request Number Three of the FCC Subpoena should be quashed.

Request Number Three of the FCC Subpoena requests documents filed by ANY carrier between 1996 and the present on the Haiti route. This request should be quashed on several grounds. First, whether or not IDT filed its agreement with Teleco Haiti with the FCC was not raised as a basis for Plaintiff's CEPA claim when this case was filed. It was an alleged issue discovered and raised by Plaintiff's counsel in March 2005 – 16 months after Plaintiff's termination and a year after this case was filed – in support of an Order to Show Cause to unseal portions of the Complaint that had previously been sealed by the Court. (Lajewski Dec., 3/8/05

13

Transcript at Ex. N, T.8:6-10:16, T.14:13-18.) Thus, whether or not IDT filed its agreement with

Teleco Haiti with the FCC is irrelevant to Plaintiff's case.

Second, even if relevant, it is undisputed in the case that IDT did not file its agreement

with Teleco Haiti with the FCC in 2003 because IDT did not (and still does not) believe it was

legally required to do so and sought to protect the confidential and proprietary nature of the

agreement by not making it public. (Lajewski Dec., Ex. O.) Thus, there is no dispute on this

fact in the case and any statement from the FCC is irrelevant and unnecessary.

Third, documents from the FCC concerning IDT's filing, or lack thereof, of its agreement

with Teleco Haiti has no bearing on whether Plaintiff reasonably believed IDT's conduct in

allegedly paying-off President Aristide (or in not filing the Teleco Haiti agreement with the

FCC) was a violation of a law or whether Plaintiff performed whistle-blowing activity. Nor does

it have any bearing on whether a causal connection exists between Plaintiff's alleged whistle-

blowing activity and his termination from employment.

Fourth, to the extent Request Number Three asks for documents filed by ANY carrier

regarding the Haiti route, Plaintiff's Complaint does not make allegations against other carriers

and what other carriers may or may not file cannot possibly lead to the discovery of admissible

evidence concerning whether Plaintiff engaged in whistle-blower activity concerning IDT's

agreement with Teleco Haiti and was terminated in retaliation for such alleged protected activity.

Plaintiff argues that how other carriers act is relevant to proving the industry standard and that

the FCC filings are relevant to show that IDT has engaged in unfair competition with other

telecommunication carriers by not filing with the FCC while other carriers do file. (Lajewski

Dec. ¶¶6 & 9.) First, what is or is not the industry standard (if there even is one) on filing of

various telecommunication agreements is irrelevant to Plaintiff's CEPA claim. Indeed,

documentation from the FCC as to which carriers file telecommunication agreements does not go

14

to proving any industry standard because it does not provide evidence as to which various carriers do *NOT* file such agreements and why. Second, Plaintiff has no standing to raise a claim on behalf of other telecommunication carriers and that Plaintiff has no unfair competition claim in his case. (Lajewski Dec. Ex. M.)

Plaintiff claims what other carriers file is also relevant to proving some alleged illegal conduct by IDT in support of Plaintiff's CEPA claim. (Lajewski Dec. ¶¶5-6.) New Jersey's whistle blower law is unique in that proof of wrongful conduct is *not* an element of a New Jersey CEPA claim. Thus, Plaintiff does not have to prove alleged illegal conduct. *Gerard v. Camden County Health Services Center*, 348 N.J. Super. 514, 522 (App. Div. 2002) (rejecting a threshold obligation upon a CEPA plaintiff to establish that an employer in fact violated a law or regulation and holding that a CEPA plaintiff need not prove an actual violation thereof to establish a CEPA claim). Plaintiff's RICO claim, which did allege wrongful conduct by IDT, was dismissed with prejudice. (Lajewski Dec. Ex. G.) Plaintiff should not be allowed to manipulate his CEPA claim to continue to try to litigate that claim.

Likewise, Plaintiff, through his counsel, has been very open in his continuing attempts to push a government investigation into Teleco Haiti and IDT's agreement with Teleco Haiti; his personal belief that IDT conducts business "illegally"; and his commitment to "not rest" until IDT is "exposed." (Lajewski Dec. ¶¶7-8.) Indeed, recently, Plaintiff's counsel has go so far as to alleged that IDT's agreement with Teleco Haiti is the "tip of the iceberg" in relation to alleged illegal agreements by IDT and that he intends to obtain discovery on everything IDT does to "bring them down." (Lajewski Dec. ¶9.) Plaintiff should not be allowed to abuse the process of this case and misuse his CEPA claim to pursue some personal crusade he has against IDT.

Fifth, what documents were filed by IDT or any other carrier from 1996 to present has no bearing on Plaintiff's CEPA claim. Plaintiff was employed from April 2003 until November

DCiManage/9335805.1

2003, and the Complaint does not contain any allegations predating Plaintiff's employment with IDT. (Lajewski Dec., Third Amended Complaint at Ex. M.) A subpoena for documents filed by IDT or any other carrier as far back as seven years before Plaintiff was ever employed by IDT is overly broad and harassing. Finally, filings after November 2003 are overly broad and irrelevant because they cannot form the basis for or assist in proving Plaintiff's alleged whistle-blowing activity between April and November 2003.

## IV.    PLAINTIFF DOES NOT HAVE GOOD CAUSE TO REQUEST THE DOCUMENTS HE SEEKS

The FCC Subpoena also should be quashed because Plaintiff cannot demonstrate good cause for the requested documents sought in the subpoena. Rule 45 of the Federal Rules of Civil Procedure does not provide a reprieve from the requirement that a showing of good cause as required by Rule 34 must support a request for production of documents. When a subpoena duces tecum is directed to a party, the requirement of good cause contained in Rule 34 is read into the request under Rule 45(b). *Washington*, 230 F.R.D. at 21. Generally, Rule 45 is *in pari materia* with Rule 34, and good cause must be shown for the production of documents sought via subpoena pursuant to Rule 45. *Connecticut Mut. Life Ins. Co. v. Shields*, 17 F.R.D. 273, 275 (S.D.N.Y. 1955).

When a party objects to enforcement of a subpoena duces tecum, the burden is on the party seeking production of documents to make a showing of good cause. That is, the requesting party must establish that the requested documents are necessary to establish his claim or defense, or that denial of production will unduly prejudice preparation of his case or cause him hardship or injustice. *U.S. v. Am. Optical Co.*, 39 F.R.D. 580, 583 (N.D. Cal. 1966). Plaintiff cannot and has not met this burden.

16

Plaintiff has the burden of proving that the denial of the production of documents regarding IDT and other carriers' filings for any international route will "unduly prejudice preparation of his case or cause him hardship or injustice." It would be impossible for Plaintiff to make this showing because, as discussed above, the requested documents do not relate to Plaintiff's claims or Defendants' defenses. Therefore, Plaintiff cannot argue that quashing the subpoena would unduly prejudice him. Accordingly, the FCC Subpoena should be quashed.

## CONCLUSION

When the equities are balanced, an Order should be entered staying the Plaintiff's subpoena to the FCC until Defendants' Motion for a Discovery Protective Order and Motion to Quash Plaintiff's Subpoenas to AT&T, Sprint and Verizon are determined by the New Jersey District Court. There is no prejudice or harm to Plaintiff in entering such a stay and Defendants will suffer harm is a stay is not entered.

In the alternative, the FCC Subpoena requests documents that are completely irrelevant to the allegations of the Complaint and are not reasonably calculated to lead to the discovery of admissible evidence to prove Plaintiff's CEPA claim. The FCC Subpoena is also overly broad as it requests documents from an irrelevant time period and from irrelevant third-parties not party to this case. Plaintiff cannot show good cause for the requested documents as required by the Federal Rules of Civil Procedure. Accordingly, if the Court chooses not to enter an Order staying the FCC Subpoena, Defendants respectfully request that an Order be entered quashing the FCC Subpoena.

Respectfully submitted,

Dated:  April 12, 2007

By: _____

Troy Tanner (DC Bar No. 419388)
Anitra D. Goodman (DC Bar No. 484434)
Bingham McCutchen LLP
2020 K Street, NW
Washington, DC 20006
Telephone: (202) 373-6000
Facsimile:  (202)-373-6001
troy.tanner@bingham.com
anitra.goodman@bingham.com

Leslie Lajewski
COUGHLIN DUFFY LLP
350 Mount Kemble Avenue
P.O. Box 1917
Morristown, New Jersey 07962-2075
Telephone:  (973) 267-0058
Facsimile:  (973) 267-6442
llajewski@coughlinduffy.com

DCiManage/9335805.1

## CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of April 2007, true and correct copies of the

foregoing were served via overnight mail upon the following:

> William P. Perniciaro
> The Law Office of William P. Perniciaro
> 84 New Dorp Plaza
> Staten Island, New York 10306

Anitra D. Goodman

1

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

D. MICHAEL JEWETT,

               Plaintiff,

      v.

IDT CORPORATION, et al.,

               Defendants.

Miscellaneous Case No.:

Related Case:
Civil Action No.: 04-CV-1454 (JCL)(MF)
(New Jersey)

**DECLARATION OF LESLIE A. LAJEWSKI IN SUPPORT OF DEFENDANTS' MOTION TO STAY OR IN THE ALTERNATIVE TO QUASH PLAINTIFF'S SUBPOENA TO THE FEDERAL COMMUNICATIONS COMMISSION**

I, LESLIE A. LAJEWSKI, declare and state as follows:

1.     I am an attorney in the State of New Jersey and a member of the Bar of the District Court for the District of New Jersey. I am a partner with the firm of Coughlin Duffy LLP, attorneys for Defendants IDT Corporation, Howard S. Jonas, Motti Lichtenstein, Jack Lerer, David Schropfer, Avi Lazar, Robert Schiff, Michael Levine, Jonathan Levy, Alex Schwartz, James A. Courter, Joyce Mason, and John Cate (collectively "Defendants") in the United States District Court, District of New Jersey in the matter of *D. Michael Jewett v. IDT Corporation, et al.*, Civil Action Number 04-CV-1454.

2.     I submit this Declaration in support of Defendants' Motion to Stay or in the Alternative to Quash Plaintiff's Subpoena to the Federal Communications Commission.

3.     On behalf of Defendants, I have had a number of meet and confer meetings with Plaintiff's counsel, William Perniciaro, in an attempt to resolve the disputes between the parties concerning Plaintiff's discovery to Defendants and to third-parties, including the Federal

Commissions Commission ("FCC"). We have had two separate in-person meetings, one on January 8, 2007 and one on March 5, 2007. Between January 8, 2007 and March 30, 2007, we also had a number of telephone conversations and exchanged many emails discussing the scope of Plaintiff's discovery requests and Defendants' attempts to narrow those requests. Plaintiff has refused to narrow the scope of any of his discovery requests despite Defendants attempts to come to some middle ground.

4.    On behalf of Defendants, and in an attempt to resolve the issue of what is discoverable in the case, I have represented that with regard to IDT's agreement with Teleco Haiti, Defendants will provide discovery as follows: (1) the final IDT/Teleco Haiti agreement; (2) documents or information authored by, sent to or copied to Plaintiff during his employment with IDT; and (3) documents or information concerning IDT's review/analysis of the ability to structure the Teleco Haiti agreement in the fashion sought by Teleco Haiti prior to its finalization.

5.    In conversations with Mr. Perniciaro, he has represented that Plaintiff's justification for the majority of Plaintiff's discovery demands is that he needs it in relation to his CEPA claim to prove that IDT violated FCC regulations and the Foreign Corrupt Practices Act. This includes Plaintiff's requests for any and all discovery relating to (1) IDT's agreement with Teleco Haiti, (2) IDT's other business dealings, (3) Teleco Haiti, and (5) FCC filings by IDT and other carriers.

6.    Plaintiff seeks, from IDT and other third-parties, including the FCC, AT&T, Sprint and Verizon, information and documents relating to any filing by a carrier in relation to Teleco Haiti, as well as any IDT filings with the FCC on any agreement. I have discussed these discovery requests with Mr. Perniciaro, and he has represented that this information is relevant to

proving some alleged illegal conduct by IDT in support of Plaintiff's CEPA claim.  Mr.

Perniciaro has also represented that how other carriers act is relevant to proving the "industry

standard."

       7.     Plaintiff's counsel has repeatedly represented that he and Plaintiff believe IDT has

engaged in some illegal conduct in relation to IDT's agreement with Teleco Haiti and that they

will not rest until IDT is "exposed."  This representation has been made despite my reminder to

Mr. Perniciaro that Plaintiff's RICO claim was dismissed with prejudice on Defendants' motion

to dismiss and that Plaintiff does not have a claim for alleged illegal conduct in this case.

       8.     Mr. Perniciaro has also repeatedly represented to me that he and Plaintiff are

working with the federal government to "uncover" the alleged fraud perpetrated on Haiti in

relation to IDT's agreement with Teleco Haiti, and that they will continue to help the

government in this investigation until the "truth" is uncovered.  He has been very open in his and

Plaintiffs' continuing attempts to push a government investigation into Teleco Haiti and IDT's

agreement with Teleco Haiti.

       9.     Mr. Perniciaro has represented to me on more than one occasion that he believes

that IDT engaged in unfair competition with other carriers by not filing its agreement with

Teleco Haiti with the FCC and that this allegation supports Plaintiff's discovery demands for all

FCC filings.  He continues to raise this with me, despite my reminder to him that Plaintiff has no

standing to raise a claim on behalf of other telecommunication carriers and that Plaintiff has no

unfair competition claim in his case.

      10.    At our most recent meet and confer on March 5, 2007, Mr. Perniciaro raised for

the first time that he believes that IDT's agreement with Teleco Haiti is the "tip of the iceberg" in

relation to alleged illegal agreements by IDT and that he intends to obtain discovery on

everything IDT does to "bring them down." Since that time, he has made this representation to me again and actually commented on it during a recent case management conference before The Honorable Judge Mark Falk, U.S.M.J. on March 20, 2007.

11.     Attached hereto as Exhibit A is a true and correct copy of Plaintiff's Original Complaint in this action, filed on March 31, 2004. This document has been redacted pursuant to a November 17, 2004 Order sealing portions of the Complaint. A copy of the Order is also included in Exhibit A for reference.

12.     Attached hereto as Exhibit B is a true and correct copy of the subpoena issued by Plaintiff to the Federal Communications Commission.

13.     Attached hereto as Exhibit C is a true and correct copy of Defendants' April 3, 2007 Notice of Motion and Brief in Support of Defendants' Motion for a Discovery Protective Order (hereinafter "Motion for Discovery Protective Order").

14.     Attached hereto as Exhibit D is a true and correct copy of Defendants' March 19, 2007 Notice of Motion and Brief in Support of Defendants' Motion to Quash Plaintiff's Subpoenas to AT&T, Sprint and Verizon (hereinafter "Motion to Quash").

15.     Attached hereto as Exhibit E are true and correct copies of the ECF Docket notices scheduling the return dates of Defendants' Motion to Quash and Motion for a Discovery Protective Order for April 23, 2007 and May 14, 2007, respectively.

16.     Attached hereto as Exhibit F is a true and correct copy of the ECF Docket Print Out in the above-captioned case as of April 10, 2007.

17.     Attached hereto as Exhibit G is a true and correct copy of the December 29, 2005 Order dismissing, *inter alia*, Plaintiff's RICO claim against Defendants.

18.     Attached hereto as Exhibit H is true and correct copy of excerpts from the

transcript of the March 7, 2007 case management conference before Judge Mark Falk, U.S.M.J.

19.     Attached hereto as Exhibit I is a true a correct copy of excerpts from the transcript of the March 20, 2007 case management conference before Judge Mark Falk, U.S.M.J.

20.     Attached hereto as Exhibit J are true and correct copies of articles appearing in the Wall Street Journal on February 12, 2007; August 4, 2006; November 11, 2005; September 2, 2005; June 3, 2005; and October 8, 2004 which discuss Plaintiff's lawsuit in New Jersey and, quote and/or rely upon information provided by Plaintiff and/or his counsel, William Perniciaro.

21.     Attached hereto as Exhibit K is a true and correct copy of Defendants' January 13, 2006 Answer to Plaintiff's Third Amended Complaint and Counterclaims.

22.     Attached hereto as Exhibit L is a true and correct copy of the January 16, 2007 Scheduling Order entered in the above-captioned case.

23.     Attached hereto as Exhibit M is a true and correct copy of Plaintiff's Third Amended Complaint. This document has been redacted pursuant to the November 17, 2005 Order sealing portions of the Complaint.

24.     Attached hereto as Exhibit N is a true and correct copy of excerpts from the transcript of the March 8, 2007 case management conference before Judge Mark Falk, U.S.M.J.

25.     Attached hereto as Exhibit O is a true a correct copy of the Declaration of Alex Schwarz, Esq., filed on April 18, 2006, in support of Defendants' April 18, 2006 Motion for a Discovery Confidentiality Order.

I hereby declare that the foregoing statements made by me are true and accurate under penalty of perjury.

Dated:  April 12, 2007

Leslie A. Lajewski, Esq.

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
------------------------------------------------------------

D. MICHAEL JEWETT,

    Plaintiff,

       -against-

IDT CORPORATION; HOWARD S.
JONAS; MOTTI LICHTENSTEIN; JACK
LEHR; DAVID SCHROPFER; AVI
LAZAR; ROBERT SCHIFF; MICHAEL
LEVINE; JONATHAN LEVY; ALEX
SCHWARTZ; JAMES A. COURTER;
JOYCE MASON; JOHN CATE; ADRIAN
CORR; MOUNT SALEM
MANAGEMENT LTD.; AND JOHN DOE
numbers one through ten, fictitious
names, real names being unknown,
representing the entities or individuals
who engaged in unlawful racketeering
practices; who deprived plaintiff of
earnings and who subjected him to
unlawful employment discrimination
as set forth herein,

    Defendants.
------------------------------------------------------------

Docket No:

**COMPLAINT**

      Plaintiff, D. MICHAEL JEWETT, by and through his undersigned

counsel, William P. Perniciaro, for his Complaint against the defendants

IDT CORPORATION; HOWARD S. JONAS; MOTTI LICHTENSTEIN; JACK

LEHR; DAVID SCHROPFER; AVI LAZAR; ROBERT SCHIFF; MICHAEL

LEVINE; JONATHAN LEVY; ALEX SCHWARTZ; JAMES A. COURTER;

JOYCE MASON; JOHN CATE; MOUNT SALEM MANAGEMENT LTD.;

AND JOHN DOE, who are alleged to have unlawfully deprived MICHAEL

JEWETT of lawful earnings and/or defamed his good name and

reputation in violation of the New Jersey Anti-Racketeering Statute, the New Jersey Conscientious Employee Protection Act, the New Jersey Law Against Discrimination, and various New Jersey State common law causes of action, alleges as follows:

I.

**Nature of Action**

1.    This is an action to recover back pay, compensatory damages, liquidated damages, punitive damages and attorney's fees as a result of the acts of IDT CORPORATION, its agents servants and employees, and MOUNT SALEM MANAGEMENT LTD., its agents servants and employees, unjustifiable and illegal termination of plaintiff's employment and for damaging his good name.

2.    The plaintiff is bringing this action under the New Jersey Anti-Racketeering Statute, N.J.S.A. 2C: 41-1 et seq.; the New Jersey Conscientious Employee Protection Act, N.J.S.A. 34: 19-1 et seq.; the New Jersey Law Against Discrimination, N.J.S.A. 10: 5-1 et seq.; and various New Jersey Common Law causes of action for an alleged unlawful termination of his employment in retaliation for disclosing unlawful corrupt conduct by IDT CORPORATION and its senior management and MOUNT SALEM MANAGEMENT LTD.; for unlawful employment discrimination on the basis of religion; for retaliation by the defendants in attempting to void plaintiff's unemployment benefits; for

damaging the good name of the plaintiff and for intentional infliction of emotional distress.

3.    Plaintiff seeks back pay in the amount of $1,000,000.00; compensatory damages in the amount of $5,000,000.00; punitive damages in the amount of $25,000,000.00; reasonable attorney's fees, equitable relief enjoining the defendants from further damaging the good name of the plaintiff.

## II.

## The Parties

4.    The plaintiff, D. MICHAEL JEWETT, is currently a resident of Palm Beach County, Florida.

5.    The defendant IDT CORPORATION, (hereinafter "IDT"), is a telecommunications company engaged in interstate commerce with more than 15 employees.

6.    The defendant IDT is a Delaware for Profit Corporation with principal offices located at 520 Broad Street Newark, New Jersey.

7.    The defendant, HOWARD S. JONAS, upon information and belief, is the Chairman of IDT.

8.    The defendant, MORRIS LICHTENSTEIN, upon information and belief, is Chief Executive Officer of IDT Telecom.

9.    The defendant, JACK LEHER, upon information and belief, is the Executive Vice President for International Business Development for IDT.

10.    The defendant, DAVID SCHROPFER, upon information and belief, is the Executive Vice President for Strategic Management for IDT.

11.    The defendant, AVI LAZAR, upon information and belief, is Senior Vice President of Global Buying for IDT.

12.    The defendant, ROBERT SCHIFF, upon information and belief, is the Senior Director of IDT Telecom Sales.

13.    The defendant, MICHAEL LEVINE, upon information and belief, is the Senior Vice President of Finance for IDT Telecom.

14.    The defendant, JONATHAN LEVY, upon information and belief, is the President for IDT Telecom.

15.    The defendant, ALEX SCHWARTZ, upon information and belief, is legal counsel for IDT Telecom.

16.    The defendant, JAMES A. COURTER, upon information and belief, is the Co-chairman and Chief Executive Officer for IDT Corp.

17.    The defendant, JOYCE MASON, upon information and belief, is a Senior Vice President and General Counsel for IDT Corp.

18.    The defendant, JOHN CATE, upon information and belief, is Vice President for International Network Development for IDT.

19.    The defendant, ADRIAN CORR, upon information and belief, is legal counsel for the President of Haiti Jean Bertrand Aristede and a member of the law firm of Miller, Simons and O'Sullivan located in the Turks and Caicos Islands. 20. The defendant, MOUNT SALEM MANAGEMENT LTD., (hereinafter "MOUNT SALEM"), is a holding

company engaged in interstate commerce located in the Turks and Caicos Islands.

20. The defendant, JOHN DOE numbers one through ten, fictitious names, real names being unknown, represent the entities or individuals who unlawfully deprived the plaintiff of earnings and subjected him to unlawful employment discrimination as set forth herein.

### III.

### Jurisdiction and Venue

21. The court has original jurisdiction of this action pursuant to 28 U.S.C. Sec. 1332 (1) (Diversity of citizenship) in that the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States.

22. Venue is predicated on 28 U.S.C. Sec. 1391 (a), in that several of the defendants reside in this district.

### IV.

### Factual Background

23. Upon information and belief, IDT Telecom is a telecommunications company engaged in the business of providing both domestic and international voice and calling card services.

24. With respect to its international voice and calling card services, IDT, upon information and belief, negotiates contracts with foreign phone companies outside the United States that enable IDT customers to make phone calls to those foreign countries from the United States.

25.   Plaintiff was employed by IDT from April 15, 2003, through November 11, 2003, the date he was discharged by IDT management.

26.   From April 15, 2003 through July 15, 2003 plaintiff worked as a Regional Director – Caribbean on a provisional, probationary basis.

27.   On or about July 15, 2003, plaintiff was advised he had satisfactorily fulfilled his employment probation period and was offered a full time executive position with IDT, which he accepted.

28.   From July 15, 2003, through the date of his termination, November 11, 2003, plaintiff was employed as an Associate Regional Vice President for the Caribbean, (ARVP).

29.   As an ARVP, plaintiff was in charge of business development and strategic relationships that would enable IDT to terminate international voice traffic to Post Telegraph and Telephone (PTT) companies, such as Cable & Wireless West Indies Ltd., and other telecommunication service providers in the Caribbean.

30.   As an ARVP, plaintiff was required to formulate and negotiate proposals with various local Caribbean Telecommunication Service Providers that would permit IDT to successfully terminate telecommunication traffic in the Caribbean.

31.   Upon information and belief, the term "terminate" in the telecommunications industry refers to a process whereby a foreign telecommunications company like TeleCo Haiti receives a phone call originating in a foreign jurisdiction, such as the United States, and

transmits it via wire or other means to the ultimate recipient of that phone call in Haiti.

32. Upon information and belief, at all times mentioned herein, IDT Telecom terminated US originating traffic through third parties such as AT&T, MCI and Sprint and other various wholesale carriers to TeleCo Haiti.

33. Upon information and belief, TeleCo Haiti is a State owned and operated Telecommunication Company.

34. Upon information and belief, TeleCo Haiti is the only domestic and international telecommunication company in Haiti.

35. In September 2003, plaintiff was assigned to act as a commercial facilitator between IDT and TeleCo Haiti for purposes of negotiating a contract that would permit IDT to successfully terminate telecommunication traffic in Haiti.

36. Upon information and belief, under the terms of the proposed contract, IDT was to receive the right for its customers to make telephone calls to Haiti through TeleCo Haiti and TeleCo Haiti was to receive a fixed price of the per minute cost of each phone call.

37. During the course of IDT's negotiations with TeleCo Haiti, defendant Jack Lerer, Executive Vice President of International Business Development, informed plaintiff he had had discussions with TeleCo Haiti to determine how IDT Telecom could establish a direct interconnect and thus negotiate favorable termination rates with TeleCo Haiti.

38.   Plaintiff was advised that defendant Jack Lerer had received various proposals, one of which involved IDT's depositing ███████████ dollars to a US Bank account in the name of the person Jack Lerer was communicating with.

39.   Plaintiff learned that defendant Jack Lerer and IDT Telecom felt this would be too high risk for IDT, as the payment of such a fee may disappear without resulting in IDT Telecom completing a direct interconnect with TeleCo Haiti.

40.   Upon information and belief, in August of 2003 defendant Jack Lerer traveled to Haiti and was introduced to the President of Haiti, Mr. Jean-Bertrand Aristide, for the express purpose of discussing with President Aristide how IDT could have a direct interconnect with State owned and operated TeleCo Haiti.

41.   In September 2003, defendant Jack Lerer met with plaintiff to explain the "deal" he had negotiated with President Aristide.   IDT Telecom would deposit the settlement dollars from terminating traffic in Haiti through TeleCo Haiti to an offshore account set up on behalf of President Aristede by Mount Salem, headquartered in the Turks and Caicos Islands.

42.   The rate for each minute of US originating traffic terminating in Haiti was to be ██████ USD.   Defendant Jack Lerer further advised plaintiff that IDT had to move quickly in order to avoid loosing the deal.

43.  Plaintiff asked defendant Jack Lerer what Mount Salem was and he replied it was the private bank account of the President of Haiti, Mr. jean Bertrand Aristide, that had been created by legal counsel for President Aristede, Adrian Corr, member of the Law Firm Miller, Simons and O'Sullivan.

44.  Plaintiff asked defendant Jack Lerer if it was legal for IDT to make settlement deposits into the private offshore bank account of the President of Haiti rather than depositing the settlement proceeds into the bank account of TeleCo Haiti.  Defendant Jack Lerer told plaintiff it did not matter who got the money as long as IDT was protected from TeleCo Haiti alleging that they had not been paid for terminating IDT's telecommunication traffic in Haiti.

45.  In or about late September 2003, defendant Jack Lerer met with plaintiff and defendant John Cate, Vice President of International Network Planning, to explain the particulars of the TeleCo Haiti deal and to reveal the contact names for Mount Salem and TeleCo Haiti so that plaintiff and defendant John Cate could begin finalizing negotiations with both of these two entities.

46.  In or about late September 2003, defendant Jack Lerer instructed plaintiff and defendant John Cate to not reveal the details of the TeleCo Haiti deal with anyone within IDT. Plaintiff was instructed to work with defendant Alex Schwartz, legal counsel for IDT, in structuring the agreements with both TeleCo Haiti and Mount Salem.  Defendant Jack

Lerer in addition told plaintiff he was to serve as the "go-between" for all commercial correspondence between TeleCo Haiti and Mount Salem and defendant John Cate was to serve as the technical correspondent with TeleCo Haiti.

47.    At the conclusion of this meeting with defendant Jack Lerer, plaintiff and defendant John Cate discussed whether or not it was lawful and/or legal for IDT Telecom to proceed with the TeleCo Haiti deal, as described above.   Defendant John Cate indicated that during his 27 years at AT&T, i.e., his prior employer, he had never once been involved with let alone heard of a telecommunication proposal and/or contract being structured in a manner similar to the TeleCo Haiti agreement.

48.    Both plaintiff and defendant John Cate expressed serious misgivings to one another as to the legality of the proposed TeleCo Haiti contract and what the FCC might do to them if the FCC were to learn of the details involving the payment of TeleCo Haiti's settlement proceeds into the private off-shore bank account of President Aristide.

49.    In or about late September 2003, defendant David Schropfer, Executive Vice President Strategic Management – one of plaintiff's superiors - met with plaintiff and defendant John Cate to express his support for the TeleCo Haiti deal.

50.    When plaintiff and defendant John Cate questioned the legality of the deal defendant David Schropfer told plaintiff the proposed deal would

proceed because it was a "Jack deal" and that defendant Jack Lerer had

the support of the Chairman of IDT, defendant Howard Jonas.

51.    Defendant David Schrofper told plaintiff to work with defendant

Alex Schwartz, Esq., in structuring the agreements with TeleCo Haiti and

Mount Salem.

52.    In or about late September 2003, defendant Jack Lerer provided

plaintiff via email the contact names of Mr. Adrian Corr, signing

authority of Mount Salem and Mr. Jean Robert Duperval, a Senior

Manager of TeleCo Haiti.  Additionally, defendant Jack Lerer instructed

plaintiff to only copy "Fred", who purportedly was to act as President

Aristede's agent, at the email address of ▓▓▓▓▓▓▓▓ or ▓▓▓▓▓▓▓▓

and himself with any correspondence regarding the TeleCo Haiti deal and

no one else.

53.    In or about late September 2003, Alex Schwartz prepared, upon

information and belief, Non-Disclosure Agreements that were forwarded

by plaintiff on behalf of defendant Jack Lerer to both TeleCo Haiti and

Mount Salem.

54.    

55.    Throughout October 2003, plaintiff worked with defendants Alex

Schwartz, Jack Lerer and David Schropfer to structure agreements for

TeleCo Haiti and Mount Salem.  Defendants Jack Lerer, Alex Schwartz, Esq., and David Schropfer wanted to ensure that the agreements tied TeleCo Haiti and Mount Salem together so that if something happened to President Aristede, TeleCo Haiti could not sue IDT Telecom for non-payment of settlements.

56.    Throughout October 2003, plaintiff repeatedly expressed his reservations to all of the above referenced defendants of the legality and/or propriety of the manner and of the terms and conditions of the contract that was being negotiated with TeleCo Haiti and Mount Salem.

57.    Throughout the month of October the agreements with TeleCo Haiti and Mount Salem were negotiated and agreed to.  Upon information and belief, numerous emails were sent between IDT Telecom and TeleCo Haiti and IDT Telecom and Mount Salem.

58.    In October 2003, during numerous conversations with defendants Alex Schwartz, Esq., and David Schropfer, plaintiff repeatedly expressed his concern that what IDT Telecom was doing was not legal.  The defendants repeatedly assured plaintiff that ███████████████████ ███████████████████████████████████ ████████████████.  During this same period, defendant John Cate negotiated the technical architecture for the interconnect and the associated cost to TeleCo Haiti.

59.    Defendant Jack Lerer negotiated with "Fred" for a portion of the cost of the equipment to be installed in Haiti to be taken out of the

monthly settlements with Mount Salem. Defendant Jack Lerer also negotiated the per minute settlement rate from ▓▓▓▓▓ to .090 USD. It was determined that Fred would receive ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓ as an agent's fee.

60.    By the end of October 2003, plaintiff had developed the deal profile at the direction of defendant David Schropfer, which was thereafter signed off on by defendants Robert Schiff, Senior Director of IDT Telecom Sales, Avi Lazar, Senior Vice President of Global Buying, David Schropfer and Michael Levine, Senior Vice President Finance IDT Telecom. Defendant Jonathan Levy President, IDT Telecom, signed final approval of the TeleCo Haiti deal.

61.    All the above referenced IDT defendants expressed their extreme satisfaction with the TeleCo Haiti deal, it was going to save the company over ▓▓▓▓▓▓▓▓▓▓ a month and grow from there.

62.    By the first week of November 2003, the agreements between IDT Telecom and Mount Salem and IDT Telecom and TeleCo Haiti had been signed and agreed to by all parties with defendant Jonathan Levy signing on behalf of IDT Telecom, Mr. Adrian Corr, signing on behalf of Mount Salem and Mr. Jean Robert Duperval, signing on behalf of TeleCo Haiti.

63.    While employed with IDT Telecom, plaintiff received solicitations in the mail and in the form of telephone calls at his home to make sizable monetary contributions to different Jewish organizations, events and/or causes.

64. While the specific event, purpose, charity or organization for which the donations were sought varied, the beneficiary of each solicitations plaintiff received to make a charitable contribution was always a Jewish based entity or individual.

65. All of the solicitations were made, upon information and belief, with the express encouragement, consent and/or authorization of IDT management.

66. The subject solicitations were either drafted on IDT letterhead, or sponsored by IDT management executives whose positions and titles at IDT appeared prominently in the printed solicitations, or involved events and gatherings that were exclusive in nature to the Jewish Religion and/or exclusively organized on behalf of prominent Jewish IDT management executives.

67. Plaintiff chose to not contribute to any of these IDT "charities". Plaintiff, a non-Jew, expressed his displeasure with these continuous, aggressive, persistent solicitations with a fellow employee, who assured him it was in his best professional interest to not do so.

68. Plaintiff similarly commented on several occasions to fellow employees of the overwhelming presence of artifacts, customs, practices, preferences and priorities relating to the Jewish religion at IDT's headquarters in Newark, New Jersey, i.e., plaintiff's workplace, as evidenced by all of the following: Hebrew Images, prints and portraits throughout the building: Hebrew prayers posted throughout the walls

and corridors in the building: the presence of mezuzahs throughout the building: the presence of a Hebrew School on the premises: the presence of a Synagogue on the premises: the attendance of Jewish services by IDT lower and upper management every day on the premises: conference room prayers: special privileges and accommodations that were only extended to IDT employees of the Jewish Faith including continuous rearrangement of weekly work schedules to accommodate recurring religious obligations and practices; the fact non Jewish IDT employees always were selected to replace absences in the workplace caused by the unavailability of IDT employees observing Jewish religious obligations: special selective parking privileges to the exclusion of non Jews: the fact approximately 85% of IDT's employees were Jewish and that approximately 95% of IDT's upper management was Jewish: the fact that no non Jewish IDT employee enjoyed the privileges, benefits, courtesies, accommodations and preferential treatment with respect to their religious faith that were extended to IDT employees of the Jewish faith.

69. Shortly after voicing strong objection to the recurring solicitations by religious organizations during the course of his employment at IDT, to make sizeable cash contributions to Jewish Organizations openly endorsed and/or sponsored by IDT and his contemporaneous objection to the legality of IDT's decision to deposit settlement proceeds in President Jean-Bertrand Aristide's private bank account, plaintiff was discharged from the company.

70.    Plaintiff was, in fact, terminated within one week of IDT Telecom receiving the signed contracts from TeleCo Haiti and Mount Salem Management Ltd.

71.    During the entire course of his employment, plaintiff was never once reprimanded, censured, disciplined, suspended or cited for violating any company policy, nor was he ever charged with misconduct, nor was the quality of his work performance criticized or characterized as "unsatisfactory". On the contrary, management at IDT asked plaintiff to remain as a permanent employee upon the expiration of his three-month probationary period.

72.    IDT management personnel expressed their unqualified satisfaction and appreciation of plaintiff's work performance on numerous occasions during the entire course of his employment with IDT.

73.    On November 11, 2003, the date plaintiff was discharged, IDT management advised plaintiff for the first time during the entire course of his employment that his work performance was "unsatisfactory".

74.    On or about November 12, 2003, after being advised by IDT management that he was being discharged, plaintiff was asked to execute a Separation Agreement, Waiver and Release prepared by IDT which sought, amongst other things, plaintiff's waiver of his right to prosecute any local, state or federal anti-discrimination claim against IDT.

75.    On or about November 12, 2003, plaintiff advised defendant David Schropfer he would not sign IDT's Separation Agreement, Waiver and Release.

76.    On November 13, 2003, plaintiff forwarded correspondence to his Supervisor defendant David Schropfer, via Federal Express, memorializing defendant David Schropfer's verbal communication to plaintiff on November 11, 2003, and, furthermore, requested a written explanation setting forth each and every ground supporting IDT's decision to terminate plaintiff's employment.

77.    In this same correspondence, plaintiff requested he be provided with a copy of his personnel file and for IDT to preserve all of the data on the hard drive of the computer he used while in the employ of IDT.

78.    Plaintiff also requested he be provided with an accounting of all of the recorded data on that hard drive.

79.    Federal Express confirmed delivery on November 14, 2003 of plaintiff's correspondence dated November 13, 2003 to IDT.

80.    To date, IDT has IDT has completely failed to respond to plaintiff's correspondence dated November 13, 2003.

81.    To date, IDT has also failed to provide plaintiff, as per his written request, with a copy of his personnel file.

82.    To date, IDT has also failed to provide plaintiff, as per his written request, with an assurance that the integrity of plaintiff's entire work

product, as contained on the hard drive of the computer he used during the entire course of his employment at IDT, has been preserved.

83.    To date, IDT has also failed, as per his written request, to provide him with an accounting of the data on the hard drive of the computer he used during the entire course of his employment.

84.    Significantly, this hard drive contains plaintiff's entire work product, an independent source of relevant data capable of determining the bona fides of IDT's claim repeated on numerous occasions, including under oath to a New Jersey State Agency, that plaintiff's work performance was "unsatisfactory".

85.    In November 2003, plaintiff submitted an application to the New Jersey Department of Labor Unemployment Insurance Office - Jersey City Branch Office - to receive unemployment benefits.

86.    Upon information and belief, IDT filed a written objection to plaintiff's application that was either forwarded via facsimile intrastate or via the US Postal Service.

87.    On December 3, 2003 both plaintiff and IDT appeared at a fact - finding interview before the New Jersey Department of Labor, by way of telephone conference, to determine plaintiff's eligibility for unemployment benefits.

88.    Prior to the commencement of the hearing, plaintiff's legal counsel had served both The New Jersey Department of Labor Unemployment Insurance Office - Chief Claims Examiner, Jersey City Branch Office and

IDT, both by fax and by hand delivery, a written submission, dated December 2, 2003, contending plaintiff had not been fired for the spurious grounds alleged by IDT but rather for his repeated objections to IDT's illicit, unethical, corrupt business practices and for his expressed objection to the hostile work environment he experienced at IDT as a non Jewish employee.

89.    On December 3, 2003, upon information and belief, an IDT representative appeared by way of telephone conference and offered testimony to Claim Adjuster Gomez to the effect plaintiff was terminated for cause as a result of "misconduct" and/or "unsatisfactory" work performance.

90.    IDT had an absolute right to request an adjournment of the December 3, 2003 proceeding to file a written response addressing plaintiff's multiple allegations of misconduct or to produce evidence establishing plaintiff's allegations lacked merit.

91.    Upon information and belief, IDT failed to request such an adjournment.

92.    IDT had a complete and unfettered opportunity to address plaintiff's multiple allegations of misconduct as set forth in his written submission that was prepared in response to the spurious grounds interposed by IDT in support of their written and verbal application to deny plaintiff's application to receive unemployment benefits.

93. Upon information and belief, IDT failed to address plaintiff's multiple allegations of misconduct, as set forth in his written submission, at the December 3, 2003 Hearing.

94. On or about December 10, 2003, Claims Examiner Gomez advised plaintiff that his application for unemployment benefits had been granted unconditionally, notwithstanding IDT's opposition.

95. Upon information and belief, Claims Examiner Gomez' decision was predicated upon plaintiff's written submission, dated December 2, 2003, and the testimony he offered at the December 3, 2003 Hearing.

96. Upon information and belief, on or about December 10, 2003, IDT was advised of The New Jersey Department of Labor's decision rendered in favor of plaintiff regarding his application for unemployment benefits.

97. Upon information and belief, on or about December 10, 2003, IDT was advised by The New Jersey Department of Labor that they had the right to appeal Claim Examiner Gomez' decision rendered in favor of plaintiff, in its entirety.

98. IDT failed to file an appeal of The New Jersey Department of Labor decision rendered in favor of plaintiff.

99. To date, IDT has failed to provide any type of response to plaintiff's written submission to the New Jersey Department of Labor Unemployment Insurance Office, dated December 2, 2003, detailing numerous instances of IDT's illicit, unethical, corrupt business practices.

100. IDT has deliberately, intentionally and maliciously disguised the true reasons why plaintiff was asked to leave the company. Plaintiff's discharge was predicated upon plaintiff's objections to IDT's unlawful business practices and the civil and/or potential criminal liability IDT management faced if the details of their unlawful, unethical and corrupt business practices were to be exposed.

101. The true grounds underpinning plaintiff's discharge turn on the facts and circumstances described above, not the disingenuous, unsupported and uncorroborated contrivances manufactured by IDT management.

## COUNT I

## The New Jersey Anti-Racketeering Statute N.J.S.A. 2C:41-1

102. Plaintiff repeats and realleges paragraphs 1 through 101.

103. Upon information and belief, defendant IDT is an issuer or corporation that has issued securities that have been registered in the United States or who is required to file periodic reports with the Security and Exchange Commission.

104. Upon information and belief, defendant IDT and all other defendants, except defendant Mount Salem, are domestic concerns which are any individual who is a citizen, national, or resident of the United States, or any corporation, partnership, association, joint-stock company, business trust, unincorporated organization, or sole

proprietorship which has its principal place of business in the United States, or which is organized under the laws of a State of the United States, or a territory, possession, or commonwealth of the United States.

105. Upon information and belief, IDT and the all named defendants, engaged in a conspiracy to make or offer to make payments in money or other valuable things to Mount Salem in order to secure a telecommunications business relationship with TeleCo Haiti.

106. Upon information and belief, IDT and all named defendants made such payments to Mount Salem for the purpose of obtaining or retaining telecommunications business relationship with TeleCo Haiti.

107. Upon information and belief, IDT and all named defendants were aware that all or a portion of the payments to Mount Salem would be offered, given, or promised, directly or indirectly, to a foreign official, foreign political party, candidate, or official for the purposes of assisting IDT in obtaining or retaining a telecommunications business relationship with TeleCo Haiti.

108. Upon information and belief, Foreign Official means any officer or employee of a foreign government, a public international organization, or any department or agency thereof, or any person acting in an official capacity.

109. Upon information and belief, IDT and all named defendants, made and/or conspired to make payments to a Haitian Foreign Official, the President of Haiti, Jean-Bertrand Aristide, in order induce him to misuse

his official position to direct business wrongfully to the payer or to any other individual or entity.

110. Upon information and belief, IDT and all named defendants, attempted to or traveled in interstate or foreign commerce and/or used the mail and/or any facility in interstate or foreign commerce with intent to distribute the proceeds of any unlawful activity.

111. Upon information and belief, IDT and all named defendants, attempted to or traveled in interstate or foreign commerce and/or used the mail and/or any facility in interstate or foreign commerce with intent to further any unlawful activity.

112. Upon information and belief, IDT and all named defendants, attempted to or traveled in interstate or foreign commerce and/or used the mail and/or any facility in interstate or foreign commerce with intent to promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity.

113. Upon information and belief, IDT and all named defendants, engaged in unlawful activity by extortion and/or bribery in violation of the laws of the State in which committed or of the United States.

114. Upon information and belief, IDT and all named defendants, engaged in unlawful activity by an act which is indictable under subchapter II of chapter 53 of title 31, United States Code, or under section 1956 or 1957 of title 18, United States Code.

119.   Upon information and belief, with respect to IDT and all named defendants, the matter or things referred to above consist of written communication with TeleCo Haiti, Mount Salem, among the defendants, and with the plaintiff for the purpose of consummating an economic relationship with TeleCo Haiti and to undermine the employment performance of the plaintiff.

120.   Upon information and belief, with respect to IDT and all named defendants, the matter or things referred to above consist of written communications with the New Jersey Department of Labor, for the purpose of undermining the plaintiff's receipt of unemployment benefits.

121.   Upon information and belief, with respect to IDT and all named defendants, the matter or things referred to above consist of written communication for the purpose of fraudulently inducing the plaintiff to seek and retain employment with IDT.

122.   Upon information and belief, IDT and all named defendants, devised or intended to devise a scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmitted or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice.

123.   Upon information and belief, with respect to IDT and all named defendants,   the   communication   referred   to   above   consists   of

115. Upon information and belief, IDT and all named defendants, engaged in acts of unlawful activity to undermine the employment performance of the plaintiff.

116. Upon information and belief, IDT CORPORATION and all named defendants, engaged in acts to sabotage and unlawful activity to undermine the employment performance of the plaintiff for the purpose of creating a pretext to end his employment.

117. Upon information and belief, IDT and all named defendants, engaged in acts to end the employment of the plaintiff because the plaintiff objected to the unlawful activity set out above.

118. Upon information and belief, IDT and all named defendants, devised or intended devise a scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, for the purpose of executing such scheme or artifice or attempting so to do, placed in a post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the US Postal Service, or deposited or caused to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly caused to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing.

communications with TeleCo Haiti, Mount Salem, among the defendants, and with the plaintiff for the purpose of consummating an economic relationship with TeleCo Haiti and to undermine the employment performance of the plaintiff.

124. Upon information and belief, with respect to IDT and all named defendants, the communication referred to above consists of communications with the New Jersey Department of Labor, for the purpose of undermining the plaintiff's receipt of unemployment benefits.

125. Upon information and belief, with respect to IDT and all named defendants, the communication referred to above consists of communications with the plaintiff for the purpose of fraudulently inducing the plaintiff to seek and retain employment with IDT.

126. Upon information and belief, the defendants participated in the conduct of the affairs of an enterprise through a pattern of racketeering activity.

127. Upon information and belief, the racketeering activity embraced criminal conduct that has the same or similar purposes, results, participants or victims or methods of commission or are otherwise interrelated by distinguishing characteristics and are not isolated incidents.

128. Upon information and belief, IDT, its agents, servants and employees, and the other defendants herein, consisted of a group of

persons associated together for a common purpose of engaging in a course of conduct through an enterprise.

129. Upon information and belief, IDT, its agents, servants and employees, and the other defendants herein, were employed by or associated with the enterprise.

130. Upon information and belief, IDT, its agents, servants and employees, and the other defendants herein used or invested, directly or indirectly, income from a pattern of racketeering activity, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, an enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

131. Upon information and belief, IDT, its agents, servants and employees, and the other defendants herein, through a pattern of racketeering activity, acquired or maintained, directly or indirectly, any interest in or control of an enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

132. Upon information and belief, IDT, its agents, servants and employees, and the other defendants herein, participated, directly or indirectly, in the conduct of] the affairs of the enterprise through a pattern of racketeering activity.

133. Upon information and belief, IDT, its agents, servants and employees, and the other defendants herein, were involved in the operation or management of the enterprise.

134. Upon information and belief, IDT, its agents, servants and employees, and the other defendants herein, conspired as defined by N.J.S. 2C: 5-2, to violate the provisions of N.J.S.A. 2C: 41-2(a), (b) or (c).

135. Upon information and belief, all acts alleged herein constitute overt acts in furtherance of said conspiracy.

136. Upon information and belief, the plaintiff was damaged in his business or property by reason of the foregoing.

137. Upon information and belief, the plaintiff is entitled to treble damages for any damage sustained.

## Count II

## New Jersey Conscientious Employee Protection Act, N.J.S.A. 34:19-1 et seq.

138. Plaintiff repeats and realleges paragraphs 1 through 137.

139. Upon information and belief, plaintiff disclosed, or threatened to disclose, to a supervisor or public body an activity, policy or practice of defendants herein that plaintiff reasonably believed to be in violation of a law or rule or regulation promulgated pursuant to law.

140. Upon information and belief, plaintiff provided information or testimony to a public body conducting an investigation, hearing or inquiry into any violation of a law, or rule or regulation promulgated pursuant to law, by defendants herein.

141. Upon information and belief, plaintiff objected to or refused to participate in an activity, policy or practice which plaintiff reasonably

believed was is in violation of a law or a rule or regulation promulgated pursuant to law that was fraudulent or criminal.

142. Upon information and belief, defendants took retaliatory or adverse action against the plaintiff.

143. Upon information and belief, there is a causal connection between the plaintiff's action and the retaliatory or adverse action of the defendant.

144. Upon information and belief, the plaintiff was damaged in his business or property by reason of the foregoing.

## COUNT III

### The New Jersey Law Against Discrimination (N.J.S.A. 10:5-12)

145. Plaintiff repeats and realleges paragraphs 1 through 144.

146. Upon information and belief, plaintiff was a member of a protected class.

147. Upon information and belief, plaintiff's treatment differed to his detriment from the treatment accorded to Jewish individuals who were similarly situated.

148. Upon information and belief, plaintiff was the victim of discrimination by means of a hostile work environment with respect to religion and religious practices.

149. Upon information and belief, the plaintiff has been the victim of retaliation for engaging in protected activities as defined by the New Jersey Law Against Discrimination.

150.    Upon information and belief, the employer knew that the plaintiff had engaged in the protected activity

151.    Upon information and belief, the plaintiff has suffered adverse employment action, including dismissal for reporting illegal activities and attempted withholding of unemployment benefits by the defendants because plaintiff asserted a claim of discrimination against the defendants herein.

152.    Upon information and belief, there is a casual link between the plaintiff engaging in a protected activity and the adverse action.

153.    Upon information and belief, plaintiff has suffered the following losses: economic loss; time loss; physical and emotional stress; strain of the employment controversy; relocation, search and moving difficulties; anxiety caused by lack of information, uncertainty, and resultant planning difficulty; career, education, family and social disruption; and adjustment problems.

## COUNT IV

### New Jersey Common Law Defamation

154.    Plaintiff repeats and realleges paragraphs 1 through 153.

155.    Upon information and belief, the defendants made defamatory statements about plaintiff.

156.    The defamatory statements are as follows:

   a.       During the course of plaintiff's employment at IDT, and thereafter, all of the named IDT defendants and John Doe

defendants numbered one through ten stated to one another and to others that plaintiff's work performance, work product, work ethic, personal integrity, work skills, habits and abilities were substandard, unsatisfactory and lacking.

b.   During the course of plaintiff's employment at IDT, and thereafter, all of the named IDT defendants and John Doe defendants numbered one through ten stated to one another and to others that plaintiff had engaged in an unspecified act or acts of "misconduct" during the course of his employment at IDT.

157.   The defamatory statements concerned plaintiff.

158.   The defamatory statements were false.

159.   The defamatory statements were communicated to someone other than plaintiff.

160.   The above named defendants made the defamatory statements (1) with actual knowledge that the statements were false, or (2) with reckless disregard of the statement's truth or falsity, or (3) with negligence.

161.   The statements injured the reputation of plaintiff or exposed him to hatred, contempt or ridicule.

162.   The statements caused plaintiff to lose the goodwill and confidence of others.

163.   The statements injured plaintiff in his trade or business.

## COUNT V

### New Jersey Common Law Unlawful Interference with Prospective Economic Advantage

164.    Plaintiff repeats and realleges paragraphs 1 through 163.

165.    Plaintiff had a reasonable expectation of economic advantage or benefit accruing to him in the form of salary, promotions and benefits earned for performing services for the defendants.

166.    The defendants had knowledge of such expectancy of economic advantage.

167.    That the defendants wrongfully and without justification interfered with plaintiff's expectancy of economic advantage or benefit.

168.    That in the absence of the wrongful act of the defendant it is reasonably probable that the plaintiff would have realized his economic advantage or benefit.

169.    That the plaintiff sustained damages in the form of lost wages, promotions and benefits.

## COUNT VI

### New Jersey Common Law Intentional Infliction of Emotional Distress

170.    Plaintiff repeats and realleges paragraphs 1 through 169.

171.    The defendants committed intentional acts for the purpose of causing emotional distress to the plaintiff.

172.   The conduct of those individuals was so extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community.

173.   The defendants' actions were the proximate cause of plaintiff's emotional distress.

174.   The emotional distress suffered by plaintiff so severe that no reasonable person could be expected to endure such distress.

175.   The defendants' conduct was sufficiently severe to cause genuine and substantial emotional distress or mental harm to the average person.

### Damages

176.   Plaintiff demands payment of his back pay in the amount of $1,000,000.00.

177.   Plaintiff demands compensatory damages in the amount of $5,000,000.00 under his various causes of action.

178.   Plaintiff demands punitive damages in the amount of $25,000,000.00 to punish the defendants herein for their actions under all statutory and tortuous causes of action.

179.   Plaintiff demands counsel fees, to be determined by the Court, under all actions in which such are recoverable.

### Equity

180.   Plaintiff demands an injunction enjoining the defendants from further damaging the good name of the plaintiff.

181. Plaintiff demands to be reinstated to his former position with and expected promotions, salary increases and benefits.

WHEREFORE, plaintiff, MICHAEL JEWETT, demands judgment in the amount of $1,000,000.00 for lost wages, bonuses and benefits; $5,000,000.00 in compensatory damages; $25,000,000.00 in punitive damages, counsel fees recoverable under statutory actions or common law actions, equitable relief enjoining defendants from further damaging plaintiff's good name, reinstatement and any other and further relief the court deems appropriate.

Dated: Staten Island, New York

March 10, 2004

### TRIAL BY JURY

Plaintiff hereby demands trial by jury on all issues.

William P. Perniciaro-WPP-8670.
Attorney for Plaintiff
84 New Dorp Plaza – Suite 205
Staten Island, New York 10306
Tel.718.667.5000
Fax.718.667.0798

Leslie A. Lajewski (LL-7503)
Lynelle J. Slivinski (LS-1210)
GROTTA, GLASSMAN & HOFFMAN, P.C.
75 Livingston Avenue
Roseland, NJ 07068
Telephone: (973) 992-4800
Facsimile: (973) 992-9125
lajewskil@gghlaw.com
slivinskil@gghlaw.com

Attorneys for Defendants IDT Corporation,
Howard S. Jonas, Motti Lichtenstein, Jack Lerer
(improperly pled as Jack Lehr), David Schropfer,
Avi Lazar, Robert Schiff, Michael Levine, Jonathan
Levy, Alex Schwarz (improperly pled as Alex
Schwartz), James A. Courter, Joyce Mason, and
John Cate

RECEIVED

NOV 17 2004

WILLIAM T. WALSH, CLERK

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| D. MICHAEL JEWETT, | Civil Action No.: 04-CV-1454 (JCL)(MF) |
| Plaintiff, | |
| v. | **AMENDED ORDER GRANTING IN PART** |
| | **AND DENYING IN PART DEFENDANTS'** |
| IDT CORPORATION; et als. | **MOTION TO SEAL PORTIONS** |
| | **OF THE COMPLAINT AND THE** |
| Defendant. | **AMENDED COMPLAINTS** |

This matter having come before the Court on defendants IDT Corporation's,

Howard S. Jonas's, Motti Lichtenstein's, Jack Lerer's, David Schropfer's, Avi Lazar's, Robert

Schiff's, Michael Levine's, Jonathan Levy's, Alex Schwarz's, James A. Courter's, Joyce

Mason's, and John Cate's Motion to Seal Portions of the Complaint and the Amended

Complaints, and the Court having considered all papers submitted by counsel, and

arguments made at the motion hearing on July 12, 2004, and for the reasons set forth on

the record and in the Memorandum dated August 6, 2004;

IT IS on this _8_ day of November 2004

ORDERED THAT:

1.    The September 7, 2004 Order Granting In Part and Denying In Part Defendants' Motion to Seal Portions of the Complaint and the Amended Complaints is hereby vacated;

2.    Defendants' Motion to Seal Portions of the Complaint and the Amended Complaints is granted in part and denied in part, in accordance with Judge Falk's August 6, 2004 Memorandum.

3.    The following portions of the Complaint (filed March 29, 2004) and Amended Complaints (filed May 13, 2004 and May 14, 2004) should be immediately sealed:

a.    The specific dollar amounts listed in paragraphs 38, 42, 59, and 61 of the Complaint, and paragraphs 38 and 61 of the Amended Complaints;

b.    Paragraph 54 of the Complaint and the Amended Complaints;

c.    The direct quote contained in paragraph 58 of the Complaint and the Amended Complaints;

d.    The e-mail addresses identified in paragraph 52 of the Complaint and the Amended Complaints.

MARK FALK , U.S.M.J.

- 2 -

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA DISTRICT

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
-------------------------------------------------------------

D. MICHAEL JEWETT,

Plaintiff,

        -against-

IDT CORPORATION; HOWARD S. JONAS; MOTTI LICHTENSTEIN; JACK LEHR; DAVID SCHROPFER; AVI LAZAR; ROBERT SCHIFF; MICHAEL LEVINE; JONATHAN LEVY; ALEX SCHWARTZ; JAMES A. COURTER; JOYCE MASON; JOHN CATE; ADRIAN CORR; MOUNT SALEM MANAGEMENT LTD.; AND JOHN DOE numbers one through ten, fictitious names, real names being unknown, representing the entities or individuals who engaged in unlawful racketeering practices; who deprived plaintiff of earnings and who subjected him to unlawful employment discrimination as set forth herein,

Defendants.
-------------------------------------------------------------

CIV ACTION NO:
04-CV-1454 (JCL)
(NEW JERSEY)

**CIVIL SUBPOENA**

TO:   Federal Communications Commission
Kevin J. Martin, Chairman
445 12th Street SW
Washington, DC 20554

YOU ARE HEREBY COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date and time specified below:

ITEMS TO BE PRODUCED:

1.    A certified copy under seal of each contract, agreement, concession, license, authorization, operating agreement or other arrangement filed by IDT Corporation or IDT Telecom pursuant to 47 C.F.R. 43.51 between 1996 and the present for any international route (governed by the International Settlements Policy).  If there are no such filings, you are directed to so indicate.

2.    A certified copy under seal of each modification request filed by IDT Corporation or IDT Telecom pursuant to 47 C.F.R. 43.51 and/or 64 C.F.R. 1001 (or similar provision) between 1996 and the present for routes governed by the FCC's International Settlements Policy. If there are no such filings, you are directed to so indicate.

3.    A certified copy under seal of each contract, agreement, concession, license, authorization, operating agreement or other arrangement filed by any carrier pursuant to 47 C.F.R. 43.51 between 1996 and the present on the Haiti route.  If this file is missing you can satisfy this subpoena by indicating, that the file existed, the rule under which it was created, the purpose of the file, the public nature of the file (that is whether members of the public had access to its contents), and what the contained.

You are required to produce the above items by 14 days after you receive this subpoena.  This subpoena requires you to produce the items at the United States District Court Clerk's Office, 333 Constitution Ave., NW Washington, DC  20001, 202-354-3000. **Prior to the above production date, the items can be forwarded to the office of William Perniciaro, 84 New Dorp Plaza, Staten Island, New York  10306 718-667-5000 or you may contact that office for to arrange for the items to be picked up from a place and time convenient for you.**

Dated:      Staten Island, New York
            January 17, 2007

                                        /s/ William Perniciaro (8670)

                                        _____
                                        William Perniciaro
                                        Attorney at Law Pursuant to
                                        FRCP Rule 45(a)(3)

cc:

Leslie A. Lajewski, Esq.
Coughlin Duffy LLP
Attorney for all IDT defendants
350 Mount Kemble Avenue
Morristown, New Jersey 07962

# Your Rights Under this Subpoena Pursuant to Rule 45 of the Federal Rules of Civil Procedure

(b) Service.
(1) A subpoena may be served by any person who is not a party and is not less than 18 years of age. Service of a subpoena upon a person named therein shall be made by delivering a copy thereof to such person and, if the person's attendance is commanded, by tendering to that person the fees for one day's attendance and the mileage allowed by law. When the subpoena is issued on behalf of the United States or an officer or agency thereof, fees and mileage need not be tendered. Prior notice of any commanded production of documents and things or inspection of premises before trial shall be served on each party in the manner prescribed by Rule 5(b).

(2) Subject to the provisions of clause (ii) of subparagraph (c)(3)(A) of this rule, a subpoena may be served at any place within the district of the court by which it is issued, or at any place without the district that is within 100 miles of the place of the deposition, hearing, trial, production, or inspection specified in the subpoena or at any place within the state where a state statute or rule of court permits service of a subpoena issued by a state court of general jurisdiction sitting in the place of the deposition, hearing, trial, production, or inspection specified in the subpoena. When a statute of the United States provides therefor, the court upon proper application and cause shown may authorize the service of a subpoena at any other place. A subpoena directed to a witness in a foreign country who is a national or resident of the United States shall issue under the circumstances and in the manner and be served as provided in Title 28, U.S.C. § 1783.

(3) Proof of service when necessary shall be made by filing with the clerk of the court by which the subpoena is issued a statement of the date and manner of service and of the names of the persons served, certified by the person who made the service.

(c) Protection of Persons Subject to Subpoenas.
(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

**C O U G H L I N   D U F F Y   LLP**
350 Mount Kemble Avenue
P.O. Box 1917
Morristown, New Jersey 07962-2075
Telephone: (973) 267-0058
Facsimile: (973) 267-6442
llajewski@coughlinduffy.com

and

**ROBINSON & LIVELLI**
Two Penn Plaza East
Newark, New Jersey 07105
Telephone: (973) 690-5400
Facsimile: (973) 466-2760
drobinson@robinsonlivelli.com

Attorneys for Defendants IDT Corporation,
Howard S. Jonas, Motti Lichtenstein, Jack Lerer,
David Schropfer, Avi Lazar, Robert Schiff, Michael Levine,
Jonathan Levy, Alex Schwarz, James A. Courter, Joyce Mason,
and John Cate

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| D. MICHAEL JEWETT, | Civil Action No.: 04-CV-1454 (JCL)(MF) |
| Plaintiff, | |
| v. | **DEFENDANTS' NOTICE OF MOTION FOR A DISCOVERY PROTECTIVE ORDER PURSUANT TO RULE 26(c)** |
| IDT CORPORATION, et al., | |
| Defendants. | |

TO:    William Perniciaro, Esq.
　　　　84 New Dorp Plaza
　　　　Staten Island, NY 10306
　　　　Attorney for Plaintiff D. Michael Jewett

　　　　PLEASE TAKE NOTICE that Defendants IDT Corporation, Howard S. Jonas,

Motti Lichtenstein, Jack Lerer, David Schropfer, Avi Lazar, Robert Schiff, Michael

Levine, Jonathan Levy, Alex Schwarz, James A. Courter, Joyce Mason, and John Cate

(collectively "Defendants") move before this Court for a discovery protective order

pursuant to Rule 26(c) in relation to Plaintiff's discovery requests served upon

Defendants and subpoenas to third-parties. This motion is returnable before the

Honorable Mark Falk, U.S.M.J. at U.S.P.O. & Courthouse, Room 457 1 Federal Square,

Newark, New Jersey on a date to be set by the Court.

This motion is based on the concurrently filed Brief and Declaration of Leslie A.

Lajewski, with exhibits annexed thereto.

COUGHLIN DUFFY LLP

AND

ROBINSON & LIVELLI

Dated: April 3, 2007

By:___/s/ Leslie A. Lajewski_____
   Leslie A. Lajewski
   Attorneys for Defendants IDT Corporation,
   Howard S. Jonas, Motti Lichtenstein, Jack
   Lerer, David Schropfer, Avi Lazar, Robert
   Schiff, Michael Levine, Jonathan Levy, Alex
   Schwarz, James A. Courter, Joyce Mason,
   and John Cate

170053

**COUGHLIN DUFFY LLP**
350 Mount Kemble Avenue
P.O. Box 1917
Morristown, New Jersey 07962-2075
Telephone: (973) 267-0058
Facsimile: (973) 267-6442
llajewski@coughlinduffy.com

and

**ROBINSON & LIVELLI**
Two Penn Plaza East
Newark, New Jersey 07105
Telephone: (973) 690-5400
Facsimile: (973) 466-2760
drobinson@robinsonlivelli.com

Attorneys for Defendants IDT Corporation,
Howard S. Jonas, Motti Lichtenstein, Jack Lerer, David Schropfer
Avi Lazar, Robert Schiff, Michael Levine, Jonathan Levy,
Alex Schwarz, James A. Courter, Joyce Mason and John Cate

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| D. MICHAEL JEWETT, | Civil Action No.: 04-CV-1454 (JCL)(MF) |
| Plaintiff, | |
| v. | **BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR A DISCOVERY PROTECTIVE ORDER PURSUANT TO RULE 26(C)** |
| IDT CORPORATION, et al., | |

## TABLE OF CONTENTS

**Page**

Table of Authorities ................................................................................................. ii

INTRODUCTION AND SUMMARY OF ARGUMENT ........................................... 1

SUMMARY OF PLAINTIFF'S DISCOVERY REQUESTS .................................... 5

POINT I

    PLAINTIFF'S REQUESTS ARE WELL OUTSIDE THE SCOPE OF
    DISCOVERY AND DEFENDANTS HAVE ESTABLISHED GOOD
    CAUSE FOR ISSUANCE OF A PROTECTIVE ORDER ................................... 6

        A.    The scope of discovery is limited to information that is relevant
              to a claim or defense of a party or is reasonably calculated to
              lead to the discovery of admissible evidence in the case ............................. 6

        B.    The Court may enter a protective order once a party
              demonstrates good cause for such an order and Defendants
              have established good cause here .................................................................. 8

POINT II

    DISCOVERY CONCERNING IDT'S AGREEMENT WITH TELECO HAITI
    SHOULD BE
    LIMITED TO INFORMATION RELEVANT TO PROVING OR DEFENDANTS
    AGAINST PLAINTIFF'S CEPA CLAIM ............................................................. 9

POINT III

    DISCOVERY CONCERNING FCC FILINGS BY IDT OR ANY OTHER
    CARRIER IS IRRELEVANT TO THE CASE AND NOT REASONABLY
    CALCULATED TO LEAD TO THE DISCOVERY OF ADMISSIBLE
    EVIDENCE ........................................................................................................ 12

POINT IV

    DISCOVERY CONCERNING IDT'S FCC LICENSE, SARBANES OXLEY
    INFORMATION OR FCPA INFORMATION IS IRRELEVANT TO THE
    CASE AND NOT REASONABLY CALCULATED TO LEAD TO THE
    DISCOVERY OF ADMISSIBLE EVIDENCE ...................................................... 14

## TABLE OF CONTENTS (con't)

Page

POINT V

DISCOVERY CONCERNING ANY GOVERNMENTAL INVESTIGATION
IS IRRELEVANT TO PLAINTIFF'S CLAIMS AND PROTECTED FROM
DISCLOSURE BY IDT'S ATTORNEY CLIENT PRIVILEGE AND THE
ATTORNEY WORK PRODUCT DOCTRINE ........................................................... 16

POINT VI

PLAINTIFF'S DISCOVERY REQUESTS SHOULD BE LIMITED TO
THE EXTENT THEY SEEK INFORMATION WHICH INVADES THE
PRIVACY RIGHTS OF VARIOUS INDIVIDUALS ..................................................... 17

POINT VII

PLAINTIFF'S DISCOVERY REQUESTS SHOULD BE LIMITED TO
THE EXTENT THEY SEEK IRRELEVANT INFORMATION CONCERNING
THIRD PARTY INDIVIDUALS AND ENTITIES ........................................................ 18

POINT VIII

PLAINTIFF'S REQUESTS FOR DISCOVERY CONCERNING IDT'S
INFORMATION SYSTEM IS OVERLY BROAD, IRRELEVANT,
HARASSING AND OVERLY BURDENSOME .......................................................... 19

POINT IX

PLAINTIFF'S REQUESTS FOR DISCOVERY CONCERNING IDT'S
HUMAN RESOURCES AND MANAGEMENT POLICIES AND
PRACTICES SHOULD E LIMITED TOTHOSE WHICH GOVERNED
HIS EMPLOYMENT WITH IDT ............................................................................. 21

POINT X

PLAINTIFF'S REQUESTS FOR DISCOVERY CONCERNING CLAIMS
AND COMPLIANTS AGAINST DEFENDANTS OTHER THAN
PLAINTIFF'S CLAIM SHOULD BE BARRED AS THEY ARE IRRELEVANT
AND HARASSING ............................................................................................... 22

POINT XI

PLAINTIFF'S REQUESTS FOR INFORMAION CONCERNING IDT'S
CHARITABLE WORK AND CHARITABLE SOLICIATIONS IS IRRELEVANT
TO HIS NJLAD CLAIM AND SHOULD BE PRECLUDED ...................................... 24

ii

## TABLE OF CONTENTS (con't)

Page

POINT XII

    THE TIME PERIOD FOR WHICH PLIANTIFF SEEKS DISCOVERY IS
OVERLY BROAD AND HARASSING AND NOT REASONABLY
CALCULATED TO LEAD TO THE DISCOVERY OF ADMISSIBLE
EVIDENCE ...............................................................................................25

POINT XIII

    THE PROTECTIVE ORDER ENTERED BY THE COURT SHOULD
APPLY TO THE SCOPE OF PLAINTIFF'S THIRD-PARTY
SUBPOENAS...........................................................................................26

CONCLUSION..............................................................................................27

## TABLE OF AUTHORITIES

**Page**

### FEDERAL CASES

*Ass'n of Data Processing Service Organizations, Inc. v. Camp,*
   397 U.S. 150 (1970) ..................................................................................4

*Bowman v. Parking Auth. of the City of Camden,* 2003 WL 22145814
   D.N.J. Sept. 18, 2003) ...............................................................................24

*Caver v. City of Trenton,* 192 F.R.D. 154 (D.N.J. 2000)....................................8

*Cobetto v. Wyeth* Labs, 2006 WL 3840092
   (W.D.Pa. Dec. 29, 2006) ...........................................................................11

*EEOC v. Kim and Ted, Inc.,* 1995 WL 591451 (N.D.Ill. Oct. 3, 1995) .............27

*FCC v. Sanders Bros. Radio Station,* 309 U.S. 479 (1940) ...........................14

*Fed. Deposit Ins. Corp. v. Mercantile Nat. Bank of Chicago,*
   84 F.R.D. 345 (N.D.Ill. 1979) .................................................................7, 26

*Glenmede Trust Co. v. Thompson,* 56 F.3d 476 (3d Cir. 1995) ........................8

*Hussey v. State Farm Lloyds Ins. Co.,* 216 F.R.D. 591 (E.D.Tex. 2003) ........26

*Hutchinson v. Bennigan's/Metromedia Rest., Inc.,* 2006 WL 477003
   (D.N.J. Feb. 28, 2006) ...............................................................................11

*Jewish Hosp. Ass'n of Louisville, Kentucky, Inc. v. Stuck*
   *Constr. Co.,* 77 F.R.D. 59 (W.D.Ky. 1978)...............................................15

*Koger v. Robert Half Int'l,* 2007 WL 712225, slip opinion
   (W.D.Pa. March 7, 2007)...........................................................................11

*Lesal Interiors, Inc. v. Resolution Trust Corp.,* 153 F.R.D. 552 (D.N.J. 1994)..................6

*McClain v. Mack Trucks, Inc.,* 85 F.R.D. 53 (E.D.Pa. 1979) ...........15, 22, 23

*McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973) ...............................10

*McGowan v. General Dynamics Corp.,* 794 F.2d 361 (8th Cir. 1986)...............17

*Miller v. Doctor's General Hosp.,* 76 F.R.D. 136 (W.D.Okl. 1977) ..................22

*Premium Service Corporation v. Sperry & Hutchinson Co.,*
   511 F.2d 225 (9th Cir. 1975) ....................................................................19

## TABLE OF AUTHORITIES (con't)

**Page**

### FEDERAL CASES

*Scouler v. Craig,* 116 F.R.D. 494 (D.N.J. 1987)...................................................7

*Simpson v. Kay Jewelers*, 142 F.3d 639 (3d Cir. 1998)..............................11

*Stewart v. Mitchell Transport*, 2002 WL 1558210 (D.Kan. July 8, 2002)......................27

*Will-Drill Resources, Inc. v. J.R. Pounds, Inc.*, 2007 WL 609791, slip opinion
(S.D.Miss. Feb. 23, 2007)................................................................................7, 26

*Willemijn Houdstermaatschaapij BV v. Apollo Computer Inc.*,
707 F.Supp. 1429 (D.Del. 1989) .....................................................................20

*Williams v. Weems Community Medical Health Center*, 2006 WL 9059555
(S.D.Miss. Apr. 7, 2006) .................................................................................27

*Wood v. McCullough*, 45 F.R.D. 41 (S.D.N.Y. 1968) ......................................22

### STATE CASES

*Gerard v. Camden County Health Services Ctr.*, 348 N.J. Super. 514
(App. Div. 2002) ......................................................................................10, 13, 19

*Jamison v. Rockaway Township Bd. of Educ.*, 242 N.J. Super. 436
(App. Div. 1990) ...............................................................................................24

*Kolb v. Burns*, 320 N.J. Super. 467 (App. Div. 1999)......................................10

*San Diego Trolley, Inc. v. Superior Court*, (2001) 87 Cal.App.4th 1083...........................17

### FEDERAL RULES

Fed.R.Civ.P.26(b) ..........................................................................................6, 7, 26

Fed.R.Civ.P.26(b)(1)........................................................................................6, 26

Fed.R.Civ.P.26(c) ..........................................................................................6, 7, 27

Fed.R.Civ.P.34 ...............................................................................................7, 26

Fed.R.Civ.P.45(d)(1).........................................................................................6

Federal R.Evid. 404 ........................................................................................23

## TABLE OF AUTHORITIES (con't)

**Page**

### MISCELLANOUS

9A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure*
§2459 (2d ed. 1995) ..................................................................................................26

## INTRODUCTION AND SUMMARY OF ARGUMENT

Defendants IDT Corporation ("IDT"), Howard S. Jonas, Motti Lichtenstein, Jack Lerer, David Schropfer, Avi Lazar, Robert Schiff, Michael Levine, Jonathan Levy, Alex Schwarz, James A. Courter, Joyce Mason, and John Cate (collectively "Defendants"), submit this brief in support of their Motion for a Protective Order. Given the over-reaching breadth of Plaintiff's discovery requests, it is easier for Defendants to set forth what is relevant and discoverable in this case. In particular, Defendants have agreed to provide discovery in relation to (1) the terms and conditions of Plaintiff's employment with IDT, including his hiring, performance, and policies, procedures and agreements that governed his employment; (2) Plaintiff's termination from employment with IDT, including his unemployment application; and (3) IDT's agreement with Teleco Haiti as limited below. (Lajewski Dec. ¶¶13-15.) This scope of production will provide Plaintiff with discovery relevant to, or reasonably calculated to lead to, the discovery of admissible evidence on his CEPA, NJLAD retaliatory discharge, defamation and intentional infliction of emotional distress ("IIED") claims. To the extent Plaintiff has served voluminous discovery requests on Defendants and third-parties seeking discovery outside the scope of the three areas outlined above, Defendants seek to limit those requests and in some instances, preclude discovery completely.

In particular, Defendants seek to an Order limiting discovery concerning IDT's agreement with Teleco Haiti to (1) the final IDT/Teleco Haiti agreement; (2) documents or information authored by, sent to or copied to Plaintiff during his employment with IDT; and (3) documents or information concerning IDT's review/analysis of the ability to structure the Teleco Haiti agreement in the fashion sought by Teleco Haiti prior to its finalization (hereinafter referred to collectively as "Teleco Haiti Discovery"). (Lajewski

1

Dec. ¶15.) Defendants further seek an Order ruling that the Teleco Haiti Discovery may only be sought from IDT and that Plaintiff may not attempt to circumvent the limitation by subpoenaing broad sweeping discovery from third-parties that is outside the scope of the Teleco Haiti Discovery.

In relation to the preclusion of other discovery, Defendants seek a Protective Order holding that discovery not be had and matters not be inquired into in relation to the following discovery requests served by Plaintiff on Defendants, and in some instances, third-parties:

1.   Any and all business dealings by IDT with the exception of the Teleco Haiti Discovery outlined above (Lajewski Dec. Ex. A, Request Nos. 6, 9, 10, 20; Ex. B., Request Nos. 68-104, 146-152, 154-158, 162, 165, 174, 175; Exs D through G);

2.   Any and all information and documents relating to any government investigation, including the Department of Justice ("DOJ")investigation, into IDT's agreement with Teleco Haiti, including any information or documents provided, created or authored on behalf of IDT in relation to such investigations (Lajewski Dec. Ex. B, Request Nos. 138-133, 135, Ex. G);

3.   Any and all attorney-client privileged and/or attorney work product information and documents created in anticipation of Plaintiff's litigation, in the defense of Plaintiff's lawsuit, and/or in the defense of any government investigation into IDT's agreement with Teleco Haiti (Lajewski Dec. Ex. B, Request Nos. 127-133, 135, 136; Ex. G);

4.   Any and all documents and information relating to any filings with the FCC by IDT in relation to any IDT agreement (Lajewski Dec. Ex. A, Request Nos. 7, 8, 20; Ex. B, Request Nos. 55-59, 62, 63, Ex. E);

5.   Any and all filings with the FCC by any carrier other than IDT, including but not limited to filings by AT&T, Sprint and Verizon (Lajewski Dec. Exs. E and F);

6.   Any information or documents relating to Mont Salem, including but not limited to information concerning Mont Salem's corporate structure, Mont Salem's involvement in IDT's agreement with Teleco Haiti, and any business dealings between Mont Salem and IDT with the exception of the Teleco Haiti Discovery above (Lajewski Dec. Ex. B, Request Nos. 146-152; Exs. C, D and G);

2

7.    Any information or documents relating to Fred Beliard, Alphonso Inevil, or Jean Duperval with the exception of those covered by the Teleco Haiti Discovery above (Lajewski Dec. Ex. B, Request No. 134, Ex. D and G);

8.    Any and all information or documents relating to any IDT employee other than Plaintiff, including but not limited to, information concerning the terms and conditions of such employee's employment with IDT and separation from employment with IDT, if applicable (Lajewski Dec. Ex. B, Request Nos. 1-4, 17, 20, 21, 30-32, 36, 166, 167,170-172, 177-181, 183, 186-194; Ex. H);

9.    Any and all information or documents relating to any IDT sponsored charities or institutions, or mailings or solicitations for donations to charities or institutions (Lajewski Dec. Ex. A, Request Nos. 11-16; Ex. B, Request Nos. 105-114);

10.   Any information or documents relating to a claim or complaint against Defendants, other than Plaintiff's, filed internally or with any outside court or government agency (Lajewski Dec. Ex. A, Request No. 17; Ex. B, Request Nos. 184, 185);

11.   Any information or documents relating to Sarbanes Oxley and/or IDT's policies and practices under Sarbanes Oxley (Lajewski Dec. Ex. B, Request Nos. 66, 67);

12.   Any information or documents relating to IDT's management and Board of Directors (Lajewski Dec. Ex. B, Request Nos. 115-142);

13.   Any information or documents relating to IDT's information systems (Lajewski Dec. Ex. B, Request Nos. 37-51);

14.   Any information or documents relating to IDT's FCC Section 214 License or compliance with FCC regulations (Lajewski Dec. Ex. A, Request Nos. 5, 22; Ex. B, Request Nos. 52-63);

15.   Any information or documents relating to the Foreign Corrupt Practices Act ("FCPA"), including IDT's compliance with same (Lajewski Dec. Ex. B, Request Nos. 64, 65);

16.   Any information or documents relating to IDT hiring, terms and conditions of employment and termination practices in general or in relation to any particular position or employee, other than Plaintiff (Lajewski Dec. Ex. A, Request Nos. 18, 19; Ex. B, Request Nos. 9-11, 16, 34 – 36, 153, 173, 183).

All of the discovery for which Defendants seek a Protective Order is irrelevant to Plaintiff's claims and not reasonably calculated to lead to the discovery of admissible evidence in relation to any claim or defense in the case.   Likewise, most of the discovery sought by Plaintiff from Defendants are either harassing, unduly burdensome, unduly expensive or a combination of all three.  Much of the discovery requests also seek confidential or proprietary information to which Plaintiff would not otherwise be entitled and for which IDT has genuine concerns of disclosure given Plaintiff's previous public disclosures of IDT confidential information in violation of his Confidentiality Agreement.

Plaintiff's justification for the majority of the above discovery demands is that he needs it in relation to his CEPA claim to prove IDT violated FCC regulations and the Foreign Corrupt Practices Act.  (Lajewski Dec. ¶¶16-17.)  However, as Plaintiff is fully aware, he does not need to prove a violation of any law or regulation to prove his CEPA claim.  The true motive behind the clearly inappropriate discovery demands appears to be threefold.

First, Plaintiff's counsel has repeatedly represented that he and Plaintiff believe IDT has engaged in some illegal conduct in relation to IDT's agreement with Teleco Haiti and that they will not rest until IDT is "exposed."  (Lajewski Dec. ¶19.)  This representation has been made despite Defendants' reminder to Plaintiff that his RICO claim was dismissed with prejudice on Defendants' motion to dismiss and that Plaintiff does not have a claim for alleged illegal conduct in this case.  (Id.)

Second, Plaintiff's counsel has repeatedly represented that he and Plaintiff are working with the federal government to "uncover" the alleged fraud perpetrated on Haiti

4

in relation to IDT's agreement with Teleco Haiti and they will continue to help the government in this investigation until the "truth" is uncovered.  (Lajewski Dec. ¶20.)

Third, Plaintiff's counsel has recently begun to represent that he believes that IDT's agreement with Teleco Haiti is the "tip of the iceberg" in relation to alleged illegal agreements by IDT and that he intends to obtain discovery on everything IDT does to "bring them down."  (Lajewski Dec. ¶22.)

Defendants emphatically deny any illegal conduct or wrongdoing of any kind and, while Plaintiff or his counsel may believe their own allegations, none of these reasons allow them to misuse the discovery process in this CEPA case to further such personal crusades.  In short, a simple review of Plaintiff's discovery requests show the abuse of process by Plaintiff in this case and why discovery should be limited in scope to the three areas outlined by Defendants in the opening paragraph, above.

Accordingly, the Court should enter a protective order limiting Plaintiff's discovery in the instant matter to only information relevant to Plaintiff's remaining claims – namely plaintiff's CEPA, defamation, LAD retaliatory discharge, and IIED claims.

## SUMMARY OF PLAINTIFF'S DISCOVERY REQUESTS

Plaintiff has served discovery requests in several different forms and on several different parties.  A summary of those requests for which Defendants seek a protective order are as follows:

1.    Plaintiff's Second Interrogatories for IDT Corporation (Lajewski Dec. Ex. A)[1];

2.    Plaintiff's Initial Document Requests for IDT Corporation (Lajewski Dec. Ex. B)[2];

---

[1] So as to not overburden the Court with copies of all 13 sets of interrogatories to Defendants, Defendants provide Plaintiff's interrogatories to IDT by way of example.  The protective order Defendants seek applies to all 13 sets of interrogatories.  Should the Court desire a copy of each set in relation to this motion, Defendants will provide same at the Court's request.

3.   Plaintiff's Requests for Admissions to all Defendants (Lajewski Dec. Ex. C);

4.   Plaintiff's Subpoenas Duces Tecum to Fred Beliard, Jean Duperval and Alphonso Inevil (Lajewski Dec. Ex. D);

5.   Plaintiff's Subpoena Duces Tecum to the FCC (Lajewski Dec. Ex. E);

6.   Plaintiff's Subpoenas Duces Tecum to AT&T, Sprint and Verizon (Lajewski Dec. Ex. F);

7.   Plaintiff's Subpoena Duces Tecum to Winston & Strawn (Lajewski Dec. Ex. G);

8.   Plaintiff's Subpoena Duces Tecum to the New Jersey Department of Labor (Lajewski Dec. Ex. H).

## POINT I

**PLAINTIFF'S REQUESTS ARE WELL OUTSIDE THE SCOPE OF DISCOVERY AND DEFENDANTS HAVE ESTABLISHED GOOD CAUSE FOR ISSUANCE OF A PROTECTIVE ORDER.**

**A.    The scope of discovery is limited to information that is relevant to a claim or defense of a party or is reasonably calculated to lead to the discovery of admissible evidence in the case.**

Rule 26(b) allows parties to "obtain discovery regarding any matter, not privileged, which is relevant to the claim or defense of any party". Relevant information need not be admissible at the trial if the discovery appears "reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1) and 45(d)(1). However, the scope of discovery has ultimate and necessary boundaries. *Lesal Interiors, Inc. v. Resolution Trust Corp.*, 153 F.R.D. 552, 560 (D.N.J. 1994). Pursuant to Federal Rule of Civil Procedure 26(c), "the court . . . may make any order which justice so requires to protect a party or person from annoyance, embarrassment,

---

[2] So as to not overburden the court with copies of all 13 sets of document requests to Defendants, Defendants provide Plaintiff's document requests to IDT by way of example. The protective order Defendants seek applies to all 13 sets of document requests. Should the Court desire a copy of each set in relation to this motion, Defendants will provide same at the Court's request.

oppression, or undue burden or expense." Fed.R.Civ.P. 26(c).  Furthermore, whether

certain documents are relevant is "viewed in light of the allegations of the complaint, not

as to evidentiary admissibility." *Scouler v. Craig*, 116 F.R.D. 494, 496 (D.N.J. 1987).

It is also well settled that the scope of discovery under a subpoena is the same

as the scope of discovery under Rules 26(b) and 34 of the Federal Rules of Civil

Procedure.  The Advisory Committees' Note to the 1970 Amendment to Rule 45 states

that the 1970 Amendments "make it clear that the scope of discovery through a

subpoena is the same as that applicable to Rule 34 and other discovery rules."

Therefore, determining whether a request contained in a subpoena duces tecum is

overly broad or seeks irrelevant information should be decided under the same

standards set forth in Rule 26(b) as applied to Rule 34 requests for production.

Furthermore, Plaintiff's request must have a nexus to the issues raised in the

Complaint. *Fed. Deposit Ins. Corp. v. Mercantile Nat. Bank of Chicago*, 84 F.R.D. 345,

351 (N.D. Ill. 1979).  *See also Will-Drill Resources, Inc. v. J.R. Pounds, Inc.*, 2007 WL

609791 at *3 (S.D.Miss. Feb. 23, 2007)(granting defendants' motion for a protective

order limiting the scope of discovery sought in subpoenas duces tecum to third-parties

as the subpoenas sought documents neither relevant to any claim or defense in the

case nor reasonably calculated to lead to the discovery of admissible evidence in the

case).

In the present case, as fully explained in Points II through XIII, infra, the great

majority of Plaintiff's discovery requests fail to comply with Rule 26(b) as they are

neither relevant to Plaintiff's claims nor reasonably calculated to lead to the discovery of

admissible evidence in the case.  As a result, pursuant to Rule 26(c), the Court should

fashion a protective order that protects Defendants from these harassing, oppressive, and unduly burdensome irrelevant discovery requests.

> **B.    The Court may enter a protective order once a party demonstrates good cause for such an order and Defendants have established good cause here.**

The party seeking the protective order has the burden of demonstrating "good cause" by showing a particular need.  *See Glenmede Trust Co. v. Thompson,* 56 F.3d 476, 483 (3d Cir. 1995).  Upon a showing of good cause, the Court may, in its discretion, enter a protective order "for which the movant bears the burden of persuasion."  *Caver v. City of Trenton*, 192 F.R.D. 154, 162 (D.N.J. 2000).  In determining whether good cause exists, a district court may consider several factors:

> 1) whether disclosure will violate any privacy interests; 2) whether the information is being sought for a legitimate purpose or for an improper purpose; 3) whether disclosure of the information will cause a party embarrassment; 4) whether confidentiality is being sought over information important to public health and safety; 5) whether the sharing of information among litigants will promote fairness and efficiency; 6) whether a party benefiting from the order of confidentiality is a public entity or official; and 7) whether the case involves issues important to the public.

*Glenmede,* 56 F.3d at 483.

As more specifically detailed in Points II through XIII, infra, Defendants have made a showing of good cause as to why most of Plaintiff's discovery should be precluded and/or limited.  As explained, infra, many of the requests violate the privacy interests of individuals or the confidentiality interests of IDT or other entities.  Likewise, given Plaintiff and his counsel's representations in the case, it is clear that the majority of this irrelevant discovery is being sought for the improper purpose of pushing forward a government investigation into IDT and to "hold IDT accountable" for alleged improper business dealings in which Plaintiff and his counsel believe IDT was involved.  The "sharing" with Plaintiff of the

irrelevant discovery Plaintiff seeks will not promote fairness or efficiency in the case; rather it will exponentially expand this litigation and provide Plaintiff with more irrelevant fodder to take the parties away from the merits of the actual claims in the case.

In sum, in considering various factors applicable to each of the categories of discovery sought by Plaintiff, Defendants have demonstrated good cause for the entry of a discovery protective order.

### POINT II

**DISCOVERY CONCERNING IDT'S AGREEMENT WITH TELECO HAITI SHOULD BE LIMITED TO INFORMATION RELEVANT TO PROVING OR DEFENDING AGAINST PLAINTIFF'S CEPA CLAIM.**

Plaintiff has argued that his overly broad requests for any and all discovery relating to (1) IDT's agreement with Teleco Haiti, (2) IDT's other business dealings, (3) Teleco Haiti, (4) Mont Salem, (5) FCC filings by IDT and other carriers, (6) the DOJ investigation; (7) IDT employees other than himself (including hirings, firings and terms of employment); (8) Sarbanes Oxley; (9) IDT's management and Board of Directors; (10) IDT's FCC Section 214 License; (11) the Foreign Corrupt Practices Act; and (12) personal information regarding Fred Beliard, Jean Duperval and Alphonso Inevil (alleged agents of Teleco Haiti) are all relevant to proving his CEPA claim. (Lajewski Dec. ¶¶16-17.) Specifically, he claims that this discovery is necessary in relation to his CEPA claim to prove (1) IDT's alleged violations of FCC regulations and the Federal Foreign Corrupt Practices Act ("FCPA") and (2) how IDT has treated and continues to treat other "non-whistle blower" employees in comparison to him, an alleged whistle blowing employee. (*Id.*)

9

To prevail on a CEPA claim, Plaintiff must prove the following elements:

(1) that he reasonably believed that his employer's conduct was violating either a law or a rule or regulation promulgated pursuant to law;

(2) that he performed whistle-blowing activity described in *N.J.S.A.* 34:19-3a, c(1) or c(2);

(3) an adverse employment action was taken against him; and

(4) a causal connection exists between the whistle-blowing activity and the adverse employment action.

*Kolb v. Burns*, 320 *N.J. Super.* 467, 476 (App. Div. 1999).   Proof of wrongful conduct is **not** an element of a CEPA claim.  Thus, Plaintiff cannot justify his broad sweeping discovery requests on a claim that he must prove some violation of FCC regulations or the FCPA by IDT.  As such, his requests do not fall within the scope of permissible discovery on his CEPA claim.  *See, e.g., Gerard v. Camden County Health Services Ctr.*, 348 N.J. Super. 514, 522 (App. Div. 2002)(rejecting a threshold obligation upon a CEPA plaintiff to establish that an employer in fact violated a law or regulation and holding that a CEPA plaintiff need not prove an actual violation thereof to establish a CEPA claim).

Likewise, Plaintiff cannot prove his CEPA claim by randomly comparing himself to other IDT employees and claiming that he was treated differently than they were in their hiring, terms and conditions of employment or termination because he is an alleged whistle blower.  Unlike Title VII or NJLAD discrimination cases, where an element of a plaintiff's *prima facie* case is proving less favorable treatment then those outside the protected class (*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804 (1973)) there is no such element in a CEPA case (*Kolb*, 320 N.J. Super. at 476).  Indeed, a comparator is defined as a "similarly situated employee not in the [Title VII or NJLAD] protected class" to whom plaintiff can compare himself in relation to his alleged

10

adverse employment action. *Hutchinson v. Bennigan's/Metromedia Rest., Inc.*, 2006 WL 477003 ftnt 7 at *8 (D.N.J. Feb. 28, 2006). A plaintiff "cannot selectively choose a comparator." *Koger v. Robert Half Int'l*, 2007 WL 712225 at * 12, slip opinion (W.D.Pa. March 7, 2007), *citing Simpson v. Kay Jewelers*, 142 F.3d 639, 645 (3d Cir. 1998).

Plaintiff's complaint is devoid of any allegation that Plaintiff was treated less favorably than any other IDT employee. (See Third Amended Complaint at ECF Docket No. 94.) It is devoid of any allegation that Plaintiff suffered an adverse employment action in relation to his hiring or the terms and conditions of his employment. (*Id.*) *See, e.g., Cobetto v. Wyeth Labs*, 2006 WL 3840092 at * 1, slip opinion (W.D.Pa. Dec. 29, 2006) ("Because this is an individual termination case, information about Wyeth's general hiring, promotion and transfer patterns and practices would not be relevant."). More fundamentally, the only claim Plaintiff had in the case that gave him potential discovery on comparators was his religious hostile work environment claim. Since that claim was dismissed on Defendants' Motion to Dismiss (see Order at ECF Docket No. 85), there is no longer a claim in the case that allows him to explore how other employees were treated by IDT or to use such comparisons to prove his remaining claims.

The only relevant and appropriate discovery on Plaintiff's CEPA claim is the Teleco Haiti Discovery that Defendants have already agreed to provide to Plaintiff. That is, (1) the final Teleco Haiti agreement (which could go to element 1 of Plaintiff's *prima facie* case); (2) any information or documents authored by, sent to or copied to Plaintiff in relation to the agreement during his employment with IDT (which could go to elements 1 or 2 of Plaintiff's *prima facie* case); or (3) IDT's review/analysis of the ability to structure the agreement in the fashion sought by Teleco Haiti IDT (which could go to

11

element 1 of Plaintiff's *prima facie* case).  (Lajewski Dec. ¶¶14-15.)  None of the other

discovery Plaintiff seeks can aid Plaintiff in proving his reasonable belief in the summer

of 2003 that IDT was engaged in some improper conduct.  Nor can it aid him in proving

that he engaged in protected activity in 2003 and/or was terminated in retaliation for

such activity.  Accordingly, a protective order should be entered precluding discovery of

any of the twelve categorizes outlined above, with the exception of the Teleco Haiti

Discovery.

**POINT III**

**DISCOVERY CONCERNING FCC FILINGS BY IDT OR ANY OTHER CARRIER IS IRRELEVANT TO THE CASE AND NOT REASONABLY CALCULATED TO LEAD TO THE DISCOVERY OF ADMISSIBLE EVIDENCE.**

Plaintiff seeks, from IDT and other third-parties, including the FCC, AT&T, Sprint

and Verizon, information and documents relating to any filing by a carrier in relation to

Teleco Haiti, as well as any IDT filings with the FCC on any agreement.  (Lajewski Dec.

Exs. A, B, E, and F.)  Plaintiff claims this information is relevant to his CEPA claim.

(Lajewski Dec. ¶18.)  First, whether or not IDT filed its agreement with Teleco Haiti with

the FCC was not raised as a basis for Plaintiff's CEPA claim when this case was filed.

It was an alleged issue discovered and raised by Plaintiff's counsel in March 2005 – 16

months after Plaintiff's termination and a year after this case was filed – in support of an

Order to Show Cause to unseal portions of the Complaint that had previously been

sealed by the Court. (Lajewski Dec. Ex. I, 3/8/05 Transcript, T.8:6-10:16, T.14:13-18,

and 3/7/05 email from William Perniciaro to FCC representative James Ball.)  Thus,

since the issue of whether IDT filed its agreement with Teleco Haiti with the FCC is not

a basis for Plaintiff's CEPA claim, it is irrelevant to Plaintiff's case, and discovery

concerning whether IDT or any other carriers filed agreements with the FCC should not be permitted.

Even if the issue of whether IDT filed its agreement with Teleco Haiti with the FCC was relevant to the case, it is undisputed that IDT did not file the agreement with the FCC in 2003 because IDT did not (and still does not) believe it was legally required to do so and sought to protect the confidential and proprietary nature of the agreement by not making it public. There is no dispute on this fact in the case and any FCC filings by IDT or other carriers (including AT&T, Sprint or Verizon) are irrelevant and unnecessary.

Plaintiff argues that how other carriers act is relevant to proving the industry standard. (Lajewski Dec. ¶18.) What is or is not the industry standard (if there even is one) on filing of various telecommunication agreements is irrelevant to proving or defending against Plaintiff's CEPA claim. Moreover, even if industry standard was relevant, documentation from AT&T, Sprint or Verizon as to which agreements they file does not go to proving any industry standard because it does not provide evidence as to which carriers do NOT file such agreements and why. It is also undisputed that AT&T, Sprint and Verizon are "First Tier Carriers" while IDT is a "Second Tier Carrier." Thus, AT&T, Sprint and Verizon are not even proper comparators as to what an "industry standard" may be for Second Tier carriers such as IDT.

Plaintiff also claims what other carriers file is relevant to proving some alleged illegal conduct by IDT in support of Plaintiff's CEPA claim. (Lajewski Dec. ¶18.) As previously set forth, proof of wrongful conduct is not an element of a CEPA claim and, thus, Plaintiff does not have to prove alleged illegal conduct. *Gerard*, 348 N.J. Super. at 522. Plaintiff's RICO claim, which did allege wrongful conduct by IDT, was dismissed

with prejudice. That was the only basis Plaintiff had in this case to seek discovery on alleged wrongful conduct by IDT. With that claim dismissed, Plaintiff's discovery requests for information relating to that claim should be precluded.

Likewise, Plaintiff's counsel has been very open in his and Plaintiffs' continuing attempts to push a government investigation into Teleco Haiti and IDT's agreement with Teleco Haiti, as well as their belief that IDT engaged in unfair competition with other carriers by not filing its agreement with Teleco Haiti. (Lajewski Dec. ¶¶20-21.) Plaintiff and his counsel lack standing both in relation to prosecuting some government investigation and in pursuing some unfair competition claim on behalf of IDT's alleged competitors. *See, e.g. Ass'n of Data Processing Service Organizations, Inc. v. Camp*, 397 U.S. 150, 153 (1970); *FCC v. Sanders Bros. Radio Station*, 309 U.S. 479, 467-77 (1940). They should not be allowed to misuse the discovery process, including the subpoena process, to further such improper pursuits.

POINT IV

**DISCOVERY CONCERNING IDT'S FCC LICENSE, SARBANES OXLEY INFORMATION OR FCPA INFORMATION IS IRRELEVANT TO THE CASE AND NOT REASONABLY CALCULAED TO LEAD TO THE DISCOVERY OF ADMISSIBLE EVIDENCE.**

Plaintiff seeks from IDT information and documents relating to IDT's policies and practices under and compliance with Sarbanes Oxley; IDT's FCC Section 214 License, and IDT's policies and practices under and compliance with the FCPA. (Lajewski Dec. Exs. A and B.) There is, however, no Sarbanes Oxley claim in this case. (See Third Amended Complaint at ECF Docket No. 94.) Nor is there an FCC licensing claim or an FCPA claim. (*Id.*) Similarly, Plaintiff does not have standing to pursue or prosecute a Sarbanes Oxley or FCC claim on behalf of the government. *See, e.g. Ass'n of Data Processing Service Organizations, Inc.*, 397 U.S. at 153; *Sanders Bros. Radio Station*,

14

309 U.S. at 467-77. Accordingly, all of Plaintiff's discovery requests in relation to these three areas are harassing, irrelevant to the case, and outside the scope of proper discovery for the case.

Plaintiff claims these requests are all relevant to proving that IDT engaged in illegal conduct in support of his CEPA claim. (Lajewski Dec. ¶23.) As fully explained above, proof of wrongdoing is not an element of CEPA and, with the dismissal of Plaintiff's RICO claim, there is no valid basis for Plaintiff to continue to attempt to prove some alleged illegal conduct by IDT in this case. Further, much of the information requested in these three discovery categories consists of requests for legal conclusions, legal advice, and attorney-client privileged information (e.g., explanations of how IDT's complies with the FCPA or Sarbanes Oxley). (Lajewski Dec. Exs. A and B.) Requests of these type are completely inappropriate. See *McClain v. Mack Trucks, Inc.*, 85 F.R.D. 53, 61 (E.D.Pa. 1979) (denying plaintiff's motion to compel discovery concerning all contracts between defendant and Pennsylvania state and local governments as plaintiff's §1983 contract causes of action had been dismissed and, therefore, potential the relevancy of such contracts no longer existed); *Jewish Hosp. Ass'n of Louisville, Kentucky, Inc. v. Struck Constr. Co.*, 77 F.R.D. 59, 60 (W.D.Ky. 1978) (interrogatory asking what plaintiff had done to demonstrate acting with due diligence in investigating violations of 15 U.S.C. § 1 held overbroad and ambiguous).

For also these reasons a protective order should be entered precluding any discovery by Plaintiff of information or documents relating to Sarbanes Oxley, IDT's FCC Section 214 License, or the FCPA.

15

POINT V

**DISCOVERY CONCERNING ANY GOVERNMENT INVESTIGATION IS IRRELEVANT TO PLAINTIFF'S CLAIMS AND PROTECTED FROM DISCLOSURE BY IDT'S ATTORNEY CLIENT PRIVILEGE AND THE ATTORNEY WORK PRODUCT DOCTRINE.**

Plaintiff seeks, from IDT and other third-parties, including Winston & Strawn, Fred Beliard, Jean Duperval and Alphonso Inevil, information and documents relating to any government investigation, including the DOJ investigation, into Teleco Haiti, IDT's agreement with Teleco Haiti, and IDT. (Lajewski Dec. Exs. B and G) As Plaintiff admits in his sworn responses to discovery requests by Defendants, any and all government investigations have nothing to do with Plaintiff's claims. To quote Plaintiff:

> The defendants are free to ask plaintiff any question relevant to the facts leading up to plaintiff's termination at his deposition. ***Government investigations, however, have nothing to do with plaintiff's allegations*** and the government provides no information to this office concerning the facts of the case learned from IDT.

(Lajewski Dec. Ex. J, Plaintiff's Answers to IDT's Interrogatory No. 13 and Document Request No. 34.)[3] As admitted by Plaintiff under oath, the discovery he seeks concerning governmental investigations is completely irrelevant to Plaintiff's claims and, as such, a protective order should be entered precluding discovery by Plaintiff from Defendants or any third party of any information concerning governmental investigations.

In addition to being irrelevant, the discovery sought by Plaintiff invades IDT's attorney client privilege. Specifically, Plaintiff seeks to discover any and all information regarding the legal work performed by the Latham & Watkins Law Firm in its

---

[3] IDT sought discovery concerning Plaintiff's disclosure of information to any third-party, including any governmental agency, in relation to IDT's counterclaims for Plaintiff's breach of his Confidentiality Agreement. (Lajewski Dec. ¶28.) Defendants agree with Plaintiff that governmental investigations have nothing to do with Plaintiff's allegations.

representation of IDT during the government investigation.  All such information is

protected from discovery by the attorney-client privilege and the attorney-work product

doctrine.  Plaintiff cannot demand IDT waive those privileges (particularly given his

admission that the privileged information "has nothing to do with" his case).   IDT has

not waived those privileges and, accordingly, the information sought from IDT or other

third-parties is non-discoverable.

## POINT VI

### PLAINTIFF'S DISCOVERY REQUESTS SHOULD BE LIMITED TO THE EXTENT THEY SEEK INFORMATION WHICH INVADES THE PRIVACY RIGHTS OF VARIOUS INDIVIDUALS.

In addition to being completely irrelevant to Plaintiff's claims, the discovery

Plaintiff seeks in relation to other IDT employees entails disclosure of personal

information which invades the privacy rights of various individuals.   Specifically, Plaintiff

seeks disclosure of hiring, salary, promotion, discipline, warnings, termination,

unemployment, severance packages, consulting agreements and other employment

related information regarding numerous IDT current and former employees. (Lajewski

Dec. Exs. A, B and H.)  Plaintiff can show no good cause as to why he should be

allowed to invade the privacy rights of others or access their personal and non-public

information. This is particularly so when the information sought has no bearing on the

claims or defenses in this case. *See  McGowan v. General Dynamics Corp.,* 794 F.2d

361, 363 (8th Cir. 1986)(magistrate's denial of discovery request for personnel and

employment records not an abuse of discretion where the request was extremely broad

in scope and probably irrelevant); *San Diego Trolley, Inc. v. Superior Court* (2001) 87

Cal.App.4th 1083, 1097 (in weighing the interest of a private litigation in obtaining the

confidential information of third-parties, balance will favor privacy for confidential

17

information in third party personnel files unless the litigant can show, among other things, a compelling need for the particular document).

Accordingly, a protective order should be entered precluding discovery of information concerning other IDT current or former employees.

**POINT VII**

**PLAINTIFF'S DISCOVERY REQUESTS SHOULD BE LIMITED TO THE EXTENT THEY SEEK IRRELEVANT INFORMATION CONCERNING THIRD PARTY INDIVIDUALS AND ENTITIES.**

Through a number of third-party subpoenas and interrogatories, document requests and requests for admission to Defendants, Plaintiff seeks to discover information concerning (1) dismissed-defendant Mont Salem, and (2) three alleged agents of Teleco Haiti, Fred Beliard, Jean Duperval and Alphonso Inevil. (Lajewski Dec. Exs. B, C, D and G.) With regard to Mont Salem, Plaintiff seeks discovery concerning all aspects of the entity, from its incorporation, to its policies and procedures, to its business dealings, filings and communications. (*Id.*) With regard to Messrs. Beliard, Duperval and Inevil, Plaintiff seeks information concerning their qualifications and experience in international telecommunications as well as any and all communications between them and IDT, Mont Salem and/or Teleco Haiti. (*Id.*) None of this information is relevant to Plaintiff's case. Nor is it reasonably calculated to lead to the discovery of admissible evidence in the case.

As with many of his other requests, Plaintiff claims these categories of discovery are necessary to prove, in connection with his CEPA claim, the alleged illegality of IDT's agreement with Teleco Haiti and IDT's alleged illegal conduct. (Lajewski Dec. ¶24.) Plaintiff does not need to prove the illegality of IDT's agreement with Teleco Haiti to prove his CEPA claim. Likewise, he does not need to prove illegal conduct by IDT to

18

prove his CEPA claim. *Gerard*, 348 N.J. Super. at 522. Moreover, even if Plaintiff was required to prove some illegal conduct by IDT, the discovery Plaintiff seeks – e.g., the corporate structure and business dealings of Mont Salem; the qualifications, experience and business dealings of Messrs. Beliard, Duperval and Inevil -- has no bearing on that claim. *See Premium Service Corporation v. Sperry & Hutchinson Co.*, 511 F.2d 225, 229 (9th Cir. 1975)(plaintiff's "need" for documents "sweeping in nature, covering every paper touching on any relationship between" defendant and third parties was not sufficient to outweigh the burden and invasion of corporate privacy which would have resulted to third-party entities, especially since they were not parties to the suit.)

The true motivation for these requests is Plaintiff's continuing desire to flame a government investigation into Mont Salem, Teleco Haiti and IDT and to pursue RICO claims against IDT and Mont Salem which were dismissed with prejudice from the case. (Lajewski Dec. ¶¶19-22.) Those are not valid justifications for discovery having no relevance to the remaining claims in this case. Accordingly, a protective order should be entered precluding discovery of any information relating to Mont Salem or Messrs. Beliard, Duperval and Inevil with the exception of the Teleco Haiti Discovery.

### POINT VIII

**PLAINTIFF'S REQUESTS FOR DISCOVERY CONCERNING IDT'S INFORMATION SYSTEMS IS OVERLY BROAD, IRRELEVANT, HARASSING AND OVERLY BURDENSOME.**

Plaintiff seeks discovery of all documents concerning, describing and relating to IDT's various information systems, including its software applications, network backup infrastructure, Carrier Billing Software System, Oracle Financial System, electronic document retention policies, and paper file destruction policies. (Lajewski Dec. Ex. B.) He also demands "full access" to "Plaintiff's computer" and all computers "belonging to

19

all named defendants." (*Id.*) Defendants have informed Plaintiff that IDT will provide Plaintiff with copies of the electronically maintained information from the computer used by Plaintiff during his employment with IDT which relates to Plaintiff (*e.g.*, documents and information authored by, sent to or copied to Plaintiff). (Lajewski Dec. ¶25.) Defendants have explained that to provide Plaintiff with "full access" to the computer used by Plaintiff or to any computers belonging to the individual Defendants would allow Plaintiff to discover other confidential or proprietary information not relevant to Plaintiff's case that may be housed in the hard drive of the computers. (*Id.*)

Plaintiff has argued that he needs this unfettered access to confirm that Defendants have not destroyed any data relevant to the case. (Lajewski Dec. ¶26.) Defendants have an obligation under the Federal Rules to respond to proper discovery requests fully and accurately. Plaintiff or his counsel's personal mistrust of Defendants does not provide a basis to question Defendants' compliance with those Rules or to undertake a fishing expedition into every computer belonging to each individual Defendant. *See e.g., Willemijn Houdstermaatschaapij BV v. Apollo Computer Inc.*, 707 F.Supp. 1429, 1442 (D.Del. 1989)(Plaintiff's motion to compel "reassurances" in the form of supplemental discovery that defendant did not destroy any documents relating to the litigation denied as there appeared to be no reason to doubt defendant's honesty).

As to all documents concerning, describing and relating to IDT's information systems and software, there is no claim in this case concerning IDT's information systems or software. (See Third Amended Complaint at ECF Docket No. 94.) Plaintiff again argues that he needs this broad sweeping discovery to determine whether Defendants have destroyed any data relevant to this case. (Lajewski Dec. ¶26.) As set

20

forth above, there is no basis for this allegation, and Plaintiff's personal mistrust for Defendants does not give him the right to demand harassing, overly burdensome, and annoying discovery that is completely irrelevant to his CEPA, NJLAD, defamation and IIED claims.

For these reasons, a protective order should be entered precluding discovery concerning IDT's information systems and the individual Defendants' computers. With respect to the computer used by Plaintiff during his employment with IDT, Plaintiff's discovery should be limited to production of that information and documentation that was on his computer, which relates to Plaintiff (e.g., documents and information authored by, sent to or copied to Plaintiff).

### POINT IX

**PLAINTIFF'S REQUESTS FOR DISCOVERY CONCERNING IDT'S HUMAN RESOURCES AND MANAGEMENT POLICIES AND PRACTICES SHOULD BE LIMITED TO THOSE WHICH GOVERNED HIS EMPLOYMENT WITH IDT.**

Plaintiff seeks broad sweeping discovery concerning all IDT Human Resources and management policies and procedures, including new employee procedures; maintenance of personnel files; policies on promotions, determinations of title, salary, raises and bonuses; performance evaluations; and termination procedures. (Lajewski Dec. Exs. A and B.) While Defendants have no objection to providing Plaintiff with relevant discovery relating to his own employment (Lajewski Dec. ¶14), discovery concerning all IDT Human Resources or management policies and practices is overly broad, harassing, irrelevant to the case, and not reasonably calculated to lead to the discovery of admissible evidence. With regard to policies or information concerning hiring, promotions, salaries or bonuses, any information on these policies, even to the extent they could relate to Plaintiff, is irrelevant because Plaintiff has made no claim in

this case concerning any of those terms and conditions of employment. (See Third Amended Complaint at ECF Docket No. 94.)

For these reasons, a protective order should be entered limiting Plaintiff's discovery of IDT Human Resources and management policies and procedures to those which specifically applied to and governed Plaintiff during his employment with IDT.

## POINT X

**PLAINTIFF'S REQUESTS FOR DISCOVERY CONCERNING CLAIMS AND COMPLAINTS AGAINST DEFENDANTS OTHER THAN PLAINTIFF'S CLAIM SHOULD BE DENIED AS THEY ARE IRRELEVANT AND HARASSING.**

Plaintiff seeks discovery concerning any and all complaints, allegations or court actions filed by any IDT employee or any government agency against IDT since 1996. (Lajewski Dec. Exs. A and B.)  None of this information is relevant to Plaintiff's claims or IDT's defenses and it appears the requests where made solely to harass, annoy and embarrass IDT. *See McClain*, 85 F.R.D. at 61-62 (denying plaintiff's motion to compel discovery concerning potential reviews by the US Government office of Federal Contract Compliance and investigations conducted by any division of the US Department of Labor as irrelevant  and holding that "in the context of an individual plaintiff alleging illegal discharge, information concerning [defendants'] litigation history in hiring, seniority, promotion, classification and so on, seems one step beyond the parameters of relevancy in the broadest sense.")  *See also Miller v. Doctor's General Hosp.*, 76 F.R.D. 136, 138-39 (W.D.Okl. 1977) (denying as irrelevant plaintiff's motion to compel discovery concerning other complaints filed against the defendant with the federal or state government) ; *Wood v. McCullough*, 45 F.R.D. 41, 43 (S.D.N.Y. 1968) (denying plaintiff's motion to compel answers to interrogatories seeking information on other legal proceedings instituted by or against defendants as irrelevant).

22

Plaintiff argues that he is entitled to this information to prove a "pattern and practice" by IDT of illegal conduct. (Lajewski Dec. ¶27.)

First, the fact that a complaint or claim has been made is not evidence of illegal conduct – it is merely evidence of an allegation. Second, Plaintiff has no pattern and practice claim in this case. (See Third Amended Complaint at ECF Docket No. 94.) Third, pursuant to Federal Rule of Evidence 404, "evidence of other crimes, wrongs or acts is not admissible to prove the disposition of a person in order to show that such person acted in conformity therewith." Thus, Plaintiff cannot obtain and use the discovery he seeks to prove IDT engaged in the conduct Plaintiff alleges in his complaint (i.e., retaliatory discharge for his alleged Teleco Haiti whistle blower complaints and alleged complaints of religious charitable solicitations).

Fourth, Plaintiff has admitted that any government investigation has nothing to do with his claims, thus, any complaints, allegations or claims by a government agency is completely irrelevant to his case. Likewise, given Plaintiff's seven month employment with IDT (April to November 2003), Plaintiff's demand for complaints, claims or allegations dating back to 1996 is completely irrelevant to his claims of IDT wrongdoing in 2003. *See McClain*, 85 F.R.D. at 62 (limiting defendants' answers to discovery requests to the time period of plaintiff's employment).

For all of these reasons, a protective order should be entered precluding Plaintiff from seeking from Defendants or any third-parties, discovery relating to any complaints, allegations or claims against any of the Defendants (with the exception of discovery concerning Plaintiff's own complaints).

**POINT XI**

**PLAINTIFF'S REQUESTS FOR INFORMATION CONCERNING IDT'S CHARITABLE WORK AND CHARITABLE SOLICIATIONS IS IRRELEVANT TO HIS NJLAD CLAIM AND SHOULD BE BARRED.**

Plaintiff's remaining NJLAD claim in this case is that he was terminated in retaliation for complaining about his receipt of a hand-full of specific donation solicitations for various religious charities and institutions.[4] Allegedly in relation to this remaining claim, Plaintiff has requested from IDT broad sweeping discovery concerning (1) IDT's policies and practices concerning charitable solicitations, in general, and (2) the specifics of IDT's solicitations to and religious donations from IDT employees other than Plaintiff. (Lajewski Dec. Exs. A and B.) For example, Plaintiff seeks all documents concerning any and all religious charities or institutions for which IDT solicited donations during Plaintiff's employment at IDT; all documents concerning bonuses paid to any of the Defendants as a result of soliciting donations to religious charities; a list of all charities for which IDT "made out bound telemarking services" during Plaintiff's employment; and all documents between the members of IDT's Board of Directors relating to religious solicitations from employees. (*Id.*)

None of this information has any relevance to Plaintiff's NJLAD retaliatory discharge claim. To prove retaliatory discharge under NJLAD Plaintiff must prove that:

1.    He engaged in protected activity known to the employer;

2.    He was thereafter subjected to an adverse employment action; and

3.    There was a causal link between the two.

*Bowman v. Parking Auth. of the City of Camden*, 2003 WL 22145814 at *24 (D.N.J. Sept. 18, 2003); *Jamison v. Rockaway Township. Bd. Of Educ.*, 242 N.J. Super. 436,

---

[4] Plaintiff's religious hostile work environment claim was dismissed with prejudice on Defendants' Motion to Dismiss. (See Order at ECF Docket No. 85.)

445 (App. Div. 1990). IDT's policies and practices concerning charitable solicitations have no bearing on whether Plaintiff complained about receiving solicitations or was terminated in retaliation for such alleged complaints. Nor is information concerning the solicitation to or donations of other employees relevant to whether Plaintiff complained about solicitation to him or was terminated in retaliation for such complaints.

Plaintiff has claimed he needs this discovery to show the religious "culture" of IDT and Defendants. (Lajewski Dec. ¶29.) The alleged "culture" of IDT would only be relevant to Plaintiff's religious hostile work environment claim, which was dismissed with prejudice on Defendants' Motion to Dismiss. Thus, a protective order should be entered precluding Plaintiff from discovering from Defendants or any third-party information concerning IDT's charitable work and charitable solicitations.

POINT XII

**THE TIME PERIOD FOR WHICH PLAINTIFF SEEKS DISCOVERY IS OVERLY BROAD AND HARASSING AND NOT REASONABLY CALCULATED TO LEAD TO THE DISCOVERY OF ADMISSIBLE EVIDENCE.**

Plaintiff was employed by IDT from April 2003 until November 2003, and the Complaint does not contain any allegations predating Plaintiff's employment with IDT. (See Third Amended Complaint at ECF Docket No. 94.) Despite this, many of Plaintiff's discovery requests, including subpoenas to third-parties, seek information and documents dating as far back as 1996. (Lajewski Dec. Exs. A, B, E, F and H.) Likewise, many of Plaintiff's discovery requests demand production of information dating to the present. (*Id.*) There is simply no basis for Plaintiff's demand for discovery dating back to 1996; such information cannot possibly form the basis of or assist in proving his alleged whistle-blowing activity between April and November 2003, his alleged retaliatory discharge in November 2003, the alleged defamation to the

25

Unemployment Department between November and December 2003, or his intentional infliction of emotional distress claim. Likewise, discovery from January 2004 to the present is irrelevant to Plaintiff's remaining claims in the case. Accordingly, all discovery requests in the case should be limited in temporal scope to April 2003 through November 2003.

**POINT XIII**

**THE PROECTIVE ORDER ENTERED BY THE COURT SHOULD APPLY TO THE SCOPE OF PLAINTIFF'S THIRD-PARTY SUBPOENAS.**

"Subpoenas issued for discovery purposes… are subject to the discovery limitations outlined in Rule 26(b)." *Hussey v. State Farm Lloyds Ins. Co.,* 216 F.R.D. 591, 596 (E.D.Tex. 2003); 9A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* §2459 (2d ed. 1995). "Indeed, there is no practical reason to apply a different rule simply because plaintiff chooses to obtain information about the defendants from third parties via subpoenas rather than by a document request directed to defendants." *Will-Drill Resources, Inc.,* 2007 WL 609791 at *3.

Specifically, Rule 26(b)(1) allows parties to "obtain discovery regarding any matter, not privileged, which is relevant to the claim or defense of any party". The Advisory Committees' Note to the 1970 Amendment to Rule 45 states that the 1970 Amendments "make it clear that the scope of discovery through a subpoena is the same as that applicable to Rule 34 and other discovery rules." Furthermore, documents and information requested in a subpoena must have a nexus to the issues raised in the complaint. *Fed. Deposit Ins. Corp.,* 84 F.R.D. at 351.

This Court has jurisdiction to determine the scope of discovery pursuant to Defendants' instant Motion for a Discovery Protective Order and to apply that Order to the scope of Plaintiff's third-party subpoenas. *See Will-Drill Resources, Inc.,* 2007 WL

26

609791 at *2 (defendants have standing to bring a motion for protective order to place reasonable limits on the discovery process, and this includes applying such limitations on subpoenas to third parties); *Williams v. Weems Community Mental Health Center*, 2006 WL 905955 at *1 (S.D.Miss. Apr. 7, 2006)(defendant's motion to quash subpoena treated as a motion for a protective order where defendant sought to compel adherence to discovery deadline as it applied to the subpoena, not to vindicate a non-party's right to resist the compulsory process of the court); *Stewart v. Mitchell Transport*, 2002 WL 1558210 at *6 (D.Kan. July 8, 2002) (plaintiff's motion to quash subpoenas to his former and current employers treated as a Rule 26(c) motion for protective order to prevent the discovery from being had); *EEOC v. Kim and Ted, Inc.*, 1995 WL 591451 at * 2 (N.D.Ill. Oct. 3, 1995)(ruling that the EEOC's motion to quash defendants' subpoenas to third-parties be treated as a motion for a protective order limiting the scope of defendants' discovery pursuant to Rule 26(c) and, as such, that the EEOC, as a party to the litigation, has standing to bring the motion).

Based upon the foregoing, the protective order entered by the Court should apply not only to the discovery sought from Defendants but to the scope of any discovery sought in subpoenas previously served by or to be served in the future by Plaintiff upon third-parties. Moreover, to insure Plaintiff does not obtain discovery outside the scope of the protective order entered by the Court from third-parties already served with subpoenas, an order should be entered directing Plaintiff to notify all such third-parties of the protective order and how it limits their potential response to Plaintiff's subpoena.

## CONCLUSION

While the parties have had a number of meet and confer meetings and Defendants have tried to come to a compromise with Plaintiff as to Plaintiff's discovery

requests in the case, Plaintiff has shown an adamant unwillingness to narrow his discovery requests in any way, shape or form. As the aforementioned Points illustrate, much of Plaintiff's document requests, interrogatories, request for admissions, and third-party subpoenas seek discovery of information that is completely irrelevant to the allegations of the Complaint. Further, they are not reasonably calculated to lead to the discovery of admissible evidence in the case.

Plaintiff's discovery requests are also overly broad, harassing and unduly burdensome as they request documents from a time when plaintiff was not employed at IDT, and from third-party individuals who are not parties to this case. Requiring Defendants or third-parties to produce the discovery demanded by Plaintiff would further Plaintiff's improper motives in requesting the information, and would undoubtedly result in an undue burden on and prejudice to Defendants.

Based on the foregoing, Defendants have shown good cause for a protective order over the requested information as required by the Federal Rules of Civil Procedure. As such, Defendants respectfully request that a protective order be entered limiting plaintiff's discovery as discussed above.

Respectfully Submitted,

COUGHLIN DUFFY LLP

AND

ROBINSON & LIVELLI

Dated: April 3, 2007

By:___ /s/ Leslie A. Lajewski_____
Leslie A. Lajewski
Attorneys for Defendants IDT Corporation,
Howard S. Jonas, Motti Lichtenstein, Jack
Lerer, David Schropfer, Avi Lazar, Robert
Schiff, Michael Levine, Jonathan Levy, Alex
Schwarz, James A. Courter, Joyce Mason,
and John Cate

28

170119

**C O U G H L I N   D U F F Y   L L P**
350 Mount Kemble Avenue
P.O. Box 1917
Morristown, New Jersey 07962-2075
Telephone: (973) 267-0058
Facsimile: (973) 267-6442
llajewski@coughlinduffy.com

and

**ROBINSON & LIVELLI**
Two Penn Plaza East
Newark, New Jersey 07105
Telephone: (973) 690-5400
Facsimile: (973) 466-2760
drobinson@robinsonlivelli.com

Attorneys for Defendants IDT Corporation,
Howard S. Jonas, Motti Lichtenstein, Jack Lerer,
David Schropfer, Avi Lazar, Robert Schiff, Michael Levine,
Jonathan Levy, Alex Schwarz, James A. Courter, Joyce Mason,
and John Cate

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| D. MICHAEL JEWETT, | Civil Action No.: 04-CV-1454 (JCL)(MF) |
| Plaintiff, | |
| v. | **NOTICE OF MOTION TO QUASH THE SUBPOENAS SERVED BY PLAINTIFF ON AT&T INC., SPRINT NEXTEL CORPORATION AND VERIZON COMMUNICATIONS, INC.** |
| IDT CORPORATION, et al., | |
| Defendants. | |

TO:   William Perniciaro, Esq.
      84 New Dorp Plaza
      Staten Island, NY 10306
      Attorney for Plaintiff D. Michael Jewett

PLEASE TAKE NOTICE that Defendants IDT Corporation, Howard S. Jonas, Motti Lichtenstein, Jack Lerer, David Schropfer, Avi Lazar, Robert Schiff, Michael Levine, Jonathan Levy, Alex Schwarz, James A. Courter, Joyce Mason, and John Cate (collectively "Defendants") move before this Court to quash the Subpoenas served by Plaintiff on AT&T Inc., Sprint Nextel Corporation and Verizon Communications, Inc. This motion is returnable before the Honorable Mark Falk, U.S.M.J. at U.S. P.O. & Courthouse, Room 457 1 Federal Square, Newark, New Jersey on a date to be set by the Court.

COUGHLIN DUFFY LLP

And

ROBINSON & LIVELLI

Dated:  March 19, 2007

/s/ Leslie A. Lajewski
Leslie A. Lajewski
Attorneys for Defendants IDT Corporation, Howard S. Jonas, Motti Lichenstein, Jack Lerer, David Schropfer, Avi Lazar, Robert Schiff, Michael Levine, Jonathan Levy, Alex Schwarz, James A. Courter, Joyce Mason and John Cate

170461

**COUGHLIN DUFFY LLP**
350 Mount Kemble Avenue
P.O. Box 1917
Morristown, New Jersey 07962-2075
Telephone: (973) 267-0058
Facsimile: (973) 267-6442
llajewski@coughlinduffy.com

and

**ROBINSON & LIVELLI**
Two Penn Plaza East
Newark, New Jersey 07105
Telephone: (973) 690-5400
Facsimile: (973) 466-2760
drobinson@robinsonlivelli.com

Attorneys for Defendants IDT Corporation,
Howard S. Jonas, Motti Lichtenstein, Jack Lerer,
David Schropfer, Avi Lazar, Robert Schiff, Michael Levine,
Jonathan Levy, Alex Schwarz, James A. Courter, Joyce Mason,
and John Cate

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| D. MICHAEL JEWETT, | Civil Action No.: 04-CV-1454 (JCL)(MF) |
| Plaintiff, | |
| v. | |
| IDT CORPORATION, et al., | **DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO QUASH THE SUBPOENAS SERVED BY PLAINTIFF ON AT&T INC., SPRINT NEXTEL CORPORATION AND VERIZON COMMUNICATIONS, INC.** |
| Defendants. | |

TO:    William Perniciaro, Esq.
       84 New Dorp Plaza
       Staten Island, NY 10306
       Attorney for Plaintiff D. Michael Jewett

## TABLE OF CONTENTS

<u>Page</u>

INTRODUCTION AND SUMMARY OF ARGUMENT.................................................1

POINT I

DEFENDANTS HAVE STANDING TO MOVE TO QUASH THE SUBPOENA
SERVED ON AT&T, SPRINT AND VERIZON.........................................................4

POINT II

THE SUBOPENAS TO AT&T, SPRINT AND VERZION SHOULD BE QUASHED
BECAUSE THEY REQUEST INFORMATION THAT IS NEITHER RELEVANT
NOR REASONABLY CALCULATED TO LEAD TO THE DISCOVERY
OF ADMISSIBLE EVIDENCE IN THE PRESENT LITIGATION................................4

POINT III

PLAINTIFF DOES NOT HAVE GOOD CAUSE TO REQUEST THE
DOCUMENTS HE SEEKS PURSUANT TO RULES 34 AND 35 OF THE
FEDERAL RULES OF CIVIL PROCEDURE...........................................................8

CONCLUSION .......................................................................................................9

## **TABLE OF AUTHORITIES**

### CASES

Page

*Connecticut Mut. Life Ins. Co. v. Shields,*
   17 F.R.D. 273 (S.D.N.Y. 1955)..........................................................................9

*Directv, Inc. v. Richards, 2005 WL 154187 (D.N.J. 2005)* ........................................4

*Federal Deposit Ins. Corp. v. Mercantile Nat. Bank of Chicago,*
   84 F.R.D. 345 (N.D. Ill. 1979) ......................................................................5

*Gerard v. Camden County Health Services Center,*
   348 N.J. Super. 514 (App. Div. 2002)..............................................................7

*Kolb v. Burns*, 320 *N.J. Super.* 467 (App. Div. 1999) ...............................................6

*U.S. v. Am. Optical Co.*, 39 F.R.D. 580 (N.D. Cal. 1966) .........................................9

### FEDERAL RULES AND REGULATIONS

47 C.F.R. Section 43.51 ..............................................................................1

64 C.F.R. Section 1001 ..............................................................................1

Fed. R. Civ. P. 26 ....................................................................................4

Fed. R. Civ. P. 26(b).................................................................................4

Fed. R. Civ. P. 26(b)(1) ..........................................................................4, 5

Fed. R. Civ. P. 34 ...............................................................................4, 5, 8, 9

Fed. R. Civ. P. 45 .................................................................................5, 8, 9

Fed. R. Civ. P. 45(b)................................................................................. 9

Fed. R. Civ. P. 45(d)(1) ...........................................................................5

## NEW JERSEY RULES

*N.J.S.A.* 34:19-3a ................................................................................................5

*N.J.S.A.* 34:19-3c(1)............................................................................................5

*N.J.S.A.* 34:19-3c(2)............................................................................................5

## INTRODUCTION AND SUMMARY OF ARGUMENT

Defendants IDT Corporation ("IDT"), Howard S. Jonas, Motti Lichtenstein, Jack Lerer, David Schropfer, Avi Lazar, Robert Schiff, Michael Levine, Jonathan Levy, Alex Schwarz, James A. Courter, Joyce Mason, and John Cate (collectively "Defendants"), submit this brief in support of their Motion to Quash Plaintiff's subpoenas to AT&T Inc. ("AT&T"), Sprint Nextel Corporation ("Sprint") and Verizon Communications, Inc. ("Verizon").

Plaintiff issued subpoenas to AT&T, Sprint and Verizon on February 22, 2007 with the following requests:

1.    Each contract, agreement, concession, license, authorization, operating agreement or other arrangement filed by [AT&T/Sprint/MCI] pursuant to 47 C.F.R. 43.51 between 1996 and November 4, 2004 on the Haiti route or relating to Telecommunications D'Haiti (Teleco Haiti or "Haitel").

2.    Each modification request filed by [AT&T/Sprint/MCI] pursuant to 47 C.F.R. 43.51 and/or 64 C.F.R. 1001 (or similar provision) between 1996 and November 4, 2004 pursuant to 47 C.F.R. 43.51 between 1996 and November 4, 2004 on the Haiti route or relating to Telecommunications D'Haiti (Teleco Haiti or "Haitel").

(See Lajewski Dec., AT&T, Sprint and Verizon Subpoenas at Exs. A through C, respectively.)

Defendants seek to quash these subpoenas because the information sought is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence in relation to any of the claims or defenses in this case. Plaintiff claims that the information sought in these subpoenas is needed to prove his CEPA claim. Specifically, Plaintiff alleges that he was terminated for questioning whether the Teleco Haiti deal was legal in that he believed there was a pay-off being made to then Haitian President Aristide. FCC filings by AT&T, Sprint and MCI have no relevance to those allegations

1

and do not go to proving or disproving the elements of Plaintiff's CEPA claim.

Since filing this action, Plaintiff has attempted to retroactively interject into his CEPA claim a factual assertion that, during his employment, he also questioned whether the Teleco Haiti deal should be filed with the FCC. As more fully explained below, that is not a true claim in this case. Even if it was, however, the FCC filings by ATT, Sprint and MCI have no relevance to that allegation.

Not until almost a year and a half after Plaintiff's November 2003 termination from employment with IDT and a year after this case was filed did Plaintiff's counsel raise an allegation that IDT's Teleco Haiti deal should have been filed with the FCC. (Lajewski Dec., 3/8/05 Transcript at Ex. D, T.8:6-10:16, T.14:13-18; 3/7/05 email from Bill Perniciaro to FCC representative James Ball at Ex. E.) Counsel raised this issue as something he has just learned in relation to research he had been conducting in support of Plaintiff's Order to Show Cause to unseal portions of the Complaint which previously had been sealed by the Court. (*Id.*) Plaintiff's counsel did not raise the FCC issue in the context of or in support of Plaintiff's CEPA claim. (*Id.*) Indeed, before Plaintiff's counsel interjected this issue into the case in March 2005, allegations concerning filings with the FCC are not in Plaintiff's original, first or second Amended Complaints or numerous court filings, including sworn affidavits by Plaintiff.

In short, this FCC filing issue is a red hearing developed by Plaintiff long after Plaintiff's termination from IDT. Plaintiff should not be allowed to interject this irrelevant issue into the case and then demand overly broad and irrelevant discovery from third-party telecommunication carriers in the pretext of proving such irrelevant issue.

Even if an issue does exist concerning whether or not Plaintiff questioned IDT about its not filing the Teleco Haiti deal with the FCC, there is no dispute in the case

2

that IDT did not file the Teleco Haiti deal because it did not and does not believe it had a legal obligation to do so. What AT&T, Sprint or MCI filed in relation to deals with Teleco Haiti has no bearing on this undisputed fact in the case.

Similarly, even if the FCC filings of AT&T, Sprint or MCI were relevant to the case (an assertion Defendants deny), the subpoenas are overly broad as they request documents from 1996 to November 4, 2004. Plaintiff worked for IDT from April to November 2003. FCC filings from seven years prior to Plaintiff's employment with IDT to a year after Plaintiff's termination from IDT cannot possibly be relevant to any objections he allegedly made about the Teleco Haiti deal during his seven-month period of employment in 2003.

Plaintiff alleges that information concerning FCC filings by AT&T, Sprint and MCI are relevant to proving IDT's alleged violation of these third parties' right to fair competition (i.e., by these companies filing their alleged Teleco Haiti deals and IDT not filing the Teleco Haiti deal, IDT allegedly obtained an improper competitive advantage). This is not a claim in this case and Plaintiff has no standing to raise such an argument on behalf of these companies.

Plaintiff also attempts to justify his pursuit of the filing practices of AT&T, Sprint and MCI on his involvement in the Department of Justice's investigation into Teleco Haiti. Plaintiff and his counsel are neither governmental agents nor do they stand in the shoes of the Attorney General to undertake investigations for the government. IDT has repeatedly explained to Plaintiff and his counsel that Plaintiff's RICO claim was dismissed with prejudice on Defendants' motion to dismiss and, therefore, Plaintiff's desire to prove the alleged illegality of the Teleco Haiti deal is irrelevant to the case.

For all these reasons, Plaintiff's subpoenas to AT&T, Sprint and Verizon should

be quashed.

**POINT I**

**DEFENDANTS HAVE STANDING TO MOVE TO QUASH THE SUBPOENAS SERVED ON AT&T, SPRINT AND VERIZON.**

Generally, a party has standing to seek the modification or quashing of a subpoena upon a third party when the moving party claims that a personal right or privilege is implicated. *Directv, Inc. v. Richards*, 2005 WL 1514187, *1 (D.N.J. 2005). Defendants have sufficient standing to bring this Motion as they have a personal right to limit the scope of discovery in this case pursuant to Fed.R.Civ.P. 26 to information and documentation that is relevant or reasonably calculated to lead to the discovery of admissible evidence. They also have a personal right to protect themselves from Plaintiff's misuse of this litigation process to prosecute (1) unfair competition claims for which he has no standing or claim in the case, (2) a RICO claim that has been dismissed with prejudice, and (3) a Department of Justice investigation where neither he nor his counsel are governmental agents.

**POINT II**

**THE SUBPOENAS TO AT&T, SPRINT AND VERIZON SHOULD BE QUASHED BECAUSE THEY REQUEST INFORMATION THAT IS NEITHER RELEVANT NOR REASONABLY CALCULATED TO LEAD TO THE DISCOVERY OF ADMISSIBLE EVIDENCE IN THE PRESENT LITIGATION.**

It is well settled that the scope of discovery under a subpoena is the same as the scope of discovery under Rules 26(b) and 34 of the Federal Rules of Civil Procedure. Specifically, Rule 26(b)(1) allows parties to "obtain discovery regarding any matter, not privileged, which is relevant to the claim or defense of any party". Relevant information need not be admissible at the trial if the discovery appears "reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1) and 45(d)(1). The

4

Advisory Committees' Note to the 1970 Amendment to Rule 45 states that the 1970 Amendments "make it clear that the scope of discovery through a subpoena is the same as that applicable to Rule 34 and other discovery rules." Therefore, determining whether a request contained in a subpoena duces tecum is overly broad or seeks irrelevant information should be decided under the same standards set forth in Rule 26(b) as applied to Rule 34 requests for production. Furthermore, Plaintiff's request must have a nexus to the issues raised in the complaint. *Federal Deposit Ins. Corp. v. Mercantile Nat. Bank of Chicago*, 84 F.R.D. 345, 351 (N.D. Ill. 1979).

Plaintiff's subpoenas to AT&T, Sprint and Verizon request all documents and modifications to documents filed by these companies between 1996 and November 4, 2004 "on the Haiti route or relating to Telecommunications D'Haiti," (Lajewski Dec., Exs. A through C.) These requests are overly broad, entirely irrelevant to the present litigation and not reasonably calculated to lead to the discovery of admissible evidence in the case.

Plaintiff claims the documents subpoenaed are relevant to his CEPA claim. To prevail on this claim, Plaintiff must prove the following elements:

> (1) that he reasonably believed that his employer's conduct was violating either a law or a rule or regulation promulgated pursuant to law;

> (2) that he performed whistle-blowing activity described in *N.J.S.A.* 34:19-3a, c(1) or c(2);

> (3) an adverse employment action was taken against him; and

> (4) a causal connection exists between the whistle-blowing activity and the adverse employment action.

*Kolb v. Burns*, 320 *N.J. Super.* 467, 476 (App. Div. 1999).

The filing practices of AT&T, Sprint and Verizon have no nexus to the issues

raised in the Complaint and cannot conceivably aid Plaintiff in proving his CEPA case.

For example, the filing practices of AT&T, Sprint or Verizon have no bearing on whether

Plaintiff reasonably believed IDT allegedly paid-off President Aristide or IDT's not filing

the Teleco Haiti deal with the FCC violated some law or regulation. Nor do the

documents have any bearing on whether Plaintiff performed whistle-blowing activity,

whether an adverse employment action was taken against him, or whether a causal

connection exists between the alleged whistle-blowing activity and the adverse

employment action as required to prove a CEPA claim.

     Likewise, it is undisputed that Plaintiff's only allegation in this case concerns

IDT's initial Teleco Haiti deal. Since Plaintiff's CEPA claim is not premised on any

alleged modification to the Teleco Haiti deal, Plaintiff cannot argue that modification

filing practices of other carriers would lead to the discovery of admissible evidence on

his CEPA claim.

     As set forth in the Introduction section, whether or not IDT filed the Teleco Haiti

deal with the FCC was not raised as a basis for Plaintiff's CEPA claim when this case

was filed. It was an alleged issue discovered and raised by Plaintiff's counsel in March

2005 – 16 months after Plaintiff's termination and a year after this case was filed – in

support of an Order to Show Cause to unseal portions of the Complaint that had

previously been sealed by the Court. (Lajewski Dec., 3/8/05 Transcript at Ex. D, T.8:6-

10:16, T.14:13-18; 3/7/05 email from William Perniciaro to FCC representative James

Ball at Ex. E.) Thus, since the issue of whether IDT filed the Teleco Haiti deal with the

FCC is irrelevant to Plaintiff's case, discovery concerning whether or not carriers other

than IDT file such deals with the FCC is even further removed from relevancy in the

case.

Even if the issue of whether IDT filed the Teleco Haiti deal with the FCC was relevant to the case, it is undisputed that IDT did not file the Teleco Haiti deal with the FCC because IDT did not (and still does not) believe it was legally required to do so and sought to protect the confidential and proprietary nature of the deal by not making it public. There is no dispute on this fact in the case and any filings by AT&T, Sprint or Verizon are irrelevant and unnecessary.

Plaintiff argues that how other carriers act is relevant to proving the industry standard. What is or is not the industry standard (if there even is one) on filing of various telecommunication deals is irrelevant to Plaintiff's CEPA claim. Indeed, documentation from AT&T, Sprint or Verizon as to which deals they file does not go to proving any industry standard because it does not provide evidence as to which various carriers do NOT file such deals and why. Likewise, as it is undisputed that AT&T, Sprint and Verizon are "First Tier Carriers" while IDT is a "Second Tier Carrier," AT&T, Sprint and Verizon are not even proper comparators as to what an "industry standard" may be for Second Tier carriers.

Plaintiff also claims what other carriers file is relevant to proving some alleged illegal conduct by IDT in support of Plaintiff's CEPA claim. Proof of wrongful conduct is not an element of a CEPA claim and, thus, Plaintiff does not have to prove alleged illegal conduct. *Gerard v. Camden County Health Services Center*, 348 N.J. Super. 514, 522 (App. Div. 2002)(rejecting a threshold obligation upon a CEPA plaintiff to establish that an employer in fact violated a law or regulation and holding that a CEPA plaintiff need not prove an actual violation thereof to establish a CEPA claim). Plaintiff's RICO claim, which did allege wrongful conduct by IDT, was dismissed with prejudice. Plaintiff should not be allowed to continue to litigate that claim under the guise of his

CEPA claim.

Likewise, Plaintiff's counsel has been very open in his and Plaintiffs' continuing attempts to push a governmental investigation into Teleco Haiti and IDT's deal with Teleco Haiti, as well as their belief that IDT engaged in unfair competition with other carriers by not filing the Teleco Haiti deal. Plaintiff and his counsel lack standing both in relation to prosecuting some governmental investigation and in pursuing some unfair competition claim on behalf of IDT's alleged competitors. They should not be allowed to misuse the subpoena process to further such improper pursuits.

Finally, the time period for which Plaintiff seeks documents from AT&T, Sprint or Verizon is also overly broad and harassing. Plaintiff was employed by IDT from April 2003 until November 2003, and the Complaint does not contain any allegations predating Plaintiff's employment with IDT. There is simply no basis for Plaintiff's demand for AT&T, Sprint and Verizon filings from 1996 through November 4, 2004; such information cannot possibly form the basis for or assist in proving his alleged whistle-blowing activity between April and November 2003.

**POINT III**

**PLAINTIFF DOES NOT HAVE GOOD CAUSE TO REQUEST THE DOCUMENTS HE SEEKS PURSUANT TO RULES 34 AND 45 OF THE FEDERAL RULES OF CIVIL PROCEDURE.**

The AT&T, Sprint and Verizon Subpoenas should also be quashed because Plaintiff cannot demonstrate good cause for the requested documents sought in the subpoenas. Rule 45 of the Federal Rules of Civil Procedure does not provide a reprieve from the requirement that a showing of good cause as required by Rule 34 must support a request for production of documents. When a subpoena duces tecum is directed to a party, the requirement of good cause contained in Rule 34 is read into the

8

request under Rule 45(b).  Generally, Rule 45 is *in pari* material with Rule 34, and good cause must be shown for the production of documents sought via subpoena pursuant to Rule 45. *Connecticut Mut. Life Ins. Co. v. Shields*, 17 F.R.D. 273, 275 (S.D.N.Y. 1955).

When a party objects to enforcement of a subpoena duces tecum, the burden is on the party seeking production of documents to make a showing of good cause.  That is, the requesting party must establish that the requested documents are necessary to establish his claim or defense, or that denial of production will unduly prejudice preparation of his case or cause him hardship or injustice. *U.S. v. Am. Optical Co.*, 39 F.R.D. 580, 583 (N.D. Cal. 1966).  Plaintiff cannot and has not met this burden.

Plaintiff has the burden of proving that the denial of the production of documents regarding the filings of AT&T, Sprint and Verizon will unduly prejudice preparation of his CEPA case or cause him hardship or injustice.  It is impossible for Plaintiff to make this showing because, as discussed above, the requested documents do not relate to Plaintiff's claims or Defendants' defenses.  Therefore, Plaintiff cannot argue that quashing these subpoenas would unduly prejudice him.  Accordingly, Plaintiff's subpoenas to AT&T, Sprint and Verizon should be quashed.

## CONCLUSION

The AT&T, Sprint and Verizon Subpoenas request documents that are completely irrelevant to the remaining allegations of the Complaint and are not reasonably calculated to lead to the discovery of admissible evidence to prove Plaintiff's CEPA claim.  The subpoenas are also overly broad as they request documents from an irrelevant time period and from irrelevant third-parties not party to this case.  Plaintiff cannot show good cause for the requested documents as required by the Federal Rules of Civil Procedure and, accordingly, Defendants respectfully request that an Order be

9

entered quashing Plaintiff's Subpoena to AT&T, Subpoena to Sprint and Subpoena to

Verizon.

Respectfully Submitted,

COUGHLIN DUFFY LLP

AND

ROBINSON & LIVELLI

Dated: March 19, 2007               By: ___/s/ Leslie A. Lajewski_____
                                        Leslie A. Lajewski
                                        Attorneys for Defendants IDT Corporation,
                                        Howard S. Jonas, Motti Lichtenstein, Jack
                                        Lerer, David Schropfer, Avi Lazar, Robert
                                        Schiff, Michael Levine, Jonathan Levy, Alex
                                        Schwarz, James A. Courter, Joyce Mason,
                                        and John Cate

**COUGHLIN DUFFY LLP**
350 Mount Kemble Avenue
P.O. Box 1917
Morristown, New Jersey 07962-2075
Telephone: (973) 267-0058
Facsimile: (973) 267-6442
llajewski@coughlinduffy.com

and

**ROBINSON & LIVELLI**
Two Penn Plaza East
Newark, New Jersey 07105
Telephone: (973) 690-5400
Facsimile: (973) 466-2760
drobinson@robinsonlivelli.com

Attorneys for Defendants IDT Corporation,
Howard S. Jonas, Motti Lichtenstein, Jack Lerer,
David Schropfer, Avi Lazar, Robert Schiff, Michael Levine,
Jonathan Levy, Alex Schwarz, James A. Courter, Joyce Mason,
and John Cate

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| D. MICHAEL JEWETT, | Civil Action No.: 04-CV-1454 (JCL)(MF) |
| Plaintiff, | |
| v. | **NOTICE OF MOTION TO QUASH THE SUBPOENAS SERVED BY PLAINTIFF ON AT&T INC., SPRINT NEXTEL CORPORATION AND VERIZON COMMUNICATIONS, INC.** |
| IDT CORPORATION, et al., | |
| Defendants. | |

TO:   William Perniciaro, Esq.
      84 New Dorp Plaza
      Staten Island, NY  10306
      Attorney for Plaintiff D. Michael Jewett

PLEASE TAKE NOTICE that Defendants IDT Corporation, Howard S. Jonas, Motti Lichtenstein, Jack Lerer, David Schropfer, Avi Lazar, Robert Schiff, Michael Levine, Jonathan Levy, Alex Schwarz, James A. Courter, Joyce Mason, and John Cate (collectively "Defendants") move before this Court to quash the Subpoenas served by Plaintiff on AT&T Inc., Sprint Nextel Corporation and Verizon Communications, Inc. This motion is returnable before the Honorable Mark Falk, U.S.M.J. at U.S. P.O. & Courthouse, Room 457 1 Federal Square, Newark, New Jersey on a date to be set by the Court.

COUGHLIN DUFFY LLP

And

ROBINSON & LIVELLI

Dated:  March 19, 2007

/s/ Leslie A. Lajewski
Leslie A. Lajewski
Attorneys for Defendants IDT Corporation, Howard S. Jonas, Motti Lichenstein, Jack Lerer, David Schropfer, Avi Lazar, Robert Schiff, Michael Levine, Jonathan Levy, Alex Schwarz, James A. Courter, Joyce Mason and John Cate

170461

**COUGHLIN DUFFY LLP**
350 Mount Kemble Avenue
P.O. Box 1917
Morristown, New Jersey 07962-2075
Telephone: (973) 267-0058
Facsimile: (973) 267-6442
llajewski@coughlinduffy.com

and

**ROBINSON & LIVELLI**
Two Penn Plaza East
Newark, New Jersey 07105
Telephone: (973) 690-5400
Facsimile: (973) 466-2760
drobinson@robinsonlivelli.com

Attorneys for Defendants IDT Corporation,
Howard S. Jonas, Motti Lichtenstein, Jack Lerer,
David Schropfer, Avi Lazar, Robert Schiff, Michael Levine,
Jonathan Levy, Alex Schwarz, James A. Courter, Joyce Mason,
and John Cate

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| D. MICHAEL JEWETT, | Civil Action No.: 04-CV-1454 (JCL)(MF) |
| Plaintiff, | |
| v. | **DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO QUASH THE SUBPOENAS SERVED BY PLAINTIFF ON AT&T INC., SPRINT NEXTEL CORPORATION AND VERIZON COMMUNICATIONS, INC.** |
| IDT CORPORATION, et al., | |
| Defendants. | |

TO:   William Perniciaro, Esq.
      84 New Dorp Plaza
      Staten Island, NY  10306
      Attorney for Plaintiff D. Michael Jewett

## TABLE OF CONTENTS

Page

INTRODUCTION AND SUMMARY OF ARGUMENT..............................................1

POINT I

DEFENDANTS HAVE STANDING TO MOVE TO QUASH THE SUBPOENA
SERVED ON AT&T, SPRINT AND VERIZON...........................................................4

POINT II

THE SUBOPENAS TO AT&T, SPRINT AND VERZION SHOULD BE QUASHED
BECAUSE THEY REQUEST INFORMATION THAT IS NEITHER RELEVANT
NOR REASONABLY CALCULATED TO LEAD TO THE DISCOVERY
OF ADMISSIBLE EVIDENCE IN THE PRESENT LITIGATION ...............................4

POINT III

PLAINTIFF DOES NOT HAVE GOOD CAUSE TO REQUEST THE
DOCUMENTS HE SEEKS PURSUANT TO RULES 34 AND 35 OF THE
FEDERAL RULES OF CIVIL PROCEDURE ..............................................................8

CONCLUSION ...........................................................................................................9

i

## **TABLE OF AUTHORITIES**

### CASES

Page

*Connecticut Mut. Life Ins. Co. v. Shields,*
17 F.R.D. 273 (S.D.N.Y. 1955).............................................................................9

*Directv, Inc. v. Richards, 2005 WL 154187 (D.N.J. 2005)* ........................................4

*Federal Deposit Ins. Corp. v. Mercantile Nat. Bank of Chicago,*
84 F.R.D. 345 (N.D. Ill. 1979) .............................................................................5

*Gerard v. Camden County Health Services Center,*
348 N.J. Super. 514 (App. Div. 2002).................................................................7

*Kolb v. Burns,* 320 *N.J. Super.* 467 (App. Div. 1999) ...............................................6

*U.S. v. Am. Optical Co.,* 39 F.R.D. 580 (N.D. Cal. 1966) ........................................9

### FEDERAL RULES AND REGULATIONS

47 C.F.R. Section 43.51 .............................................................................................1

64 C.F.R. Section 1001 .............................................................................................1

Fed. R. Civ. P. 26 .......................................................................................................4

Fed. R. Civ. P. 26(b).................................................................................................4

Fed. R. Civ. P. 26(b)(1) .........................................................................................4, 5

Fed. R. Civ. P. 34 ...............................................................................................4, 5, 8, 9

Fed. R. Civ. P. 45 ...............................................................................................5, 8, 9

Fed. R. Civ. P. 45(b).................................................................................................9

Fed. R. Civ. P. 45(d)(1) ...........................................................................................5

## NEW JERSEY RULES

*N.J.S.A.* 34:19-3a ...................................................................................... 5

*N.J.S.A.* 34:19-3c(1) ................................................................................. 5

*N.J.S.A.* 34:19-3c(2) ................................................................................. 5

## INTRODUCTION AND SUMMARY OF ARGUMENT

Defendants IDT Corporation ("IDT"), Howard S. Jonas, Motti Lichtenstein, Jack Lerer, David Schropfer, Avi Lazar, Robert Schiff, Michael Levine, Jonathan Levy, Alex Schwarz, James A. Courter, Joyce Mason, and John Cate (collectively "Defendants"), submit this brief in support of their Motion to Quash Plaintiff's subpoenas to AT&T Inc. ("AT&T"), Sprint Nextel Corporation ("Sprint") and Verizon Communications, Inc. ("Verizon").

Plaintiff issued subpoenas to AT&T, Sprint and Verizon on February 22, 2007 with the following requests:

> 1. Each contract, agreement, concession, license, authorization, operating agreement or other arrangement filed by [AT&T/Sprint/MCI] pursuant to 47 C.F.R. 43.51 between 1996 and November 4, 2004 on the Haiti route or relating to Telecommunications D'Haiti (Teleco Haiti or "Haitel").
>
> 2. Each modification request filed by [AT&T/Sprint/MCI] pursuant to 47 C.F.R. 43.51 and/or 64 C.F.R. 1001 (or similar provision) between 1996 and November 4, 2004 pursuant to 47 C.F.R. 43.51 between 1996 and November 4, 2004 on the Haiti route or relating to Telecommunications D'Haiti (Teleco Haiti or "Haitel").

(See Lajewski Dec., AT&T, Sprint and Verizon Subpoenas at Exs. A through C, respectively.)

Defendants seek to quash these subpoenas because the information sought is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence in relation to any of the claims or defenses in this case. Plaintiff claims that the information sought in these subpoenas is needed to prove his CEPA claim. Specifically, Plaintiff alleges that he was terminated for questioning whether the Teleco Haiti deal was legal in that he believed there was a pay-off being made to then Haitian President Aristide. FCC filings by AT&T, Sprint and MCI have no relevance to those allegations

1

and do not go to proving or disproving the elements of Plaintiff's CEPA claim.

Since filing this action, Plaintiff has attempted to retroactively interject into his CEPA claim a factual assertion that, during his employment, he also questioned whether the Teleco Haiti deal should be filed with the FCC. As more fully explained below, that is not a true claim in this case. Even if it was, however, the FCC filings by ATT, Sprint and MCI have no relevance to that allegation.

Not until almost a year and a half after Plaintiff's November 2003 termination from employment with IDT and a year after this case was filed did Plaintiff's counsel raise an allegation that IDT's Teleco Haiti deal should have been filed with the FCC. (Lajewski Dec., 3/8/05 Transcript at Ex. D, T.8:6-10:16, T.14:13-18; 3/7/05 email from Bill Perniciaro to FCC representative James Ball at Ex. E.) Counsel raised this issue as something he has just learned in relation to research he had been conducting in support of Plaintiff's Order to Show Cause to unseal portions of the Complaint which previously had been sealed by the Court. (*Id.*) Plaintiff's counsel did not raise the FCC issue in the context of or in support of Plaintiff's CEPA claim. (*Id.*) Indeed, before Plaintiff's counsel interjected this issue into the case in March 2005, allegations concerning filings with the FCC are not in Plaintiff's original, first or second Amended Complaints or numerous court filings, including sworn affidavits by Plaintiff.

In short, this FCC filing issue is a red hearing developed by Plaintiff long after Plaintiff's termination from IDT. Plaintiff should not be allowed to interject this irrelevant issue into the case and then demand overly broad and irrelevant discovery from third-party telecommunication carriers in the pretext of proving such irrelevant issue.

Even if an issue does exist concerning whether or not Plaintiff questioned IDT about its not filing the Teleco Haiti deal with the FCC, there is no dispute in the case

2

that IDT did not file the Teleco Haiti deal because it did not and does not believe it had a legal obligation to do so. What AT&T, Sprint or MCI filed in relation to deals with Teleco Haiti has no bearing on this undisputed fact in the case.

Similarly, even if the FCC filings of AT&T, Sprint or MCI were relevant to the case (an assertion Defendants deny), the subpoenas are overly broad as they request documents from 1996 to November 4, 2004. Plaintiff worked for IDT from April to November 2003. FCC filings from seven years prior to Plaintiff's employment with IDT to a year after Plaintiff's termination from IDT cannot possibly be relevant to any objections he allegedly made about the Teleco Haiti deal during his seven-month period of employment in 2003.

Plaintiff alleges that information concerning FCC filings by AT&T, Sprint and MCI are relevant to proving IDT's alleged violation of these third parties' right to fair competition (i.e., by these companies filing their alleged Teleco Haiti deals and IDT not filing the Teleco Haiti deal, IDT allegedly obtained an improper competitive advantage). This is not a claim in this case and Plaintiff has no standing to raise such an argument on behalf of these companies.

Plaintiff also attempts to justify his pursuit of the filing practices of AT&T, Sprint and MCI on his involvement in the Department of Justice's investigation into Teleco Haiti. Plaintiff and his counsel are neither governmental agents nor do they stand in the shoes of the Attorney General to undertake investigations for the government. IDT has repeatedly explained to Plaintiff and his counsel that Plaintiff's RICO claim was dismissed with prejudice on Defendants' motion to dismiss and, therefore, Plaintiff's desire to prove the alleged illegality of the Teleco Haiti deal is irrelevant to the case.

For all these reasons, Plaintiff's subpoenas to AT&T, Sprint and Verizon should

be quashed.

## POINT I

**DEFENDANTS HAVE STANDING TO MOVE TO QUASH THE SUBPOENAS SERVED ON AT&T, SPRINT AND VERIZON.**

Generally, a party has standing to seek the modification or quashing of a subpoena upon a third party when the moving party claims that a personal right or privilege is implicated. *Directv, Inc. v. Richards*, 2005 WL 1514187, *1 (D.N.J. 2005). Defendants have sufficient standing to bring this Motion as they have a personal right to limit the scope of discovery in this case pursuant to Fed.R.Civ.P. 26 to information and documentation that is relevant or reasonably calculated to lead to the discovery of admissible evidence. They also have a personal right to protect themselves from Plaintiff's misuse of this litigation process to prosecute (1) unfair competition claims for which he has no standing or claim in the case, (2) a RICO claim that has been dismissed with prejudice, and (3) a Department of Justice investigation where neither he nor his counsel are governmental agents.

## POINT II

**THE SUBPOENAS TO AT&T, SPRINT AND VERIZON SHOULD BE QUASHED BECAUSE THEY REQUEST INFORMATION THAT IS NEITHER RELEVANT NOR REASONABLY CALCULATED TO LEAD TO THE DISCOVERY OF ADMISSIBLE EVIDENCE IN THE PRESENT LITIGATION.**

It is well settled that the scope of discovery under a subpoena is the same as the scope of discovery under Rules 26(b) and 34 of the Federal Rules of Civil Procedure. Specifically, Rule 26(b)(1) allows parties to "obtain discovery regarding any matter, not privileged, which is relevant to the claim or defense of any party". Relevant information need not be admissible at the trial if the discovery appears "reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1) and 45(d)(1). The

4

Advisory Committees' Note to the 1970 Amendment to Rule 45 states that the 1970

Amendments "make it clear that the scope of discovery through a subpoena is the same

as that applicable to Rule 34 and other discovery rules." Therefore, determining

whether a request contained in a subpoena duces tecum is overly broad or seeks

irrelevant information should be decided under the same standards set forth in Rule

26(b) as applied to Rule 34 requests for production. Furthermore, Plaintiff's request

must have a nexus to the issues raised in the complaint. *Federal Deposit Ins. Corp. v.*

*Mercantile Nat. Bank of Chicago*, 84 F.R.D. 345, 351 (N.D. Ill. 1979).

Plaintiff's subpoenas to AT&T, Sprint and Verizon request all documents and

modifications to documents filed by these companies between 1996 and November 4,

2004 "on the Haiti route or relating to Telecommunications D'Haiti," (Lajewski Dec.,

Exs. A through C.) These requests are overly broad, entirely irrelevant to the present

litigation and not reasonably calculated to lead to the discovery of admissible evidence

in the case.

Plaintiff claims the documents subpoenaed are relevant to his CEPA claim. To

prevail on this claim, Plaintiff must prove the following elements:

> (1) that he reasonably believed that his employer's conduct was
> violating either a law or a rule or regulation promulgated pursuant to
> law;
>
> (2) that he performed whistle-blowing activity described in *N.J.S.A.*
> 34:19-3a, c(1) or c(2);
>
> (3) an adverse employment action was taken against him; and
>
> (4) a causal connection exists between the whistle-blowing activity
> and the adverse employment action.

*Kolb v. Burns*, 320 *N.J. Super.* 467, 476 (App. Div. 1999).

The filing practices of AT&T, Sprint and Verizon have no nexus to the issues

raised in the Complaint and cannot conceivably aid Plaintiff in proving his CEPA case.

For example, the filing practices of AT&T, Sprint or Verizon have no bearing on whether

Plaintiff reasonably believed IDT allegedly paid-off President Aristide or IDT's not filing

the Teleco Haiti deal with the FCC violated some law or regulation.  Nor do the

documents have any bearing on whether Plaintiff performed whistle-blowing activity,

whether an adverse employment action was taken against him, or whether a causal

connection exists between the alleged whistle-blowing activity and the adverse

employment action as required to prove a CEPA claim.

Likewise, it is undisputed that Plaintiff's only allegation in this case concerns

IDT's initial Teleco Haiti deal.  Since Plaintiff's CEPA claim is not premised on any

alleged modification to the Teleco Haiti deal, Plaintiff cannot argue that modification

filing practices of other carriers would lead to the discovery of admissible evidence on

his CEPA claim.

As set forth in the Introduction section, whether or not IDT filed the Teleco Haiti

deal with the FCC was not raised as a basis for Plaintiff's CEPA claim when this case

was filed.  It was an alleged issue discovered and raised by Plaintiff's counsel in March

2005 – 16 months after Plaintiff's termination and a year after this case was filed – in

support of an Order to Show Cause to unseal portions of the Complaint that had

previously been sealed by the Court. (Lajewski Dec., 3/8/05 Transcript at Ex. D, T.8:6-

10:16, T.14:13-18; 3/7/05 email from William Perniciaro to FCC representative James

Ball at Ex. E.)  Thus, since the issue of whether IDT filed the Teleco Haiti deal with the

FCC is irrelevant to Plaintiff's case, discovery concerning whether or not carriers other

than IDT file such deals with the FCC is even further removed from relevancy in the

case.

6

Even if the issue of whether IDT filed the Teleco Haiti deal with the FCC was relevant to the case, it is undisputed that IDT did not file the Teleco Haiti deal with the FCC because IDT did not (and still does not) believe it was legally required to do so and sought to protect the confidential and proprietary nature of the deal by not making it public. There is no dispute on this fact in the case and any filings by AT&T, Sprint or Verizon are irrelevant and unnecessary.

Plaintiff argues that how other carriers act is relevant to proving the industry standard. What is or is not the industry standard (if there even is one) on filing of various telecommunication deals is irrelevant to Plaintiff's CEPA claim. Indeed, documentation from AT&T, Sprint or Verizon as to which deals they file does not go to proving any industry standard because it does not provide evidence as to which various carriers do NOT file such deals and why. Likewise, as it is undisputed that AT&T, Sprint and Verizon are "First Tier Carriers" while IDT is a "Second Tier Carrier," AT&T, Sprint and Verizon are not even proper comparators as to what an "industry standard" may be for Second Tier carriers.

Plaintiff also claims what other carriers file is relevant to proving some alleged illegal conduct by IDT in support of Plaintiff's CEPA claim. Proof of wrongful conduct is not an element of a CEPA claim and, thus, Plaintiff does not have to prove alleged illegal conduct. *Gerard v. Camden County Health Services Center*, 348 N.J. Super. 514, 522 (App. Div. 2002)(rejecting a threshold obligation upon a CEPA plaintiff to establish that an employer in fact violated a law or regulation and holding that a CEPA plaintiff need not prove an actual violation thereof to establish a CEPA claim). Plaintiff's RICO claim, which did allege wrongful conduct by IDT, was dismissed with prejudice. Plaintiff should not be allowed to continue to litigate that claim under the guise of his

7

CEPA claim.

Likewise, Plaintiff's counsel has been very open in his and Plaintiffs' continuing attempts to push a governmental investigation into Teleco Haiti and IDT's deal with Teleco Haiti, as well as their belief that IDT engaged in unfair competition with other carriers by not filing the Teleco Haiti deal. Plaintiff and his counsel lack standing both in relation to prosecuting some governmental investigation and in pursuing some unfair competition claim on behalf of IDT's alleged competitors. They should not be allowed to misuse the subpoena process to further such improper pursuits.

Finally, the time period for which Plaintiff seeks documents from AT&T, Sprint or Verizon is also overly broad and harassing. Plaintiff was employed by IDT from April 2003 until November 2003, and the Complaint does not contain any allegations predating Plaintiff's employment with IDT. There is simply no basis for Plaintiff's demand for AT&T, Sprint and Verizon filings from 1996 through November 4, 2004; such information cannot possibly form the basis for or assist in proving his alleged whistle-blowing activity between April and November 2003.

### POINT III

**PLAINTIFF DOES NOT HAVE GOOD CAUSE TO REQUEST THE DOCUMENTS HE SEEKS PURSUANT TO RULES 34 AND 45 OF THE FEDERAL RULES OF CIVIL PROCEDURE.**

The AT&T, Sprint and Verizon Subpoenas should also be quashed because Plaintiff cannot demonstrate good cause for the requested documents sought in the subpoenas. Rule 45 of the Federal Rules of Civil Procedure does not provide a reprieve from the requirement that a showing of good cause as required by Rule 34 must support a request for production of documents. When a subpoena duces tecum is directed to a party, the requirement of good cause contained in Rule 34 is read into the

8

request under Rule 45(b).  Generally, Rule 45 is *in pari* material with Rule 34, and good cause must be shown for the production of documents sought via subpoena pursuant to Rule 45.  *Connecticut Mut. Life Ins. Co. v. Shields*, 17 F.R.D. 273, 275 (S.D.N.Y. 1955).

When a party objects to enforcement of a subpoena duces tecum, the burden is on the party seeking production of documents to make a showing of good cause.  That is, the requesting party must establish that the requested documents are necessary to establish his claim or defense, or that denial of production will unduly prejudice preparation of his case or cause him hardship or injustice.  *U.S. v. Am. Optical Co.*, 39 F.R.D. 580, 583 (N.D. Cal. 1966).  Plaintiff cannot and has not met this burden.

Plaintiff has the burden of proving that the denial of the production of documents regarding the filings of AT&T, Sprint and Verizon will unduly prejudice preparation of his CEPA case or cause him hardship or injustice.  It is impossible for Plaintiff to make this showing because, as discussed above, the requested documents do not relate to Plaintiff's claims or Defendants' defenses.  Therefore, Plaintiff cannot argue that quashing these subpoenas would unduly prejudice him.  Accordingly, Plaintiff's subpoenas to AT&T, Sprint and Verizon should be quashed.

## CONCLUSION

The AT&T, Sprint and Verizon Subpoenas request documents that are completely irrelevant to the remaining allegations of the Complaint and are not reasonably calculated to lead to the discovery of admissible evidence to prove Plaintiff's CEPA claim.  The subpoenas are also overly broad as they request documents from an irrelevant time period and from irrelevant third-parties not party to this case.  Plaintiff cannot show good cause for the requested documents as required by the Federal Rules of Civil Procedure and, accordingly, Defendants respectfully request that an Order be

entered quashing Plaintiff's Subpoena to AT&T, Subpoena to Sprint and Subpoena to

Verizon.

Respectfully Submitted,

COUGHLIN DUFFY LLP

AND

ROBINSON & LIVELLI

Dated: March 19, 2007

By: ___/s/ Leslie A. Lajewski_____
Leslie A. Lajewski
Attorneys for Defendants IDT Corporation,
Howard S. Jonas, Motti Lichtenstein, Jack
Lerer, David Schropfer, Avi Lazar, Robert
Schiff, Michael Levine, Jonathan Levy, Alex
Schwarz, James A. Courter, Joyce Mason,
and John Cate

10

**Steven Luckner**

ɔm:     njdefiling@njd.uscourts.gov
**Sent:**   Tuesday, March 20, 2007 11:01 AM
**To:**     ecfhelp@njd.uscourts.gov
**Subject:** Activity in Case 2:04-cv-01454-JCL-MF JEWETT v. IDT CORPORATION et al Set/Reset Motion and R&R
          Deadlines/Hearings

This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.
***NOTE TO PUBLIC ACCESS USERS*** You may view the filed documents once without charge. To avoid later charges, download a copy of each document during this first viewing.

## U.S. District Court

## District of New Jersey [LIVE]

## Notice of Electronic Filing

The following transaction was entered on 3/20/2007 at 11:01 AM EDT and filed on 3/20/2007
**Case Name:**      JEWETT v. IDT CORPORATION et al
**Case Number:**   2:04-cv-1454
**Filer:**
**Document Number:** No document attached

**Docket Text:**
Set Deadlines as to [206] MOTION to Quash *the Subpoena served by plaintiff on the United States Department of Justice,* [208] MOTION to Quash *Subpoenas Served by Plaintiff on Fred Beliard, Jean R. Duperval and Alphonse Inevil,* [207] MOTION to Quash *Subpoenas served by plaintiff on AT&T, Inc., Sprint Nextel Corporation and Verizon Communications, Inc.,* [204] MOTION to Quash *Subpoena Served By Plaintiff On The New Jersey Department Of Labor.* Motion Hearing set for 4/23/2007 before Judge John C. Lifland. [PLEASE BE ADVISED THAT THIS MOTION WILL BE DECIDED ON THE PAPERS UNLESS OTHERWISE NOTIFIED BY THE COURT] (DD, )

**2:04-cv-1454 Notice has been electronically mailed to:**

KERRIE R. HESLIN    kheslin@carellabyrne.com, usdcef@carellabyrne.com

LESLIE A. LAJEWSKI    llajewski@coughlinduffy.com, courtfilings@coughlinduffy.com

STEVEN J. LUCKNER    sluckner@coughlinduffy.com, sluckner@comcast.net

WILLIAM P. PERNICIARO    wperni@msn.com, laur27@msn.com

DONALD A. ROBINSON    drobinson@robinsonlivelli.com, graffield@robinsonlivelli.com

Γ⁻HAEL S. WEINSTEIN    mweinstein@rfbclaw.com

ALFRED M. WOLIN    amw@saiber.com

**2:04-cv-1454 Notice has been delivered by other means to:**

**Steven Luckner**

ᴜm:      njdefiling@njd.uscourts.gov

Sent:    Thursday, April 05, 2007 11:56 AM

To:      ecfhelp@njd.uscourts.gov

Subject: Activity in Case 2:04-cv-01454-JCL-MF JEWETT v. IDT CORPORATION et al Set/Reset Motion and R&R
Deadlines/Hearings

This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail
because the mail box is unattended.
***NOTE TO PUBLIC ACCESS USERS*** You may view the filed documents once without charge. To avoid
later charges, download a copy of each document during this first viewing.

**U.S. District Court**

**District of New Jersey [LIVE]**

**Notice of Electronic Filing**

The following transaction was entered on 4/5/2007 at 11:55 AM EDT and filed on 4/5/2007

**Case Name:**      JEWETT v. IDT CORPORATION et al

**Case Number:**    2:04-cv-1454

**Filer:**

**ʼ  ᴜment Number:** No document attached

**Docket Text:**
Set Deadlines as to [236] MOTION for Protective Order *of Discovery Pursuant to Rule 26(c)*. Motion Hearing set for
5/14/2007 before Judge John C. Lifland. [PLEASE BE ADVISED THAT THIS MOTION WILL BE DECIDED ON
THE PAPERS UNLESS OTHERWISE NOTIFIED BY THE COURT] (DD, )


**2:04-cv-1454 Notice has been electronically mailed to:**

LESLIE A. LAJEWSKI    llajewski@coughlinduffy.com, courtfilings@coughlinduffy.com

STEVEN J. LUCKNER    sluckner@coughlinduffy.com, sluckner@comcast.net

WILLIAM P. PERNICIARO    wperni@msn.com, laur27@msn.com

DONALD A. ROBINSON    drobinson@robinsonlivelli.com, graffield@robinsonlivelli.com

MICHAEL S. WEINSTEIN    mweinstein@rfbclaw.com

ALFRED M. WOLIN    amw@saiber.com

**2:04-cv-1454 Notice has been delivered by other means to:**

# U.S. District Court
## District of New Jersey [LIVE] (Newark)
## CIVIL DOCKET FOR CASE #: 2:04-cv-01454-JCL-MF

JEWETT v. IDT CORPORATION et al
Assigned to: Judge John C. Lifland
Referred to: Magistrate Judge Mark Falk
Case in other court: Third Circuit Court of Appeals, 06-04032
Cause: 28:1332 Diversity-Employment Discrimination

Date Filed: 03/29/2004
Jury Demand: Both
Nature of Suit: 442 Civil Rights: Jobs
Jurisdiction: Federal Question

**Plaintiff**

**D. MICHAEL JEWETT**            represented by **WILLIAM P. PERNICIARO**
84 NEW DORP PLAZA
STATEN ISLAND, NY 10306
718-667-5000
Email: wperni@msn.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**IDT CORPORATION**             represented by **ALFRED M. WOLIN**
SAIBER, SCHLESINGER, SATZ &
GOLDSTEIN
ONE GATEWAY CENTER
NEWARK, NJ 07102
(973) 622-3333
Email: amw@saiber.com
*ATTORNEY TO BE NOTICED*

**NICHOLAS J. FALCONE**
FOX ROTHSCHILD, LLP
75 EISENHOWER PARKWAY
ROSELAND, NJ 07068
(973) 994-7515
Email: nfalcone@foxrothschild.com
*TERMINATED: 12/21/2006*
*ATTORNEY TO BE NOTICED*

**STEVEN J. LUCKNER**
COUGHLIN DIFFY
350 MOUNT KEMBLE AVENUE
P.O. BOX 1917
MORRISTOWN, NJ 07962

973-631-6065
Email: sluckner@coughlinduffy.com
*ATTORNEY TO BE NOTICED*

**DONALD A. ROBINSON**
ROBINSON & LIVELLI, ESQS.
TWO PENN PLAZA EAST
SUITE 1100
NEWARK, NJ 07105-2237
(973) 690-5400
Email: drobinson@robinsonlivelli.com
*ATTORNEY TO BE NOTICED*

**LESLIE A. LAJEWSKI**
COUGHLIN DUFFY
350 MOUNT KEMBLE AVENUE
P.O. BOX 1917
MORRISTOWN, NJ 07962
973-631-6061
Email: llajewski@coughlinduffy.com
*ATTORNEY TO BE NOTICED*

**LYNELLE J. SLIVINSKI**
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, PC
10 MADISON AVENUE
SUITE 402
MORRISTOWN, NJ 07960
(973) 656-1600
Email: lynelle.slivinski@odnss.com
*TERMINATED: 06/14/2005*
*ATTORNEY TO BE NOTICED*

**Defendant**

**HOWARD S. JONAS**                    represented by **ALFRED M. WOLIN**
(See above for address)
*ATTORNEY TO BE NOTICED*

**STEVEN J. LUCKNER**
(See above for address)
*ATTORNEY TO BE NOTICED*

**DONALD A. ROBINSON**
(See above for address)
*ATTORNEY TO BE NOTICED*

**LESLIE A. LAJEWSKI**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**MOTTI LICHTENSTEIN**　　　　represented by　**ALFRED M. WOLIN**
(See above for address)
*ATTORNEY TO BE NOTICED*

**STEVEN J. LUCKNER**
(See above for address)
*ATTORNEY TO BE NOTICED*

**DONALD A. ROBINSON**
(See above for address)
*ATTORNEY TO BE NOTICED*

**LESLIE A. LAJEWSKI**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**JACK LEHR**　　　　represented by　**LESLIE A. LAJEWSKI**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**ALFRED M. WOLIN**
(See above for address)
*ATTORNEY TO BE NOTICED*

**STEVEN J. LUCKNER**
(See above for address)
*ATTORNEY TO BE NOTICED*

**DONALD A. ROBINSON**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**DAVID SCHROPFER**　　　　represented by　**ALFRED M. WOLIN**
(See above for address)
*ATTORNEY TO BE NOTICED*

**STEVEN J. LUCKNER**
(See above for address)
*ATTORNEY TO BE NOTICED*

**DONALD A. ROBINSON**
(See above for address)
*ATTORNEY TO BE NOTICED*

**LESLIE A. LAJEWSKI**
(See above for address)

*ATTORNEY TO BE NOTICED*

**Defendant**

**AVI LAZAR**                          represented by **ALFRED M. WOLIN**
(See above for address)
*ATTORNEY TO BE NOTICED*

**STEVEN J. LUCKNER**
(See above for address)
*ATTORNEY TO BE NOTICED*

**DONALD A. ROBINSON**
(See above for address)
*ATTORNEY TO BE NOTICED*

**LESLIE A. LAJEWSKI**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Robert Schiff**                      represented by **ALFRED M. WOLIN**
(See above for address)
*ATTORNEY TO BE NOTICED*

**STEVEN J. LUCKNER**
(See above for address)
*ATTORNEY TO BE NOTICED*

**DONALD A. ROBINSON**
(See above for address)
*ATTORNEY TO BE NOTICED*

**LESLIE A. LAJEWSKI**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**MICHAEL LEVINE**                     represented by **ALFRED M. WOLIN**
(See above for address)
*ATTORNEY TO BE NOTICED*

**STEVEN J. LUCKNER**
(See above for address)
*ATTORNEY TO BE NOTICED*

**DONALD A. ROBINSON**
(See above for address)
*ATTORNEY TO BE NOTICED*

**LESLIE A. LAJEWSKI**

(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**JONATHAN LEVY**                    represented by   **ALFRED M. WOLIN**
(See above for address)
*ATTORNEY TO BE NOTICED*

**STEVEN J. LUCKNER**
(See above for address)
*ATTORNEY TO BE NOTICED*

**DONALD A. ROBINSON**
(See above for address)
*ATTORNEY TO BE NOTICED*

**LESLIE A. LAJEWSKI**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**ALEX SCHWARTZ**                    represented by   **ALFRED M. WOLIN**
(See above for address)
*ATTORNEY TO BE NOTICED*

**STEVEN J. LUCKNER**
(See above for address)
*ATTORNEY TO BE NOTICED*

**DONALD A. ROBINSON**
(See above for address)
*ATTORNEY TO BE NOTICED*

**LESLIE A. LAJEWSKI**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**JAMES A. COURTER**                 represented by   **ALFRED M. WOLIN**
(See above for address)
*ATTORNEY TO BE NOTICED*

**STEVEN J. LUCKNER**
(See above for address)
*ATTORNEY TO BE NOTICED*

**DONALD A. ROBINSON**
(See above for address)
*ATTORNEY TO BE NOTICED*

LESLIE A. LAJEWSKI
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**JOYCE MASON**                    represented by    **ALFRED M. WOLIN**
(See above for address)
*ATTORNEY TO BE NOTICED*

**STEVEN J. LUCKNER**
(See above for address)
*ATTORNEY TO BE NOTICED*

**DONALD A. ROBINSON**
(See above for address)
*ATTORNEY TO BE NOTICED*

LESLIE A. LAJEWSKI
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**JOHN CATE**                      represented by    **ALFRED M. WOLIN**
(See above for address)
*ATTORNEY TO BE NOTICED*

**STEVEN J. LUCKNER**
(See above for address)
*ATTORNEY TO BE NOTICED*

**DONALD A. ROBINSON**
(See above for address)
*ATTORNEY TO BE NOTICED*

LESLIE A. LAJEWSKI
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**ADRIAN CORR**                    represented by    **KERRIE R. HESLIN**
*TERMINATED: 01/12/2006*                             NUKK-FREEMAN & CERRA, PC
636 Morris Turnpike, Suite 2F
Short Hills, NJ 07078
(973) 564-9100
Fax: (973) 564-9112
Email: kheslin@nfclegal.com
*TERMINATED: 01/12/2006*
*LEAD ATTORNEY*

**Defendant**

**MOUNT SALEM MANAGEMENT LTD.**
*TERMINATED: 01/12/2006*

represented by **MICHAEL S. WEINSTEIN**
ROBERTSON, FREILICH, BRUNO & COHEN, LLC
THE LEGAL CENTER - 9TH FLOOR
ONE RIVERFRONT PLAZA
NEWARK, NJ 07102-5497
(973) 848-2100
Email: mweinstein@rfbclaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**JOHN DOE**
*NUMBERS ONE THROUGH TEN, FICTITIOUS NAMES, REAL NAMES BEING UNKNOWN, REPRESENTING THE ENTITIES OR INDIVIDUALS WHO ENGAGED IN UNLAWFUL RACKETEERING PRACTICES; WHO DEPRIVED PLAINTIFF OF EARNINGS AND WHO SUBJECTED HIM TO UNLAWFUL EMPLOYMENT ETC.*

**Counter Claimant**

**Robert Schiff**

represented by **LESLIE A. LAJEWSKI**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**MICHAEL LEVINE**

represented by **LESLIE A. LAJEWSKI**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**JONATHAN LEVY**

represented by **LESLIE A. LAJEWSKI**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**ALEX SCHWARTZ**

represented by **LESLIE A. LAJEWSKI**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**JAMES A. COURTER**

represented by **LESLIE A. LAJEWSKI**

(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**JOYCE MASON**                    represented by    **LESLIE A. LAJEWSKI**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**JOHN CATE**                     represented by    **LESLIE A. LAJEWSKI**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**HOWARD S. JONAS**               represented by    **LESLIE A. LAJEWSKI**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**MOTTI LICHTENSTEIN**            represented by    **LESLIE A. LAJEWSKI**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**JACK LEHR**                     represented by    **LESLIE A. LAJEWSKI**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**DAVID SCHROPFER**               represented by    **LESLIE A. LAJEWSKI**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**AVI LAZAR**                     represented by    **LESLIE A. LAJEWSKI**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Counter Defendant**

## D. MICHAEL JEWETT

**Counter Claimant**

**Robert Schiff**                    represented by **LESLIE A. LAJEWSKI**
                                     (See above for address)
                                     *LEAD ATTORNEY*
                                     *ATTORNEY TO BE NOTICED*

**Counter Claimant**

**MICHAEL LEVINE**                   represented by **LESLIE A. LAJEWSKI**
                                     (See above for address)
                                     *LEAD ATTORNEY*
                                     *ATTORNEY TO BE NOTICED*

**Counter Claimant**

**JONATHAN LEVY**                    represented by **LESLIE A. LAJEWSKI**
                                     (See above for address)
                                     *LEAD ATTORNEY*
                                     *ATTORNEY TO BE NOTICED*

**Counter Claimant**

**ALEX SCHWARTZ**                    represented by **LESLIE A. LAJEWSKI**
                                     (See above for address)
                                     *LEAD ATTORNEY*
                                     *ATTORNEY TO BE NOTICED*

**Counter Claimant**

**JAMES A. COURTER**                 represented by **LESLIE A. LAJEWSKI**
                                     (See above for address)
                                     *LEAD ATTORNEY*
                                     *ATTORNEY TO BE NOTICED*

**Counter Claimant**

**JOYCE MASON**                      represented by **LESLIE A. LAJEWSKI**
                                     (See above for address)
                                     *LEAD ATTORNEY*
                                     *ATTORNEY TO BE NOTICED*

**Counter Claimant**

**JOHN CATE**                        represented by **LESLIE A. LAJEWSKI**
                                     (See above for address)
                                     *LEAD ATTORNEY*
                                     *ATTORNEY TO BE NOTICED*

**Counter Claimant**

**IDT CORPORATION**                  represented by **LESLIE A. LAJEWSKI**
                                     (See above for address)
                                     *LEAD ATTORNEY*
                                     *ATTORNEY TO BE NOTICED*

**Counter Claimant**

**HOWARD S. JONAS**                     represented by   **LESLIE A. LAJEWSKI**
                                                         (See above for address)
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

**Counter Claimant**

**MOTTI LICHTENSTEIN**                  represented by   **LESLIE A. LAJEWSKI**
                                                         (See above for address)
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

**Counter Claimant**

**JACK LEHR**                           represented by   **LESLIE A. LAJEWSKI**
                                                         (See above for address)
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

**Counter Claimant**

**DAVID SCHROPFER**                     represented by   **LESLIE A. LAJEWSKI**
                                                         (See above for address)
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

**Counter Claimant**

**AVI LAZAR**                           represented by   **LESLIE A. LAJEWSKI**
                                                         (See above for address)
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

V.

**Counter Defendant**

**D. MICHAEL JEWETT**

| Date Filed | # | Docket Text |
|---|---|---|
| 03/31/2004 | | Summons Issued as to JOHN CATE, ADRIAN CORR, JAMES A. COURTER, IDT CORPORATION, D. MICHAEL JEWETT, JOHN DOE, HOWARD S. JONAS, AVI LAZAR, JACK LEHR, MICHAEL LEVINE, JONATHAN LEVY, MOTTI LICHTENSTEIN, JOYCE MASON, MOUNT SALEM MANAGEMENT LTD., DAVID SCHROPFER, ALEX SCHWARTZ, Robert Schiff.Days Due - 20. Mailed to Counsel (dr, ) (Entered: 03/31/2004) |
| 04/02/2004 | | Minute Entry for proceedings held before Judge Mark Falk: Telephone Conference held on 4/2/2004. (McNerney, L) (Entered: 04/05/2004) |
| | | |

| 04/16/2004 | | Minute Entry for proceedings held before Judge Mark Falk: Telephone Conference held on 4/16/2004. (McNerney, L) (Entered: 04/20/2004) |
|---|---|---|
| 04/26/2004 | | Minute Entry for proceedings held before Judge Mark Falk: Telephone Conference held on 4/26/2004. (McNerney, L) (Entered: 05/06/2004) |
| 05/04/2004 | 2 | ORDER that this matter be dismissed unless, w/in 14 days of the date of this Order, pltf., D. Michael Jewett subm. an amended cmp. alleging a proper basis for the Court's subj. matter jurisdiction.. Signed by Judge John C. Lifland on 5/4/04. (DD, ) (Entered: 05/04/2004) |
| 05/12/2004 | | Minute Entry for proceedings held before Judge Mark Falk: Telephone Conference held on 5/12/2004. (McNerney, L) (Entered: 05/14/2004) |
| 06/03/2004 | | CLERKS OFFICE QUALITY CONTROL MESSAGE - The AMENDED CMP. - Doc. # 3 - subm by D. MICHAEL JEWETT on 5/13/04 appear to be duplicates. These subm will remain on the docket unless otherwise ordered by the court. This message is for informational purposes only. (DD, ) (Entered: 06/03/2004) |
| 06/03/2004 | | Summons on AMENDED CMP. Issued as to JOHN CATE, ADRIAN CORR, JAMES A. COURTER, IDT CORPORATION, JOHN DOE, HOWARD S. JONAS, AVI LAZAR, JACK LEHR, MICHAEL LEVINE, JONATHAN LEVY, MOTTI LICHTENSTEIN, JOYCE MASON, MOUNT SALEM MANAGEMENT LTD., DAVID SCHROPFER, ALEX SCHWARTZ, Robert Schiff.Days Due - 20. [mailed to counsel] (DD, ) (Entered: 06/03/2004) |
| 06/07/2004 | 5 | Letter from William P. Perniciaro on behalf of pltf to issue alias summons as to Arian Corr, PO Box 260, butterfield Square, Providenciales, Turks and Caicos Islands, British West Indies. (mn, ) (Entered: 06/07/2004) |
| 06/07/2004 | 6 | Alieas Summons Issued as to ADRIAN CORR for service in British West Indies with registry receipt thereon.Days Due - 20. (mn, ) Additional attachment(s) added on 6/8/2004 (mn, ). (Entered: 06/07/2004) |
| 06/07/2004 | 7 | Letter from William P. Perniciaro on behalf of pltf. to issue an alias summons as to Mount Salem Management, PO Box 260, Butterfield Square, Providenciales, Turks and Caicos Islands, British West Indies. (mn, ) (Entered: 06/07/2004) |
| 06/07/2004 | 8 | Alias Summons Issued as to MOUNT SALEM MANAGEMENT LTD.for service in British West Indies with registry receipt thereon.Days Due - 20. (mn, ) Additional attachment(s) added on 6/8/2004 (mn, ). (Entered: 06/07/2004) |
| 06/21/2004 | 9 | SCHEDULING ORDER: Settlement Conference set for 6/30/2004 03:00 PM before Magistrate Judge Mark Falk. Status Conference set for 6/30/2004 03:00 PM before Magistrate Judge Mark Falk. Signed by Judge Mark Falk on 6/21/04. (bl, ) (Entered: 06/22/2004) |
| 06/21/2004 | 10 | WAIVER OF SERVICE Returned Executed by D. MICHAEL JEWETT. |

| | | |
|---|---|---|
| | | JOHN CATE waiver sent on 5/17/2004, answer due 7/16/2004; JAMES A. COURTER waiver sent on 5/17/2004, answer due 7/16/2004; IDT CORPORATION waiver sent on 5/17/2004, answer due 7/16/2004; HOWARD S. JONAS waiver sent on 5/17/2004, answer due 7/16/2004; AVI LAZAR waiver sent on 5/17/2004, answer due 7/16/2004; JACK LEHR waiver sent on 5/17/2004, answer due 7/16/2004; MICHAEL LEVINE waiver sent on 5/17/2004, answer due 7/16/2004; JONATHAN LEVY waiver sent on 5/17/2004, answer due 7/16/2004; MOTTI LICHTENSTEIN waiver sent on 5/17/2004, answer due 7/16/2004; JOYCE MASON waiver sent on 5/17/2004, answer due 7/16/2004; DAVID SCHROPFER waiver sent on 5/17/2004, answer due 7/16/2004; ALEX SCHWARTZ waiver sent on 5/17/2004, answer due 7/16/2004; Robert Schiff waiver sent on 5/17/2004, answer due 7/16/2004. (jd, ) (Entered: 06/22/2004) |
| 06/24/2004 | 11 | ORDER rescheduling oral argument for 7/12/04 at 3:00 p.m. in Room 457. before Magistrate Judge Mark Falk. Signed by Judge Mark Falk on 6/23/04. (dc, ) (Entered: 06/25/2004) |
| 07/12/2004 | 12 | Minute Entry for proceedings held before Judge Mark Falk: Oral argument held on 7/12/2004. (Tape #F04#50.) (mm) (Entered: 07/14/2004) |
| 07/16/2004 | 13 | MOTION to Dismiss by IDT CORPORATION. (LAJEWSKI, LESLIE) (Entered: 07/16/2004) |
| 07/16/2004 | 14 | MOTION for Disclosure *Rule 7.1 Disclosure Statement* by IDT CORPORATION. (SLIVINSKI, LYNELLE) (Entered: 07/16/2004) |
| 07/19/2004 | | CLERKS OFFICE QUALITY CONTROL MESSAGE - The Motion to dismiss, document no. 13 filed by L. Lajewski on 7/14/2004 was submitted incorrectly as a motion to dismiss. PLEASE RESUBMIT THE motion to dismiss BY 7/21/2004 USING Notice of Intent Dispositive motion under Notices. This submission will remain on the docket unless otherwise ordered by the court. This message is for informational purposes only.*Check list of events to which attorneys have access. . (mn, ) (Entered: 07/19/2004) |
| 07/19/2004 | | CLERKS OFFICE QUALITY CONTROL MESSAGE - The Motion for disclosure, document no. 14 filed by L. Slivinski on 7/16/2004 was submitted incorrectly as a Motion for disclosure. PLEASE RESUBMIT THE Motion for disclosure BY 7/21/2004 USING STATEMENT under Other Documents. This submission will remain on the docket unless otherwise ordered by the court. This message is for informational purposes only.*Check list of events to which attorneys have access. . (mn, ) (Entered: 07/19/2004) |
| 07/19/2004 | 15 | Notice of Intent to submit a Dispositive motion by IDT CORPORATION (LAJEWSKI, LESLIE) (Entered: 07/19/2004) |
| 07/19/2004 | 16 | STATEMENT by IDT CORPORATION. (SLIVINSKI, LYNELLE) (Entered: 07/19/2004) |

| 07/22/2004 | 17 | TRANSCRIPT of Proceedings held on 07/12/04 before Judge Falk. (ce, ) (Entered: 07/27/2004) |
|---|---|---|
| 07/28/2004 | 18 | Return Receipt as to Mount Salem Management, Turks & Caicos, British West Indies [received 7/8/04] (DD, ) (Entered: 07/28/2004) |
| 07/28/2004 | | Update Answer Due Deadline 7/28/04 as to dft., MOUNT SALEM MANAGEMENT LTD. (cs, ) (Entered: 09/08/2004) |
| 08/03/2004 | 19 | ORDER re Dispositive Motion due to be electronicaly filed by 9/8/2004, and be ret. 9/27/04, etc. Signed by Judge John C. Lifland on 8/3/04. (bl, ) (Entered: 08/10/2004) |
| 08/09/2004 | 20 | MEMORANDUM AND ORDER granting in part and denying in part Defendants' motion to seal portions of the Complaint. Defendants are directed to submit an appropriate Order. Signed by Judge Mark Falk on 8/6/04. (dc, ) (Entered: 08/11/2004) |
| 08/18/2004 | 21 | MOTION for Sanctions by JOHN CATE. (Attachments: # 1 Brief Memorandum Of Law In Support of Motion For Sanctions# 2 Certification of Leslie A. Lajewski,Esq.# 3 Text of Proposed Order) (SLIVINSKI, LYNELLE) (Entered: 08/18/2004) |
| 08/19/2004 | | Set Deadlines as to 21 MOTION for Sanctions. Motion returnable for 9/13/2004 10:00 AM in Newark - Courtroom 9 before Magistrate Judge Mark Falk. (jb, ) (Entered: 08/19/2004) |
| 08/19/2004 | 22 | Letter from William Perniciaro to Clerk (bl, ) (Entered: 08/24/2004) |
| 08/26/2004 | 23 | TRANSCRIPT of Proceedings held on 7/12/04 before Judge Falk. PLEASE NOTE: The complete transcript of these proceedings is maintained in paper format on file in the Clerks Office. To request copies of this transcript, contact the Official Court Reporter or Transcription Service who prepared the transcript. (ce, ) (Entered: 08/26/2004) |
| 09/07/2004 | 24 | MOTION to Dismiss *PLAINTIFF'S AMENDED COMPLAINT* by JOHN CATE, JAMES A. COURTER, IDT CORPORATION, HOWARD S. JONAS, AVI LAZAR, MICHAEL LEVINE, JONATHAN LEVY, MOTTI LICHTENSTEIN, JOYCE MASON, DAVID SCHROPFER, ALEX SCHWARTZ, Robert Schiff. (Attachments: # 1 Brief IN SUPPORT OF MOTION TO DISMISS# 2 Certification IN SUPPORT OF MOTION TO DISMISS# 3 Text of Proposed Order DISMISSING COMPLAINT# 4 Brief REPLY BRIEF TO PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS)(LAJEWSKI, LESLIE) (Entered: 09/07/2004) |
| 09/07/2004 | | Setting motion hearing as to 24 MOTION to Dismiss *PLAINTIFF'S AMENDED COMPLAINT*. Motion Hearing set for 10/12/2004 10:00 AM before Judge John C. Lifland. Please be advised that this motion will be decided on the papers unless otherwise notified by the Court(cs, ) (Entered: 09/08/2004) |
| 09/08/2004 | 25 | ORDER granting in part and denying in part defts' motion to seal portions of the complt. and amended complt.; . Signed by Judge Mark |

| | | |
|---|---|---|
| | | Falk on 09/07/04. (nr, ) Modified on 9/8/2004 (nr, ). (Entered: 09/08/2004) |
| 09/08/2004 | | Set Deadlines as to 24 MOTION to Dismiss *PLAINTIFF'S AMENDED COMPLAINT*. Motion Hearing returnable for 10/12/2004 before Judge John C. Lifland. (PLEASE BE ADVISED THAT THIS MOTION WILL BE DECIDED ON THE PAPERS UNLESS OTHERWISE NOTIFIED BY THE COURT). (jb, ) (Entered: 09/08/2004) |
| 09/10/2004 | | Minute Entry for proceedings held before Judge Mark Falk: Telephone Conference held on 9/10/2004. (mm-sl, ) (Entered: 09/12/2004) |
| 09/14/2004 | 26 | TRANSCRIPT of Proceedings held on 07/12/04 before Judge Falk. PLEASE NOTE: The complete transcript of these proceedings is maintained in paper format on file in the Clerks Office. To request copies of this transcript, contact the Official Court Reporter or Transcription Service who prepared the transcript. (ce, ) (Entered: 09/14/2004) |
| 09/20/2004 | 27 | REPLY to Response to Motion re 21 MOTION for Sanctions filed by JOHN CATE. (LAJEWSKI, LESLIE) (Entered: 09/20/2004) |
| 09/22/2004 | 28 | Minute Entry for proceedings held before Judge Mark Falk: Telephone Conference held on 9/22/2004. (Tape #FO4#58.) (mm-sl, ) (Entered: 09/22/2004) |
| 09/29/2004 | 29 | Minute Entry for proceedings held before Judge Mark Falk: Motion held on 9/29/2004. (Tape #F04#58.) (mm-sl, ) (Entered: 09/30/2004) |
| 10/06/2004 | 30 | Letter from pltf's atty. requesting issuance of summons abroad upon deft., ARIAN CORR. (DD, ) (Entered: 10/06/2004) |
| 10/07/2004 | 31 | ORDER denying defts' application for sanctions. Signed by Judge Mark Falk on 10/6/04. (jd, ) (Entered: 10/07/2004) |
| 10/13/2004 | | Minute Entry for proceedings held before Judge Mark Falk: Telephone Conference held on 10/13/2004. (mm-sl, ) (Entered: 10/15/2004) |
| 10/22/2004 | 32 | TRANSCRIPT of Proceedings held on 9/19/04 before Judge Falk. PLEASE NOTE: The complete transcript of these proceedings is maintained in paper format on file in the Clerks Office. To request copies of this transcript, contact the Official Court Reporter or Transcription Service who prepared the transcript. (ce, ) (Entered: 10/22/2004) |
| 10/27/2004 | 33 | WAIVER OF SERVICE Returned Executed by D. MICHAEL JEWETT. ADRIAN CORR waiver sent on 10/18/2004, answer due 12/17/2004. (jd, ) (Entered: 10/28/2004) |
| 11/03/2004 | 34 | WAIVER OF SERVICE Returned Executed by D. MICHAEL JEWETT. MOUNT SALEM MANAGEMENT LTD. waiver sent on 10/25/2004, answer due 12/27/2004. (dc, ) (Entered: 11/08/2004) |
| 11/08/2004 | 36 | Notice of Intent to submit a Dispositive motion to dismiss by MOUNT SALEM MANAGEMENT LTD. (jb, ) (Entered: 11/15/2004) |
| 11/10/2004 | 35 | ORDER scheduling a conference for 12/1/04 at 2:30p.m. Signed by |

| | | Judge Mark Falk on 11/9/04. (bl, ) (Entered: 11/12/2004) |
|---|---|---|
| 11/17/2004 | 37 | AMENDED ORDER re 25 Order Granting in Part and Denying in Part Defendants' Motion to Seal Portions of the Complaint and the Amended Complaints. Signed by Judge Mark Falk on 11/8/04. (dc, ) (Entered: 11/17/2004) |
| 11/17/2004 | 38 | NOTICE by D. MICHAEL JEWETT of dismissal of deft. Adrian Corr only, Count 1 is retained (bl, ) Modified on 1/6/2005 (sr, ). (Entered: 11/17/2004) |
| 11/29/2004 | | Motions No Longer Referred: 21 MOTION for Sanctions (mm-sl, ) (Entered: 11/29/2004) |
| 12/01/2004 | | Minute Entry for proceedings held before Judge Mark Falk : Settlement Conference held on 12/1/2004. (mm-sl, ) (Entered: 12/07/2004) |
| 12/02/2004 | 39 | NOTICE of Appearance by DONALD A. ROBINSON on behalf of all defendants (ROBINSON, DONALD) (Entered: 12/02/2004) |
| 12/10/2004 | 40 | SUMMONS Returned Executed from British, West Indies ADRIAN CORR served on 11/1/2004, answer due 11/22/2004. (DD, ) (Entered: 12/10/2004) |
| 12/16/2004 | 41 | MOTION to Dismiss w/cert. of service by MOUNT SALEM MANAGEMENT LTD.. (Attachments: # 1 brief in support# 2 p/o)(sr, ) (Entered: 12/17/2004) |
| 12/16/2004 | 42 | CROSS MOTION for default judgment purs to Rule 55 FRCP by D. MICHAEL JEWETT. (Attachments: # 1 brief in oppsition to defts motion to dismiss# 2 Affidavit of Michael Jewett in opposition to Salem's motion# 3 Declaration of W. Pernicaro# 4 cont. decl.# 5 cont. decl.)(sr, ) (Entered: 12/17/2004) |
| 12/16/2004 | 43 | REPLY BRIEF in Support re 41 MOTION to Dismiss filed by MOUNT SALEM MANAGEMENT LTD.. (sr, ) (Entered: 12/17/2004) |
| 12/17/2004 | | Set Deadline as to 41 MOTION to Dismiss, 42 MOTION for default judgment purs to Rule 55 FRCP. Motion Hearing set for 1/10/2005 before Judge John C. Lifland. (PLEASE BE ADVISED THAT THIS MOTION WILL BE DECIDED ON THE PAPERS UNLESS OTHERWISE NOTIFIED BY THE COURT) (sr, ) (Entered: 12/17/2004) |
| 12/23/2004 | 44 | MOTION to Strike the affidavits submitted by pltf in opposition to deft. by MOUNT SALEM MANAGEMENT LTD. to dismiss and in support of pltf's motion for a default Judgment and cert. of service. (Attachments: # 1 decl Michael S. Weinstein# 2 part 2# 3 Brief # 4 Text of Proposed Order)(bl, ) (Entered: 12/27/2004) |
| 12/23/2004 | | Set Deadlines as to 44 MOTION to Strike. Motion Hearing set for 2/14/2005 before Judge John C. Lifland. (Please be advised motion to be decided on the papers unless otherwise notified by the Court) (bl, ) (Entered: 12/27/2004) |

| 12/29/2004 | 45 | Pltf's Reply BRIEF in Support of 42 MOTION for default judgment purs to Rule 55 FRCP . (cs, ) (Entered: 12/29/2004) |
|---|---|---|
| 01/04/2005 | | Motions No Longer Referred: 42 MOTION for default judgment purs to Rule 55 FRCP, 44 MOTION to Strike (mm-sl, ) (Entered: 01/04/2005) |
| 01/05/2005 | 46 | MOTION to Dismiss Count 1 of Amended Complt. by ADRIAN CORR. (Attachments: # 1 brief# 2 pltf's brief in opposition# 3 Affidavit of Michael Jewett in opposition# 4 Declaration of W. Perniciaro in opposition# 5 Declaration of Adrian Corr in support# 6 Reply Brief# 7 cert. of service# 8 p/o)(sr, ) (Entered: 01/06/2005) |
| 01/07/2005 | | Set Deadlines as to 46 MOTION to Dismiss. Motion Hearing returnable for 2/14/2005 before John C. Lifland. (PLEASE BE ADVISED THAT THIS MOTION WILL BE DECIDED ON THE PAPERS UNLESS OTHERWISE NOTIFIED BY THE COURT) (jb, ) (Entered: 01/07/2005) |
| 02/18/2005 | 47 | MOTION to Strike portions of pltf's opposition to deft Corr's motion to dismiss count 1 of the Amended Complaint, etc. by ADRIAN CORR. (Attachments: # 1 brief# 2 proposed order)(jd, ) (Entered: 02/18/2005) |
| 02/18/2005 | | Set Deadlines as to 47 MOTION to Strike. Motion Hearing set for 3/14/2005 10:00 AM before Judge John C. Lifland. (Please be advised that this motion will be decided on the papers unless otherwise notified by the court) (jd, ) (Entered: 02/18/2005) |
| 03/02/2005 | 48 | DECLARATION of WILLIAM P. PERNICIARO in support of OTSC by D. MICHAEL JEWETT. (Attachments: # 1 Part 2# 2 Part 3)(DD, ) (Entered: 03/03/2005) |
| 03/07/2005 | 49 | REPLY BRIEF to Response to Motion re 47 MOTION to Strike filed by ADRIAN CORR. (nr, ) (Entered: 03/10/2005) |
| 03/08/2005 | 50 | Minute Entry for proceedings held before Judge Mark Falk: Telephone Conference held on 3/8/2005. (DIGITALLY RECORDED F05#3.) (mm-sl, ) (Entered: 03/11/2005) |
| 03/31/2005 | 51 | TRANSCRIPT of Proceedings held on 3/8/2005 before Judge Falk. PLEASE NOTE: The complete transcript of these proceedings is maintained in paper format on file in the Clerks Office. To request copies of this transcript, contact the Official Court Reporter or Transcription Service who prepared the transcript. (ji, ) (Entered: 03/31/2005) |
| 04/04/2005 | 52 | Scheduling ORDER that pltf's order to show cause is converted to a motion to unseal paragraphs 49 & 52 of the complaint; IDT defts' motion for leave to file a motion for a Protective Order is granted and will be heard with pltf's motion, etc.. Signed by Judge Mark Falk on 4/1/05. (jd, ) (Entered: 04/05/2005) |
| 04/05/2005 | 53 | Minute Entry for proceedings held before Judge Mark Falk: Telephone status conference held on 4/5/2005. (DIGITALLY RECORDED F05#4.) (mm-sl, ) (Entered: 04/06/2005) |
| | | |

| 04/21/2005 | | Minute Entry for proceedings held before Judge Mark Falk: Telephone Conference held on 4/21/2005. (mm, ) (Entered: 04/30/2005) |
|---|---|---|
| 04/25/2005 | 54 | TRANSCRIPT of Proceedings held on 4/5/2005 before Judge Falk. PLEASE NOTE: The complete transcript of these proceedings is maintained in paper format on file in the Clerks Office. To request copies of this transcript, contact the Official Court Reporter or Transcription Service who prepared the transcript. (ji, ) (Entered: 04/25/2005) |
| 04/27/2005 | 55 | NOTICE of Appearance by ALFRED M. WOLIN on behalf of all defendants (WOLIN, ALFRED) (Entered: 04/27/2005) |
| 05/09/2005 | 56 | SCHEDULING ORDER for IDT'S motion for Protective Order; Directing IDT to serve all parties and the Court w/its Motion for Protective Order on or before 4/29/05; Opposition deadline due 5/13/05; Reply deadline due 5/26/05 and all papers in connection with IDT'S motion for a Protective Order shall be served directly to the Chambers of Hon. Mark Falk, U.S.M.J. etc. Signed by Judge Mark Falk on 5/2/05. (cs, ) (Entered: 05/10/2005) |
| 05/20/2005 | 57 | Minute Entry for proceedings held before Judge Mark Falk: Telephone Conference held on 5/20/2005. (DIGITALLY RECORDED F05#5.) (mm, ) (Entered: 05/20/2005) |
| 05/26/2005 | 58 | ORDER SCHEDULING CONFERENCE Case Management Conference set for 6/8/2005 09:00 AM before Magistrate Judge Mark Falk. Signed by Judge Mark Falk on 5/25/05. (dc, ) (Entered: 05/26/2005) |
| 06/07/2005 | 59 | TRANSCRIPT of Proceedings held on May 20, 2005 before Judge Falk. PLEASE NOTE: The complete transcript of these proceedings is maintained in paper format on file in the Clerks Office. To request copies of this transcript, contact the Official Court Reporter or Transcription Service who prepared the transcript. (ji, ) (Entered: 06/07/2005) |
| 06/08/2005 | 60 | Minute Entry for proceedings held before Judge Mark Falk: Oral Argument held on 6/8/2005. (DIGITALLY RECORDED F05#6.) (mm, ) (Entered: 06/08/2005) |
| 06/08/2005 | 61 | AMENDED Minute Entry for proceedings held before Judge Mark Falk: Status Conference held on 6/8/2005. (DIGITALLY RECORDED F05#5.) (mm, ) (Entered: 06/09/2005) |
| 06/09/2005 | 62 | ORDER that there shall be oral argument re defts' motion for a protective order on 7/6/05 @ 10:00 a.m.. Signed by Judge Mark Falk on 6/9/05. (DD, ) (Entered: 06/09/2005) |
| 06/09/2005 | 63 | ORDER that there shall be oral argument re pltfs motion to unseal protions of the cmp. on 7/20/05 @ 10:00 a.m.. Signed by Judge Mark Falk on 6/9/05. (DD, ) (Entered: 06/09/2005) |
| 06/13/2005 | 64 | NOTICE of Appearance by NICHOLAS J. FALCONE on behalf of IDT CORPORATION (FALCONE, NICHOLAS) (Entered: 06/13/2005) |
| 06/13/2005 | 65 | Letter from Lynelle J. Slivinski requesting to be removed from the list of |

| | | attorneys associated with this matter. (jd, ) (Entered: 06/14/2005) |
|---|---|---|
| 06/17/2005 | 66 | NOTICE/OBJECTIONS to Magistrate Judge's Ruling purs to Rule 72(A) by D. MICHAEL JEWETT (DD, ) (Entered: 06/17/2005) |
| 06/21/2005 | 67 | TRANSCRIPT of Proceedings held on 6/8/2005 before Judge Falk. PLEASE NOTE: The complete transcript of these proceedings is maintained in paper format on file in the Clerks Office. To request copies of this transcript, contact the Official Court Reporter or Transcription Service who prepared the transcript. (ji, ) (Entered: 06/21/2005) |
| 06/24/2005 | 68 | RESPONSE. (LAJEWSKI, LESLIE) (Entered: 06/24/2005) |
| 07/06/2005 | 69 | Minute Entry for proceedings held before Judge Mark Falk: Hearing on defendants' motion for protective order held on 7/6/2005. Ordered motion denied without prejudice. (DIGITALLY RECORDED F05#7.) (mm, ) (Entered: 07/07/2005) |
| 07/13/2005 | 70 | ORDER that defts motion for a protective order is denied w/out prejudice. Signed by Judge Mark Falk on 7/13/05. (jd, ) (Entered: 07/14/2005) |
| 07/20/2005 | 73 | Minute Entry for proceedings held before Judge Mark Falk: Hearing on Plaintiff's motion to unseal portions of the complaint held on 7/20/2005. Parties stipulated to unseal portions of the complaint. (DIGITALLY RECORDED F05#7.) (mm, ) (Entered: 07/26/2005) |
| 07/21/2005 | 71 | TRANSCRIPT of Proceedings held on June 8, 2005 before Judge Falk. Court Reporter: Susan B. Callaghan. PLEASE NOTE: The complete transcript of these proceedings is maintained in paper format on file in the Clerks Office. To request copies of this transcript, contact the Official Court Reporter or Transcription Service who prepared the transcript. (ji, ) (Entered: 07/22/2005) |
| 07/21/2005 | 72 | TRANSCRIPT of Proceedings held on July 6, 2005 before Judge Falk. PLEASE NOTE: The complete transcript of these proceedings is maintained in paper format on file in the Clerks Office. To request copies of this transcript, contact the Official Court Reporter or Transcription Service who prepared the transcript. (ji, ) (Entered: 07/22/2005) |
| 07/29/2005 | 74 | ORDER unsealing portions of paragraph 59 of the complaint and agreeing that all other previously sealed portions of paragraphs 42 and 59 remain sealed, as stipulated by the parties. Signed by Judge Mark Falk on 7/29/05. (jd, ) (Entered: 08/01/2005) |
| 09/08/2005 | 75 | MOTION to Supplement Pleading to Amended Cmp. w/attached brief by D. MICHAEL JEWETT. (Attachments: # 1 decl. of William P.Perniciaro# 2 Supplemental Pleading to Amended Cmp. w/cert. of serv.)(DD, ) (Entered: 09/09/2005) |
| 09/09/2005 | | Set Deadlines as to 75 MOTION to supplement pleading to Amended Cmp.. Motion Hearing set for 10/11/2005 before Judge John C. Lifland. PLEASE BE ADVISED THAT THIS MOTION WILL BE DECIDED ON THE PAPERS UNLESS OTHERWISE NOTIFIED BY THE |

| | | |
|---|---|---|
| | | COURT] (DD, ) (Entered: 09/09/2005) |
| 09/12/2005 | 78 | REDACTION to 75 Proposed Amended Complaint by D. MICHAEL JEWETT. (DD, ) (Entered: 09/23/2005) |
| 09/16/2005 | 76 | OPINION (NJLJ). Signed by Judge Mark Falk on 08/06/05. (nr, ) (Entered: 09/21/2005) |
| 09/21/2005 | 77 | Minute Entry for proceedings held before Judge Mark Falk: Telephone Conference held on 9/21/2005. (DIGITALLY RECORDED F05#9.) (mm, ) (Entered: 09/21/2005) |
| 09/28/2005 | 79 | TRANSCRIPT of Proceedings held on July 20 & September 21, 2005 before Judge Falk. PLEASE NOTE: The complete transcript of these proceedings is maintained in paper format on file in the Clerks Office. To request copies of this transcript, contact the Official Court Reporter or Transcription Service who prepared the transcript. (ji, ) (Entered: 09/30/2005) |
| 10/07/2005 | 80 | Minute Entry for proceedings held before Judge Mark Falk: Telephone Conference held on 10/7/2005. (DIGITALLY RECORDED F05#10.) (mm, ) (Entered: 10/11/2005) |
| 10/21/2005 | 81 | TRANSCRIPT of Proceedings held on October 7, 2005 before Judge Falk. PLEASE NOTE: The complete transcript of these proceedings is maintained in paper format on file in the Clerks Office. To request copies of this transcript, contact the Official Court Reporter or Transcription Service who prepared the transcript. (ji, ) (Entered: 10/24/2005) |
| 10/28/2005 | 82 | LETTER-ORDER directing counsel to confer immediately & promptly thereafter, advise the Court as to which motions have been resolved. Oral argument will be held on Thursday, 11/17/05 @ 10:00 a.m. Should defts. believe a motion to dismiss is warranted in Civ. 05-4865, they shall file & serve the necessary papers: opening briefs due 11/18/05; opposition briefs due 11/28/05; reply briefs due 12/5/05. Signed by Judge John C. Lifland on 10/27/05. (DD, ) (Entered: 10/28/2005) |
| 11/17/2005 | 83 | Minute Entry for proceedings held before Judge John C. Lifland : Motion Hearing held on 11/17/2005 re 47 MOTION to Strike filed by ADRIAN CORR,,(MOOT) 41 MOTION to Dismiss filed by MOUNT SALEM MANAGEMENT LTD.,(GRANTED) 42 MOTION for default judgment purs to Rule 55 FRCP filed by D. MICHAEL JEWETT,(DENIED) 24 MOTION to Dismiss *PLAINTIFF'S AMENDED COMPLAINT* filed by Robert Schiff, IDT CORPORATION,, MICHAEL LEVINE,, HOWARD S. JONAS,, MOTTI LICHTENSTEIN, DAVID SCHROPFER,, AVI LAZAR,, JONATHAN LEVY,, ALEX SCHWARTZ,, JAMES A. COURTER,, JOYCE MASON,, JOHN CATE,(GRANTED IN PART; DENIED IN PART) 46 MOTION to Dismiss filed by ADRIAN CORR, (GRANTED) 44 MOTION to Strike filed by MOUNT SALEM MANAGEMENT LTD., (MOOT). OTBS. (Court Reporter L. Johnson.) (jb, ) (Entered: 11/21/2005) |
| 12/28/2005 | 84 | LETTER-ORDER re inconsistency in rulings during oral argument on |

| | | 11/17/05.. Signed by Judge John C. Lifland on 12/27/05. (DD, ) (Entered: 12/28/2005) |
|---|---|---|
| 12/29/2005 | 85 | ORDER that Count One, NJ Anti-Racketeering Act is dismissed w/prejudice as to all Defts because the Pltf. lacks standing to bring this claim; as a result of the dismissal of Count One, Deft. Adrian Corr's Motion to Dismiss Count One & Motion to Strke Portion of Pltf's Opposition to Deft. Corr's Motion to Dismiss Count One are moot; that Counts Two - Six against Mont Salem Management, Ltd. are voluntarily dismissed; as a result of the dismissal of Count One & the voluntary dismissal of Counts Two - Six, Deft. Mont Salem Management's Motion to Dismiss & Motion to Strike Portions of Pltf's Opposition to Deft. Mont Salem's Motion to Dismiss are moot; that Pltf's cross-motion for default judgment against Deft. Mont Salem Management is denied; granting in part & denying in part Count Two, NJ Conscientious Employee Protection Act; granting in part & denying part Count Three, NJ Law Against Discrtimination; Count Four, Defamation, Deft. IDT's motion to dismiss is denied. Count Five, Tortious Interference w/Prospective Economic Advantage, Deft. IDT's motion to dismiss is granted. Count Six, Intentional Infliction of Emotional Distress, Pltf. is to amend cmp. w/in 30 days of this order; Defts. IDT & the twelve individual IDT Defts. shall file Answer to the Second Amended Cmp. w/in 20 days after the entry of this Order.. Signed by Judge John C. Lifland on 12/28/05. (DD, ) (Entered: 12/29/2005) |
| 01/04/2006 | 86 | First MOTION for Reconsideration re 85 Order,,,,, *Permission Requested* by D. MICHAEL JEWETT. (PERNICIARO, WILLIAM) (Entered: 01/04/2006) |
| 01/04/2006 | | The (Motion - Doc. #86) filed by (W. PERNICIARO) on (1/4/06) was submitted incorrectly as a (MOTION). PLEASE RESUBMIT THE ( Motion for Reconsideration) BY (1/10/06) USING (Other Documents as Category - Letter type the word BRIEF as Event). This submission will remain on the docket unless otherwise ordered by the court. This message is for informational purposes only. (dh, ) (Entered: 01/06/2006) |
| 01/09/2006 | 87 | RESPONSE. (FALCONE, NICHOLAS) (Entered: 01/09/2006) |
| 01/11/2006 | 88 | Letter from William Perniciaro. (PERNICIARO, WILLIAM) (Entered: 01/11/2006) |
| 01/11/2006 | 89 | Letter from William Perniciaro. (PERNICIARO, WILLIAM) (Entered: 01/11/2006) |
| 01/11/2006 | 90 | AMENDED COMPLAINT against Robert Schiff, MICHAEL LEVINE, JONATHAN LEVY, ALEX SCHWARTZ, JAMES A. COURTER, JOYCE MASON, JOHN CATE, JOHN DOE, IDT CORPORATION, HOWARD S. JONAS, MOTTI LICHTENSTEIN, JACK LEHR, DAVID SCHROPFER, AVI LAZAR , filed by D. MICHAEL JEWETT.(DD, ) (Entered: 01/12/2006) |
| 01/12/2006 | | CLERKS OFFICE QUALITY CONTROL MESSAGE - The (LETTERS - Doc. #88 & 89) submitted by (W.PERNICIARO) on (1/11/06) did not |

| | | contain a proper electronic signature (s/). PLEASE RESUBMIT THE DOCUMENT WITH THE PROPER ELECTRONIC SIGNATURE BY (1/17/06). This submission will remain on the docket unless otherwise ordered by the court. This message is for informational purposes only. (DD, ) (Entered: 01/12/2006) |
|---|---|---|
| 01/18/2006 | 91 | ANSWER to Amended Complaint *(SECOND AMENDED COMPLAINT)*, COUNTERCLAIM against D. MICHAEL JEWETT by Robert Schiff, MICHAEL LEVINE, JONATHAN LEVY, ALEX SCHWARTZ, JAMES A. COURTER, JOYCE MASON, JOHN CATE, HOWARD S. JONAS, MOTTI LICHTENSTEIN, JACK LEHR, DAVID SCHROPFER, AVI LAZAR.(LAJEWSKI, LESLIE) (Entered: 01/18/2006) |
| 01/23/2006 | 92 | ORDER that Jewett may amend his supplemental cmp. to include an abuse of process claim; that the part of this Court's 12/29/05 Order prohibiting Jewett from filing an abuse of process claim is vacated.. Signed by Judge John C. Lifland on 1/23/06. (DD, ) (Entered: 01/24/2006) |
| 01/25/2006 | 93 | AMENDED DOCUMENT by D. MICHAEL JEWETT. *Amended Supplemental Pleading.* (PERNICIARO, WILLIAM) (Entered: 01/25/2006) |
| 01/25/2006 | 94 | AMENDED DOCUMENT by D. MICHAEL JEWETT. *Third Amended Complaint.* (PERNICIARO, WILLIAM) (Entered: 01/25/2006) |
| 01/31/2006 | 95 | *Defendants' Answer to Third Amended Complaint and Counterclaims* ANSWER to Complaint with jury demand, COUNTERCLAIM against all plaintiffs by Robert Schiff, MICHAEL LEVINE, JONATHAN LEVY, ALEX SCHWARTZ, JAMES A. COURTER, JOYCE MASON, JOHN CATE, IDT CORPORATION, HOWARD S. JONAS, MOTTI LICHTENSTEIN, JACK LEHR, DAVID SCHROPFER, AVI LAZAR. (FALCONE, NICHOLAS) (Entered: 01/31/2006) |
| 02/01/2006 | 96 | RESPONSE re 95 Answer to Complaint, Counterclaim,,. (PERNICIARO, WILLIAM) (Entered: 02/01/2006) |
| 02/08/2006 | 97 | ORDER Status/Settlement Conference set for 2/27/2006 09:00 AM before Magistrate Judge Mark Falk.. Signed by Judge Mark Falk on 2/2/06. (DD, ) (Entered: 02/08/2006) |
| 02/23/2006 | 98 | MOTION to Dismiss *Plaintiff's Amended Supplemental Pleading* by Robert Schiff, MICHAEL LEVINE, JONATHAN LEVY, ALEX SCHWARTZ, JAMES A. COURTER, JOYCE MASON, JOHN CATE, IDT CORPORATION, HOWARD S. JONAS, MOTTI LICHTENSTEIN, JACK LEHR, DAVID SCHROPFER, AVI LAZAR. Responses due by 3/10/2006 (Attachments: # 1 Brief # 2 Certification Declaration of Nicholas Falcone with Exhibits# 3 Text of Proposed Order Proposed Order on Motion to Dismiss)(FALCONE, NICHOLAS) (Entered: 02/23/2006) |
| 02/27/2006 | 99 | Minute Entry for proceedings held before Judge Mark Falk : Discovery |

| | | Conference held on 2/27/2006 on the record. (Tape #F 2006 C.) (jr) (Entered: 02/27/2006) |
|---|---|---|
| 02/27/2006 | | Set Deadlines as to 98 MOTION to Dismiss *Plaintiff's Amended Supplemental Pleading*. Motion Hearing set for 3/27/2006 before Judge John C. Lifland. [PLEASE BE ADVISED THAT THIS MOTION WILL BE DECIDED ON THE PAPERS UNLESS OTHERWISE NOTIFIED BY THE COURT] (DD, ) (Entered: 02/27/2006) |
| 03/09/2006 | 100 | Letter from William Perniciaro. (PERNICIARO, WILLIAM) (Entered: 03/09/2006) |
| 03/20/2006 | 101 | TRANSCRIPT of Proceedings held on February 27, 2006 before Judge Falk. PLEASE NOTE: The complete transcript of these proceedings is maintained in paper format on file in the Clerks Office. To request copies of this transcript, contact the Official Court Reporter or Transcription Service who prepared the transcript. (ji, ) (Entered: 03/21/2006) |
| 03/21/2006 | 102 | Letter from William Perniciaro. (Attachments: # 1 Exhibit Confidentiality Order under Rule 5.3)(PERNICIARO, WILLIAM) (Entered: 03/21/2006) |
| 03/22/2006 | | CLERKS OFFICE QUALITY CONTROL MESSAGE - The (LETTER - Doc. #102) submitted by (W. PERNICIARO) on (3/21/06) did not contain a proper electronic signature (s/). PLEASE RESUBMIT THE DOCUMENT WITH THE PROPER ELECTRONIC SIGNATURE BY (3/27/06). This submission will remain on the docket unless otherwise ordered by the court. This message is for informational purposes only.. (DD, ) (Entered: 03/22/2006) |
| 03/23/2006 | 103 | BRIEF in Opposition re 98 MOTION to Dismiss *Plaintiff's Amended Supplemental Pleading* filed by D. MICHAEL JEWETT. (PERNICIARO, WILLIAM) (Entered: 03/23/2006) |
| 03/27/2006 | | Reset Deadlines as to 98 MOTION to Dismiss *Plaintiff's Amended Supplemental Pleading*. Motion Hearing returnable for 4/10/2006 before Judge John C. Lifland. (PLEASE BE ADVISED THAT THIS MOTION WILL BE DECIDED ON THE PAPERS UNLESS OTHERWISE NOTIFIED BY THE COURT) (jb, ) (Entered: 03/27/2006) |
| 03/27/2006 | 104 | Letter from William Perniciaro. (Attachments: # 1)(PERNICIARO, WILLIAM) (Entered: 03/27/2006) |
| 03/30/2006 | 105 | Minute Entry for proceedings held before Judge Mark Falk : Status Conference held on 3/30/2006. (Digital Recording F06#03.) (jr) (Entered: 03/30/2006) |
| 03/30/2006 | | Minute Entry for proceedings held before Judge Mark Falk : Telephone Conference held on 3/30/2006. (jr) (Entered: 03/31/2006) |
| 03/31/2006 | 106 | REPLY to Response to Motion re 98 MOTION to Dismiss *Plaintiff's Amended Supplemental Pleading Pursuant to Rule 12(b)(6)* filed by Robert Schiff, MICHAEL LEVINE, JONATHAN LEVY, ALEX SCHWARTZ, JAMES A. COURTER, JOYCE MASON, JOHN CATE, |

| | | IDT CORPORATION, MOTTI LICHTENSTEIN, JACK LEHR, DAVID SCHROPFER, AVI LAZAR. (Attachments: # 1 Certification Reply Declaration of Nicholas J. Falcone in Support of Defendants' Motion to Dismiss Plaintiff's Amended Supplemental Pleading and to Strike Portions Therein from the Record)(FALCONE, NICHOLAS) (Entered: 03/31/2006) |
|---|---|---|
| 04/08/2006 | 107 | First MOTION for Discovery *to Compel Answers to Interrogatories* by D. MICHAEL JEWETT. (Attachments: # 1 Brief Brief in Support of Motion# 2 Affidavit Certification in Support of Motion# 3 Exhibit Exhibits to Perniciaro Certification# 4 Exhibit Republic of Haiti Complaint)(PERNICIARO, WILLIAM) (Entered: 04/08/2006) |
| 04/11/2006 | | Set Deadlines as to 107 First MOTION for Discovery *to Compel Answers to Interrogatories*. Motion Hearing set for 5/22/2006 before Judge John C. Lifland. [PLEASE BE ADVISED THAT THIS MOTION WILL BE DECIDED ON THE PAPERS UNLESS OTHERWISE NOTIFIED BY THE COURT] (DD, ) (Entered: 04/11/2006) |
| 04/11/2006 | 108 | ORDER Status/Settlement Conference set for 5/9/2006 09:00 AM before Magistrate Judge Mark Falk.. Signed by Judge Mark Falk on 4/10/06. (DD, ) (Entered: 04/11/2006) |
| 04/18/2006 | 109 | MOTION for Protective Order *Discovery Confidentiality Order Pursuant to Local Civil Rule 5.3(b)* by Robert Schiff, MICHAEL LEVINE, JONATHAN LEVY, ALEX SCHWARTZ, JAMES A. COURTER, JOYCE MASON, JOHN CATE, IDT CORPORATION, HOWARD S. JONAS, MOTTI LICHTENSTEIN, JACK LEHR, DAVID SCHROPFER, AVI LAZAR. (Attachments: # 1 Brief # 2 Affidavit Declaration of Nicholas Falcone# 3 Text of Proposed Order)(FALCONE, NICHOLAS) (Entered: 04/18/2006) |
| 04/18/2006 | 110 | AFFIDAVIT/Certification in support of discovery confidentiality order of Declaration of Alex Schwarz, Esq. in Support of Defendants' Motion for a Discovery Confidentiality Order re 109 MOTION for Protective Order *Discovery Confidentiality Order Pursuant to Local Civil Rule 5.3 (b)* by Robert Schiff, MICHAEL LEVINE, JONATHAN LEVY, ALEX SCHWARTZ, JAMES A. COURTER, JOYCE MASON, JOHN CATE, IDT CORPORATION, HOWARD S. JONAS, MOTTI LICHTENSTEIN, JACK LEHR, DAVID SCHROPFER, AVI LAZAR. (FALCONE, NICHOLAS) (Entered: 04/18/2006) |
| 04/19/2006 | 111 | TRANSCRIPT of Proceedings held on March 30, 2006 before Judge Falk. PLEASE NOTE: The complete transcript of these proceedings is maintained in paper format on file in the Clerks Office. To request copies of this transcript, contact the Official Court Reporter or Transcription Service who prepared the transcript. (ji, ) (Entered: 04/19/2006) |
| 04/21/2006 | | Setting Deadlines as to 109 MOTION for Protective Order *Discovery Confidentiality Order Pursuant to Local Civil Rule 5.3(b)*. Motion Hearing set for 5/22/2006 before Judge John C. Lifland. Please be advised that this motion will be decided on the papers unless otherwise |

| | | |
|---|---|---|
| | | notified by the Court. (mn, ) (Entered: 04/21/2006) |
| 04/26/2006 | 112 | BRIEF in Opposition re 107 First MOTION for Discovery *to Compel Answers to Interrogatories* filed by Robert Schiff, MICHAEL LEVINE, JONATHAN LEVY, ALEX SCHWARTZ, JAMES A. COURTER, JOYCE MASON, JOHN CATE, IDT CORPORATION, HOWARD S. JONAS, MOTTI LICHTENSTEIN, JACK LEHR, DAVID SCHROPFER, AVI LAZAR. (Attachments: # 1 Affidavit Declaration of Nicholas J. Falcone in Support of Defendants' Brief)(FALCONE, NICHOLAS) (Entered: 04/26/2006) |
| 05/04/2006 | 113 | BRIEF in Opposition re 109 MOTION for Protective Order *Discovery Confidentiality Order Pursuant to Local Civil Rule 5.3(b)* filed by D. MICHAEL JEWETT. (Attachments: # 1 Certification Certification of William Perniciaro in Opp.# 2 Exhibit Exhibit A# 3 Exhibit Exhibits B through E# 4 Exhibit Exhibit F# 5 Exhibit Exhibit G through H# 6 Exhibit Exhibit I - Proposed Order)(PERNICIARO, WILLIAM) (Entered: 05/04/2006) |
| 05/05/2006 | 114 | NOTICE of Change of Address by LESLIE A. LAJEWSKI (LAJEWSKI, LESLIE) (Entered: 05/05/2006) |
| 05/08/2006 | 117 | Minute Entry for proceedings held before Judge Mark Falk : Status Conference held on 5/8/2006. (Digital Recording F06#05.) (jr) (Entered: 05/10/2006) |
| 05/09/2006 | 115 | Letter from William Perniciaro. (PERNICIARO, WILLIAM) (Entered: 05/09/2006) |
| 05/09/2006 | 116 | REPLY to Response to Motion re 107 First MOTION for Discovery *to Compel Answers to Interrogatories* filed by D. MICHAEL JEWETT. (Attachments: # 1 Certification Certification of William Perniciaro# 2 Exhibit A through C)(PERNICIARO, WILLIAM) (Entered: 05/09/2006) |
| 05/15/2006 | 118 | REPLY to Response to Motion re 109 MOTION for Protective Order *Discovery Confidentiality Order Pursuant to Local Civil Rule 5.3(b)* filed by Robert Schiff, MICHAEL LEVINE, JONATHAN LEVY, ALEX SCHWARTZ, JAMES A. COURTER, JOYCE MASON, JOHN CATE, IDT CORPORATION, HOWARD S. JONAS, MOTTI LICHTENSTEIN, JACK LEHR, DAVID SCHROPFER, AVI LAZAR. (FALCONE, NICHOLAS) (Entered: 05/15/2006) |
| 05/16/2006 | 119 | TRANSCRIPT of Proceedings held on May 8, 2006 before Judge Falk. PLEASE NOTE: The complete transcript of these proceedings is maintained in paper format on file in the Clerks Office. To request copies of this transcript, contact the Official Court Reporter or Transcription Service who prepared the transcript. (ji, ) (Entered: 05/16/2006) |
| 05/23/2006 | 120 | Letter from Defendants correcting moving brief re 109 MOTION for Protective Order *Discovery Confidentiality Order Pursuant to Local Civil Rule 5.3(b)*. (FALCONE, NICHOLAS) (Entered: 05/23/2006) |
| 05/24/2006 | 121 | ORDER Oral Argument set for 7/20/2006 09:00 AM before Magistrate |

| | | Judge Mark Falk.. Signed by Judge Mark Falk on 5/23/06. (DD, ) (Entered: 05/24/2006) |
|---|---|---|
| 05/26/2006 | 122 | Letter from William Perniciaro. (Attachments: # 1 Exhibit Exhibits enclosed with letter to Judge Lifland)(PERNICIARO, WILLIAM) (Entered: 05/26/2006) |
| 06/01/2006 | 123 | Letter from Defendants in Reply to Plaintiff's Request for Leave to File a Motion for Partial Summary Judgment. (FALCONE, NICHOLAS) (Entered: 06/01/2006) |
| 06/02/2006 | 124 | Letter from William Perniciaro requesting permission to file Rule 11 motion. (Attachments: # 1 Exhibit A# 2 Exhibit B and C# 3 Exhibit D# 4 Exhibit E and F# 5 Exhibit G, H and I)(PERNICIARO, WILLIAM) (Entered: 06/02/2006) |
| 06/05/2006 | 125 | Letter from Willliam Perniciaro re 123 Letter. (Attachments: # 1 Exhibit A through C)(PERNICIARO, WILLIAM) (Entered: 06/05/2006) |
| 06/07/2006 | 126 | Letter from Leslie A. Lajewski in Response to William Perniciaro June 2, 2006 letter asking for leave to file Rule 11 motion re 124 Letter. (LAJEWSKI, LESLIE) (Entered: 06/07/2006) |
| 06/08/2006 | 127 | Letter from William Perniciaro. (PERNICIARO, WILLIAM) (Entered: 06/08/2006) |
| 06/09/2006 | 128 | Letter from William Perniciaro. (Attachments: # 1 Exhibit A, B (redacted), C and D# 2 Exhibit E and F)(PERNICIARO, WILLIAM) (Entered: 06/09/2006) |
| 06/13/2006 | 129 | Letter from Nicholas J. Falcone to Judge Falk re Plaintiff's request for leave to file a motion to compel answers to certain of the CEPA interrogatories re 128 Letter. (FALCONE, NICHOLAS) (Entered: 06/13/2006) |
| 06/14/2006 | 130 | MEMORANDUM & ORDER that Pltf's request for permission to file a partial motion for summary judgment on the issue of the FCC regulations is DENIED; the request to file a motion for sanctionS under Rule 11 is DENIED; that all future requests for court action be subm. in the form of properly fld. motions; that this Court will no longer respond to any letter from the parties requesting court action & will not make any rulings based on letter; that Pltf. & counsel shall appear before the Court on 7/17/06 @ 10:00 a.m., to show cause why either or both of them should not be held in contempt for failure to abide by this Court's Order of 12/29/05.. Signed by Judge John C. Lifland on 6/14/06. (DD, ) (Entered: 06/14/2006) |
| 07/10/2006 | 131 | RESPONSE TO ORDER TO SHOW CAUSE by D. MICHAEL JEWETT. (PERNICIARO, WILLIAM) (Entered: 07/10/2006) |
| 07/10/2006 | 132 | DECLARATION of William Perniciaro in response to the court's contempt citation by D. MICHAEL JEWETT. (Attachments: # 1 Exhibit A through D# 2 Exhibit E through H# 3 Exhibit I through L# 4 Exhibit M and N# 5 Exhibit O through R# 6 Exhibit S through W)(PERNICIARO, |

| | | WILLIAM) (Entered: 07/10/2006) |
|---|---|---|
| 07/10/2006 | 133 | Letter. (PERNICIARO, WILLIAM) (Entered: 07/10/2006) |
| 07/13/2006 | 134 | Letter from IDT Defendants in Reply to Plaintiff's Response to Order to Show Cause re 131 Response to Order to Show Cause, 130 Order,,. (FALCONE, NICHOLAS) (Entered: 07/13/2006) |
| 07/17/2006 | 135 | Minute Entry for proceedings held before Judge John C. Lifland : Show Cause Hearing held on 7/17/2006. Ordered plaintiff in civil contempt of the Court's Order of 12/29/05 and to reimburse defendants for certain legal fees spent in defending certain actions. (Court Reporter L. Johnson.) (jb, ) (Entered: 07/18/2006) |
| 07/20/2006 | 136 | Minute Entry for proceedings held before Judge Mark Falk : Motion Hearing held on 7/20/2006 re 107 First MOTION for Discovery to Compel Answers to Interrogatories filed by D. MICHAEL JEWETT Motion denied as moot. 109 MOTION for Protective Order *Discovery Confidentiality Order Pursuant to Local Civil Rule 5.3(b) filed by Robert Schiff, IDT CORPORATION, MICHAEL LEVINE,, HOWARD S. JONAS, MOTTI LICHTENSTEIN, JACK LEHR, DAVID SCHROPFER, AVI LAZAR, JONATHAN LEVY, ALEX SCHWARTZ, JAMES A. COURTER, JOYCE MASON, JOHN CATE. Motion granted in part and denied in part (Tape #06-07.)* (LM, ) (Entered: 07/24/2006) |
| 07/26/2006 | 137 | DECLARATION *of Lawjewski and Robinson in Support of IDT Defendants' Application for Fees in Connection with the Order Holding Plaintiff's Counsel in Contempt of Court* by Robert Schiff, MICHAEL LEVINE, JONATHAN LEVY, ALEX SCHWARTZ, JAMES A. COURTER, JOYCE MASON, JOHN CATE, IDT CORPORATION, HOWARD S. JONAS, MOTTI LICHTENSTEIN, JACK LEHR, DAVID SCHROPFER, AVI LAZAR. (Attachments: # 1)(LAJEWSKI, LESLIE) (Entered: 07/26/2006) |
| 08/03/2006 | 138 | DISCOVERY PROTECTIVE ORDER . Signed by Judge Mark Falk on 8/1/06. (DD, ) (Entered: 08/03/2006) |
| 08/14/2006 | 139 | Letter from William Perniciaro. (Attachments: # 1)(PERNICIARO, WILLIAM) (Entered: 08/14/2006) |
| 08/28/2006 | 140 | ORDER AWARDING FEES - that William P. Perniciaro & his law firm The Offices of William P. Perniciaro are liable for the fees of the IDT Defts. in the amt. of $29,443.00; check should be made payable to the "IDT Corp. w/in 30 days of receipt hereof.. Signed by Judge John C. Lifland on 8/25/06. (DD, ) (Entered: 08/28/2006) |
| 08/28/2006 | 141 | TRANSCRIPT of Proceedings held on November 17, 2005 before Judge Lifland. PLEASE NOTE: The complete transcript of these proceedings is maintained in paper format on file in the Clerks Office. To request copies of this transcript, contact the Official Court Reporter or Transcription Service who prepared the transcript. (ji, ) (Entered: 08/29/2006) |
| 08/30/2006 | 142 | Letter from William Perniciaro requesting permission to file a motion for |

| | | reconsideration.. (PERNICIARO, WILLIAM) (Entered: 08/30/2006) |
|---|---|---|
| 09/07/2006 | 143 | NOTICE OF APPEAL as to 140 Order, by D. MICHAEL JEWETT. The Clerk's Office hereby certifies the record and the docket sheet available through ECF to be the certified list in lieu of the record and/or the certified copy of the docket entries. (PERNICIARO, WILLIAM) (Entered: 09/07/2006) |
| 09/07/2006 | 144 | Letter from William Perniciaro. (Attachments: # 1 Text of Proposed Order scheduling motion for resonsideration.)(PERNICIARO, WILLIAM) (Entered: 09/07/2006) |
| 09/08/2006 | 145 | USCA Appeal Fees received $ 455 receipt number 340865 re 143 Notice of Appeal (USCA), filed by D. MICHAEL JEWETT. (ji, ) (Entered: 09/11/2006) |
| 09/11/2006 | 146 | Subsequent NOTICE OF APPEAL by D. MICHAEL JEWETT *correcting Notice of Appeal filed on September 7, 2006.* The Clerk's Office hereby certifies the record and the docket sheet available through ECF to be the certified list in lieu of the record and/or the certified copy of the docket entries. (Attachments: # 1 Statement to clerk explaining Subsequent Notice of Appeal)(PERNICIARO, WILLIAM) (Entered: 09/11/2006) |
| 09/12/2006 | 147 | Letter from William Perniciaro submitting Supersedeas Bond and proposed Order Staying Execution of Judgment re 140 Order,. (Attachments: # 1 Text of Proposed Order pursuant to Rule 62(d) staying execution of judgment# 2 Exhibit containing Supersedeas Bond and paid receipt)(PERNICIARO, WILLIAM) (Entered: 09/12/2006) |
| 09/15/2006 | 148 | USCA Case Number 06-4032 for 143 Notice of Appeal (USCA), Notice of Appeal (USCA) filed by D. MICHAEL JEWETT,. USCA Case Manager Phyllis Ruffin (Document Restricted - Court Only) (Ruffin, Phyllis) (Entered: 09/15/2006) |
| 09/15/2006 | 149 | USCA LETTER TO DISTRICT COURT CLERK re: Amended notice of appeal (Ruffin, Phyllis) (Entered: 09/15/2006) |
| 09/18/2006 | 150 | TRANSCRIPT REQUEST re 143 Notice of Appeal (USCA), "None" selected in Section 1A. (Attachments: # 1 Cover Letter)(ji, ) (Entered: 09/19/2006) |
| 09/19/2006 | 151 | Letter from William Perniciaro requesting permission to file for Temporary Restraining Order.. (PERNICIARO, WILLIAM) (Entered: 09/19/2006) |
| 09/21/2006 | 152 | SCHEDULING ORDER permitting pltf. to file a motion for reconsideration of the decision of Judge John C. Lifland entered 8/28/06 to impose counsel fees for civil contempt of court. Pltf. shall file moving papers by 9/28/06; Defts shall fils answering papers by 10/19/06; Pltf. shall file reply papers by 11/2/06.. Signed by Judge Mark Falk on 9/21/06. (DD, ) (Entered: 09/21/2006) |
| 09/21/2006 | 153 | ORDER STAYING EXECUTION OF JUDGMENT during the |

| | | |
|---|---|---|
| | | pendency of his appeal; the court approves the Supersedeas Bond from William Perniciaro; the defts. may file a motion to vacate the stay in the event William Perniciaro fails to file & serve the record & brief.. Signed by Judge Mark Falk on 9/21/06. (DD, ) (Entered: 09/21/2006) |
| 09/28/2006 | 154 | First MOTION for Reconsideration by D. MICHAEL JEWETT. (Attachments: # 1 Brief # 2 Declaration # 3 Exhibit)(PERNICIARO, WILLIAM) (Entered: 09/28/2006) |
| 10/02/2006 | | Set Deadlines as to 154 First MOTION for Reconsideration. Motion Hearing set for 10/23/2006 before Judge John C. Lifland. [PLEASE BE ADVISED THAT THIS MOTION WILL BE DECIDED ON THE PAPERS UNLESS OTHERWISE NOTIFIED BY THE COURT] (DD, ) (Entered: 10/02/2006) |
| 10/11/2006 | 155 | Consent MOTION to Substitute Attorney by Robert Schiff, MICHAEL LEVINE, JONATHAN LEVY, ALEX SCHWARTZ, JAMES A. COURTER, JOYCE MASON, JOHN CATE, IDT CORPORATION, HOWARD S. JONAS, MOTTI LICHTENSTEIN, JACK LEHR, DAVID SCHROPFER, AVI LAZAR. (LAJEWSKI, LESLIE) (Entered: 10/11/2006) |
| 10/13/2006 | 156 | Letter from William Perniciaro asking the court to set a date certain for answers to interrogatories. (Attachments: # 1 Exhibit Emails between the parties)(PERNICIARO, WILLIAM) (Entered: 10/13/2006) |
| 10/19/2006 | 157 | BRIEF in Opposition re 154 First MOTION for Reconsideration *of Contempt Fees and Defendants' Request for Additional Fees* filed by Robert Schiff, MICHAEL LEVINE, JONATHAN LEVY, ALEX SCHWARTZ, JAMES A. COURTER, JOYCE MASON, JOHN CATE, IDT CORPORATION, HOWARD S. JONAS, MOTTI LICHTENSTEIN, JACK LEHR, DAVID SCHROPFER, AVI LAZAR. (LAJEWSKI, LESLIE) (Entered: 10/19/2006) |
| 11/02/2006 | 158 | REPLY to Response to Motion re 154 First MOTION for Reconsideration filed by D. MICHAEL JEWETT. (PERNICIARO, WILLIAM) (Entered: 11/02/2006) |
| 11/03/2006 | 159 | Letter from defendants in response to plaintiff's request for dates certain to serve interrogatory answers re 156 Letter. (FALCONE, NICHOLAS) (Entered: 11/03/2006) |
| 11/05/2006 | 160 | Letter from William Perniciaro to United States Court of Appeals submitting Petition for Writ of Mandamus. (Attachments: # 1 Brief in Support of Petition for Writ of Mandamus# 2 Appendix A1-A14# 3 Appendix A-15-A29)(PERNICIARO, WILLIAM) (Entered: 11/05/2006) |
| 11/14/2006 | 161 | LETTER-ORDER that the parties interrogatory responses are to be exchanged on 12/1/06; Status Conference set for 12/15/2006 09:00 AM before Magistrate Judge Mark Falk.. Signed by Judge Mark Falk on 11/13/06. (DD, ) (Entered: 11/14/2006) |
| 11/14/2006 | 162 | Letter from William Perniciaro. (Attachments: # 1 Exhibit Notice of |

| | | Appearance and FRAP 26 Disclosure)(PERNICIARO, WILLIAM) (Entered: 11/14/2006) |
|---|---|---|
| 12/15/2006 | | Minute Entry for proceedings held before Judge Mark Falk : Settlement Conference held on 12/15/2006. (Tape #06-12.) (LM, ) (Entered: 01/03/2007) |
| 12/19/2006 | 164 | ORDER of USCA denying the Petition for Writ of Mandamus. (ji, ) (Entered: 12/21/2006) |
| 12/20/2006 | 163 | Letter from William Perniciaro requesting guidance on discovery scheduling order. (PERNICIARO, WILLIAM) (Entered: 12/20/2006) |
| 12/21/2006 | 165 | Substitution of Attorney - Attorney LESLIE A. LAJEWSKI and LESLIE A. LAJEWSKI for JONATHAN LEVY, ALEX SCHWARTZ, JAMES A. COURTER, JOYCE MASON, JOHN CATE, Robert Schiff, MICHAEL LEVINE, HOWARD S. JONAS, MOTTI LICHTENSTEIN, JACK LEHR, DAVID SCHROPFER, AVI LAZAR, IDT CORPORATION added. Attorney NICHOLAS J. FALCONE terminated.. (LAJEWSKI, LESLIE) (Entered: 12/21/2006) |
| 12/29/2006 | 166 | ORDER All day cnf. & oral argument set for 1/11/2007 09:00 AM before Magistrate Judge Mark Falk.. Signed by Judge Mark Falk on 12/29/06. (DD, ) (Entered: 12/29/2006) |
| 01/16/2007 | 167 | SCHEDULING ORDER: Motions to Amend Cmp. due by 4/16/2007. A final pretrial cnf. will be scheduled by the Court; etc.. Signed by Judge Mark Falk on 1/12/07. (DD, ) (Entered: 01/16/2007) |
| 01/18/2007 | 168 | MEMORANDUM & ORDER directing defts. to resubmit appl. as to market rates.. Signed by Judge John C. Lifland on 1/17/07. (DD, ) (Entered: 01/18/2007) |
| 01/18/2007 | 169 | Letter from William Perniciaro with Subpoena to New Jersey Department of Labor. (Attachments: # 1 Supplement)(PERNICIARO, WILLIAM) (Entered: 01/18/2007) |
| 01/22/2007 | 170 | Letter from William Perniciaro with Subpoena to United States Department of Justice. (Attachments: # 1 Exhibit)(PERNICIARO, WILLIAM) (Entered: 01/22/2007) |
| 01/22/2007 | 171 | Letter from William Perniciaro with Subpoena to Federal Communications Commission.. (Attachments: # 1 Exhibit) (PERNICIARO, WILLIAM) (Entered: 01/22/2007) |
| 01/24/2007 | 172 | Letter from William Perniciaro. (Attachments: # 1 Affidavit of Scott Blake Harris)(PERNICIARO, WILLIAM) (Entered: 01/24/2007) |
| 01/29/2007 | 173 | Letter from Leslie Lajewski, Esq. to Judge Falk regarding timing of election of remedies by Plaintiff. (LAJEWSKI, LESLIE) (Entered: 01/29/2007) |
| 01/29/2007 | 174 | Letter from William Perniciaro regarding Election of Remedies. (PERNICIARO, WILLIAM) (Entered: 01/29/2007) |
| | | |

| 02/01/2007 | 175 | Letter from William Perniciaro requesting conference.. (PERNICIARO, WILLIAM) (Entered: 02/01/2007) |
|---|---|---|
| 02/02/2007 | | Set Hearings: Status Conference via telephone set for Wednesday, 2/14/2007 at 9:00 AM before Magistrate Judge Mark Falk. It shall be plaintiff's counsel's responsibility to contact all counsel to set up the conference as well as initiate the conference call. Kindly mark your calendar accordingly. (LM, ) (Entered: 02/02/2007) |
| 02/06/2007 | 176 | Letter from William Perniciaro requesting extension of time to file a required submission to Judge Lifland.. (PERNICIARO, WILLIAM) (Entered: 02/06/2007) |
| 02/07/2007 | 177 | BRIEF in Opposition re 154 First MOTION for Reconsideration filed by Robert Schiff, MICHAEL LEVINE, JONATHAN LEVY, ALEX SCHWARTZ, JAMES A. COURTER, JOYCE MASON, JOHN CATE, IDT CORPORATION, HOWARD S. JONAS, MOTTI LICHTENSTEIN, JACK LEHR, DAVID SCHROPFER, AVI LAZAR. (Attachments: # 1 Declaration Declaration of Leslie A. Lajewski# 2 Declaration Declaration of Patrick Stanton# 3 Declaration Declaration of Ronald J. Riccio)(LAJEWSKI, LESLIE) (Entered: 02/07/2007) |
| 02/07/2007 | 178 | CERTIFICATION in Opposition re 154 First MOTION for Reconsideration filed by Robert Schiff, MICHAEL LEVINE, JONATHAN LEVY, ALEX SCHWARTZ, JAMES A. COURTER, JOYCE MASON, JOHN CATE, IDT CORPORATION, HOWARD S. JONAS, MOTTI LICHTENSTEIN, JACK LEHR, DAVID SCHROPFER, AVI LAZAR. (LAJEWSKI, LESLIE) (Entered: 02/07/2007) |
| 02/14/2007 | 179 | Letter from William Perniciaro concerning request for extension.. (Attachments: # 1 Exhibit consisting of prior formal request for an extension.)(PERNICIARO, WILLIAM) (Entered: 02/14/2007) |
| 02/15/2007 | 180 | Letter from William Perniciaro concerning emergent application.. (PERNICIARO, WILLIAM) (Entered: 02/15/2007) |
| 02/15/2007 | | Set Hearings: Conference set for Friday, 2/16/2007 at 9:30 AM in Newark - Courtroom 9 before Magistrate Judge Mark Falk. Kindly mark your calendar accordingly. (LM, ) (Entered: 02/15/2007) |
| 02/15/2007 | 181 | BRIEF *In Support of Defendants' Renewed Motion to Dismiss Plaintiff's CEPA and LAD Claims Against Individual Defendants* filed by Robert Schiff, MICHAEL LEVINE, JONATHAN LEVY, ALEX SCHWARTZ, JAMES A. COURTER, JOYCE MASON, JOHN CATE, IDT CORPORATION, HOWARD S. JONAS, MOTTI LICHTENSTEIN, JACK LEHR, DAVID SCHROPFER, AVI LAZAR. (LAJEWSKI, LESLIE) (Entered: 02/15/2007) |
| 02/15/2007 | 182 | DECLARATION of Leslie A. Lajewski, Esq. re 181 Brief, *in Support of Defendants' Renewed Motion to Dismiss Plaintiff's CEPA and LAD Claims Against Individual Defendants* by Robert Schiff, MICHAEL LEVINE, JONATHAN LEVY, ALEX SCHWARTZ, JAMES A. |

| | | |
|---|---|---|
| | | COURTER, JOYCE MASON, JOHN CATE, IDT CORPORATION, HOWARD S. JONAS, MOTTI LICHTENSTEIN, JACK LEHR, DAVID SCHROPFER, AVI LAZAR. (Attachments: # 1 Exhibit A - Defendants' CEPA Rogs to Plaintiff# (2) Exhibit B - Plaintiff's Answers to CEPA Rogs# 3 Exhibit C - Defebdant Cates' Answers to CEPA and LAD Rogs# 4 Exhibit D - Defendant Courter's Answers to CEPA and LAD Rogs# 5 Exhibit E - Defendant Jonas' Answers to CEPA and LAD Rogs# 6 Exhibit F - Defendant Lazar's Answers to CEPA and LAD Rogs# 7 Exhibit G - Defendant Lerer's Answers to CEPA and LAD Rogs# 8 Exhibit H - Defendant Levine's Answers to CEPA and LAD Rogs# 9 Exhibit I - Defendant Lichtenstein's Answers to CEPA and LAD Rogs# 10 Exhibit J - Defendant Lichtenstein's Answers to CEPA and LAD Rogs# 11 Exhibit K - Defendant Mason's Answers to CEPA and LAD Rogs# 12 Exhibit L - Defendant Schiff's Answers to CEPA and LAD Rogs# 13 Exhibit M - Defendant Schropfer's Answers to CEPA and LAD Rogs# 14 Exhibit N - Defendant Schwarz's Answers to CEPA and LAD Rogs)(LAJEWSKI, LESLIE) (Entered: 02/15/2007) |
| 02/15/2007 | | Minute Entry for proceedings held before Judge Mark Falk : Telephone Conference held on 2/15/2007. (Tape #07-02.) (LM, ) (Entered: 02/15/2007) |
| 02/15/2007 | 183 | Letter from Leslie A. Lajewski, Esq.. (LAJEWSKI, LESLIE) (Entered: 02/15/2007) |
| 02/15/2007 | 184 | Letter from William Perniciaro with Page 11 Under Seal. (PERNICIARO, WILLIAM) (Entered: 02/15/2007) |
| 02/15/2007 | 185 | Letter from William Perniciaro consisting of Sealed Page 11 of related to document 184. (PERNICIARO, WILLIAM) (Entered: 02/15/2007) |
| 02/15/2007 | 186 | Letter from William Perniciaro consisting of Exhibits A, C and D to Document 184, Exhibit B Under Seal. (PERNICIARO, WILLIAM) (Entered: 02/16/2007) |
| 02/16/2007 | 187 | ORDER that this Court declines to address Mr. Perniciaro' appl. or rule on his request for an extension.. Signed by Judge John C. Lifland on 2/15/07. (DD, ) (Entered: 02/16/2007) |
| 02/16/2007 | | Minute Entry for proceedings held before Judge Mark Falk : Miscellaneous Hearing held on 2/16/2007. (Tape #07-02.) (LM, ) (Entered: 02/16/2007) |
| 02/16/2007 | 188 | Letter from Leslie A. Lajewski. (Attachments: # 1 Brief Replacement Brief in Support of Defendants' Renewed Motion to Dismiss Plaintiff's CEPA and LAD Claims Against Individual Defendants)(LAJEWSKI, LESLIE) (Entered: 02/16/2007) |
| 02/19/2007 | 189 | Letter from William Perniciaro requesting leave to file application under Rule 56(f). (PERNICIARO, WILLIAM) (Entered: 02/19/2007) |
| 02/21/2007 | 190 | Letter from Leslie A. Lajewski, Esq. in response to Plaintiff's Letter of February 19, 2007. (LAJEWSKI, LESLIE) (Entered: 02/21/2007) |

| 02/22/2007 | <u>191</u> | Letter from William Perniciaro to ATT Corp. requesting public filings with the FCC.. (Attachments: # <u>1</u> Exhibit Consisting of Subpoena for Documents Filed with the FCC)(PERNICIARO, WILLIAM) (Entered: 02/22/2007) |
| 02/22/2007 | <u>192</u> | Letter from Letter from William Perniciaro to Sprint Nextel requesting public filings with the FCC. (Attachments: # <u>1</u> Exhibit requesting from Sprint public filings with the FCC)(PERNICIARO, WILLIAM) (Entered: 02/22/2007) |
| 02/22/2007 | <u>193</u> | Letter from William Letter from William Perniciaro to Verizon Communications Inc. requesting public filings with the FCC.. (Attachments: # <u>1</u> Exhibit consisting of Subpoena to Verizon (MCI) requesing public filings with the FCC.)(PERNICIARO, WILLIAM) (Entered: 02/22/2007) |
| 02/23/2007 | <u>194</u> | Letter from William Perniciaro concerning application under Rule 56(f). (PERNICIARO, WILLIAM) (Entered: 02/23/2007) |
| 02/23/2007 | <u>195</u> | LETTER ORDER - Conference set for Wednesday, 3/7/2007 at 9:00 AM in Newark - Courtroom 9 before Magistrate Judge Mark Falk.Signed by Judge Mark Falk on 2/23/07. Kindly mark your calendar accordingly. (LM, ) (Entered: 02/23/2007) |
| 02/27/2007 | <u>196</u> | First MOTION for Reconsideration re <u>140</u> Order, *August 25, 2006* by D. MICHAEL JEWETT. (Attachments: # <u>1</u> Brief in Support of Reconsideration of Counsel Fee Order)(PERNICIARO, WILLIAM) (Entered: 02/27/2007) |
| 02/28/2007 |  | Set Deadlines as to <u>196</u> First MOTION for Reconsideration re <u>140</u> Order, *August 25, 2006*. Motion Hearing set for 3/26/2007 before Judge John C. Lifland. [PLEASE BE ADVISED THAT THIS MOTION WILL BE DECIDED ON THE PAPERS UNLESS OTHERWISE NOTIFIED BY THE COURT] (DD, ) (Entered: 02/28/2007) |
| 02/28/2007 | <u>197</u> | NOTICE of Appearance by LESLIE A. LAJEWSKI on behalf of Robert Schiff, MICHAEL LEVINE, JONATHAN LEVY, ALEX SCHWARTZ, JAMES A. COURTER, JOYCE MASON, JOHN CATE, IDT CORPORATION, HOWARD S. JONAS, MOTTI LICHTENSTEIN, JACK LEHR, DAVID SCHROPFER, AVI LAZAR (LAJEWSKI, LESLIE) (Entered: 02/28/2007) |
| 03/01/2007 | <u>198</u> | NOTICE of Appearance by STEVEN J. LUCKNER on behalf of Robert Schiff, MICHAEL LEVINE, JONATHAN LEVY, ALEX SCHWARTZ, JAMES A. COURTER, JOYCE MASON, JOHN CATE, IDT CORPORATION, HOWARD S. JONAS, MOTTI LICHTENSTEIN, JACK LEHR, DAVID SCHROPFER, AVI LAZAR (LUCKNER, STEVEN) (Entered: 03/01/2007) |
| 03/07/2007 |  | Minute Entry for proceedings held before Judge Mark Falk : Miscellaneous Hearing held on 3/7/2007. (Tape #07-03.) (LM, ) (Entered: 03/14/2007) |
|  |  |  |

| 03/11/2007 | 199 | Letter from William Perniciaro with Affidavits of Service on ATT, Sprint, and Verizon. re 193 Letter,, 192 Letter, 191 Letter. (PERNICIARO, WILLIAM) (Entered: 03/11/2007) |
|---|---|---|
| 03/12/2007 | 200 | Letter from William Perniciaro addressing the defendants' request for emergent relief. (PERNICIARO, WILLIAM) (Entered: 03/12/2007) |
| 03/12/2007 | 201 | MOTION to Quash *Subpoena Served by Plaintiff on the Federal Communications Commission* by Robert Schiff, MICHAEL LEVINE, JONATHAN LEVY, ALEX SCHWARTZ, JAMES A. COURTER, JOYCE MASON, JOHN CATE, IDT CORPORATION, HOWARD S. JONAS, MOTTI LICHTENSTEIN, JACK LEHR, DAVID SCHROPFER, AVI LAZAR. (Attachments: # 1 Brief Brief in Support of Defendants' Motion to Quash# 2 Declaration Declaration of Leslie A. Lajewski in Support of Defendants' Motion to Quash)(LAJEWSKI, LESLIE) (Entered: 03/12/2007) |
| 03/13/2007 | | Set Deadlines as to 201 MOTION to Quash *Subpoena Served by Plaintiff on the Federal Communications Commission.* Motion Hearing set for 4/9/2007 before Judge John C. Lifland. [PLEASE BE ADVISED THAT THIS MOTION WILL BE DECIDED ON THE PAPERS UNLESS OTHERWISE NOTIFIED BY THE COURT] (DD, ) (Entered: 03/13/2007) |
| 03/13/2007 | 202 | Letter from William Perniciaro opposing defendants' application to seal court records by letter.. (PERNICIARO, WILLIAM) (Entered: 03/13/2007) |
| 03/14/2007 | | Set Hearings: In-Person Status Conference set for Tuesday, 3/20/2007 at 11:00 AM in Newark - Courtroom 9 before Magistrate Judge Mark Falk. Kindly mark your calendar accordingly. (LM, ) (Entered: 03/14/2007) |
| 03/16/2007 | 203 | Letter from William Perniciaro requesting consultation for Motion Practice. (PERNICIARO, WILLIAM) (Entered: 03/16/2007) |
| 03/19/2007 | 204 | MOTION to Quash *Subpoena Served By Plaintiff On The New Jersey Department Of Labor* by Robert Schiff, MICHAEL LEVINE, JONATHAN LEVY, ALEX SCHWARTZ, JAMES A. COURTER, JOYCE MASON, IDT CORPORATION, HOWARD S. JONAS, MOTTI LICHTENSTEIN, JACK LEHR. (Attachments: # 1 Declaration of Leslie Lajewski in Support of of Defendants' Motion to Quash# 2 Brief in Support of Motion to Quash Subpoena Served by Plaintiff on the New Jersey Department of Labor)(LAJEWSKI, LESLIE) (Entered: 03/19/2007) |
| 03/19/2007 | 205 | TRANSCRIPT filed for dates of March 7, 2007 before Judge Falk, re 146 Subsequent Notice of Appeal. (ji, ) (Entered: 03/19/2007) |
| 03/19/2007 | 206 | MOTION to Quash *the Subpoena served by plaintiff on the United States Department of Justice* by Robert Schiff, MICHAEL LEVINE, JONATHAN LEVY, ALEX SCHWARTZ, JAMES A. COURTER, JOYCE MASON, JOHN CATE, IDT CORPORATION, HOWARD S. JONAS, MOTTI LICHTENSTEIN, JACK LEHR, AVI LAZAR. |

| | | (Attachments: # 1 Declaration of Leslie Lajewski in Support of Motion to Quash# 2 Brief in Support of Motion to Quash)(LAJEWSKI, LESLIE) (Entered: 03/19/2007) |
|---|---|---|
| 03/19/2007 | 207 | MOTION to Quash *Subpoenas served by plaintiff on AT&T, Inc., Sprint Nextel Corporation and Verizon Communications, Inc.* by Robert Schiff, MICHAEL LEVINE, JONATHAN LEVY, ALEX SCHWARTZ, JAMES A. COURTER, JOYCE MASON, JOHN CATE, IDT CORPORATION, HOWARD S. JONAS, MOTTI LICHTENSTEIN, JACK LEHR, AVI LAZAR. (Attachments: # 1 Declaration of Leslie Lajewski in Support of Motion to Quash# 2 Brief in Support of Motion to Quash)(LAJEWSKI, LESLIE) (Entered: 03/19/2007) |
| 03/20/2007 | 208 | MOTION to Quash *Subpoenas Served by Plaintiff on Fred Beliard, Jean R. Duperval and Alphonse Inevil* by Robert Schiff, MICHAEL LEVINE, JONATHAN LEVY, ALEX SCHWARTZ, JAMES A. COURTER, JOYCE MASON, JOHN CATE, IDT CORPORATION, HOWARD S. JONAS, MOTTI LICHTENSTEIN, JACK LEHR, DAVID SCHROPFER, AVI LAZAR. (LAJEWSKI, LESLIE) (Entered: 03/20/2007) |
| 03/20/2007 | 209 | DECLARATION re 208 MOTION to Quash *Subpoenas Served by Plaintiff on Fred Beliard, Jean R. Duperval and Alphonse Inevil* by Robert Schiff, MICHAEL LEVINE, JONATHAN LEVY, ALEX SCHWARTZ, JAMES A. COURTER, JOYCE MASON, JOHN CATE, IDT CORPORATION, HOWARD S. JONAS, MOTTI LICHTENSTEIN, JACK LEHR, DAVID SCHROPFER, AVI LAZAR. (Attachments: # 1 Exhibit Subpoena served by Plaintiff on Fred Beliard# 2 Exhibit Subpoena served by Plaintiff on Jean R. Duperval# 3 Exhibit Subpoena served by Plaintiff on Alphonse Inevil)(LAJEWSKI, LESLIE) (Entered: 03/20/2007) |
| 03/20/2007 | 210 | BRIEF *in Support of Motion to Quash the Subpoenas Served by Plaintiff on Fred Beliard, Jean R. Duperval and Alphonse Inevil* filed by Robert Schiff, MICHAEL LEVINE, JONATHAN LEVY, ALEX SCHWARTZ, JAMES A. COURTER, JOYCE MASON, JOHN CATE, IDT CORPORATION, HOWARD S. JONAS, MOTTI LICHTENSTEIN, JACK LEHR, DAVID SCHROPFER, AVI LAZAR. (LAJEWSKI, LESLIE) (Entered: 03/20/2007) |
| 03/20/2007 | | Set Deadlines as to 206 MOTION to Quash *the Subpoena served by plaintiff on the United States Department of Justice*, 208 MOTION to Quash *Subpoenas Served by Plaintiff on Fred Beliard, Jean R. Duperval and Alphonse Inevil*, 207 MOTION to Quash *Subpoenas served by plaintiff on AT&T, Inc., Sprint Nextel Corporation and Verizon Communications, Inc.*, 204 MOTION to Quash *Subpoena Served By Plaintiff On The New Jersey Department Of Labor*. Motion Hearing set for 4/23/2007 before Judge John C. Lifland. [PLEASE BE ADVISED THAT THIS MOTION WILL BE DECIDED ON THE PAPERS UNLESS OTHERWISE NOTIFIED BY THE COURT] (DD, ) (Entered: 03/20/2007) |
| | | |

| 03/20/2007 | [211](#) | ORDER denying without prejudice defendant's motions to quash. Signed by Judge Mark Falk on 3/20/07. (LM, ) (Entered: 03/20/2007) |
|---|---|---|
| 03/20/2007 | | Minute Entry for proceedings held before Judge Mark Falk : Motion Hearing held on 3/20/2007 re [206](#) MOTION to Quash the Subpoena served by plaintiff on the United States Department of Justice filed by JOHN CATE, AVI LAZAR, MICHAEL LEVINE, IDT CORPORATION, Robert Schiff, MOTTI LICHTENSTEIN, HOWARD S. JONAS, JONATHAN LEVY, JOYCE MASON, JAMES A. COURTER, JACK LEHR, ALEX SCHWARTZ, [208](#) MOTION to Quash Subpoenas Served by Plaintiff on Fred Beliard, Jean R. Duperval and Alphonse Inevil filed by JOHN CATE, AVI LAZAR, MICHAEL LEVINE, IDT CORPORATION, DAVID SCHROPFER, Robert Schiff, MOTTI LICHTENSTEIN, JONATHAN LEVY, HOWARD S. JONAS, JOYCE MASON, JAMES A. COURTER, JACK LEHR, ALEX SCHWARTZ, [201](#) MOTION to Quash Subpoena Served by Plaintiff on the Federal Communications Commission filed by JOHN CATE, AVI LAZAR, MICHAEL LEVINE, IDT CORPORATION, DAVID SCHROPFER, Robert Schiff, MOTTI LICHTENSTEIN, JONATHAN LEVY, HOWARD S. JONAS, JOYCE MASON, JAMES A. COURTER, JACK LEHR, ALEX SCHWARTZ. Conference held on the record. Defendants' motion to quash certain subpoenas denied. (Tape #07-03.) (LM, ) (Entered: 03/21/2007) |
| 03/21/2007 | [212](#) | Letter from William Perniciaro filing Rule 72(a) Objections and requesting review by the District Judge.. (Attachments: # [1](#) Statement of Objections to Magistrate Judge Ruling Pursuant to Rule 72(a)) (PERNICIARO, WILLIAM) (Entered: 03/21/2007) |
| 03/21/2007 | [213](#) | Letter from William Perniciaro with Brief and Certifications in Support of Application Under Rule 56(f). (Attachments: # [1](#) Certification of William Perniciaro# [2](#) Exhibit A through D and F# [3](#) Exhibit E Part 1# [4](#) Exhibit E Part 2# [5](#) Declaration of Michael Jewett with Exhibit A) (PERNICIARO, WILLIAM) (Entered: 03/21/2007) |
| 03/21/2007 | [214](#) | Exhibit to D. MICHAEL JEWETT Re [213](#) Letter,. (PERNICIARO, WILLIAM) (Entered: 03/21/2007) |
| 03/22/2007 | [215](#) | Letter from William Perniciaro attaching brief in support of Rule 56(f) Application. (Attachments: # [1](#) Brief in Support of Rule 56(f) Application)(PERNICIARO, WILLIAM) (Entered: 03/22/2007) |
| 03/22/2007 | [216](#) | Letter from William Perniciaro requesting guidance as to filing of a brief.. (PERNICIARO, WILLIAM) (Entered: 03/22/2007) |
| 03/23/2007 | [217](#) | MOTION to Seal *Materials Pursuant to Local Rule 5.3* by Robert Schiff, MICHAEL LEVINE, JONATHAN LEVY, ALEX SCHWARTZ, JAMES A. COURTER, JOYCE MASON, JOHN CATE, IDT CORPORATION, HOWARD S. JONAS, MOTTI LICHTENSTEIN, JACK LEHR, DAVID SCHROPFER, AVI LAZAR. (LAJEWSKI, LESLIE) (Entered: 03/23/2007) |
| 03/23/2007 | [218](#) | DECLARATION of Leslie A. Lajewski re [217](#) MOTION to Seal |

| | | |
|---|---|---|
| | | *Materials Pursuant to Local Rule 5.3* by Robert Schiff, MICHAEL LEVINE, JONATHAN LEVY, ALEX SCHWARTZ, JAMES A. COURTER, JOYCE MASON, JOHN CATE, IDT CORPORATION, HOWARD S. JONAS, MOTTI LICHTENSTEIN, JACK LEHR, DAVID SCHROPFER, AVI LAZAR. (Attachments: # 1 Exhibit Court's august 6, 2004 Memorandum Decision# 2 Exhibit Court's November 8, 2004 Order# 3 Exhibit March 13, 2007 Letter of Leslie A. Lajewski# 4 Exhibit March 13 2007 Letter of William Perniciaro)(LAJEWSKI, LESLIE) (Entered: 03/23/2007) |
| 03/23/2007 | 219 | BRIEF in Support re 217 MOTION to Seal *Materials Pursuant to Local Rule 5.3* filed by Robert Schiff, MICHAEL LEVINE, JONATHAN LEVY, ALEX SCHWARTZ, JAMES A. COURTER, JOYCE MASON, JOHN CATE, IDT CORPORATION, HOWARD S. JONAS, MOTTI LICHTENSTEIN, JACK LEHR, DAVID SCHROPFER, AVI LAZAR. (LAJEWSKI, LESLIE) (Entered: 03/23/2007) |
| 03/23/2007 | 220 | AFFIDAVIT of Service for Subpoena Duces Tecum w/out Deposition on 3/5/07. (DD, ) (Entered: 03/23/2007) |
| 03/24/2007 | 221 | Letter from William Perniciaro with proposed order replacing exhibit. (Attachments: # 1 Exhibit Proposed Order)(PERNICIARO, WILLIAM) (Entered: 03/24/2007) |
| 03/24/2007 | 222 | Exhibit to D. MICHAEL JEWETT Re 221 Letter. (PERNICIARO, WILLIAM) (Entered: 03/24/2007) |
| 03/26/2007 | | Set Deadlines as to 217 MOTION to Seal *Materials Pursuant to Local Rule 5.3*. Motion Hearing set for 4/23/2007 before Judge John C. Lifland. [PLEASE BE ADVISED THAT THIS MOTION WILL BE DECIDED ON THE PAPERS UNLESS OTHERWISE NOTIFIED BY THE COURT] (DD, ) (Entered: 03/26/2007) |
| 03/26/2007 | 223 | Letter from Defendants in response to the filing of a proposed order by plaintiff's counsel on March 24, 2007 re 221 Letter. (LAJEWSKI, LESLIE) (Entered: 03/26/2007) |
| 03/26/2007 | 225 | TRANSCRIPT filed for dates of March 20, 2007 before Judge Falk. (ji, ) (Entered: 03/27/2007) |
| 03/27/2007 | 224 | Letter from William Perniciaro requesting redaction of an ECF filing.. (Attachments: # (1) Exhibit Containing Order Redacting a Footnote from a Brief)(PERNICIARO, WILLIAM) (Entered: 03/27/2007) |
| 03/27/2007 | 226 | Letter from Leslie A. Lajewski, Esq. to Judge Falk (filed under seal) requesting redaction pursuant to previous confidentiality order. (LAJEWSKI, LESLIE) (Entered: 03/27/2007) |
| 03/27/2007 | 227 | Letter from William Perniciaro settling matter of redaction of an exhibit.. (PERNICIARO, WILLIAM) (Entered: 03/27/2007) |
| 03/28/2007 | 228 | Letter from William Perniciaro (under seal) requesting redaction of personal information from the record.. (Attachments: # (1) Exhibit Consisting of Order Redacting an Exhibit# (2) Exhibit Consisting of |

| | | Redacted Exhibit B of Document 182)(PERNICIARO, WILLIAM) (Entered: 03/28/2007) |
|---|---|---|
| 03/28/2007 | 229 | Letter from William Perniciaro to law firm of Winston Strawn in Washington D.C.. (Attachments: # 1 Exhibit Consisting of Subpoena Being Served on the Firm of Winston Strawn)(PERNICIARO, WILLIAM) (Entered: 03/28/2007) |
| 03/28/2007 | 230 | Letter from William Perniciaro requesing a conference to deal with an extension of time for certain matters set forth in the Scheduling Order.. (PERNICIARO, WILLIAM) (Entered: 03/28/2007) |
| 03/28/2007 | 231 | RESPONSE re 212 Letter. (Attachments: # 1 Exhibit Exhibit A# 2 Exhibit Exhibit B# 3 Exhibit Exhibit C# 4 Exhibit Exhibit D# 5 Exhibit Exhibit E# 6 Exhibit Exhibit F)(LAJEWSKI, LESLIE) (Entered: 03/28/2007) |
| 03/29/2007 | 232 | Letter from Defendants in response to plaintiff's request for a conference to discuss an extension of deadlines set forth in the Court's Scheduling Order re 230 Letter. (LAJEWSKI, LESLIE) (Entered: 03/29/2007) |
| 03/29/2007 | 233 | ORDER that Exhibit B of the defts' motion papers fld. on 2/15/07 as part of Document #182 shall be removed from the record.. Signed by Judge Mark Falk on 3/29/07. (DD, ) (Entered: 03/29/2007) |
| 03/29/2007 | 234 | ORDER that Doc. #215 Attachment #1 shall be STRICKEN from the record. Signed by Judge Mark Falk on 3/29/07. (DD, ) (Entered: 03/29/2007) |
| 03/30/2007 | 235 | Letter from William Perniciaro requesting an extension of deposition time tables and motion practice to amend the complaint. (PERNICIARO, WILLIAM) (Entered: 03/30/2007) |
| 04/03/2007 | 236 | MOTION for Protective Order *of Discovery Pursuant to Rule 26(c)* by IDT CORPORATION. (LAJEWSKI, LESLIE) (Entered: 04/03/2007) |
| 04/03/2007 | 237 | BRIEF in Support re 236 MOTION for Protective Order *of Discovery Pursuant to Rule 26(c)* filed by IDT CORPORATION. (LAJEWSKI, LESLIE) (Entered: 04/03/2007) |
| 04/03/2007 | 238 | DECLARATION of Leslie A. Lajewski re 237 Brief in Support of Motion *for a Discovery Protective Order Pursuant to Rule 26(c)* by IDT CORPORATION. (Attachments: # 1 Exhibit A# 2 Exhibit B# 3 Exhibit C# 4 Exhibit D# 5 Exhibit E# 6 Exhibit F# 7 Exhibit G# 8 Exhibit H# 9 Exhibit I# 10 Exhibit J)(LAJEWSKI, LESLIE) (Entered: 04/03/2007) |
| 04/03/2007 | 239 | Exhibit to IDT CORPORATION Re 238 Declaration,. (LAJEWSKI, LESLIE) (Entered: 04/03/2007) |
| 04/04/2007 | 240 | BRIEF *in Opposition to Plaintiff's Application Pursuant to Rule 56(F)* filed by IDT CORPORATION. (LAJEWSKI, LESLIE) (Entered: 04/04/2007) |
| 04/04/2007 | 241 | DECLARATION of Leslie A. Lajewski re 240 Brief *in Opposition to* |

| | | |
|---|---|---|
| | | *Plaintiff's Application Pursuant to Rule 56(F)* by IDT CORPORATION. (Attachments: # <u>1</u> Exhibit A# <u>2</u> Exhibit B# <u>3</u> Exhibit C# <u>4</u> Exhibit D) (LAJEWSKI, LESLIE) (Entered: 04/04/2007) |
| 04/05/2007 | | Set Deadlines as to <u>236</u> MOTION for Protective Order *of Discovery Pursuant to Rule 26(c)*. Motion Hearing set for 5/14/2007 before Judge John C. Lifland. [PLEASE BE ADVISED THAT THIS MOTION WILL BE DECIDED ON THE PAPERS UNLESS OTHERWISE NOTIFIED BY THE COURT] (DD, ) (Entered: 04/05/2007) |
| 04/09/2007 | <u>242</u> | BRIEF *in Opposition to Motion Under Local Rule 5.3 and Cross Motion to Unseal the Pleadings (Filed under seal)* filed by D. MICHAEL JEWETT. (Attachments: # (1) Exhibit Cover Letter to Judge Falk) (PERNICIARO, WILLIAM) (Entered: 04/09/2007) |
| 04/09/2007 | <u>243</u> | CERTIFICATION in Opposition re <u>217</u> MOTION to Seal *Materials Pursuant to Local Rule 5.3 with Exhibits under Seal* filed by D. MICHAEL JEWETT. (Attachments: # (1) Exhibit A# (2) B# (3) Exhibit C# (4) Exhibit D# (5) Exhibit E# (6) Exhibit F# (7) Exhibit G# (8) Exhibit H)(PERNICIARO, WILLIAM) (Entered: 04/09/2007) |
| 04/09/2007 | <u>244</u> | CERTIFICATION in Opposition re <u>217</u> MOTION to Seal *Materials Pursuant to Local Rule 5.3 Exhibits I Part 1, 2, and 3* filed by D. MICHAEL JEWETT. (Attachments: # (1) Exhibit I Part 2# (2) Exhibit I Part 3)(PERNICIARO, WILLIAM) (Entered: 04/09/2007) |
| 04/09/2007 | <u>245</u> | CERTIFICATION in Opposition re <u>217</u> MOTION to Seal *Materials Pursuant to Local Rule 5.3 Exhibits J Part 1, 2, and 3* filed by D. MICHAEL JEWETT. (Attachments: # (1) Exhibit J Part 2# (2) Exhibit J Part 3)(PERNICIARO, WILLIAM) (Entered: 04/09/2007) |
| 04/09/2007 | <u>246</u> | CERTIFICATION in Opposition re <u>217</u> MOTION to Seal *Materials Pursuant to Local Rule 5.3 Exhibits K, Part 1 and 2, L, M, N, O, P, Q, and R under seal* filed by D. MICHAEL JEWETT. (Attachments: # (1) Exhibit K Part 2# (2) Exhibit L# (3) Exhibit M# (4) Exhibit N# (5) Exhibit O# (6) Exhibit P# (7) Exhibit Q# (8) Exhibit R)(PERNICIARO, WILLIAM) (Entered: 04/09/2007) |
| 04/09/2007 | <u>247</u> | Letter from William Perniciaro requesting additional time to answer a motion to quash a subpoena. (Attachments: # <u>1</u> Exhibit Consisting of So Ordered Subpoena)(PERNICIARO, WILLIAM) (Entered: 04/09/2007) |
| 04/09/2007 | <u>248</u> | BRIEF *in Opposition to Defendants Motion Filed to Seal the Record* filed by D. MICHAEL JEWETT. (PERNICIARO, WILLIAM) (Entered: 04/09/2007) |
| 04/09/2007 | <u>249</u> | CERTIFICATION in Opposition re <u>207</u> MOTION to Quash *Subpoenas served by plaintiff on AT&T, Inc., Sprint Nextel Corporation and Verizon Communications, Inc. Certification of William Perniciaro* filed by D. MICHAEL JEWETT. (Attachments: # <u>1</u> Exhibit A# <u>2</u> Exhibit B1# <u>3</u> Exhibit B2# <u>4</u> Exhibit D# <u>5</u> Exhibit E1# <u>6</u> Exhibit E2)(PERNICIARO, WILLIAM) (Entered: 04/09/2007) |
| | | |

| 04/09/2007 | 250 | CERTIFICATION in Opposition re 207 MOTION to Quash *Subpoenas served by plaintiff on AT&T, Inc., Sprint Nextel Corporation and Verizon Communications, Inc. Exhibit C* filed by D. MICHAEL JEWETT. (PERNICIARO, WILLIAM) (Entered: 04/09/2007) |
|---|---|---|

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 04/10/2007 17:11:10 | | | |
| **PACER Login:** | cd1079 | **Client Code:** | 11419-0002 |
| **Description:** | Docket Report | **Search Criteria:** | 2:04-cv-01454-JCL-MF Start date: 1/1/1970 End date: 4/10/2007 |
| **Billable Pages:** | 23 | **Cost:** | 1.84 |

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

D. MICHAEL JEWETT,                          :
                                            :
            Plaintiff,                      :
                                            :
      v.                                    :
                                            : CIVIL ACTION NO. 04-1454 (JCL)
                                            : CIVIL ACTION NO. 04-4865 (JCL)
IDT CORPORATION; HOWARD S.                  :
JONAS; MOTTI LICHTENSTEIN;                  :          **ORDER**
JACK LERER; DAVID SCHROPFER;                :
AVI LAZAR; ROBERT SCHIFF;                   :
MICHAEL LEVINE; JONATHAN LEVY;  :
ALEX SCHWARZ; JAMES A. COURTER;:
JOYCE MASON;  JOHN CATE;                    :
ADRIAN CORR; and MONT SALEM                 :
MANAGEMENT, LTD.,                           :
                                            :
            Defendants.                     :
                                            :

**LIFLAND, District Judge**

_____On November 17, 2005, the Court heard oral argument on the motions to

dismiss and other motions of Defendants IDT, the twelve individual IDT Defendants[1],

Adrian Corr, and Mont Salem Management Ltd.   The Court reserved decision on

---

[1] Howard S. Jonas, Motti Lichtenstein, Jack Lerer, David Schropfer, Avi
Lazar, Robert Schiff, Michael Levine, Jonathan Levy, Alex Schwarz, James A.
Courter, Joyce Mason, and John Cate.

whether Count Six of the Plaintiff's complaint, Intentional Infliction of Emotional Distress, should be dismissed pursuant to Defendant IDT's and the twelve individual IDT Defendants' motion to dismiss.

"To establish a viable claim of intentional infliction of emotional distress, a plaintiff must prove: (1) that defendant acted intentionally or recklessly; (2) that defendant's conduct was extreme and outrageous; (3) the defendant's actions were the proximate cause of the plaintiff's distress; and (4) the emotional distress suffered by the plaintiff was severe." Buckley v. Trenton Saving Fund Society, 111 N.J. 355, 366 (1988). Conduct is "extreme and outrageous" when it is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious, and utterly intolerable in a civilized community." Id.

Here, Defendants argue that the Plaintiff's allegation that he was wrongfully terminated as an act of retaliation does not and cannot rise to the level of extreme and outrageous conduct because "courts have consistently recognized that it is particularly difficult to establish intentional infliction of emotional distress in the employment context." Witherspoon v. Rent-A-Center, 173 F.Supp.2d 239, 242 (D.N.J. 2001) (citations omitted); (Transcript of Hearing (Tr.) at 86-7). Although termination of employment, standing alone, generally does not constitute intentional infliction of emotional distress, where the termination is "accompanied or preceded

2

by harassing conduct" or something "quite a bit more" than the firing, dismissal at the 12(b)(6) or summary judgment stage is inappropriate.  See Borecki v. Eastern International Management Corp., 694 F.Supp. 47, 61 (D.N.J. 1988).  Given the early stage of this litigation, it is to early say that Defendants' conduct could never rise to the extreme and outrageous level required to prove an intentional infliction of emotional distress claim.

The Defendants also take issue with the fourth element of the intentional infliction of emotional distress claim because they say that Plaintiff has failed to allege that he suffered any emotional distress. (Tr. at 106)  This element requires a plaintiff to show that he suffered distress "so severe that no reasonable [person] could be expected to endure it."  Buckley, 111 N.J. at 366.  Here, Plaintiff's complaint alleges merely that he suffered distress "so severe that no reasonable person could be expected to endure such distress." (Amended Complaint ¶ 174)  The mere recitation of the legal standard is not sufficient to survive Defendants' motion to dismiss. Therefore, Plaintiff must replead with specificity the emotional impact he suffered because of Defendants' conduct.  Defendants' motion to dismiss the intentional infliction of emotional distress claim will be granted unless Plaintiff provides the required amendment of his complaint within thirty days of this order.

Accordingly, for the reasons above and on the record, it is on this 27th day of

3

December, 2005,

## AS TO CIVIL ACTION NO. 04-1454

**ORDERED** that Count One, New Jersey Anti-Racketeering Act, N.J.S. 2C:41-1 *et seq.* is dismissed with prejudice as to all Defendants because the Plaintiff lacks standing to bring this claim; and it is further

**ORDERED** that, as a result of the dismissal of Count One, Defendant Adrian Corr's Motion to Dismiss Count One of the Complaint under Fed. R. Civ. P. 12(b)(2) and 12(b)(6) and Motion to Strike Portions of Plaintiff's Opposition to Defendant Corr's Motion to Dismiss Count One of the Complaint are moot; and it is further

**ORDERED** that Counts Two through Six of the Complaint against Mont Salem Management, Ltd. are voluntarily dismissed by the Plaintiff under Fed. R. Civ. P. 41; and it is further

**ORDERED** that, as a result of the dismissal of Count One and the voluntary dismissal of Counts Two through Six, Defendant Mont Salem Management's Motion to Dismiss the Complaint under Fed. R. Civ. P. 12(b)(2) and 12(b)(6) and Motion to Strike Portions of Plaintiff's Opposition to Defendant Mont Salem's Motion to Dismiss the Complaint are moot; and it is further

**ORDERED** that Plaintiff's cross-motion for default judgment against Defendant Mont Salem Management is denied; and it is further

**ORDERED** that on Count Two, New Jersey Conscientious Employee Protection Act, N.J.S. 34:19-1 *et seq.*, IDT's motion to dismiss is

(a)     Granted as to claims under N.J.S. 34:19-3(b) and denied as to claims under N.J.S. 34:19-3(a) and (c); and

(b)     The motion to dismiss of the individual IDT Defendants is denied but limited discovery as to each individual's participation in the firing of the Plaintiff may proceed on the following terms:

   (I)     Plaintiff shall submit proposed interrogatories on this subject to Magistrate Judge Falk; and

   (ii)    Plaintiff shall narrowly draft the proposed interrogatories to explore the involvement of each individual IDT Defendant in the firing of Plaintiff; and

   (iii)   The interrogatories are limited to ten, including discrete subparts, for each individual IDT Defendant; and

   (iv)    Additional discovery against one or more of the individual IDT Defendants shall be at the discretion of Magistrate Judge Falk; and it is further

**ORDERED** that on Count Three, New Jersey's Law Against Discrimination, N.J.S. 10:5-1 *et seq.*, Defendant IDT's motion to dismiss is

5

(a)    Granted as to the issue of a hostile work environment based on religion; and

(b)    Denied as to the issue of retaliatory discharge based on religious discrimination.  Plaintiff must make an election of remedies as a consequence of the CEPA waiver provision, N.J.S. 34:19-8, at a time to be set by Magistrate Judge Falk; and

    (i)    Plaintiff shall submit proposed interrogatories on this subject to Magistrate Judge Falk; and

    (ii)    Plaintiff shall narrowly draft the proposed interrogatories to explore the involvement of IDT and each individual IDT Defendant in the firing of Plaintiff on account of his alleged complaints about religious discrimination; and

    (iii)    The interrogatories are limited to ten, including discrete subparts, for each individual IDT Defendant; and

    (iv)    Additional discovery against IDT and one or more of the individual IDT Defendants shall be at the discretion of Magistrate Judge Falk; and it is further

**ORDERED** that on Count Four, Defamation, Defendant IDT's motion to dismiss is denied.  Plaintiff must make an election of remedies, as a consequence of

the CEPA waiver provision, N.J.S. 34:19-8, at a time to be set by Magistrate Judge Falk; and it is further

**ORDERED** that on Count Five, Tortious Interference with Prospective Economic Advantage, Defendant IDT's motion to dismiss is granted; and it is further

**ORDERED** that on Count Six, Intentional Infliction of Emotional Distress, Plaintiff is to amend his complaint within thirty days of this order to specify the emotional distress he suffered as a result of Defendants' conduct. Defendant IDT and the twelve individual IDT Defendants' motion to dismiss will be granted unless Plaintiff sufficiently amends his complaint within 30 days of this order.

**ORDERED** that discovery on issues not addressed herein is subject to the discretion of Magistrate Judge Falk; and it is further

**ORDERED** that Defendants IDT and the twelve individual IDT Defendants shall file their Answer to the Second Amended Complaint within 20 days after the entry of this Order.

### AS TO CIVIL ACTION NO. 05-4865

**ORDERED** that Civil Action No. 05-4865 is dismissed; and it is further

### AS TO A SUPPLEMENTAL COMPLAINT

**ORDERED** that Plaintiff may file a supplemental complaint in Civil Action No.04-1454 pursuant to Fed. R. Civ. P. 15(d), alleging only those acts that occurred

7

after the filing of the amended complaint in Civil Action No. 04-1454; and it is further

_____**ORDERED** that claims concerning the alleged conduct of defense counsel and/or in-house counsel for IDT during the course of defending this litigation shall be dealt with at the close of this action under Rule 11.  Plaintiff may not file an abuse of process claim in his supplemental complaint; and it is further

_____**ORDERED** that if Plaintiff files a supplemental complaint, it must be filed within thirty days of the entry of this order; and it is further

**ORDERED** that IDT and the twelve individual IDT Defendants shall answer or otherwise move as to the supplemental complaint within thirty days of being served with the supplemental complaint.

\s\   John C. Lifland, U.S.D.J.

```
 1                    UNITED STATES DISTRICT COURT
                         DISTRICT OF NEW JERSEY
 2

 3    JEWETT,                         .
                                      .
 4         Plaintiff,                 .
                                      .  Case No. 04-01454
 5    vs.                             .
                                      .  Newark, New Jersey
 6    IDT CORPORATION, et al.,        .  March 7, 2007
                                      .
 7         Defendants.                .
                                      .
 8

 9                     TRANSCRIPT OF HEARING
                 BEFORE THE HONORABLE MARK FALK
10               UNITED STATES MAGISTRATE JUDGE

11    APPEARANCES:

12

      For the Plaintiff:     WILLIAM P. PERNICIARO, ESQ.
13                           84 New Dorp Plaza
                             State Island, NY 10306
14

15    For the Defendants:    LESLIE LAJEWSKI, ESQ.
                             Coughlin Duffy
16                           350 Mount Kemble Avenue
                             Morristown, NJ   07692
17
                             DONALD A. ROBINSON, ESQ.
18                           Robinson & Levelli, ESQS.
                             Two Penn Plaza East, Suite 1100
19                           Newark, NJ   07105-2237

20
      Audio Operator:
21
      Transcription Service:    KING TRANSCRIPTION SERVICES
22                              65 Willowbrook Boulevard
                                Wayne, New Jersey 07470
23                              (973) 237-6080

24
      Proceedings recorded by electronic sound recording;
25    transcript produced by transcription service.
```

1                          Certification

2

3        I, Sara L. Kern, Court-approved transcriber, certify

4   that the foregoing is a correct transcript from the official

5   electronic sound recording of the proceedings in the

6   above-entitled matter.

7

8

9

10

11       *Sara L. Kern*

12                                    March 12, 2007

13   _____      _____

14   Signature of Approved Transcriber          Date

15

     Sara L. Kern, CET**D-338
16   King Transcription Services
     65 Willowbrook Boulevard
17   Wayne, NJ 07470
     (973) 237-6080
18

19

20

21

22

23

24

25

1   aware of whistle-blowing?

2              MS. LAJEWSKI:  No.

3              THE COURT:  I just wanted to make sure I understood

4   that.

5              So let me now turn to Mr. Perniciaro and ask this

6   very basic question, which is, Mr. Perniciaro, if there's no

7   evidence that an individual defendant was involved in the

8   termination, the adverse employment action in this case, how

9   can they remain as a defendant in this case?

10             MR. PERNICIARO:  Well, we went over this with

11  Judge Lifland, and he seems to have applied the standard that

12  you're addressing.  He seems to have applied that.  And to a

13  certain extent -- to a certain extent, we've had to accept

14  that.

15             But I want to point out that the theory of this

16  case from Day One has been as follows.  This deal, this

17  TeleCo Haiti deal has been, in my opinion, proven to be quite

18  suspect.  I won't say I've proven it to be unlawful.  I

19  haven't done that yet.  But I've submitted a tremendous

20  amount of material on it, that it's very problematic for the

21  company.

22             And our theory of the case is that Mr. Jewett was a

23  relatively new employee in this company, and he was just sort

24  of getting integrated into IDT's system.

25             Now there are limits to what I can say, because the

1  courtroom is open at this time.  But I will say that it's

2  not -- it's not a secret that I've made an extensive

3  presentation on the problems with the TeleCo Haiti deal, not

4  only in terms of IDT's license, the SEC regulations.  I've

5  made numerous presentations on how it's problematic with the

6  FCPA.

7          I believe that this was well known in the company.

8  And my discovery of late is discovering more deals that are

9  problematic.  And I think it's endemic in this corporation

10 that they don't follow the rules of their license.  They

11 don't have a good due diligence procedure with the FCPA.

12         And I believe that Mr. Jewett was not going along

13 with that.  He was just getting integrated into their system.

14 And there are a number of individuals that worked on this

15 TeleCo Haiti deal --

16         THE COURT:  You can't -- you can't sue them on that

17 basis.  That's not part of this claim.  You can -- I'll hear

18 from you -- but try to focus on the individual employees and

19 the claims in the case.  The RICO claim was dismissed.

20         MR. PERNICIARO:  Correct.

21         THE COURT:  So they cannot be under that.

22         MR. PERNICIARO:  And I -- I'm just -- I had a

23 suspicion that there were more people involved than David

24 Schropfer, and I was correct.  If you look at the discovery

25 materials, here's a statement from Jonathan Levy, which the

1          THE COURT:  I think you should file those motions,

2    Ms. Lajewski.

3          MS. LAJEWSKI:  Thank you.

4          THE COURT:  But let me ask you, Mr. Perniciaro,

5    just -- I don't know if there's ever any chance of trying to

6    short-circuit things, but for example, what would the

7    possible relevance of other deals that if -- this is a

8    retaliation case in primary part, a CEPA case, it's a

9    retaliation case.  If the plaintiff didn't know about these

10   and didn't complain about these, then how can this be -- it's

11   an employment case.  How can that stuff be relevant?

12         MR. PERNICIARO:  Well, first of all, some of these

13   other deals he worked on directly.  The defendants have

14   claimed that my client never brought home any deals.  He

15   never brought in any business, never accomplished anything at

16   IDT.  In fact, he accomplished quite a bit.  So there's

17   discovery on that.  That would certainly be relevant to rebut

18   the defendants' claims of poor work performance, that's one.

19         Two, what we're seeking is -- there's like a

20   problem at the SEC.  Apparently, the SEC file maintained for

21   Haiti has disappeared from their record room.  What we seek

22   is to reconstruct that file.  We're seeking IDT's filings.

23   Of course, that would be relevant to unlawful conduct in this

24   case, one of my client's objections.

25         And we're seeking the other filings of the

1  UNITED STATES DISTRICT COURT
   DISTRICT OF NEW JERSEY

2

3  Michael Jewett,                    .
                                      .    Docket No. 04-1454
4   Plaintiffs,                       .
                                      .    Newark, New Jersey 07102
5            vs.                      .    March 20, 2007
                                      .
6  IDT Corporation, et al.            .
                                      .
7            Defendants.              .

8          TRANSCRIPT OF CASE MANAGEMENT CONFERENCE
             BEFORE THE HONORABLE MARK FALK

9

10 APPEARANCES:

11 For the Plaintiff:          WILLIAM P. PERNICIARO, ESQ.
                               615 Chesterfield-Arneytown Rd.
12                             Trenton, New Jersey 08620

13
   For the Defendants:         LESLIE A. LAJEWSKI, ESQ.
14                             COUGHLIN DUFFY LLP
                               350 Mount Kemble Avenue
15                             Morristown, New Jersey 07962

   Audio Operator:
16
   Transcription Company:      KING TRANSCRIPTION SERVICES
17                             65 Willowbrook Boulevard
                               Wayne, New Jersey 07470
18                             (973) 237-6080

19 Proceedings recorded by electronic sound recording, transcript
   produced by transcription service.

20

21

22

23

24

25

CERTIFICATION

1      THE COURT:  I don't recall.  So is that it.

2      MR. PERNICIARO:  I believe that's it.

3      THE COURT:  Thank you very much.

4      MR. PERNICIARO:  Have a good day.

5      MS. LAJEWSKI:  Thank you, Your Honor.

6                  (Proceeding concluded)

7   Certification

8       I, Sharon Conover, Court approved transcriber, certify

9   that the foregoing is a correct transcript from the official

10  electronic sound recording of the proceedings in the above-

11  entitled matter.

12

13  *Sharon Conover*                    3/22/07
    Signature of Approved Transcriber        Date

14

15  Sharon Conover
    King Transcription Services
16  65 Willowbrook Boulevard
    Wayne, NJ 07470
17  (973) 237-6080

18

19

20

21

22

23

24

25

Colloquy

1  docket?

2          MR. PERNICIARO: Absolutely. Absolutely, that's the

3  law. Everything is mandatory electronic filing, unless it's

4  sealed -- unless it's sealed or sensitive information.

5  Everything has to go on the record. Everything that goes to

6  you, everything fax that goes to you, even though it's a fax to

7  you, it's a public record. Anything filed with you, the

8  subject of <u>Pansey versus Straudsberg</u>, everything, unless it's

9  filed under seal. And there are procedures for that, but

10 adversary doesn't follow them. She's -- the only way is for

11 her to protect her confidential information, she doesn't avail

12 herself of them. It's as simple as that. It's just not a

13 complicated issue. It's not.

14         THE COURT: Is that your understanding, Ms. Lajewski,

15 that everything is --

16         MS. LAJEWSKI: No.

17         THE COURT: -- that is said, every letter sent to a

18 judge, everything is filed?

19         MS. LAJEWSKI: No, Your Honor, that's not my

20 understanding at all. And in fact, I believe Your Honor

21 previously in a conference, had read from your Magistrate's

22 Rules about the fact of case management and not necessarily

23 having to do everything on the record, and how sometimes that

24 assists in furthering a case.

25         .    The defendant's point is very specifically, we talked





## February 12, 2007

**THE AMERICAS**

# The Haiti File

**By MARY ANASTASIA O'GRADY**
*February 12, 2007; Page A14*

A government file pertinent to two civil law suits alleging bribery doesn't just get up and walk out of a supposedly secure federal-agency record room in Washington. When said bribery allegations involve politically influential individuals on both sides of the aisle and a notoriously corrupt former Haitian president that the U.S. supported for a decade, it's even more troubling.

**DOW JONES REPRINTS**

&R&) This copy is for your personal, non-commercial use only. To order presentation-ready copies for distribution to your colleagues, clients or customers, use the Order Reprints tool at the bottom of any article or visit:
www.djreprints.com.

• See a sample reprint in PDF format.
• Order a reprint of this article now.

In a December email to a lawyer in one of the law suits, the Federal Communications Commission said that its "Haiti file" was missing. The file is the record of which U.S. telecom companies that did business with the government of former Haitian President Jean Bertrand Aristide actually complied with U.S. law by submitting their contracts to the FCC. An official at the commission told me on Friday that "we don't have the file but we are continuing our active efforts to locate it."

I'm not sure whether the missing file would fit into Sandy Berger's socks. But given the number of political heavyweights -- both Republican and Democrat -- who might welcome the disappearance of these documents, it's a bit difficult to write the whole thing off as an accident.

Since 2000 I have followed allegations that Haiti's Mr. Aristide took bribes from U.S. telecom carriers doing business in his country. These charges arose first in conversations with Haitians familiar with operations at the state-owned phone company, Teleco. More recently they have been aired in two separate civil suits filed in two different U.S. federal courts.

The alleged quid pro quo for the U.S. companies that agreed to pay the bribes was access to the Teleco network at rates below the uniform "international settlement rate" set by the FCC. During the course of my investigations, two different long-distance suppliers told me that Teleco officials offered them just such a special rate in exchange for payment made to specially designated accounts.

If the allegations are true, it would mean that the Foreign Corrupt Practices Act was violated, right under the nose of the FCC and the Department of Justice, during Democratic and Republican administrations. It would also mean that while Haitians were placing their trust in Uncle Sam to help them construct a democracy, millions of dollars that might have gone to building an infrastructure were siphoned off by a corrupt tyrant and U.S. business partners with friends in high places.

In 2000, questions arose about Fusion Telecommunications, which had a concession to terminate calls in Haiti and which, according to sources, had an office inside Teleco. Marvin Rosen (finance

chairman for the Democratic National Committee from September 1995 until January 1997), former Democratic Congressman Joseph P. Kennedy II, and Bill Clinton confidante Thomas (Mack) McLarty III were all on the board of Fusion. Mr. Rosen was Fusion chief executive officer.

Rumors abounded in Haiti that Fusion had a sweetheart deal with Mr. Aristide that gave the U.S. firm rates well below the international settlement rate. When I inquired about the company's Haiti business while preparing a Jan. 2001 op-ed, I was immediately referred to a company lawyer who refused to either confirm or deny that the company was even doing business in Haiti. In September 2005, Fusion told me it had always filed what was required at the FCC and denied making any illegal payments to Teleco.

In 2001 Mr. Kennedy's office released a statement that he had no "joint venture, partnership or business arrangement with the president of Haiti or for that matter, anyone in Haiti" and that he was not involved in running Fusion. Nevertheless, in a Feb. 7, 2001 op-ed in the Boston Globe, he wrote, "I was proud to help bring more than $1 million in private investment from Fusion into Haiti." That was peanuts when you consider that Teleco once had annual revenues upwards of $60 million. By the time Mr. Aristide was forced into exile by a political uprising in 2004, the company was losing money.

The whole thing might have been swept under the rug if it weren't for Michael Jewett, who in 2003 had been an employee at New Jersey-based IDT, headed by former Republican congressman Jim Courter. Like Fusion, IDT had a number of seasoned politicos on its board.

In March 2004 Mr. Jewett filed suit in federal court in Newark, N.J. alleging that he was fired from IDT because he objected to an illegal deal between the company and Mr. Aristide. Mr. Jewett's allegations seem to echo the charges swirling around Fusion. IDT responded much like Fusion, insisting that its arrangement with Haiti Teleco was a trade secret. In fact, IDT had a legal obligation to make its arrangement public and the information was unsealed, revealing that IDT had been granted a rate of nine cents per minute versus the FCC mandated rate of 23 cents. Mr. Jewett also claims in court documents that IDT agreed to make payments to an offshore account in Turks and Caicos called "Mount Salem," ("Mont Salem" in French) for the benefit of Mr. Aristide.

After Mr. Aristide was driven from power in February 2004, the interim government pried open Teleco's books and alleged that the company had been looted. In November 2005 it filed suit in U.S. district court in southern Florida. "The fraudulent scheme to steal Teleco revenues was carried out in part through defendant Mont Salem," the government claimed, adding that, "At Aristide's direction, Inevil, Duperval and Beliard [Haitian nationals] directed at least two of the Class B carriers, IDT and Skytel, to make their payments for Teleco's services to Mont Salem. At Aristide's direction, Teleco's then-counsel also caused Teleco to request at least one other Class B carrier, Fusion, to make payments through Mont Salem."

Mr. Jewett's case has already revealed a lot, but it won't tell Haitians where millions of dollars in lost Teleco revenues went throughout the 1990s. That will require a more thorough airing, such as the civil suit Haiti filed in Florida. Unfortunately, Haiti has had to withdraw its suit for lack of funds. Its request for a share of assets forfeited by Haitian drug kingpins -- which could be used to reinstate the suit and pay legal fees -- has been resisted by the DOJ. First DOJ said it couldn't release the assets because the cases were on appeal. Now it says that it doesn't yet have the forfeited assets.

Another way to get at the truth would be if DOJ used the mountain of evidence it seems to be sitting on to indict Mr. Aristide, since he has often asserted that he won't remain silent about his dealings with highly placed American politicians if he is brought to trial. Why the DOJ would turn down an offer like that is a mystery, a little like the missing file.

· **Write to O'Grady@wsj.com**[1].

**URL for this article:**
http://online.wsj.com/article/SB117124344952105351.html

**Hyperlinks in this Article:**
**(1)** mailto: O'Grady@wsj.com

**Copyright 2007 Dow Jones & Company, Inc. All Rights Reserved**

This copy is for your personal, non-commercial use only. Distribution and use of this material are governed by our **Subscriber Agreement** and by copyright law. For non-personal use or to order multiple copies, please contact Dow Jones Reprints at 1-800-843-0008 or visit **www.djreprints.com**.

 

**August 4, 2006**

THE AMERICAS

# New Jersey and Aristide, Perfect Together

**By MARY ANASTASIA O'GRADY**
*August 4, 2006*

**DOW JONES REPRINTS**

® This copy is for your personal, non-commercial use only. To order presentation-ready copies for distribution to your colleagues, clients or customers, use the Order Reprints tool at the bottom of any article or visit: www.djreprints.com.

• See a sample reprint in PDF format.
• Order a reprint of this article now.

There has never been a shortage of "off-the-record" allegations that Haiti's Jean Bertrand Aristide stole liberally from the public purse. But a case being heard in federal court in Newark, N.J. might actually prove it.

It is there that Michael Jewett has alleged that in 2003 his then-employer, politically influential New Jersey-based telecom giant IDT, entered into a shady deal with then-Haitian President Aristide in violation of U.S. law.

In court documents Mr. Jewett claims he was wrongfully fired because he objected to the agreement. The deal, as he describes it in his complaint, was also highly unethical because it facilitated the theft of Haiti's telecom revenues -- one of the few sources of hard currency for the starving nation.

Mr. Jewett's claim has enough credence that the U.S. Department of Justice has been investigating it, according to his lawyer in court documents. But now federal magistrate judge Mark Falk has issued a blanket protective order prohibiting Mr. Jewett from talking to Justice about whatever IDT deems confidential in the discovery phase of the case. It leaves one wondering what IDT, which did not return phone calls for comment, doesn't want Justice to find out.

This case has implications that go far beyond the rights of the plaintiff. Based on what has already been revealed in the case, it seems quite possible that if he is allowed to tell his story, Mr. Jewett could help Justice get to the truth about Mr. Aristide's financial misdeeds, allegedly aided and abetted by IDT and other U.S. corporations during the decade that he controlled the country.

In the past two weeks at least 30 people have died in gang violence in Port-au-Prince and 300 others were forced to flee their homes. The Economist Intelligence Unit reported on Monday that "U.N. representatives fear that the recent attacks in the capital's slums may be designed to exert pressure on [President René] Préval to allow Mr. Aristide, now in exile in South Africa, to return to Haiti." U.N. peacekeepers may not be the most effective fighting force but they tend to be in the know about who is behind trouble. Their observations support the claim that until Mr. Aristide is convicted and put in jail for his many transgressions -- alongside Panama's Manuel Noriega -- Haiti cannot begin to stabilize.

The interim Haitian government of Gerard Latortue (March 2004-May 2006) compiled a mountain of evidence against Mr. Aristide, alleging the theft of revenues from the telecom monopoly Haiti Teleco. In a civil lawsuit filed in a federal court in Florida in November, Haiti

alleged that Mr. Aristide had given foreign carriers preferential settlement rates in return for their agreement to place payments in offshore bank accounts belonging to him. This is precisely what Mr. Jewett's claim against IDT alleges.

Unfortunately, Haiti has withdrawn its case in Florida, citing troubles with legal fees. The case may be refiled, but until then, the keys to unlocking the wider truth of the Aristide telecom business lie with the Jewett case and the Justice Department.

In the early stages of the case, IDT thought it could avoid scrutiny by claiming that its Haiti Teleco deal was a trade secret. In May 2004 it submitted a sworn affidavit saying just that. Judge Falk concurred and permitted the sealing of the pricing agreement in the complaint. But Mr. Jewett's attorney, William Perniciaro, later showed the affidavit to be false by presenting to the court Federal Communication Commission regulations that state that the FCC sets a single price for all U.S. carriers doing business with a given foreign monopoly. Mr. Perniciaro also showed that, according to FCC rules, agreements between U.S. carriers and foreign monopoly carriers must be publicly disclosed. Whereupon, IDT agreed to have the price unsealed. What was revealed was a deal that gave IDT access to the Haiti Teleco network at nine cents a minute, while the FCC's set price was 23 cents a minute. In other words, IDT had broken the law.

That's bad enough. Now, months later, in barring Mr. Jewett from discussions with Justice, Judge Falk has cited a new IDT affidavit that again claims the Haiti Teleco deal was a trade secret.

In his court filings, Mr. Jewett claims that the quid pro quo for the cut-rate price was an IDT agreement to deposit payments in an offshore account called "Mount Salem," for the benefit of Mr. Aristide. This is otherwise known as bribery. The Haitian complaint in Florida also alleged that there was a similarly named offshore account for the benefit of Mr. Aristide.

The federal court in Newark seems to be making discovery of this information also difficult. Mr. Perniciaro, Mr. Jewett's attorney, was given permission to submit 20 questions to each of the 12 defendants. Since the law stipulates that to prove a whistleblower case, you have to prove the connection between the firing and what the employee alleges went on, Mr. Perniciaro submitted questions related to the Teleco Haiti deal.

Federal Judge John Lifland ruled that the questions went against his instructions to keep the inquiry narrow and issued an order for Mr. Perniciaro to show why he should not be held in contempt. When the attorney argued the importance of motive in proving his case, Judge Lifland admonished him: "You are on thin ice by going into that, Mr. Perniciaro. It has very little to do with the reason we are here today." Mr. Perniciaro was held in contempt.

Under Judge Falk's gag order, Justice will have a hard time learning more from Mr. Jewett. If the plaintiff speaks to federal investigators he will have to keep clear in his mind what he has learned in discovery and what he knew already. If he makes a mistake, he could be sanctioned in some manner by the court.

Herb Denton, president of Providence Capital, a New York investment firm, has this to say about Mr. Jewett's allegation: "If it is true then one has to ask questions about the dozens of other notoriously corrupt countries throughout the Caribbean, Latin America, and Russia and its former republics where IDT does business."

That suggests one possibility for why IDT doesn't want Justice to know what, under FCC

regulations, should be a matter of public record. It doesn't explain, though, why a federal court would want to assist in the effort.

**URL for this article:**
http://online.wsj.com/article/SB115465991421626685.html

**Copyright 2007 Dow Jones & Company, Inc. All Rights Reserved**

This copy is for your personal, non-commercial use only. Distribution and use of this material are governed by our **Subscriber Agreement** and by copyright law. For non-personal use or to order multiple copies, please contact **Dow Jones** Reprints at 1-800-843-0008 or visit **www.djreprints.com**.



FORMAT FOR PRINTING sponsored by  TOSHIBA Don't copy. Lead.®

**November 11, 2005**

## THE AMERICAS

# Haiti Sues to Collect a Phone Bill

**By MARY ANASTASIA O'GRADY**
*November 11, 2005*

**DOW JONES REPRINTS**

(R) This copy is for your personal, non-commercial use only. To order presentation-ready copies for distribution to your colleagues, clients or customers, use the Order Reprints tool at the bottom of any article or visit: www.djreprints.com.

• See a sample reprint in PDF format.
• Order a reprint of this article now.

'Aristide and his accomplices demanded and received substantial bribes and kickbacks from U.S. telecommunications carriers, which were wire transferred from U.S. banks, and profited from drug trafficking in and with the United States." That's the claim of the Haitian government and state-owned Haiti Teleco in a civil action filed in U.S. district court in southern Florida last week against former Haitian president Jean Bertrand Aristide and eight other defendants.

To be clear, these are but allegations. Still, the 74-page document filled with startling detail raises many questions not only about Aristide's behavior but also about American companies that are alleged to have helped him loot the treasury of the Western Hemisphere's poorest nation.

Among the American companies that the suit alleges worked with Aristide are New Jersey-based IDT Corp., whose CEO is former Republican Congressman Jim Courter, and Fusion Telecom, headed by former Democratic Party finance chairman Marvin Rosen.

One of the "front companies" that the claim says Aristide used is "Foundation Aristide." No longer active, it was a U.S. nonprofit whose board of directors included Aristide's wife Mildred and his government's lawyer Ira Kurzban. Board "advisers" included U.S. members of Congress Maxine Waters, Charlie Rangel and John Conyers. The foundation board also included Joseph P. Kennedy II -- also on Fusion's board -- and former Congressmen Ron Dellums and Michael Barnes. Mr. Barnes was retained by Aristide at $55,000 a month to lobby the Clinton Administration to return him to power after his exile in a 1991 coup. Aristide was reinstalled in 1994 with the help of U.S. troops.

The civil action demands damages for violations of the federal Racketeer Influenced and Corrupt Organizations Act, violations of state RICO laws in Florida and New Jersey, breach of fiduciary duty, fraud, deceit and conspiracy to defraud. One might expect the Justice Department to look into these charges, no matter the Washington fallout that could occur.

The court document maps a money trail that, if proof exists, would explain how Aristide enriched himself over the 12 years that he controlled -- both officially and at times unofficially -- Haiti's purse strings. A successful court case might also explain why the Clinton administration and the Congressional Black Caucus protected the strongman for so long, despite pleas from Haitian patriots who claimed he was pillaging their country.

The complaint lists nine defendants in total. Seven are Haitian individuals and one is a resident of Turks and Caicos. But the ninth defendant, a business domiciled in Turks and Caicos, is most intriguing. The plaintiffs allege that this firm, Mont Salem Management Ltd., was used "to receive and distribute kickbacks and bribes paid to Aristide and his accomplices." Mont Salem was allegedly a conduit to Aristide used by the American firms.

This is not the first time "Mont Salem" has turned up in U.S. court documents alleging Aristide corruption. In a 2004 wrongful dismissal case filed in federal court in New Jersey against IDT Corp., plaintiff Michael Jewett claims that he was fired because he questioned both the legality and the ethics of IDT's plan to deposit termination fees due Haiti Teleco in an offshore account called "Mount Salem" for the benefit of Aristide. ("Mont" is French for "Mount.")

The Jewett case alleges that while law-abiding companies were paying Teleco's official 23-cent-per-minute rate to terminate calls in Haiti, IDT won a rate of nine cents per minute. Any carrier with such an advantage could then wholesale minutes to competitors at just under the official rate and pocket the difference. The quid pro quo for the rock bottom price, according to his complaint, was placing settlement fees in an offshore account set up for Aristide. That, the complaint says, was Mount Salem. IDT has said the Jewett complaint is a "baseless claim by a former disgruntled employee."

Mr. Jewett's allegations raised a charge of corruption in the Haitian presidency in 2003. The Florida action filed by the current Haitian government goes into further detail with its allegations. It claims that in October 1994 Teleco began giving special rates to "class B carriers" -- including Fusion -- to access the Haitian network. Word in Haiti, as I wrote in 2001, was that Fusion even had an office inside Teleco. Along with Mr. Kennedy and Mr. Rosen, Mr. Clinton's close confidant Thomas "Mack" McLarty also had a seat on Fusion's board.

The Florida complaint alleges that at a minimum Fusion -- and other class B carriers -- violated U.S. telecommunication law by "silently accepting those concessions." It says U.S. law "required telecommunications carriers providing service between the U.S. and Haiti to publish and share the most favorable rates offered by Teleco to any of them." Fusion says during the time it did business with Teleco, it "did nothing improper and made no illegal payments" and "never had business dealings nor made any payments to Mont Salem."

In 2003, according to the Haitian complaint and Mr. Jewett separately in his own court case, IDT was offered and accepted a preferential rate similar to that enjoyed by Fusion and its principals.

"The fraudulent scheme to steal Teleco revenues was carried out in part through defendant Mont Salem," says the Florida complaint. The document claims that at Aristide's "direction" three of the other defendants in the case "directed" IDT to make its "payments for Teleco services to Mont Salem." At Aristide's order, "Teleco's then-counsel also caused Teleco to request at least one other Class B carrier, Fusion, to make payments through Mont Salem."

There is plenty more in the complaint, which also accuses Aristide and his collaborators of, "directing, facilitating and making transfers of public funds" into fictitious companies, inflating expense receipts, money laundering, smuggling and drug trafficking. It all happened, according to the Haitian government's complaint, to a desperately poor people and in some instances with help from rich and politically powerful Americans.

Charges of this magnitude from a government attempting to rid itself of political blight deserve

serious attention from the Florida federal court, and one would think from U.S prosecutors as well.

**URL for this article:**
http://online.wsj.com/article/SB113167635581294446.html

**Copyright 2007 Dow Jones & Company, Inc. All Rights Reserved**

This copy is for your personal, non-commercial use only. Distribution and use of this material are governed by our **Subscriber Agreement** and by copyright law. For non-personal use or to order multiple copies, please contact **Dow Jones** Reprints at 1-800-843-0008 or visit **www.djreprints.com**.



FORMAT FOR
PRINTING
sponsored by



**September 2, 2005**

## THE AMERICAS

# More Questions About Aristide's Telecom Deals

**By MARY ANASTASIA O'GRADY**
*September 2, 2005*

**DOW JONES REPRINTS**

⟨R⟩ This copy is for your personal, non-commercial use only. To order presentation-ready copies for distribution to your colleagues, clients or customers, use the Order Reprints tool at the bottom of any article or visit:
www.djreprints.com.

• See a sample reprint in PDF format.
• Order a reprint of this article now.

For more than a year now, New Jersey-based IDT Corp. has been denying any wrongdoing involving the long-distance telephone contract it negotiated with the former Haitian government of Jean Bertrand Aristide in 2003.

But new revelations that surfaced in a lawsuit against the company in Newark's federal district court in July cast doubt on the company's claims of innocence. If the evidence holds up in court, IDT could be in very hot water. The company didn't return my calls asking for comments on the case.

The latest revelations also support allegations by the current interim government in Haiti that Mr. Aristide -- beloved Haitian messiah of Washington's Congressional Black Caucus and Joseph P. Kennedy II -- was extremely corrupt. Mr. Aristide, who California Congresswoman Maxine Waters calls "a close friend," was dipping quite liberally into the government till for his own personal gain, the new evidence suggests.

The case reminds us of questions we raised about what arrangements Mr. Aristide had with Fusion, a telecom company that became a big player in the long-distance market to Haiti during the Clinton administration and whose board of directors included Mr. Kennedy and a host of Democratic Party heavyweights. Fusion declined to speak about its Haiti dealings when we wrote about them in 2001 even though by Federal Communications Commission law its contract should have been a matter of public record. Yesterday, Fusion told us that it has always filed what is required with the FCC.

International telephony is one of Haiti's very few sources of hard currency. The large and relatively affluent Haitian diaspora in the U.S. religiously calls home to relatives in Haiti every week, making the circuit one of the busiest in the Western Hemisphere.

The U.S. has been pushing countries to introduce competition to their telecom sectors so as to lower rates and improve service. But governments like to hold onto their monopolies, milking them for income. So in places where monopolies remain, the FCC seeks to minimize the potential for mischief, which could be aided and abetted by U.S. carriers, through its mandated "international settlements policy." ISP countries are supposed to have one transparent rate for all U.S. carriers terminating calls to the monopoly carrier and public disclosure of all contracts with ISP countries is required by law.

Until late in 2004, Haiti was an ISP country. In negotiations, it won a relatively high 23-cents-per-minute official settlement rate, on the grounds that it needed revenues to expand its phone network. Yet telephone access did not improve during Mr. Aristide's tenure. To the contrary, Teleco Haiti revenues dried up. The new revelations about IDT and Fusion suggest why.

As IDT itself pointed out in comments to the FCC in October 2004 "The ISP exists, primarily to prevent discrimination against U.S. carriers" and the requirements of the ISP include that "all U.S. carriers must be offered the same effective accounting rate."

Yet apparently not everyone was offered the same rate in Haiti. A Journal editorial reported in May 2001 that, "Two different long distance suppliers shopping the Haitian market have reported to us that Teleco officials offered them access to the local network at rates well below the official settlement rate in exchange for payment made to specially designated accounts."

According to former IDT employee Michael Jewett, who filed a complaint against the company in federal court in Newark in March 2004, IDT took advantage of just such an offer. Mr. Jewett claims that he was fired because he objected to facilitating the deal, which involved depositing settlement payments in an account in Turks and Caicos designated as Mount Salem Management. Mr. Jewett alleges that when he asked why the payments were not going to Teleco Haiti, IDT's Senior Vice President of International Business Development indicated they were going directly to President Aristide's bank account. He was also told to keep quiet about the transaction.

IDT initially argued that the rate it secured with Haiti was a trade secret and thus should be sealed in court documents. Mr. Jewett's lawyers appealed that decision, citing FCC regulations. In July the negotiated price was unsealed: It was nine cents per minute, 14 cents below the established ISP rate.

The Denis Report, a recently released independent investigation in Haiti of Teleco operations during the rule of Aristide, indicates that a party called "Mount Salem" owed Haiti Teleco over $411,000 at the time its contract was cancelled in September 2004, after Mr. Aristide was exiled. How much of the nine-cents-per-minute rate that Mr. Jewett alleges IDT sent to the Mount Salem account was owed to Teleco and how much was assigned for another beneficiary is still not known. But Teleco has already hinted at the answer.

In May 2004, then-Teleco Director-General Rene Meronney told Haitian Metropole radio that under the Aristide scheme "lower-level international companies" were allowed access to the Haitian network at six cents per minute. Those companies, he said, then turned around and wholesaled the minutes to the larger well-known international carriers at a 12-cent mark-up, capturing a spread that was shared "with the former regime."

It is worth noting that the Denis Report also indicates that Fusion owed Teleco $1,406,000 when its contract was terminated in September 2002. In January 2001, as we reported here, there were rumors in Haiti that Fusion had a sweetheart deal with Aristide that included access to the network at a price substantially below what competitors were charged. At the time, Fusion's in-house counsel declined to answer any questions about Haiti, offer the name of anyone at the company who might do so, or return follow-up phone calls. Clinton chum Thomas "Mack" McLarty, also on the Fusion board, clammed up too. "Mack doesn't know anything about Fusion and Haiti," a McLarty spokesman told me.

Annual hard-currency revenues to the Haitian government through the Teleco monopoly should

have been upwards of $60 million but instead the company was rifled. That's something to think about the next time you see a picture of a small Haitian child dying of starvation in the arms of his mother.

**URL for this article:**
http://online.wsj.com/article/SB112562834443929983.html

**Copyright 2007 Dow Jones & Company, Inc. All Rights Reserved**

This copy is for your personal, non-commercial use only. Distribution and use of this material are governed by our **Subscriber Agreement** and by copyright law. For non-personal use or to order multiple copies, please contact **Dow Jones** Reprints at 1-800-843-0008 or visit **www.djreprints.com**.





FORMAT FOR
PRINTING
sponsored by

**TOSHIBA**
Don't copy. Lead.*

## June 3, 2005

**THE AMERICAS**

# Aristide's Past Deserves More Intense Scrutiny

**By MARY ANASTASIA O'GRADY**
*June 3, 2005*

**DOW JONES REPRINTS**

®  This copy is for your personal, non-commercial use only. To order presentation-ready copies for distribution to your colleagues, clients or customers, use the Order Reprints tool at the bottom of any article or visit:
www.djreprints.com.

• See a sample reprint in PDF format.
• Order a reprint of this article now.

When Michael Jewett was fired in 2003 from the Newark, New Jersey-based telecom giant IDT, he filed a wrongful dismissal complaint against the company. Mr. Jewett alleged that he was let go because he questioned both the legality and the ethics of a telecom deal -- which he was asked to facilitate -- between former Haitian President Jean Bertrand Aristide and his employer.

The legal action is still not settled but a motion to unseal critical information in the case could be helpful, if it succeeds, to Haitian democrats who want to have former Haitian President Jean Bertrand Aristide brought to justice for what they allege were his frequently corrupt practices.

Holding Mr. Aristide accountable has importance for U.S. security interests and the future of Haiti itself, where per capita gross domestic product was a miserable $338 in 2002. Though a popular revolt drove him into exile in February 2004, violent support for the onetime priest continues and is badly damaging the country's efforts toward economic development. If he has committed crimes and is indicted and convicted, it would signal to Haitians that public officials can be held liable. It might also quiet the violence that plagues the country.

Haiti's pro-Aristide gangs are still on the prowl. Last year they launched "Operation Baghdad" with Iraqi chaos as the template for terror. U.N. peacekeepers and Haitians have since managed to pacify much of the country, but killing and kidnapping persist in certain neighborhoods in Port-au-Prince. Close observers say that the thugs hope that by spreading fear and misery they can persuade Haitians to call home the authoritarian Aristide.

Haitian officials report that within the past three weeks a Russian, an Indian and a Canadian were all kidnapped. A week ago a U.S. government van carrying personnel between embassy buildings was sprayed with bullets. The U.S. advised all nonessential embassy personnel to leave the country. On Wednesday a French consul was gunned down near the Port-au-Prince airport.

This is preventing a Haitian recovery. Yet violent supporters of Mr. Aristide are not likely to be vanquished until his power is neutralized through a thorough investigation of the accusations against him and prosecution, if warranted. Two areas of interest are suspicions of improper influence over Haiti's monopoly telephone company, Teleco, and possible connections with Haitians convicted of drug trafficking crimes.

Under something called the International Settlements Policy (ISP), the U.S. Federal Communications Commission negotiates settlement rates paid by U.S. telecoms to countries with state-owned monopoly telephone systems. ISP countries in the Third World often demand relatively high settlement rates because of their capital needs and lack of economies of scale. But because their telecom systems are under political control, they also can be centers of corruption.

In 2003 Haiti was an ISP country, but Mr. Jewett alleges that Mr. Aristide approved a settlement rate below the official ISP rate for calls terminated by IDT. If true this would have given IDT an advantage over carriers paying the official rate.

Until now Mr. Jewett's allegations couldn't be substantiated because a magistrate in U.S. District Court in New Jersey had sealed the rate that IDT secured from Teleco, on the grounds that it was a "trade secret."

But court papers filed by Mr. Jewett's attorney argue that FCC law mandates that deals between U.S. carriers and ISP countries are a matter of public record and cannot be exempted on competition grounds. Mr. Jewett's attorney has therefore filed a motion to have the agreement on price between IDT and Haiti unsealed. If IDT did get a privileged rate it will certainly raise questions about the circumstances. Phone calls to IDT were not returned.

As I reported here in October 2004, Mr. Jewett alleges that in September 2003 his boss, IDT's Executive Vice President for International Business Development Jack Lerer, explained to him what had been negotiated with Mr. Aristide. "IDT Telecom would deposit the settlement dollars from terminating traffic in Haiti through Teleco Haiti to an offshore account set up on behalf of President Aristide by Mount Salem, [a holding company] headquartered in the Turks and Caicos Islands," the amended complaint says. Mr. Jewett also claims that he was instructed to "keep the terms of the transaction confidential."

Mr. Jewett contends that IDT's efforts to have the reference to Mount Salem in his original complaint sealed suggest that such an account set up for deposits did indeed exist.

If Mr. Aristide did make a deal with IDT it would not be the first time he has involved himself directly with Teleco. President George H. W. Bush released frozen Haitian assets held in the U.S. to him in the early 1990s, after he had been exiled by a military coup. The big income earner for Haiti was the long distance telephone revenues. Christopher Caldwell reported in the American Spectator in 1994 that Mr. Aristide "raised hackles at the Latin America division of AT&T by ordering the proceeds from Haiti's international phone traffic moved to a numbered Panamanian account."

As I reported here, in Jan. 2001, Fusion Telecom, headed by former Democratic Party finance chairman Marvin Rosen, with Joseph P. Kennedy II then on its board, became a big player in Haiti after Mr. Aristide returned to power. Fusion also maintained that its long distance service to Haiti was a corporate secret even though FCC regulations state otherwise. My reports that Fusion was offering to terminate calls there at a rate well below the official settlement rate have not been challenged.

Telecom deals are not the only matters under scrutiny. Since Mr. Aristide's departure, a handful of officials who were in his government, including high-level police officers, have been indicted and convicted in Florida courts for crimes related to narcotics trafficking. His chief of anti-narcotics and the former Port-au-Prince airport police chief are still awaiting trial. These cases also raise

questions about what Mr. Aristide knew and when he knew it.

Haiti will try to hold presidential elections later this year. But the likelihood that they can be pulled off without the fear and intimidation tactics of diehard Aristide supporters will remain remote as long as he is able to guide his efforts at a comeback from his sanctuary in South Africa. Given the investment the U.S. has already made in trying to bring peace and justice to Haiti, a greater effort by the Bush administration to investigate the former strongman's past would seem to be well justified.

**URL for this article:**
http://online.wsj.com/article/SB111775322117449830.html

**Copyright 2007 Dow Jones & Company, Inc. All Rights Reserved**

This copy is for your personal, non-commercial use only. Distribution and use of this material are governed by our **Subscriber Agreement** and by copyright law. For non-personal use or to order multiple copies, please contact **Dow Jones** Reprints at 1-800-843-0008 or visit **www.djreprints.com**.



FORMAT FOR PRINTING sponsored by



Don't copy. Lead.®

**October 8, 2004**

### THE AMERICAS

# Aristide: Kerry's Favorite Haitian

**By MARY ANASTASIA O'GRADY**
*October 8, 2004*

**DOW JONES REPRINTS**

(R) This copy is for your personal, non-commercial use only. To order presentation-ready copies for distribution to your colleagues, clients or customers, use the Order Reprints tool at the bottom of any article or visit:
www.djreprints.com.

• See a sample reprint in PDF format.
• Order a reprint of this article now.

John Kerry has now decided, retrospectively, that he would not have gone to war to remove Saddam Hussein. But he would have put U.S. troops in harm's way to shield Haitian strongman Jean Bertrand Aristide from a revolt of his own people in February. "I would have been prepared to send troops immediately, period," Mr. Kerry told the New York Times on March 4.

This assertion from the would-be commander in chief seems to have had some unfortunate repercussions. Emboldened by a prominent champion in the U.S., the deposed Aristide's Lavalas Party thugs are committing mayhem again.

While rescuers were pulling the bodies of over 1,500 drowned victims of Hurricane Jeanne out of a flooded Gonaives last week and trying to ward off disease, Aristide supporters launched a wave of violence in Port-au-Prince. U.S. Secretary of State Colin Powell said Monday: "These are the old Aristide elements and some criminal elements who are trying to take advantage of the situation."

The opportunistic brutality included the beheading of three Haitian policemen. Haitian journalists are referring to the assault as "Operation Baghdad." The chaos, local observers maintain, is meant to demonstrate that Bush policy in Haiti is a failure. Any guess who the urban guerrillas are rooting for in the U.S. elections?

Mr. Kerry's has also ignored the suspected corruption under Mr. Aristide. An allegation filed in May in a New Jersey U.S. district court alleges that a deal with a large U.S. telecom company enabled Mr. Aristide to personally enrich himself at the expense of his destitute people. The complaint describes in rich detail the methods through which, according to the plaintiff, Mr. Kerry's beloved "democratic" Aristide regime pillaged the country, a nation populated mostly by defenseless, vulnerable peasants.

Even before seeing the complaint, I had written about the intrigues surrounding Aristide's telecom company, Haitian Teleco. Officially, Teleco is supposed to charge all companies connecting with its Haiti network one, agreed-upon interconnection rate. But unofficially, it was alleged to have provided better rates for some companies in return for bribes.

Sources inside Teleco have long accused Mr. Aristide of giving special deals to international carriers in exchange for a personal cut of the action. One deal that raised suspicions but remained shrouded in secrecy was between a long distance provider to Haiti called Fusion

Telecommunications International -- whose board included former finance chair of the Democratic National Committee, Marvin Rosen, Joseph P. Kennedy II, and Clinton special envoy to Latin America, Thomas "Mack" McLarty III -- and a Teleco representative.

The New Jersey complaint puts another U.S. telecom company under scrutiny. Former IDT Corp. employee Michael Jewett has filed a statement against the company alleging that he was let go because he objected to a shady deal with Mr. Aristide.

A complaint of course is not proof of guilt. IDT says that it "takes any kind of complaint seriously" but that this one is a "baseless claim by a former disgruntled employee." A company spokesman says that there has already been "a complete review by the internal audit committee and by outside counsel." It also says that it "intend[s] to file a counter-claim and a motion to dismiss" and that it has "filed sanctions against the plaintiff's counsel."

Mr. Jewett is by definition a "disgruntled" ex-employee. And his legal action also includes complaints about IDT's corporate culture that I am not able to assess. However, his claim about Haiti is remindful of my previous investigations about the legendary Aristide modus operandi. For almost a decade Haitians complained that Mr. Aristide ran the country like an extortion racket, demanding payments from a wide variety of enterprises.

As associate regional vice president for the Caribbean at IDT, Mr. Jewett has testified under oath that he was privy to the agreement between IDT and Haiti. "In September 2003, defendant Jack Lerer [IDT Executive Vice President for International Business Development] met with plaintiff to explain the 'deal' he had negotiated with President Aristide. IDT Telecom would deposit the settlement dollars from terminating traffic in Haiti through Teleco Haiti to an offshore account set up on behalf of President Aristide by Mount Salem, based in the Turks and Caicos Islands."

There was a quid pro quo. "The rate for each minute of U.S. originating traffic terminating in Haiti was to be a certain amount of [SEALED BY COURT ORDER] which is below what IDT would be paying if they had not agreed to divert the settlement payments to Mount Salem." Mr. Jewett further alleges that Mr. Lerer told him they had to move quickly to make sure they didn't lose the deal.

According to the court filing, "Plaintiff asked defendant Jack Lerer what Mount Salem was and he replied it was the private bank account of the President of Haiti, Mr. Jean Bertrand Aristide, that had been created by legal counsel for President Aristide, Adrian Corr, member of the law firm Miller, Simons and O'Sullivan."

Mr. Jewett has testified that Mr. Lerer instructed him to be the "'go-between' for all commercial correspondence between Teleco Haiti and Mount Salem." He also claims that Mr. Lerer told him "not to reveal the details of the TeleCo Haiti deal with anyone within IDT." Throughout the testimony, Mr. Jewett says that he continually questioned the legality of the agreement, along with a colleague John Cate. According to the complaint, "Defendant John Cate indicated that during his 27 years at AT&T, i.e., his prior employer, he had never once been involved with let alone heard of a telecommunication proposal and/or contract being structured in a manner similar to the TeleCo Haiti agreement."

Of course, Mr. Cate may not have been familiar with Aristide business ethics. In the July 1994 American Spectator, Christopher Caldwell reported that while Mr. Aristide was in exile in Washington he "raised hackles at the Latin American division of AT&T by ordering the proceeds

from Haiti's international phone traffic moved to a numbered Panamanian account." That business model continued after Mr. Aristide was returned to power in 1994 by a U.S. intervention ordered by Bill Clinton. In May 29, 2001, a Wall Street Journal Review & Outlook column about Fusion also explained that "Two different long distance suppliers shopping the Haitian market have reported to us that Teleco officials offered them access to the local network at rates well below the official settlement rate in exchange for payment made to specially designated accounts."

An IDT spokesman says that minutes to Haiti are only a fraction of total IDT business, suggesting that the company would have had little interest in what Mr. Jewett alleges. But, of course, IDT's interest in Haiti might have changed had it been able to grow its business in that country. Mr. Jewett's complaint says that some of the defendants "expressed their extreme satisfaction with the TeleCo Haiti deal, it was going to save the company over [SEALED BY COURT ORDER] a month and grow from there." Mr. Jewett says that the minute he was fired the first thing the company asked from him was the Haiti file.

It is likely that if IDT was doing what Mr. Jewett so specifically describes; it was not the only carrier competing for special treatment from Mr. Aristide. The U.S. Treasury has a staff in Haiti right now giving technical advice to the Haitian government. It would be good if that includes investigating what all did go on at Teleco Haiti. A full report that clears up once and for all the truth about what happened under Aristide control may go a long way toward establishing the moral authority of the new government.

It might also stop John Kerry from using desperately poor Haiti as a weapon against his Washington opponents and instead put him on a more constructive path for helping a suffering people.

**URL for this article:**
http://online.wsj.com/article/SB109719092958339884.html

**Copyright 2007 Dow Jones & Company, Inc. All Rights Reserved**

This copy is for your personal, non-commercial use only. Distribution and use of this material are governed by our **Subscriber Agreement** and by copyright law. For non-personal use or to order multiple copies, please contact **Dow Jones** Reprints at 1-800-843-0008 or visit **www.djreprints.com**.

Leslie A. Lajewski
Nicholas J. Falcone
GROTTA, GLASSMAN & HOFFMAN, P.C.
75 Livingston Avenue
Roseland, NJ 07068
Telephone: (973) 992-4800
Facsimile: (973) 992-9125
lajewskil@gghlaw.com
falconen@gghlaw.com


Donald A. Robinson
Robinson & Livelli
Two Penn Plaza East
Newark, NJ 07105
Telephone: (973) 690-5400
Facsimile: (973) 466-2760
drobinson@robinsonlivelli.com

Attorneys for Defendants IDT Corporation, Howard S. Jonas,
Motti Lichtenstein, Jack Lerer, David Schropfer, Avi Lazar,
Robert Schiff, Michael Levine, Jonathan Levy, Alex Schwarz,
James A. Courter, Joyce Mason, and John Cate

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| D. MICHAEL JEWETT,<br><br>     Plaintiff,<br><br>  vs.<br><br>IDT CORPORATION; HOWARD S. JONAS; MOTTI LICHTENSTEIN; JACK LERER; DAVID SCHROPFER; AVI LAZAR; ROBERT SCHIFF; MICHAEL LEVINE; JONATHAN LEVY; ALEX SCHWARZ; JAMES A. COURTER; JOYCE MASON; JOHN CATE; ADRIAN CORR; MOUNT SALEM MANAGEMENT LTD; AND JOHN DOES numbers one through ten, fictitious names, real names being unknown, representing the entities or individuals who engaged in unlawful racketeering practices; who deprived plaintiff of earnings and who subjected him to unlawful employment discrimination as set forth herein,<br><br>     Defendants, | Civil Action No.: CV-04-1454(JCL)(MF)<br><br><br>**DEFENDANTS IDT CORPORATION, HOWARD S. JONAS, MOTTI LICHTENSTEIN, JACK LERER, DAVID SCHROPFER, AVI LAZAR, ROBERT SCHIFF, MICHAEL LEVINE, JONATHAN LEVY, ALEX SCHWARZ, JAMES A. COURTER, JOYCE MASON, AND JOHN CATE'S ANSWER TO THE THIRD AMENDED COMPLAINT AND COUNTERCLAIMS** |

Defendants IDT Corporation ("IDT"), Howard S. Jonas, Motti Lichtenstein, Jack Lerer, David Schropfer, Avi Lazar, Robert Schiff, Michael Levine, Jonathan Levy, Alex Schwarz, James A. Courter, Joyce Mason, and John Cate (collectively, "Defendants"), by their attorneys, Grotta, Glassman & Hoffman, P.C., respond as follows to D. Michael Jewett's ("Jewett" or "Plaintiff") Amended Complaint in this case.

## AS TO THE NATURE OF THE ACTION

1.      Defendants admit that plaintiff seeks backpay, compensatory damages, liquidated damages, punitive damages and attorneys' fees, but deny the remaining allegations contained in paragraph 1.

2.      Defendants admit that Plaintiff brings this action pursuant to the New Jersey Anti-Racketeering Statute, N.J.S.A. 2C:41-1, *et seq.*; the New Jersey Conscientious Employee Protection Act, N.J.S.A. 34:19-1, *et seq.*; the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1, *et seq.*; and various New Jersey common law causes of action, but deny the remaining allegations contained in paragraph 2.

3.      Defendants admit that Plaintiff seeks backpay, compensatory damages, punitive damages and reasonable attorneys' fees and equitable relief, but deny the remaining allegations contained in paragraph 3 or that Plaintiff is entitled to the relief requested.

## AS TO THE PARTIES

4.      Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations set forth in paragraph 4.

5.      Defendants admit the allegations contained in paragraph 5.

6.      Defendants admit the allegations contained in paragraph 6.

- 2 -

7.    Defendants admit the allegations contained in paragraph 7.

8.    Defendants deny the allegations contained in paragraph 8, except admit that at the relevant time, Morris Lichtenstein held the position of CEO of IDT Telecom.

9.    Defendants admit the allegations contained in paragraph 9.

10.    Defendants deny the allegations contained in paragraph 10.

11.    Defendants deny the allegations contained in paragraph 11, except admit that at certain times, Avi Lazar held the position of Senior Vice President of Global Buying with IDT.

12.    Defendants deny the allegations contained in paragraph 12, except admit that at the relevant time, Robert Schiff held the position of Senior Director with IDT Telecom Sales.

13.    Defendants deny the allegations contained in paragraph 13, except admit that at the relevant time, Michael Levine held the position of Senior Vice President of Finance with IDT Telecom.

14.    Defendants deny the allegations contained in paragraph 14.

15.    Defendants deny the allegations contained in paragraph 15, except admit that at the relevant time, Alex Schwarz provided legal counsel to IDT Telecom.

16.    Defendants deny the allegations contained in paragraph 16, except admit that James A. Courter holds the position of CEO with IDT Corp.

17.    Defendant Joyce Mason admits the allegations contained in paragraph 17.

18.    Defendant John Cate admits the allegations contained in paragraph 18.

19.    The allegations contained in paragraph 19 are not directed at Defendants, thus no response is required.

- 3 -

20.    Defendants lack sufficient knowledge or information sufficient to admit or deny the allegations contained in paragraph 20.

## AS TO JURISDICTION AND VENUE

21.    Defendants admit that the United States District Court for the District of New Jersey has original and supplemental jurisdiction, but deny any wrongdoing alleged therein.

22.    Defendants admit that the United States District Court for the District of New Jersey has jurisdiction as to venue, but deny any wrongdoing alleged therein.

## AS TO FACTUAL BACKGROUND

23.    Defendants admit the allegations contained in paragraph 23.

24.    Defendants deny the allegations contained in paragraph 24.

25.    Defendants deny the allegations contained in paragraph 25, except to admit that the Plaintiff was an employee of IDT from about April 15, 2003 through November 11, 2003.

26.    Defendants admit the allegations contained in paragraph 26.

27.    Defendants deny the allegations contained in paragraph 27, except to admit that on or about July 15, 2003, plaintiff was offered an employment at-will position with IDT.

28.    Defendants admit the allegations contained in paragraph 28.

29.    Defendants deny the allegations contained in paragraph 29.

30.    Defendants deny the allegations contained in paragraph 30.

31.    The allegations contained in paragraph 31 are not directed at Defendants, thus no response is required.

32.    Defendants deny the allegations contained in paragraph 32.

33.    Upon information and belief, Defendants admit the allegations.

34.    Defendants are without sufficient knowledge to admit or deny the allegations

contained in paragraph 34.

35.    Defendants deny the allegations contained in paragraph 35.

36.    Defendants deny the allegations contained in paragraph 36.

37.    Defendants deny the allegations contained in paragraph 37.

38.    Defendants deny the allegations contained in paragraph 38.

39.    Defendants deny the allegations contained in paragraph 39.

40.    Defendants deny the allegations contained in paragraph 40.

41.    Defendants deny the allegations contained in paragraph 41.

42.    Defendants deny the allegations contained in paragraph 42.

43.    Defendants deny the allegations contained in paragraph 43.

44.    Defendants deny the allegations contained in paragraph 44.

45.    Defendants deny the allegations contained in paragraph 45.

46.    Defendants deny the allegations contained in paragraph 46.

47.    Defendants deny the allegations contained in paragraph 47.

48.    Defendants deny the allegations contained in paragraph 48.

49.    Defendants deny the allegations contained in paragraph 49.

50.    Defendants deny the allegations contained in paragraph 50.

51.    Defendants deny the allegations contained in paragraph 51.

52.    Defendants deny the allegations contained in paragraph 52.

53.    Defendants deny the allegations contained in paragraph 53.

54.    Defendants deny the allegations contained in paragraph 54.

55.    Defendants deny the allegations contained in paragraph 55.

56.    Defendants deny the allegations contained in paragraph 56.

57.    Defendants deny the allegations contained in paragraph 57.

58.    Defendants deny the allegations contained in paragraph 58.

59.    Defendants deny the allegations contained in paragraph 59.

60.    Defendants deny the allegations contained in paragraph 60.

61.    Defendants deny the allegations contained in paragraph 61.

62.    Defendants deny the allegations contained in paragraph 62.

63.    Defendants are without knowledge or information sufficient to admit or deny the allegations contained in paragraph 63.

64.    Defendants are without knowledge or information sufficient to admit or deny the allegations contained in paragraph 64.

65.    Defendants are without knowledge or information sufficient to admit or deny the allegations contained in paragraph 65.

66.    Defendants are without knowledge or information sufficient to admit or deny the allegations contained in paragraph 66.

67.    Defendants are without knowledge or information sufficient to admit or deny the allegations contained in paragraph 67.

68.    Defendants are without knowledge or information sufficient to admit or deny the allegations contained in paragraph 68.

69.    Defendants deny the allegations contained in paragraph 69.

70.    Defendants deny the allegations contained in paragraph 70.

71.     Defendants deny the allegations contained in paragraph 71, except to admit that the Plaintiff was offered an employment at will position after his probationary period.

72.     Defendants deny the allegations contained in paragraph 72.

73.     Defendants deny the allegations contained in paragraph 73.

74.     Defendants deny the allegations contained in paragraph 74, except to admit that the Plaintiff was asked to sign a Separation Agreement and Waiver and Release as part of a negotiated severance package.

75.     Defendants deny the allegations contained in paragraph 75.

76.     Defendants deny the allegations contained in paragraph 76, except to admit that Plaintiff sent correspondence via Federal Express to David Schropfer regarding Plaintiff's termination.

77.     Defendants deny the allegations contained in paragraph 77, except to admit that Plaintiff requested a copy of his personnel file.

78.     Defendants admit the allegations contained in paragraph 78.

79.     The allegations contained in paragraph 79 are not directed at Defendants, thus no response is required.

80.     Defendants deny the allegations contained in paragraph 80.

81.     Defendants deny the allegations contained in paragraph 81, except admit that Defendants have not provided Plaintiff with a copy of his personnel file as they are not required or obligated to do so.

82.     Defendants deny the allegations contained in paragraph 82.

83.     Defendants deny the allegations contained in paragraph 83, except admit that Defendants have not provided Plaintiff with an accounting of any IDT computer hard

drive as they are not required or obligated to do so.

84.    Defendants deny the allegations contained in paragraph 84.

85.    Defendants are without knowledge or information sufficient to admit or deny

the allegations contained in paragraph 85, except to admit that Plaintiff applied for

unemployment benefits.

86.    Defendants deny the allegations contained in paragraph 86.

87.    Defendants deny the allegations contained in paragraph 87.

88.    Defendants are without knowledge or information sufficient to admit or deny

the allegations contained in paragraph 88.

89.    Defendants deny the allegations contained in paragraph 89.

90.    Defendants need not respond to paragraph 90 as it calls for a legal

conclusion.

91.    Defendants deny the allegations contained in paragraph 91, except to admit

that it did not request an adjournment to Plaintiff's unemployment proceedings.

92.    Defendants need not respond to paragraph 92 as it calls for a legal

conclusion.

93.    Defendants deny the allegations contained in paragraph 93.

94.    Defendants deny the allegations contained in paragraph 94, except to admit

upon information and belief that Plaintiff was granted unemployment benefits.

95.    The allegations contained in paragraph 95 are not directed at Defendants,

thus no response is required.

96.    Defendants admit the allegations contained in paragraph 96.

97.    Defendants deny the allegations contained in paragraph 97, except to admit

that the Notice of Determination from the Division of Unemployment Insurance notes a time to appeal.

98.    Defendants deny the allegations contained in paragraph 98, except to admit that IDT did not file an appeal with the Division of Unemployment Insurance.

99.    Defendants deny the allegations contained in paragraph 99, except to admit that IDT did oppose Plaintiff's unemployment appeal.

100.    Defendants deny the allegations contained in paragraph 100.

101.    Defendants deny the allegations contained in paragraph 101.

## AS TO COUNT 1

### The New Jersey Anti-Racketeering Statute N.J.S.A. 2C:41-1

As Count I has been dismissed by Court Order filed December 29, 2005, Defendants are not required to respond to paragraphs 102-137. To the extent a response is required, Defendants incorporate all responses made to paragraphs 1 through 101 and deny the allegations contained in paragraphs 102 through 137.

## AS TO COUNT II

### New Jersey Conscientious Employee Protection Act, N.J.S.A. 34:19-1 et seq.

138.    Defendants repeat and incorporate by reference each of their responses to the allegations contained in paragraphs 1 through 137.

139.    Defendants deny the allegations contained in paragraph 139.

140.    Defendants deny the allegations contained in paragraph 140.

141.    Defendants deny the allegations contained in paragraph 141.

142.    Defendants deny the allegations contained in paragraph 142.

143.    Defendants deny the allegations contained in paragraph 143.

144.    Defendants deny the allegations contained in paragraph 144.

## AS TO COUNT III

## The New Jersey Law Against Discrimination (N.J.S.A. 10:5-12)

145.    Defendants repeat and incorporate by reference each of their responses to the allegations contained in paragraphs 1 through 144.

146.    Defendants are without knowledge or information sufficient to admit or deny the allegations contained in paragraph 146.

147.    Defendants deny the allegations contained in paragraph 147.

148.    Defendants deny the allegations contained in paragraph 148.

149.    Defendants deny the allegations contained in paragraph 149.

150.    Defendants deny the allegations contained in paragraph 150.

151.    Defendants deny the allegations contained in paragraph 151.

152.    Defendants deny the allegations contained in paragraph 152.

153.    Defendants deny the allegations contained in paragraph 153.

## AS TO COUNT IV

## New Jersey Common Law Defamation

154.    Defendants repeat and incorporate by reference each of their responses to the allegations contained in paragraphs 1 through 153.

155.    Defendants deny the allegations contained in paragraph 155.

156.    Defendants deny the allegations contained in paragraph 156, including subparagraphs (a) and (b).

157.    Defendants deny the allegations contained in paragraph 157.

158.    Defendants deny the allegations contained in paragraph 158.

159.  Defendants deny the allegations contained in paragraph 159.

160.  Defendants deny the allegations contained in paragraph 160.

161.  Defendants deny the allegations contained in paragraph 161.

162.  Defendants deny the allegations contained in paragraph 162.

163.  Defendants deny the allegations contained in paragraph 163.

### AS TO COUNT V

### New Jersey Common Law Unlawful Interference
### with Prospective Economic Advantage

As Count V has been dismissed by Court Order filed December 29, 2005,

Defendants are not required to respond to paragraphs 164-169.  To the extent a response is

required, Defendants incorporate all responses made to paragraphs 1 through 163 and

deny the allegations contained in paragraphs 164 through 169.

### AS TO COUNT VI

### New Jersey Common Law Intentional Infliction of Emotional Distress

170.  Defendants repeat and incorporate by reference each of their responses to

the allegations contained in paragraphs 1 through 169.

171.  Defendants deny the allegations contained in paragraph 171.

172.  Defendants deny the allegations contained in paragraph 172.

173.  Defendants deny the allegations contained in paragraph 173.

174.  Defendants deny the allegations contained in paragraph 174.

175.  Defendants are without knowledge or information sufficient to admit or deny

the allegations contained in paragraph 175, except in so much as Plaintiff is alleging that

any such conditions are on account of Defendants' actions, Defendants deny the

allegations.

176.   Defendants deny the allegations contained in paragraph 176.

177.   Defendants deny the allegations contained in paragraph 177.

178.   Defendants deny the allegations contained in paragraph 178.

179.   Defendants are without knowledge or information sufficient to admit or deny

the allegations contained in paragraph 179, except in so much as Plaintiff is alleging that

any such conditions are on account of Defendants' actions, Defendants deny the

allegations.

180.   Defendants deny the allegations contained in paragraph 180.

181.   Defendants deny the allegations contained in paragraph 181.

## AS TO DAMAGES

182.   Defendants deny that Plaintiff is entitled to back pay as requested in

paragraph 182.

183.   Defendants deny that Plaintiff is entitled to compensatory damages as

requested in paragraph 183.

183.   Defendants deny that Plaintiff is entitled to punitive damages as requested in

paragraph 183. (Repeat numbering in Third Amended Complaint)

184.   Defendants deny that Plaintiff is entitled to counsel fees as requested in

paragraph 184.

## AS TO EQUITY

185.   Defendants deny that Plaintiff is entitled to an injunction as requested in

paragraph 185.

186.    Defendants deny that Plaintiff is entitled to reinstatement as requested in paragraph 186.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

The Complaint fails to state a claim upon which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE

The Complaint fails to state a claim upon which an award of punitive damages can be granted.

### THIRD AFFIRMATIVE DEFENSE

The Complaint fails to state a claim upon which an award of attorneys' fees can be granted.

### FOURTH AFFIRMATIVE DEFENSE

Plaintiff has waived any claim he may have, which are denied, to seek relief against Defendants.

### FIFTH AFFIRMATIVE DEFENSE

The Complaint is barred by the doctrine of unclean hands.

### SIXTH AFFIRMATIVE DEFENSE

Plaintiff's claims or the damages that he may recover are barred or at least reduced by his failure to mitigate damages.

### SEVENTH AFFIRMATIVE DEFENSE

Defendants relied on legitimate nondiscriminatory/reasonable factors in terminating plaintiff's employment.

### EIGHTH AFFIRMATIVE DEFENSE

Defendant IDT employed Plaintiff on an at-will basis and, therefore, could terminate his employment at any time with or without notice and with or without cause.

### NINTH AFFIRMATIVE DEFENSE

Plaintiff is estopped and barred by his own conduct from recovering any relief.

### TENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred because Defendant relied on legitimate business reason(s) in making its decisions regarding Plaintiff's employment and did not retaliate against Plaintiff in violation of The New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 et seq. or New Jersey's Conscientious Employee Protection Act, N.J.S.A. 34:19-1 et seq.

### ELEVENTH AFFIRMATIVE DEFENSE

Defendants are informed and believe and on that basis allege that Plaintiff's claims are barred, in whole or in part, by the applicable statute of limitations.

### TWELFTH AFFIRMATIVE DEFENSE

Insofar as Plaintiff purports to allege a claim or claims for negligence or for physical or mental and emotional distress, including claims for recovery of medical expenses, such claims are barred by the exclusive remedy provisions of the New Jersey Workers' Compensation Act, N.J.S.A. 34:15-1 et seq.

### THIRTEENTH AFFIRMATIVE DEFENSE

To the extent that it seeks punitive or exemplary damages, the Complaint violates Defendants' right to procedural and substantive due process under the Fourteenth Amendment to the United States Constitution and under the Constitution of the State of New Jersey.

- 14 -

## FOURTEENTH AFFIRMATIVE DEFENSE

The statements which Plaintiff alleges were made by Defendants, if made, are not reasonably capable of a defamatory meaning.

## FIFTEENTH AFFIRMATIVE DEFENSE

The statements which Plaintiff alleges were made by Defendants, if made, were true.

## SIXTEENTH AFFIRMATIVE DEFENSE

Plaintiff suffered no injuries or other damages as a result of the statements he alleged were made by Defendants.

## SEVENTEENTH AFFIRMATIVE DEFENSE

The statements that Plaintiff alleges were made by Defendants, if made, were made in good faith and without malice or other evil intent.

## EIGHTEENTH AFFIRMATIVE DEFENSE

The statements that Plaintiff alleges were made by Defendants, if made, constitute mere opinion and are not actionable as defamation.

## NINETEENTH AFFIRMATIVE DEFENSE

The statements that Plaintiff alleges were made by Defendants, if made, were made in the course of and within the scope of Defendants' employment and are, therefore, privileged and not actionable as defamation.

## TWENTIETH AFFIRMATIVE DEFENSE

The statements which plaintiff alleges were made by Defendants, if made, were true in substance and fact and the acts and conduct of Plaintiff were such as to create a

reasonable suspicion that the matters allegedly charged against plaintiff by Defendants were true.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

The statements which Plaintiff alleges were made by Defendants, if made, were made in the course of and related to a judicial, quasi-judicial, legislative and/or administrative proceedings and are not actionable as defamation.

## TWENTY-SECOND AFFIRMATIVE DEFENSE

The statements which Plaintiff alleges were made by Defendants, if made, represented a fair and accurate report of the sum and substance of the subject matter of a judicial, quasi-judicial, legislative and/or administrative proceeding and are not actionable as defamation.

WHEREFORE, Defendants request that judgment be entered in their favor, dismissing the Complaint with prejudice, together with their attorneys' fees and costs of suit as allowed by law, and any other relief the Court finds appropriate.

## COUNTERCLAIMS

Defendant / Counterclaimant IDT Corporation ("IDT") by way of counterclaims against Plaintiff/Counterdefendant D. Michael Jewett ("Jewett") says:

### Factual Allegations

1.    IDT is a Delaware corporation duly authorized to do business in the State of New Jersey and maintains corporate offices at 520 Broad Street Newark, New Jersey. IDT is in the business of providing both domestic and international voice and calling card services.

2.    Upon information and belief, Jewett is an individual residing in Palm Beach

County, Florida.

3.    Jewett was employed by IDT from approximately April 15, 2003 through

November 11, 2003.

4.    In connection with his employment with IDT, on April 15, 2003, Jewett

executed a Non-Disclosure and Non-Competition Agreement ("the Agreement").

5.    The Agreement was a term of Jewett's employment with IDT.

6.    The Agreement contains, among other provisions, the following:

> 10.    "Confidential Information" means technical and business information
> about [IDT] ... and [its] respective clients and customers that is
> learned by the Employee in the course of his Employment ...
> including, without limitation, any and all ...customer and potential
> customer names, product plans and designs, licenses and other
> agreements, marketing and business plans, various other financial
> and business information of [IDT].  Employee acknowledges that
> such Confidential Information is specialized, unique in nature and of
> great value to the Company, and that such information gives a
> competitive advantage.

7.    On or about November 11, 2003, Jewett was terminated from his position

with IDT.

8.    The terms of the Agreement survived Jewett's termination from employment.

9.    In his employment position with IDT, Jewett owed a fiduciary duty to IDT.

10.    In his employment position with IDT, Jewett was a fiduciary of IDT.

11.    In his employment position with IDT, Jewett owed a duty of loyalty to IDT.

12.    In his employment position with IDT, Jewett had access to confidential,

proprietary and/or trade secret information of IDT's (hereinafter referred to as "Confidential

Information").

13.    IDT took sufficient precautions to maintain the secrecy of IDT's Confidential

Information.

## FIRST COUNT

## BREACH OF CONTRACT - CONFIDENTIALITY AGREEMENT

14.    IDT repeats and realleges the allegations set forth in paragraphs 1 through 13

hereof, as if fully set forth herein.

15.    The Agreement between Jewett and IDT contains a valid confidentiality

clause.

16.    In violation of this confidentiality clause, Jewett disclosed IDT's Confidential

Information to the public.

WHEREFORE, IDT demands judgment against Jewett for the following:

    a.    injunctive relief to prevent further disclosure;

    b.    all attorneys' fees and costs; and

    c.    such other and further relief as the Court shall deem just and proper.

## SECOND COUNT

## BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

17.    IDT repeats and realleges the allegations set forth in paragraphs 1 through 16

hereof, as if fully set forth herein.

18.    By the conduct described above, Jewett acted in bad faith and without

privilege and, as a result, breached the covenant of good faith and fair dealing owed to

IDT.

WHEREFORE, IDT demands judgment against Jewett for the following:

    a.    declaratory relief to prevent further disclosure;

    b.    attorneys' fees and costs; and

c.    such other and further relief as the Court shall deem just and proper.

## THIRD COUNT

## BREACH OF DUTY OF LOYALTY/FIDUCIARY DUTY

19.  IDT repeats and realleges the allegations set forth in paragraphs 1 through 18 hereof, as if fully set forth herein.

20.  By the conduct described above, Jewett failed to exercise good faith in his relationship with IDT and, by doing so, breached his fiduciary duties, including the duty of loyalty, to IDT.

WHEREFORE, IDT, Inc. demands judgment against Jewett for the following:

a.    injunctive relief to prevent further breach;

b.    return of all compensation and payments, including bonuses and benefits, received by Jewett, plus interest;

c.    attorneys' fees and costs;

d.    punitive damages; and

e.    such other and further relief as the Court shall deem just and proper.

## DEMAND FOR JURY TRIAL

Defendant/Counterclaimant IDT hereby demands a trial by jury on all issues so triable.

## DESIGNATION OF TRIAL COUNSEL

Defendant/Counterclaimant IDT hereby designates Leslie A. Lajewski, Esq. of Grotta, Glassman & Hoffman, P.C., as its trial counsel in above-captioned matter.

## CERTIFICATION

I hereby certify that, to the best of knowledge, this matter is not the subject of any

- 19 -

other action or proceeding and that no other action or proceeding is contemplated at this

time. I further certify that, to the best of my knowledge there are no other parties who

should be joined in this action as this time.

GROTTA, GLASSMAN & HOFFMAN, P.C.

and

ROBINSON & LIVELLI

Dated: January 26, 2006                By:    s/Nicholas J. Falcone
                                              Nicholas J. Falcone
                                              Attorneys for Defendant/Counterclaimant
                                              IDT Corporation, and individual Defendants
                                              Howard S. Jonas, Motti Lichtenstein, Jack
                                              Lerer, David Schropfer, Avi Lazar, Robert
                                              Schiff, Michael Levine, Jonathan Levy, Alex
                                              Schwarz, James A. Courter, Joyce Mason,
                                              and John Cate

533010_1.DOC

**COUGHLIN DUFFY LLP**
350 Mount Kemble Avenue
P.O. Box 1917
Morristown, New Jersey 07962-2075
Telephone: (973) 267-0058
Facsimile: (973) 267-6442
llajewski@coughlineduffy.com

and

**ROBINSON & LIVELLI**
Two Penn Plaza East
Newark, New Jersey 07105
Telephone: (973) 690-5400
Facsimile: (973) 466-2760
drobinson@robinsonlivelli.com

Attorneys for Defendants IDT Corporation,
Howard S. Jonas, Motti Lichtenstein, Jack Lerer,
David Schropfer, Avi Lazar, Robert Schiff, Michael Levine,
Jonathan Levy, Alex Schwarz, James A. Courter, Joyce Mason,
and John Cate

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

D. MICHAEL JEWETT,

　　　　　　　Plaintiff,

v.

IDT CORPORATION, et al.,

　　　　　　　Defendants.

Civil Action No.: 04-CV-1454 (JCL)(MF)

SCHEDULING ORDER

[PROPOSED] DISCOVERY PLAN AND
SCHEDULE FOR DISPOSITIVE
MOTIONS

This matter having come before the Court, the Honorable Mark Falk, U.S.M.J. presiding,

on December 15, 2006, by way of a status/scheduling conference, Leslie A. Lajewski (formerly

of Fox Rothschild LLP), Nicholas J. Falcone, Fox Rothschild LLP, and Donald A. Robinson,

Robinson & Livelli, attorneys for the defendants, and William P. Perniciaro, attorney for the

plaintiff, appearing, the Court having heard arguments of counsel and good cause appearing, and for reasons stated on the record, it is

**ORDERED AS FOLLOWS:**

A.    Amendments to the Complaint/Additional Parties.

The parties have been granted the right to file motions to amend the complaint. All such motions to amend the complaint shall be filed no later than **April 16, 2007.**

B.    Supplemental Discovery to and Motion to Dismiss the Individual Defendants.

(1) Plaintiff may submit a total of five (5) CEPA/LAD supplemental interrogatory questions to each individual defendant by **December 29, 2006.**

(2) The individual defendants' answers and objections to the supplemental discovery questions are to be submitted to plaintiff by **January 12, 2007.**

(3) The parties have until February 15, 2007 to submit supplemental papers in relation to defendants' motion to dismiss the individual defendants. As Judge Lifland's November 17, 2005 oral ruling and written order of **December 29, 2005** are silent on the form of such submissions, the parties shall obtain direction from Judge Falk on the form of same.

C.    Initial Disclosures.

The parties shall exchange Rule 26(a) Initial Disclosures by **January 15, 2007.**

D.    Election of Remedies.

The parties are to submit letter briefs pertaining to the timing for the elections of remedies to the Honorable Mark Falk by **January 29, 2007.**

E.    Scheduling for the Completion of Fact Discovery.

(1) The parties shall propound interrogatories exploring the causes of action and counterclaims not covered by the previously propounded CEPA and LAD interrogatories by

2

February 13, 2007. The interrogatories shall consist of not more than 25 questions, including all discrete subparts, in conformance with Fed.R.Civ.P. 33. Responses to interrogatories will be due **thirty (30) days** after their receipt.

(2) Demands for documents shall be served by **February 13, 2007.** Responses to demands for documents will be due **thirty (30) days** after their receipt, in conformance with Fed.R.Civ.P. 34.

(3) Plaintiff shall be permitted a maximum of **ten (10)** depositions, excluding experts. Defendants shall be permitted a maximum of **ten (10)** depositions, excluding experts. Any party may seek leave of Court pursuant to Fed.R.Civ.P. 30 to take more than ten (10) depositions. All depositions of fact witnesses are to take place and be concluded between **March 12, 2007 and October 15, 2007.** The parties agree that plaintiff will be deposed first to begin no later than **April 15, 2007.**

F.    Dispositive Motions.

All dispositive motions shall be filed by **November 29, 2007 or forty-five (45) days** after the completion of depositions, whichever is later.

G.    Schedule for the Completion of Expert Discovery.

Should dispositive motions not resolve all issues in the case:

(1) The plaintiff will provide the name of his expert(s) and produce any expert reports within **thirty (30) days** from the Court's decision on dispositive motions.

(2) The defendants will provide the name of its/their expert(s) and produce any expert reports within **thirty (30) days** of receipt of plaintiff's expert report.

(3) All expert depositions will be conducted within **thirty (30) days** of the service of defendants' expert report(s).

3

H.    Other Discovery.

This Order does not preclude any party from attempting to utilize other discovery

methods consistent with the Federal Rules of Civil Procedure and Title 28 of the U.S.C., such as

Requests for Admission and Letters Rogatory, provided that all fact discovery is completed by

**October 15, 2007**.

I.    Final Pretrial Conference.    *scheduled by the Court* *mf*

A final pretrial conference will be held ~~forty-five (45) days after dispositive motions are~~

~~resolved or all expert discovery is completed; whichever is later.~~

I.    ~~Trial Ready.~~    *mf*.

~~This case is to commence to trial~~ **twenty-one (21) days** ~~after the final pretrial conference.~~

**SO ORDERED:**

_____
The Honorable Mark Falk, U.S.M.J.

4

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
-------------------------------------------------------------

D. MICHAEL JEWETT,

Plaintiff,

        -against-

IDT CORPORATION; HOWARD S. JONAS; MOTTI LICHTENSTEIN; JACK LERER; DAVID SCHROPFER; AVI LAZAR; ROBERT SCHIFF; MICHAEL LEVINE; JONATHAN LEVY; ALEX SCHWARZ; JAMES A. COURTER; JOYCE MASON; JOHN CATE; ADRIAN CORR; MOUNT SALEM MANAGEMENT LTD.; AND JOHN DOE numbers one through ten, fictitious names, real names being unknown, representing the entities or individuals who engaged in unlawful racketeering practices; who deprived plaintiff of earnings and who subjected him to unlawful employment discrimination as set forth herein,

Defendants.
-------------------------------------------------------------

Docket No:
CV-04-1454

**THIRD
AMENDED
COMPLAINT**

       Plaintiff, D. MICHAEL JEWETT, by and through his undersigned counsel, William P. Perniciaro, for his Complaint against the defendants IDT CORPORATION; HOWARD S. JONAS; MOTTI LICHTENSTEIN; JACK LERER; DAVID SCHROPFER; AVI LAZAR; ROBERT SCHIFF; MICHAEL LEVINE; JONATHAN LEVY; ALEX SCHWARTZ; JAMES A. COURTER; JOYCE MASON; JOHN CATE; MOUNT SALEM MANAGEMENT LTD.; AND JOHN DOE, who are alleged to have unlawfully deprived MICHAEL

JEWETT of lawful earnings and/or defamed his good name and reputation in violation of the New Jersey Anti-Racketeering Statute, the New Jersey Conscientious Employee Protection Act, the New Jersey Law Against Discrimination, and various New Jersey State common law causes of action, alleges as follows:

### I.

### Nature of Action

1.    This is an action to recover back pay, compensatory damages, liquidated damages, punitive damages and attorney's fees as a result of the acts of IDT CORPORATION, its agents servants and employees, and MOUNT SALEM MANAGEMENT LTD., its agents servants and employees, unjustifiable and illegal termination of plaintiff's employment and for damaging his good name.

2.    The plaintiff is bringing this action under the New Jersey Conscientious Employee Protection Act, N.J.S.A. 34: 19-1 et seq.; the New Jersey Law Against Discrimination, N.J.S.A. 10: 5-1 et seq.; and various New Jersey Common Law causes of action for an alleged unlawful termination of his employment in retaliation for disclosing unlawful corrupt conduct by IDT CORPORATION and its senior management and MOUNT SALEM MANAGEMENT LTD.; for unlawful employment discrimination on the basis of religion; for retaliation by the defendants in attempting to void plaintiff's unemployment benefits; for

damaging the good name of the plaintiff and for intentional infliction of emotional distress.

3.     Plaintiff seeks monetary, compensatory and punitive damages, reasonable attorney's fees, and equitable relief enjoining the defendants from further damaging the good name of the plaintiff.

## II.

## The Parties

4.     The plaintiff, D. MICHAEL JEWETT, is currently a resident of Palm Beach County, Florida.

5.     The defendant IDT CORPORATION, (hereinafter "IDT"), is a telecommunications company engaged in interstate commerce with more than 15 employees.

6.     The defendant IDT is a Delaware for Profit Corporation with principal offices located at 520 Broad Street Newark, New Jersey.

7.     The defendant, HOWARD S. JONAS, upon information and belief, is the Chairman of IDT and a citizen of the State of New York.

8.     The defendant, MORRIS LICHTENSTEIN, upon information and belief, is Chief Executive Officer of IDT Telecom, and is a citizen of the state of New York.

9.     The defendant, JACK LERER, upon information and belief, is the Executive Vice President for International Business Development for IDT, and is a citizen of the State of New York.

10.    The defendant, DAVID SCHROPFER, upon information and belief, is the Executive Vice President for Strategic Management for IDT, and is a citizen of the State of New Jersey.

11.    The defendant, AVI LAZAR, upon information and belief, is Senior Vice President of Global Buying for IDT, and is a citizen of the State of New Jersey.

12.    The defendant, ROBERT SCHIFF, upon information and belief, is the Senior Director of IDT Telecom Sales, and is a citizen of the State of New York.

13.    The defendant, MICHAEL LEVINE, upon information and belief, is the Senior Vice President of Finance for IDT Telecom and is a citizen of the State of New Jersey.

14.    The defendant, JONATHAN LEVY, upon information and belief, is the President for IDT Telecom and is a citizen of the State of New York.

15.    The defendant, ALEX SCHWARTZ, upon information and belief, is legal counsel for IDT Telecom, and is a citizen of the State of New York.

16.    The defendant, JAMES A. COURTER, upon information and belief, is the Co-chairman and Chief Executive Officer for IDT Corp, and is a citizen of the State of New Jersey.

17.    The defendant, JOYCE MASON, upon information and belief, is a Senior Vice President and General Counsel for IDT Corp, and is a citizen of the State of New York.

18.    The defendant, JOHN CATE, upon information and belief, is Vice President for International Network Development for IDT, and is a citizen of the State of New Jersey.

19.    The defendant, ADRIAN CORR, upon information and belief, is legal counsel for the President of Haiti Jean Bertrand Aristede and a member of the law firm of Miller, Simons and O'Sullivan located in the Turks and Caicos Islands, and is a citizen of the Turks and Caicos Islands; and defendant MOUNT SALEM MANAGEMENT LTD., (hereinafter "MOUNT SALEM"), is a holding company existing and organized under the laws of the Turks and Caicos Islands whose principal place of business in located in the Turks and Caicos Islands.

20.    The defendant, JOHN DOE numbers one through ten, fictitious names, real names being unknown, represent the entities or individuals who unlawfully deprived the plaintiff of earnings and subjected him to unlawful employment discrimination as set forth herein.

### III.

### Jurisdiction and Venue

21.    The court has original jurisdiction of this action pursuant to 28 U.S.C. Sec. 1332 (3) in that the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States in which citizens or subjects of a foreign state are additional parties

22.    Venue is predicated on 28 U.S.C. Sec. 1391 (a) and (b), in that several of the defendants reside in this district and a substantial part of the events or omissions giving rise to the claim occurred in this district.

## IV.

## **Factual Background**

23.    Upon information and belief, IDT Telecom is a telecommunications company engaged in the business of providing both domestic and international voice and calling card services.

24.    With respect to its international voice and calling card services, IDT, upon information and belief, negotiates contracts with foreign phone companies outside the United States that enable IDT customers to make phone calls to those foreign countries from the United States.

25.    Plaintiff was employed by IDT from April 15, 2003, through November 11, 2003, the date he was discharged by IDT management.

26.    From April 15, 2003 through July 15, 2003 plaintiff worked as a Regional Director – Caribbean on a provisional, probationary basis.

27.    On or about July 15, 2003, plaintiff was advised he had satisfactorily fulfilled his employment probation period and was offered a full time executive position with IDT, which he accepted.

28.    From July 15, 2003, through the date of his termination, November 11, 2003, plaintiff was employed as an Associate Regional Vice President for the Caribbean, (ARVP).

29.    As an ARVP, plaintiff was in charge of business development and strategic relationships that would enable IDT to terminate international voice traffic to Post Telegraph and Telephone (PTT) companies, such as Cable & Wireless West Indies Ltd., and other telecommunication service providers in the Caribbean.

30.    As an ARVP, plaintiff was required to formulate and negotiate proposals with various local Caribbean Telecommunication Service Providers that would permit IDT to successfully terminate telecommunication traffic in the Caribbean.

31.    Upon information and belief, the term "terminate" in the telecommunications industry refers to a process whereby a foreign telecommunications company like TeleCo Haiti receives a phone call originating in a foreign jurisdiction, such as the United States, and transmits it via wire or other means to the ultimate recipient of that phone call in Haiti.

32.    Upon information and belief, at all times mentioned herein, IDT Telecom terminated US originating traffic through third parties such as AT&T, MCI and Sprint and other various wholesale carriers to TeleCo Haiti.

33.    Upon information and belief, TeleCo Haiti is a State owned and operated Telecommunication Company.

34.    Upon information and belief, TeleCo Haiti is the only domestic and international telecommunication company in Haiti.

35.    In September 2003, plaintiff was assigned to act as a commercial facilitator between IDT and TeleCo Haiti for purposes of negotiating a contract that would permit IDT to successfully terminate telecommunication traffic in Haiti.

36.    Upon information and belief, under the terms of the proposed contract, IDT was to receive the right for its customers to make telephone calls to Haiti through TeleCo Haiti and TeleCo Haiti was to receive a fixed price of the per minute cost of each phone call.

37.    During the course of IDT's negotiations with TeleCo Haiti, defendant Jack Lerer, Executive Vice President of International Business Development, informed plaintiff he had had discussions with TeleCo Haiti to determine how IDT Telecom could establish a direct interconnect and thus negotiate favorable termination rates with TeleCo Haiti.

38.    Plaintiff was advised that defendant Jack Lerer had received various proposals, one of which involved IDT's depositing [SEALED BY COURT ORDER] to a US Bank account in the name of the person Jack Lerer was communicating with.

39.    Plaintiff learned that defendant Jack Lerer and IDT Telecom felt this would be too high risk for IDT, as the payment of such a fee may

disappear without resulting in IDT Telecom completing a direct interconnect with TeleCo Haiti.

40.    Upon information and belief, in August of 2003 defendant Jack Lerer traveled to Haiti and was introduced to the President of Haiti, Mr. Jean-Bertrand Aristide, for the express purpose of discussing with President Aristide how IDT could have a direct interconnect with State owned and operated TeleCo Haiti.

41.    In September 2003, defendant Jack Lerer met with plaintiff to explain the "deal" he had negotiated with President Aristide.    IDT Telecom would deposit the settlement dollars from terminating traffic in Haiti through TeleCo Haiti to an offshore account set up on behalf of President Aristede by Mount Salem, headquartered in the Turks and Caicos Islands.

42.    The rate for each minute of US originating traffic terminating in Haiti was to be a certain amount of [SEALED BY COURT ORDER] which is below what IDT would be paying if they had not agreed to divert the settlement payments to Mount Salem.    Defendant Jack Lerer further advised plaintiff that IDT had to move quickly in order to avoid loosing the deal.

43.    Plaintiff asked defendant Jack Lerer what Mount Salem was and he replied it was the private bank account of the President of Haiti, Mr. jean Bertrand Aristide, that had been created by legal counsel for

President Aristede, Adrian Corr, member of the Law Firm Miller, Simons and O'Sullivan.

44.    Plaintiff asked defendant Jack Lerer if it was legal for IDT to make settlement deposits into the private offshore bank account of the President of Haiti rather than depositing the settlement proceeds into the bank account of TeleCo Haiti.  Defendant Jack Lerer told plaintiff it did not matter who got the money as long as IDT was protected from TeleCo Haiti alleging that they had not been paid for terminating IDT's telecommunication traffic in Haiti.

45.    In or about late September 2003, defendant Jack Lerer met with plaintiff and defendant John Cate, Vice President of International Network Planning, to explain the particulars of the TeleCo Haiti deal and to reveal the contact names for Mount Salem and TeleCo Haiti so that plaintiff and defendant John Cate could begin finalizing negotiations with both of these two entities.

46.    In or about late September 2003, defendant Jack Lerer instructed plaintiff and defendant John Cate to not reveal the details of the TeleCo Haiti deal with anyone within IDT. Plaintiff was instructed to work with defendant Alex Schwartz, legal counsel for IDT, in structuring the agreements with both TeleCo Haiti and Mount Salem.  Defendant Jack Lerer in addition told plaintiff he was to serve as the "go-between" for all commercial correspondence between TeleCo Haiti and Mount Salem and

defendant John Cate was to serve as the technical correspondent with TeleCo Haiti.

47.    At the conclusion of this meeting with defendant Jack Lerer, plaintiff and defendant John Cate discussed whether or not it was lawful and/or legal for IDT Telecom to proceed with the TeleCo Haiti deal, as described above.    Defendant John Cate indicated that during his 27 years at AT&T, i.e., his prior employer, he had never once been involved with let alone heard of a telecommunication proposal and/or contract being structured in a manner similar to the TeleCo Haiti agreement.

48.    Both plaintiff and defendant John Cate expressed serious misgivings to one another as to the legality of the proposed TeleCo Haiti contract and what the FCC might do to them if the FCC were to learn of the details involving the payment of TeleCo Haiti's settlement proceeds into the private off-shore bank account of President Aristide.

49.    In or about late September 2003, defendant David Schropfer, Executive Vice President Strategic Management – one of plaintiff's superiors - met with plaintiff and defendant John Cate to express his support for the TeleCo Haiti deal.

50.    When plaintiff and defendant John Cate questioned the legality of the deal defendant David Schropfer told plaintiff the proposed deal would proceed because it was a "Jack deal" and that defendant Jack Lerer had the support of the Chairman of IDT, defendant Howard Jonas.

51.    Defendant David Schrofper told plaintiff to work with defendant Alex Schwartz, Esq., in structuring the agreements with TeleCo Haiti and Mount Salem.

52.    In or about late September 2003, defendant Jack Lerer provided plaintiff via email the contact names of Mr. Adrian Corr, signing authority of Mount Salem and Mr. Jean Robert Duperval, a Senior Manager of TeleCo Haiti.  Additionally, defendant Jack Lerer instructed plaintiff to only copy "Fred", who purportedly was to act as President Aristede's agent, at the email address of [SEALED BY COURT ORDER] or [SEALED BY COURT ORDER] and himself with any correspondence regarding the TeleCo Haiti deal and no one else.

53.    In or about late September 2003, Alex Schwartz prepared, upon information and belief, Non- Disclosure Agreements that were forwarded by plaintiff on behalf of defendant Jack Lerer to both TeleCo Haiti and Mount Salem.

54.    [SEALED BY COURT ORDER]

55.    Throughout October 2003, plaintiff worked with defendants Alex Schwartz, Jack Lerer and David Schropfer to structure agreements for TeleCo Haiti and Mount Salem.  Defendants Jack Lerer, Alex Schwartz, Esq., and David Schropfer wanted to ensure that the agreements tied TeleCo Haiti and Mount Salem together so that if something happened to President Aristede, TeleCo Haiti could not sue IDT Telecom for non-payment of settlements.

56.  Throughout October 2003, plaintiff repeatedly expressed his reservations to all of the above referenced defendants of the legality and/or propriety of the manner and of the terms and conditions of the contract that was being negotiated with TeleCo Haiti and Mount Salem.

57.  Throughout the month of October the agreements with TeleCo Haiti and Mount Salem were negotiated and agreed to.  Upon information and belief, numerous emails were sent between IDT Telecom and TeleCo Haiti and IDT Telecom and Mount Salem.

58.  In October 2003, during numerous conversations with defendants Alex Schwartz, Esq., and David Schropfer, plaintiff repeatedly expressed his concern that what IDT Telecom was doing was not legal. The defendants repeatedly assured plaintiff that "[SEALED BY COURT ORDER]". During this same period, defendant John Cate negotiated the technical architecture for the interconnect and the associated cost to TeleCo Haiti.

59.  Defendant Jack Lerer negotiated with "Fred" for a portion of the cost of the equipment to be installed in Haiti to be taken out of the monthly settlements with Mount Salem.  Defendant Jack Lerer also negotiated the per minute settlement rate downward to 9 cents per minute.  It was determined that Fred would receive a certain amount of the settlement payments as an agent's fee.

60.  By the end of October 2003, plaintiff had developed the deal profile at the direction of defendant David Schropfer, which was thereafter

signed off on by defendants Robert Schiff, Senior Director of IDT Telecom Sales, Avi Lazar, Senior Vice President of Global Buying, David Schropfer and Michael Levine, Senior Vice President Finance IDT Telecom. Defendant Jonathan Levy President, IDT Telecom, signed final approval of the TeleCo Haiti deal.

61.    All the above referenced IDT defendants expressed their extreme satisfaction with the TeleCo Haiti deal, it was going to save the company over [SEALED BY COURT ORDER] a month and grow from there.

62.    By the first week of November 2003, the agreements between IDT Telecom and Mount Salem and IDT Telecom and TeleCo Haiti had been signed and agreed to by all parties with defendant Jonathan Levy signing on behalf of IDT Telecom, Mr. Adrian Corr, signing on behalf of Mount Salem and Mr. Jean Robert Duperval, signing on behalf of TeleCo Haiti.

63.    While employed with IDT Telecom, plaintiff received solicitations in the mail and in the form of telephone calls at his home to make sizable monetary contributions to different Jewish organizations, events and/or causes.

64.    While the specific event, purpose, charity or organization for which the donations were sought varied, the beneficiary of each solicitations plaintiff received to make a charitable contribution was always a Jewish based entity or individual.

65.   All of the solicitations were made, upon information and belief, with the express encouragement, consent and/or authorization of IDT management.

66.   The subject solicitations were either drafted on IDT letterhead, or sponsored by IDT management executives whose positions and titles at IDT appeared prominently in the printed solicitations, or involved events and gatherings that were exclusive in nature to the Jewish Religion and/or exclusively organized on behalf of prominent Jewish IDT management executives.

67.   Plaintiff chose to not contribute to any of these IDT "charities". Plaintiff, a non-Jew, expressed his displeasure with these continuous, aggressive, persistent solicitations with a fellow employee, who assured him it was in his best professional interest to not do so.

68.   Plaintiff similarly commented on several occasions to fellow employees of the overwhelming presence of artifacts, customs, practices, preferences and priorities relating to the Jewish religion at IDT's headquarters in Newark, New Jersey, i.e., plaintiff's workplace, as evidenced by all of the following: Hebrew Images, prints and portraits throughout the building: Hebrew prayers posted throughout the walls and corridors in the building: the presence of mezuzahs throughout the building: the presence of a Hebrew School on the premises: the presence of a Synagogue on the premises: the attendance of Jewish services by IDT lower and upper management every day on the premises: conference

room prayers: special privileges and accommodations that were only extended to IDT employees of the Jewish Faith including continuous rearrangement of weekly work schedules to accommodate recurring religious obligations and practices; the fact non Jewish IDT employees always were selected to replace absences in the workplace caused by the unavailability of IDT employees observing Jewish religious obligations: special selective parking privileges to the exclusion of non Jews: the fact approximately 85% of IDT's employees were Jewish and that approximately 95% of IDT's upper management was Jewish: the fact that no non Jewish IDT employee enjoyed the privileges, benefits, courtesies, accommodations and preferential treatment with respect to their religious faith that were extended to IDT employees of the Jewish faith.

69.    Shortly after voicing strong objection to the recurring solicitations by religious organizations during the course of his employment at IDT, to make sizeable cash contributions to Jewish Organizations openly endorsed and/or sponsored by IDT and his contemporaneous objection to the legality of IDT's decision to deposit settlement proceeds in President Jean-Bertrand Aristide's private bank account, plaintiff was discharged from the company.

70.    Plaintiff was, in fact, terminated within one week of IDT Telecom receiving the signed contracts from TeleCo Haiti and Mount Salem Management Ltd.

71.   During the entire course of his employment, plaintiff was never once reprimanded, censured, disciplined, suspended or cited for violating any company policy, nor was he ever charged with misconduct, nor was the quality of his work performance criticized or characterized as "unsatisfactory". On the contrary, management at IDT asked plaintiff to remain as a permanent employee upon the expiration of his three-month probationary period.

72.   IDT management personnel expressed their unqualified satisfaction and appreciation of plaintiff's work performance on numerous occasions during the entire course of his employment with IDT.

73.   On November 11, 2003, the date plaintiff was discharged, IDT management advised plaintiff for the first time during the entire course of his employment that his work performance was "unsatisfactory".

74.   On or about November 12, 2003, after being advised by IDT management that he was being discharged, plaintiff was asked to execute a Separation Agreement, Waiver and Release prepared by IDT which sought, amongst other things, plaintiff's waiver of his right to prosecute any local, state or federal anti-discrimination claim against IDT.

75.   On or about November 12, 2003, plaintiff advised defendant David Schropfer he would not sign IDT's Separation Agreement, Waiver and Release.

76.    On November 13, 2003, plaintiff forwarded correspondence to his Supervisor defendant David Schropfer, via Federal Express, memorializing defendant David Schropfer's verbal communication to plaintiff on November 11, 2003, and, furthermore, requested a written explanation setting forth each and every ground supporting IDT's decision to terminate plaintiff's employment.

77.    In this same correspondence, plaintiff requested he be provided with a copy of his personnel file and for IDT to preserve all of the data on the hard drive of the computer he used while in the employ of IDT.

78.    Plaintiff also requested he be provided with an accounting of all of the recorded data on that hard drive.

79.    Federal Express confirmed delivery on November 14, 2003 of plaintiff's correspondence dated November 13, 2003 to IDT.

80.    To date, IDT has IDT has completely failed to respond to plaintiff's correspondence dated November 13, 2003.

81.    To date, IDT has also failed to provide plaintiff, as per his written request, with a copy of his personnel file.

82.    To date, IDT has also failed to provide plaintiff, as per his written request, with an assurance that the integrity of plaintiff's entire work product, as contained on the hard drive of the computer he used during the entire course of his employment at IDT, has been preserved.

83.    To date, IDT has also failed, as per his written request, to provide him with an accounting of the data on the hard drive of the computer he used during the entire course of his employment.

84.    Significantly, this hard drive contains plaintiff's entire work product, an independent source of relevant data capable of determining the bona fides of IDT's claim repeated on numerous occasions, including under oath to a New Jersey State Agency, that plaintiff's work performance was "unsatisfactory".

85.    In November 2003, plaintiff submitted an application to the New Jersey Department of Labor Unemployment Insurance Office - Jersey City Branch Office - to receive unemployment benefits.

86.    Upon information and belief, IDT filed a written objection to plaintiff's application that was either forwarded via facsimile intrastate or via the US Postal Service.

87.    On December 3, 2003 both plaintiff and IDT appeared at a fact - finding interview before the New Jersey Department of Labor, by way of telephone conference, to determine plaintiff's eligibility for unemployment benefits.

88.    Prior to the commencement of the hearing, plaintiff's legal counsel had served both The New Jersey Department of Labor Unemployment Insurance Office - Chief Claims Examiner, Jersey City Branch Office and IDT, both by fax and by hand delivery, a written submission, dated December 2, 2003, contending plaintiff had not been fired for the

spurious grounds alleged by IDT but rather for his repeated objections to IDT's illicit, unethical, corrupt business practices and for his expressed objection to the hostile work environment he experienced at IDT as a non Jewish employee.

89.    On December 3, 2003, upon information and belief, an IDT representative appeared by way of telephone conference and offered testimony to Claim Adjuster Gomez to the effect plaintiff was terminated for cause as a result of "misconduct" and/or "unsatisfactory" work performance.

90.    IDT had an absolute right to request an adjournment of the December 3, 2003 proceeding to file a written response addressing plaintiff's multiple allegations of misconduct or to produce evidence establishing plaintiff's allegations lacked merit.

91.    Upon information and belief, IDT failed to request such an adjournment.

92.    IDT had a complete and unfettered opportunity to address plaintiff's multiple allegations of misconduct as set forth in his written submission that was prepared in response to the spurious grounds interposed by IDT in support of their written and verbal application to deny plaintiff's application to receive unemployment benefits.

93.    Upon information and belief, IDT failed to address plaintiff's multiple allegations of misconduct, as set forth in his written submission, at the December 3, 2003 Hearing.

94.   On or about December 10, 2003, Claims Examiner Gomez advised plaintiff that his application for unemployment benefits had been granted unconditionally, notwithstanding IDT's opposition.

95.   Upon information and belief, Claims Examiner Gomez' decision was predicated upon plaintiff's written submission, dated December 2, 2003, and the testimony he offered at the December 3, 2003 Hearing.

96.   Upon information and belief, on or about December 10, 2003, IDT was advised of The New Jersey Department of Labor's decision rendered in favor of plaintiff regarding his application for unemployment benefits.

97.   Upon information and belief, on or about December 10, 2003, IDT was advised by The New Jersey Department of Labor that they had the right to appeal Claim Examiner Gomez' decision rendered in favor of plaintiff, in its entirety.

98.   IDT failed to file an appeal of The New Jersey Department of Labor decision rendered in favor of plaintiff.

99.   To date, IDT has failed to provide any type of response to plaintiff's written submission to the New Jersey Department of Labor Unemployment Insurance Office, dated December 2, 2003, detailing numerous instances of IDT's illicit, unethical, corrupt business practices.

100.  IDT has deliberately, intentionally and maliciously disguised the true reasons why plaintiff was asked to leave the company. Plaintiff's discharge was predicated upon plaintiff's objections to IDT's unlawful business practices and the civil and/or potential criminal liability IDT

management faced if the details of their unlawful, unethical and corrupt business practices were to be exposed.

101.  The true grounds underpinning plaintiff's discharge turn on the facts and circumstances described above, not the disingenuous, unsupported and uncorroborated contrivances manufactured by IDT management.

### COUNT I

### The New Jersey Anti-Racketeering Statute N.J.S.A. 2C:41-1

102.  Plaintiff repeats and realleges paragraphs 1 through 101.

103.  Upon information and belief, defendant IDT is an issuer or corporation that has issued securities that have been registered in the United States or who is required to file periodic reports with the Security and Exchange Commission.

104. Upon information and belief, defendant IDT and all other defendants, except defendant Mount Salem, are domestic concerns which are any individual who is a citizen, national, or resident of the United States, or any corporation, partnership, association, joint-stock company, business trust, unincorporated organization, or sole proprietorship which has its principal place of business in the United States, or which is organized under the laws of a State of the United States, or a territory, possession, or commonwealth of the United States.

105. Upon information and belief, IDT and the all named defendants, engaged in a conspiracy to make or offer to make payments in money or other valuable things to Mount Salem in order to secure a telecommunications business relationship with TeleCo Haiti.

106. Upon information and belief, IDT and all named defendants made such payments to Mount Salem for the purpose of obtaining or retaining telecommunications business relationship with TeleCo Haiti.

107. Upon information and belief, IDT and all named defendants were aware that all or a portion of the payments to Mount Salem would be offered, given, or promised, directly or indirectly, to a foreign official, foreign political party, candidate, or official for the purposes of assisting IDT in obtaining or retaining a telecommunications business relationship with TeleCo Haiti.

108. Upon information and belief, Foreign Official means any officer or employee of a foreign government, a public international organization, or any department or agency thereof, or any person acting in an official capacity.

109. Upon information and belief, IDT and all named defendants, made and/or conspired to make payments to a Haitian Foreign Official, the President of Haiti, Jean-Bertrand Aristide, in order induce him to misuse his official position to direct business wrongfully to the payer or to any other individual or entity.

110. Upon information and belief, IDT and all named defendants, attempted to or traveled in interstate or foreign commerce and/or used the mail and/or any facility in interstate or foreign commerce with intent to distribute the proceeds of any unlawful activity.

111. Upon information and belief, IDT and all named defendants, attempted to or traveled in interstate or foreign commerce and/or used the mail and/or any facility in interstate or foreign commerce with intent to further any unlawful activity.

112. Upon information and belief, IDT and all named defendants, attempted to or traveled in interstate or foreign commerce and/or used the mail and/or any facility in interstate or foreign commerce with intent to promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity.

113. Upon information and belief, IDT and all named defendants, engaged in unlawful activity by extortion and/or bribery in violation of the laws of the State in which committed or of the United States.

114. Upon information and belief, IDT and all named defendants, engaged in unlawful activity by an act which is indictable under subchapter II of chapter 53 of title 31, United States Code, or under section 1956 or 1957 of title 18, United States Code.

115. Upon information and belief, IDT and all named defendants, engaged in acts of unlawful activity to undermine the employment performance of the plaintiff.

116. Upon information and belief, IDT CORPORATION and all named defendants, engaged in acts to sabotage and unlawful activity to undermine the employment performance of the plaintiff for the purpose of creating a pretext to end his employment.

117. Upon information and belief, IDT and all named defendants, engaged in acts to end the employment of the plaintiff because the plaintiff objected to the unlawful activity set out above.

118. Upon information and belief, IDT and all named defendants, devised or intended devise a scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, for the purpose of executing such scheme or artifice or attempting so to do, placed in a post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the US Postal Service, or deposited or caused to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly caused to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing.

119. Upon information and belief, with respect to IDT and all named defendants, the matter or things referred to above consist of written communication with TeleCo Haiti, Mount Salem, among the defendants,

and with the plaintiff for the purpose of consummating an economic relationship with TeleCo Haiti and to undermine the employment performance of the plaintiff.

120.    Upon information and belief, with respect to IDT and all named defendants, the matter or things referred to above consist of written communications with the New Jersey Department of Labor, for the purpose of undermining the plaintiff's receipt of unemployment benefits.

121.    Upon information and belief, with respect to IDT and all named defendants, the matter or things referred to above consist of written communication for the purpose of fraudulently inducing the plaintiff to seek and retain employment with IDT.

122.    Upon information and belief, IDT and all named defendants, devised or intended to devise a scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmitted or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice.

123.    Upon information and belief, with respect to IDT and all named defendants, the communication referred to above consists of communications with TeleCo Haiti, Mount Salem, among the defendants, and with the plaintiff for the purpose of consummating an economic

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

D. MICHAEL JEWETT,                : Civil Action No.  04-1454(JCL)
                                  :
                 Plaintiff,       :
                                  : Newark, New Jersey
            vs.                   :
                                  :
IDT, CORPORATION, et al,         :
                                  :
                 Defendant.       : Tuesday, March 8, 2005

- - - - - - - - - - - - - - - - - -

TRANSCRIPT OF TELEPHONIC MOTION FOR ORDER TO SHOW CAUSE
BEFORE THE HONORABLE MARK FALK, U.S.M.J.

APPEARANCES:
FOR THE PLAINTIFF:        BY:  WILLIAM P. PERNICIARO, ESQ.
                          84 New Dorp Plaza - Suite 205
                          Staten Island, NY  10306


FOR THE DEFENDANT:        BY:  LESLIE LAJEWSKI, ESQ.
IDT CORPORATION                NICHOLAS J. FALCONE, ESQ.
                          (Grotta, Glassman & Hoffman)
                          75 Livingston Avenue
                          Roseland, NJ  07068

                          BY:  DONALD ROBINSON, ESQ.
                          (Robinson & Livelli)
                          Two Penn Plaza East - Suite 1100
                          Newark, NJ  07105

MOUNT SALEM MANAGEMENT     BY:  MICHAEL S. WEINSTEIN, ESQ.
                          (Podvey, Meanor, Catenacci, Hildner
                          Cocoziello & Chattman)
                          One Riverfront Plaza - 8th Floor
                          Newark, NJ  07102


ADRIAN CORR                BY:  KERRIE R. HESLIN, ESQ.
                          (Carella, Byrne, Bain, Gilfillan,
                          Checchi, Stewart & Olstein)
                          5 Becker Farm Road
                          Roseland, NJ  07068




Proceedings recorded by electronic sound recording;
transcript produced by transcription service.
****************************************************************
RAPID TRANSCRIPT SERVICE, INC..
4 Elodie Lane
Randolph, New Jersey 07869
(973) 328-1730  Fax (973) 328-8016
****************************************************************

Colloquy

18

I, certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter on March 8, 2005, 2:32 p.m. to 2:49 p.m., to the best of my knowledge and ability.

_____
Date

_____
Lisa A. Mullen
RAPID TRANSCRIPT SERVICE, INC.

Argument - Perniciaro                                      8

1   analyzed the issue and I guess I found that this was

2   proprietary information that IDT showed that it treated as

3   such and really was tantamount to or constituted a trade

4   secret or something similar to that, and it really needn't be

5   pleaded in the complaint.

6          Now, I guess, if you could just summarize for me,

7   what has changed?

8          MR. PERNICIARO:  What's changed is that we've

9   discovered the regulatory scheme under which companies like

10  IDT are required to report these rates to the FCC and to

11  competitors.

12         THE COURT:  Uh-huh.

13         MR. PERNICIARO:  Basically, the defendants did not

14  disclose this regulatory scheme to the Court in the motion

15  practice, and I will say it's obscure and somewhat obtuse,

16  but I spent quite some time with it.

17         THE COURT:  Uh-huh.

18         MR. PERNICIARO:  I even conferred with attorneys

19  from the FCC.  I'm not enlisting them to go after IDT or

20  reporting them, I'm just learning the regulatory scheme, and

21  it's as follows:

22         TeleCo is what's called a dominant carrier, that's

23  FCC speak for monopoly.

24         THE COURT:  Right.

25         MR. PERNICIARO:  In that instance, unless they're

Argument - Perniciaro                                    9

1  exempted specifically by the FCC, carriers like TeleCo are

2  subject to something called the International Settlements

3  Policy, which states that foreign carriers can charge one

4  rate to all U.S. carriers; in other words, just like Con Ed,

5  Con Edison, or PSE&G, there's one rate, and that rate was 23

6  cents in 2003, that was the official settlement rate set for

7  Haiti by the FCC.

8          We all know the rate that was obtained by IDT,

9  it's in violation of that FCC rate and the regulations

10  clearly stated that in order to get that rate IDT had to seek

11  approval from the FCC by means of a process called

12  modification.  The modification request is a formal

13  application to the FCC to deviate from the 23-cent rate.

14          In that application, IDT was required to disclose

15  the foreign administration, that being TeleCo and Mount Salem

16  Management; the old price, 23 cents; and the new price, which

17  we all know.

18          In addition, in that modification, IDT was

19  required to notify all competitors of the new rate, and the

20  reason for that is because if the rate is approved, then the

21  other carriers can get the benefit of that rate because Haiti

22  is not permitted to charge different rates to different

23  carriers.

24          In addition, it states specifically in the regs,

25  and I've documented this in the order to show cause, that IDT

1   was required to submit an affidavit indicating that it had

2   not negotiated or bargained for exclusive availability of the

3   new accounting rate.

4          So I state that IDT is not entitled to that rate.

5   The rate is unlawful, the rate is not a secret, it is

6   basically a publicly regulated industry when it comes to

7   TeleCo and monopoly carriers of dominant foreign carriers.

8   There's no way that that's a trade secret.  There's no way

9   that IDT is being hurt by disclosure of the rate.

10         Basically, the individuals being harmed are the

11  competitors and the fact that IDT failed to disclosed these

12  regulations to the court, I believe was a violation of the

13  rules of ethics.  I think they have an obligation to disclose

14  controlling contrary authority to the Court so the Court is

15  not mislead into doing something it would not normally do.

16         That's all I have to say.

17         THE COURT:  Okay.  Well, the defendants have not

18  had an opportunity to respond.  I don't know, is there

19  anything anyone wants to say right now.

20         MS. LAJEWSKI:  Well, Your Honor, as you can guess,

21  we -- we very strongly disagree with Mr. Perniciaro's

22  assumptions and conclusions.  One of the things I want to

23  note is because Mr. Perniciaro asked for this to be put on

24  the record, he has now just placed on the record the

25  otherwise sealed information of the rate structure and I ask

Court Decision                              14

1    seems that this is -- I mean, in some respects a little

2    technical about it.  I mean, obviously, if it's something

3    that is a matter of public record, I mean, if after you see

4    his papers and that really is the case, it's going to be hard

5    to argue under the case law that it's something that should

6    be sealed.

7              But if that's not the case, then, of course, you

8    know, you have your arguments.  When I heard it at the time,

9    I thought it was classic proprietary information that we --

10             MR. PERNICIARO:  You know, I don't think you were

11   wrong.  I think your decision was well reasoned.

12             THE COURT:  Right.

13             MR. PERNICIARO:  But I didn't know this regulatory

14   scheme, and the Court didn't.  It's very complicated, I'll

15   admit, but I've spoken with legal counsel for the FCC and

16   they indicated that if the Court requests it, they will

17   provide any legal guidance you require, anything.  They won't

18   do it for me, but they'll do it for the Court.

19             THE COURT:  Well.

20             MR. PERNICIARO:  So I'll submit that information,

21   as well.

22             THE COURT:  Well, okay.  You submit whatever you

23   think is appropriate.

24             MR. PERNICIARO:  Yes, sir.

25             THE COURT:  And then -- so set up a little

Leslie A. Lajewski
Nicholas J. Falcone
GROTTA, GLASSMAN & HOFFMAN, P.C.
75 Livingston Avenue
Roseland, NJ 07068
Telephone: (973) 992-4800
Facsimile: (973) 992-9125
lajewski@gghlaw.com
falconen@gghlaw.com

and

Donald A. Robinson
ROBINSON & LIVELLI
Two Penn Plaza East
Newark, NJ 07105
Telephone: (973) 690-5400
Facsimile: (973) 466-2760

Attorneys for Defendants IDT Corporation,
Howard S. Jonas, Motti Lichtenstein, Jack Lerer,
David Schropfer, Avi Lazar, Robert Schiff, Michael Levine,
Jonathan Levy, Alex Schwarz, James A. Courter, Joyce Mason,
And John Cate

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| D. MICHAEL JEWETT, | Civil Action No.: 04-CV-1454 (JCL)(MF) |
| Plaintiff, | **DECLARATION OF** |
| v. | **ALEX SCHWARZ, ESQ.,** **IN SUPPORT OF DEFENDANTS' MOTION** |
| IDT CORPORATION; et al., | **FOR A DISCOVERY CONFIDENTIALITY** **ORDER** |
| Defendant. | |

I, Alex Schwarz, say:

1.     I am Associate General Counsel for IDT Corporation.  In my capacity as

such, I have general knowledge of IDT's policies, procedures, and what documents are

kept in the normal course of business. If properly called as a witness, I could and would so testify.

2.    IDT maintains confidentiality with respect to details of business arrangements with certain companies in terminating telecommunication traffic and, in some cases, the companies themselves with whom IDT is conducting business. IDT does so because it considers this information to be proprietary and to maintain a competitive advantage within the industry. Like IDT, IDT's competitors also keep this information confidential and do not publish it in the industry.

3.    Disclosing such information (e.g., potential customer and customer names, deal negotiations, final deal terms) would essentially give a roadmap to all IDT competitors how to successfully structure a deal with IDT's customer base. With this information, competitors can, for example, underbid IDT by fractions of a cent, and existing and potential customers can use the dollar amount of this deal as leverage for negotiating lower rates on their own deals.

4.    For the same reason explained above, IDT also maintains the confidentiality of how its deals are structured, its business plans, and the costs of brokering business deals.

5.    IDT's confidential materials on the TeleCo Haiti deal include but are not limited to documents relating to and/or concerning the deal, draft and final contracts for the deal, invoices and all emails and correspondence.

6.    Disclosure of IDT's confidential information by Plaintiff would irreparably harm IDT in many ways including, but not limited to, the following:

a.    IDT will lose its competitive advantage once its competitors learn how it structures and negotiates contracts.

2

       b.     IDT is at risk of losing present business relationships as competitors can now contact its customers and offer more favorable contracts by using IDT's strategic plan.

     I declare under penalty of perjury that the foregoing is true and correct.

Dated: April 18, 2006

_____
ALEX SCHWARZ

542692

3